UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

In re                                          Bankruptcy Court
                                               Case No. 04-14268 (RDD)
PARMALAT FINANZIARIA S.p.A., <u>et al.</u>,

                                               In a Proceeding Under Section
                                               304 of the Bankruptcy Code
   Debtors in a Foreign Proceeding.

------------------------------------------------------x

ABN AMRO BANK N.V.,

                    Appellant,                 District Court
                                               **Case No. 07-cv-07413 (PKC)**

- against -

PARMALAT FINANZIARIA S.p.A.,

                    Appellee.

------------------------------------------------------x

---

## BRIEF OF APPELLANT ABN AMRO BANK N.V.

---

Lawrence L. Ginsburg (LG 6370)
Scott E. Silberfein (SS 1947)
Christopher J. Caruso (CC 8005)
MOSES & SINGER LLP
405 Lexington Avenue
New York, New York 10174
(212) 554-7800

*Attorneys for Appellant*
ABN AMRO BANK N.V.

625945v7  009988.0102

## TABLE OF CONTENTS

STATEMENT OF APPELLATE JURISDICTION ................................................................. 1

STATEMENT OF ISSUE PRESENTED ............................................................................... 1

APPLICABLE STANDARD OF APPELLATE REVIEW ....................................................... 1

SUMMARY OF ARGUMENT ............................................................................................... 2

STATEMENT OF THE CASE ............................................................................................... 5

    A.    The Note and Guarantee ................................................................ 5

    B.    The Extraordinary Administration and Section 304 Proceedings ......................... 5

    C.    The Italian Proceedings ................................................................ 6

    D.    Permanent Injunction Proceedings .................................................. 10

ARGUMENT ...................................................................................................................... 11

I.    THE BANKRUPTCY COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO PROPERLY CONSIDER AND ANALYZE THE SECTION 304(C) FACTORS IN DECIDING WHETHER TO GRANT THE INJUNCTIVE RELIEF ...... 11

II.    THE BANKRUPTCY COURT ERRED AND ABUSED ITS DISCRETION IN GRANTING THE PERMANENT INJUNCTION DESPITE THE GUARANTEE'S NEW YORK CHOICE OF LAW PROVISION ................................................. 13

    A.    The Granting Of Comity Does Not Require Obviating The Choice Of Law Provision In The Guarantee ................................................. 13

    B.    The Bankruptcy Court's Reliance On The Altos Hornos Case Was Reversible Error .................................................................................. 15

    C.    New York Has A Strong Policy In Respecting And Enforcing New York Choice Of Law Provisions By Banking And Financial Institutions ................. 17

    D.    The Rome Convention Dictates That Effect Should Be Given To The Choice Of Law Provision In The Guarantee .................................................. 20

III.    APPLICATION OF *DATA CERTA* IS REPUGNANT TO UNITED STATES PRINCIPLES OF JUSTICE THEREBY REQUIRING DENIAL OF THE PERMANENT INJUNCTION ................................................................ 22

IV.    THE BANKRUPTCY COURT ERRED AND ABUSED ITS DISCRETION IN NOT CONDITIONALLY GRANTING THE PERMANENT INJUNCTION ON PARMALAT'S WITHDRAWAL OF ITS *DATA CERTA* DEFENSE OR ON THE PARMA'S COURT ENFORCEMENT AND APPLICATION OF THE CHOICE OF LAW PROVISION ............................................................................. 25

CONCLUSION ................................................................................................................... 27

# <u>TABLE OF AUTHORITIES</u>

## FEDERAL CASES

<u>Allstate Life Insurance Co. v. Linter Group Ltd.</u>,
994 F.2d 996 (2d Cir. 1993) ............................................................................ 9,16

<u>Assuranceforeningen Skuld Den Danske Afdeling v. Allfirst Bank</u>,
96 Fed. Appx. 753 (2d Cir. 2004) ..................................................................... 14

<u>Bank of New York v. Treco (In re Treco)</u>,
240 F.3d 148 (2d Cir. 2001) ........................................................................ passim

<u>In re Board of Directors of Hopewell International Insurance Ltd.</u>,
275 B.R. 699 (S.D.N.Y. 2002) ....................................................................... 1, 2

<u>In re Board of Directors of Hopewell International Insurance Ltd.</u>,
281 B.R. 200 (Bankr. S.D.N.Y. 2002) ............................................................. 11

<u>Board of Directors of Telecom Argentina</u>,
2006 U.S. Dist. LEXIS 8524 (S.D.N.Y. Nov. 20, 2006) ................................... 11

<u>Breeden v. Sphere Drake Insurance PLC (In re Bennett Funding Group, Inc.)</u>,
1999 Bankr. LEXIS 1857 (Bankr. N.D.N.Y. Aug. 6, 1999) .............................. 15

<u>Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co.</u>,
363 U.S. 528 (1960) ..................................................................................... 25, 26

<u>In re Calpine Corp.</u>,
365 B.R. 401 (Bankr. S.D.N.Y. 2007) ............................................................... 1

<u>In re Culmer</u>,
25 B.R. 621 (Bankr. S.D.N.Y. 1982) ............................................................. 11,12

<u>Cunard S.S. Co. Ltd. v. Salen Reefer Services AB</u>,
773 F.2d 452 (2d Cir. 1985) .............................................................................. 9

<u>Enron Power Marketing, Inc. v. Nevada Power Co.</u>,
2004 WL 2290486 (S.D.N.Y. Oct. 12, 2004) ..................................................... 2

<u>Finanz AG Zurich v. Banco Economico S.A.</u>,
192 F.3d 240 (2d Cir. 1999) .............................................................................. 9

<u>Fuel & Marine Marketing LLC v. Allfirst Bank (In re Millenium Seacarriers, Inc.)</u>,
2004 U.S. Dist. LEXIS 11399 (S.D.N.Y. June 22, 2004) .............................. 14, 15

Global Link, LLC v. Karamtech Co., Ltd.,
    2007 WL 1343684 (E.D. Mich. May 8, 2007) ................................................... 17

Hawaii Structural Ironworkers Pension Trust Fund v. Calpine Corp., Inc.,
    2006 WL 3755175 (S.D.N.Y. Dec. 20, 2006) ....................................................... 1

International Minerals & Resources, S.A. v. Pappas,
    96 F.3d 586 (2d Cir. 1996) ................................................................................. 17

JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.,
    412 F.3d 418 (2d Cir. 2005) ...................................................................... 9, 13-16

Jota v. Texaco, Inc.,
    157 F.3d 153 (2d Cir. 1998) ................................................................................. 9

Long Island R.R. Co. v. System Federation No. 156, America Federation of Labor,
    289 F. Supp. 119 (E.D.N.Y. 1968) ..................................................................... 26

LTV Corp. v. Miller (In re Chateaugay Corp.),
    109 B.R. 613 (S.D.N.Y. 1990) ............................................................................. 2

In re Maxwell Commc'n Corp.,
    170 B.R. 800 (Bankr. S.D.N.Y. 1994), aff'd, 186 B.R. 807 (S.D.N.Y. 1995);
    aff'd, 93 F.3d 1036 (2d Cir. 1996) ..................................................................... 13

Mitsubishi v. Soler Chrysler-Plymouth,
    473 U.S. 614 (1985) ........................................................................................... 17

M/S Bremen v. Zapata Off-Shore Co.,
    407 U.S. 1 (1972) .........................................................................................14, 17

In re PSINet, Inc.,
    268 B.R. 358 (Bankr. S.D.N.Y. 2001) ............................................................... 16

Phillips v. Audio Active, Ltd.,
    494 F.3d 378 (2d Cir. 2007) ...........................................................................17, 18

Pravin Banker Associates, Ltd. v. Banco Popular Del Peru,
    109 F.3d 850 (2d Cir. 1997) ................................................................................. 9

In re Regus Bus. Ctr. Corp.,
    301 B.R. 122 (Bankr. S.D.N.Y. 2003) ............................................................... 15

Roby v. Corp. of Lloyd's,
    996 F.2d 1353 (2d Cir. 1993) ............................................................................. 17

Sheerbonnet, Ltd. v. America Express Bank Ltd.,
    17 F.3d 46 (2d Cir. 1994) ............................................................................... 2

Shugrue v. Air Line Pilots Associate International (In re Ionosphere Clubs, Inc.,
    922 F.2d 984 (2d Cir. 1990) ............................................................................ 2

United States v. Bedford Associates,
    618 F.2d 904 (2d Cir. 1980) .......................................................................... 26

United States v. Franchi,
    756 F. Supp. 889 (E.D.Pa. 1991) .................................................................. 27

Universal Casualty & Surety Co. v. Gee (In re Gee),
    53 B.R. 891 (Bankr. S.D.N.Y. 1985) ............................................................ 11

Yakus v. United States,
    321 U.S. 414 (1944) ...................................................................................... 26

Yavuz v. 61 MM, Ltd.,
    465 F.3d 418 (10th Cir. 2006) ...................................................................... 18

## STATE CASES

Credit Francais International, S.A. v. Sociedad Financiera de Comercio, C.A.,
    490 N.Y.S.2d 670 (Sup. Ct. N.Y. Co. 1985) ................................................ 19

Curtis, Mallet-Prevost, Colt & Mosle, LLP v. Garza-Morales,
    762 N.Y.S.2d 607 (1st Dep't 2003) .............................................................. 18

International Indosuez Finance, B.V. v. National Reserve Bank,
    1999 N.Y. Misc. LEXIS 476 (Sup. Ct. N.Y. Co. 1999) ............................... 21

Zeevi & Sons v Grindlays Bank [Uganda],
    37 N.Y.2d 220 (N.Y. 1975) ........................................................................... 20

## FEDERAL STATUTES

11 U.S.C. § 304 ................................................................................................. passim

28 U.S.C. § 158(a) .................................................................................................. 1

## STATE STATUTE

N.Y. General Obligations Law § 5-1401 ............................................................. 20

## MISCELLANEOUS

H.R. Rep. No. 95-595 (1977) .................................................................................... 11

Rome Convention 1980 ................................................................................. 9, 20, 21

## STATEMENT OF APPELLATE JURISDICTION

ABN AMRO Bank N.V. ("ABN") appeals from the Order Pursuant To Section 304 Of The Bankruptcy Code Granting Permanent Injunction And Giving Effect To Composition In The United States issued by the Hon. Robert D. Drain, U.S.B.J. in favor of Parmalat Finanziaria S.p.A. ("Parmalat" or the "Foreign Debtors")[1] and Modified Bench Ruling On Request For Permanent Injunction entered by the United States Bankruptcy Court for the Southern District of New York on July 20, 2007 (the "Order").  (Docket No. 215.)[2]  The Order, issued pursuant to 11 U.S.C. § 304, enjoins ABN's commencement or continuation of any legal proceeding in the United States against Parmalat or any of its property or proceeds thereof.

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a).

## STATEMENT OF ISSUE PRESENTED

Did the Bankruptcy Court err and abuse its discretion in granting permanent injunctive relief to Foreign Debtors under 11 U.S.C. § 304?

## APPLICABLE STANDARD OF APPELLATE REVIEW

A district court reviews a decision to grant or deny an injunction for an abuse of discretion.  Hawaii Structural Ironworkers Pension Trust Fund v. Calpine Corp., Inc., 2006 WL 3755175, at *3 (S.D.N.Y. Dec. 20, 2006); In re Calpine Corp., 365 B.R. 401, 407 (S.D.N.Y. 2007).  Similarly, the decision by a bankruptcy court to defer to a foreign proceeding under § 304 of the Bankruptcy Code is reviewed for abuse of discretion.  Bank of New York v. Treco (In re Treco), 240 F.3d 148, 155 (2d Cir. 2001); In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd., 275

---

[1] Although the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, enacted on April 20, 2005, repealed section 304 of the Bankruptcy Code, section 304 was still in effect when the Foreign Debtors filed their ancillary proceedings in the Bankruptcy Court on June 22, 2004.

[2] Citations to documents included in the record on appeal are referenced herein as "Docket No. ___."

B.R. 699, 703 (S.D.N.Y. 2002). "An abuse of discretion may take the form of the application of erroneous legal principles or procedures, findings of fact which are clearly erroneous, or error in the substance or form of the injunction." LTV Corp. v. Miller (In re Chateaugay Corp.), 109 B.R. 613, 619 (S.D.N.Y. 1990). This Court, in review of the Bankruptcy Court's exercise of discretion, reviews conclusions of law *de novo*. Sheerbonnet, Ltd. v. Am. Express Bank Ltd., 17 F.3d 46, 48 (2d Cir. 1994); Shugrue v. Air Line Pilots Assoc. Int'l (In re Ionosphere Clubs, Inc., 922 F.2d 984, 988 (2d Cir. 1990); Enron Power Mktg., Inc. v. Nevada Power Co., 2004 WL 2290486, at *1 (S.D.N.Y. Oct. 12, 2004) ("When reviewing a Bankruptcy Court decision, this court reviews conclusions of law *de novo* and findings of fact under a clearly erroneous standard").

## SUMMARY OF ARGUMENT

By motion dated July 14, 2006, the Foreign Debtors requested entry of a permanent injunction order pursuant to 11 U.S.C. § 304. (Docket No. 146.) ABN objected and requested, *inter alia*, the Bankruptcy Court deny the Foreign Debtors' request for a permanent injunction order, terminate the preliminary injunction and designate a United States administrator to marshal Parmalat's United States assets for the benefit of creditors discriminated against in the Foreign Debtors' Italian insolvency proceedings or, in the alternative, condition any extension of the preliminary injunction on (i) the Foreign Debtors' cooperating in discovery in the United States regarding the fairness of the Italian claims process; (ii) the Foreign Debtors' agreement to withdraw its *data certa* objections to ABN's claim; and/or (iii) the enforcement of the choice of law provision in the subject guarantee by the court presiding over the Foreign Debtors' insolvency proceedings.

ABN's objections, as more fully discussed below, can be broken down into two distinct issues:

1. ABN is the holder of a promissory note guaranteed by Parmalat S.p.A, (principal amount due under the note is $9,999,999.91). The note and guarantee, negotiated and executed by and between two sophisticated business entities, contain a choice of law provision providing for the application of New York law. The Civil and Criminal Court of Parma, Italy ("Parma Court"), however, refuses to give effect to the parties' choice of law; and

2. Application of the *data certa* statute by the Parma Court has prejudiced ABN, has not been justly applied to all claimants, and is so repugnant to United States' ideas of justice and due process that the Bankruptcy Court abused its discretion in failing to deny the Foreign Debtors' motion.

Accordingly, the request for a permanent injunction should have been denied.

In addition to ABN, other similarly situated entities, including other banks, due money from the Foreign Debtors pursuant to guarantees executed before Parmalat's insolvency, objected to the Foreign Debtors' request for preliminary, and, in some cases, permanent injunctive relief. These worldwide banking institutions include, without limitation:

- BankBoston, N.A., FleetBoston Financial, Bank of America Corporation, Bank of America National Trust & Savings Association, Banc of America Securities LLC, Bank of America, N.A. – approximately $266 million in claims (Docket No. 157, p. 10);

- Holders of private placement notes[3] - approximately $800 million in claims (Docket No. 101, p. 3);

- Israel Discount Bank of New York – approximately $6 million in claims (Docket No.159, p. 2); and

- Arab Banking Corporation - approximately $9 million in claims (Docket No. 122, p. 2).

Despite the objections by ABN and the other banks, each of which was an independent basis for the Bankruptcy Court to deny the Foreign Debtors' request for injunctive relief on July 27, 2007, the Bankruptcy Court granted the Foreign Debtors' request for a permanent injunction. Nor did the Bankruptcy Court condition its grant of the injunction on Parmalat's withdrawal of the *data certa* defense in the Parma Court or on giving effect to the parties' New York choice of law provision.

In doing so, the Bankruptcy Court erred and abused its discretion by failing to properly consider and analyze the factors set forth in 11 U.S.C. § 304(c). A thorough and accurate application of these factors reveals that ABN has not been treated fairly and justly by the Parma Court and that ABN has been prejudiced by the proceedings in the Parma Court. Specifically, the Parma Court's failure to give effect to the parties' choice of law provision in the subject

---

[3] The holders include: Cerberus Partners LP, Clearwater Insurance Company, Connecticut General Life Insurance Company, EagleRock Master Fund, First Penn Pacific Life Insurance Company, Fort Wayne Health & Casualty Insurance, Goldman Sachs & Co., Goldman Sachs International, John Hancock Life Insurance Company, John Hancock Life Insurance Company of Vermont, John Hancock Variable Life Insurance Company, Life Investors Insurance Company of America, Metropolitan Life Insurance Company, Monumental Life Insurance Company, New York Life Insurance Company, Odyssey America Reinsurance Corporation, Pacific Employers Insurance Company, Pacific Life and Annuity Company, Pacific Life Insurance Company, Prudential Retirement Insurance and Annuity Company, Reassure America Life Insurance Company, Security Mutual Life Insurance Company of New York, Southwestern Life Insurance Company, Swiss Re Life & Health America Inc., Teachers Insurance and Annuity Association of America, The Lincoln National Life Insurance Company, The Northwestern Mutual Life Insurance Company, The Ohio National Life Insurance Company, The Prudential Insurance Company of America, Transamerica Life Insurance Company, United States Fire Insurance Company. (Docket No. 101, Exhibit A.)

guarantee prejudices ABN and is repugnant to United States ideals of justice and due process requiring the denial of Parmalat's motion for a permanent injunction. Similarly, the Parma Court's unjust and prejudicial application of the Italian civil statute known as *data certa* makes the imposition of the permanent injunction an abuse of the Bankruptcy Court's discretion.

## STATEMENT OF THE CASE

### A.    The Note and Guarantee

ABN is the holder of a promissory note (No. ADM-IS-01) dated March 27, 2003 (the "Note") issued by Wishaw Trading S.A. ("Wishaw") and guaranteed by Parmalat S.p.A. pursuant to that certain guarantee dated March 27, 2003 (the "Guarantee").[4] (Docket No. 194, Exhibits A & B.) The principal amount due under the Note is $9,999,999.91. The Note and Guarantee provide that New York law shall apply.

### B.    The Extraordinary Administration and Section 304 Proceedings

On December 24, 2003 (the "Petition Date"), Parmalat commenced extraordinary administration proceedings in the Parma Court pursuant to Law Decree 347/2003, as amended. Subsequently, the Parma Court declared Parmalat insolvent and Italy's Minister of Productive Activities appointed Dr. Enrico Bondi ("Dr. Bondi") as Extraordinary Administrator of Parmalat and certain affiliates.

On June 22, 2004, Dr. Bondi commenced proceedings under 11 U.S.C. § 304 in the Bankruptcy Court (the "304 Proceedings") on behalf of Parmalat and sought entry of a preliminary injunction pursuant to Section 304(b) of the Bankruptcy Code. (Docket Nos. 1-5.) On June 30, 2004, ABN filed an objection to Parmalat's request for injunctive relief. (Docket

---

[4] The Note and Guarantee were each originally issued in favor of Archer Daniels Midland Company. They were subsequently assigned to ABN.

Nos. 15-16.)  On July 2, 2004, the Bankruptcy Court entered a preliminary injunction order

which was extended by numerous orders of the Bankruptcy Court through May 4, 2007 (the

"Preliminary Injunction").  (Docket No. 22.)

    Prior to the commencement of the 304 Proceedings, on March 22, 2004, ABN

commenced a civil action in the Supreme Court of the State of New York (New York County

Index No. 600787-04) to recover the amount due and owing under the Note from Wishaw and

under the Guarantee from Parmalat S.p.A. (the "State Court Action").  Although the Preliminary

Injunction precluded ABN from litigating the State Court Action against Parmalat S.p.A., it

explicitly carved-out actions against Wishaw.  As a result, ABN's claims against Parmalat S.p.A.

in the State Court Action were severed and judgment was ultimately entered against Wishaw,

pursuant to stipulation, on April 5, 2005 in the sum of $11,255,889.91 ($9,999,999.91 (principal)

plus $1,255,890.00 (interest)) (the "Judgment").[5]  No portion of the Judgment has been satisfied.

### C.    The Italian Proceedings

    In or about late 2004, as part of its insolvency proceedings in Italy, Parmalat excluded

ABN's claim arising from the Note and Guarantee (the "Claim") from its published list of

creditors without explanation.  Dr. Bondi informed ABN that there were purported documentary

deficiencies in ABN's Claim and that a legal technicality, based on the principle of "*data

certa*,"[6] rendered the Guarantee revocable under Italian law.  In effect, Dr. Bondi concluded that

---

[5] Wishaw stipulated to the entry of judgment against it based upon the fully and properly executed Note and Guarantee.  Of particular note, the Chairman of Parmalat, S.p.A. Calisto Tanzi, witnessed the execution of the Note. The Guarantee, also executed by Mr. Tanzi, was executed at the same time as the Note.  Accordingly, the Foreign Debtors are objecting to the validity of the Guarantee despite Wishaw's stipulation to judgment based upon the very same documents.

[6] The *data certa* law, Article 2704 of the Italian Civil Code provides:

        <u>Date of private writing as to third persons.</u>  The date of a private writing in which the signature has not been authenticated is not certain and cannot be asserted against third persons, except from the

because the Guarantee, which was signed in accordance with New York law as per the parties'
agreement and to be enforced under New York law pursuant to the choice of law provision, was
not certified in accordance with Article 2704 of the Italian Civil Code because it lacked a "date
certain" at law and Parmalat could not be sure that the Guarantee was executed prior to
commencement of the Extraordinary Administration on December 24, 2003.

In light of the New York choice of law provision and the fact that the Note and Guarantee
were personally executed by Parmalat S.p.A.'s chairman and ABN's belief that the application of
*data certa* was misplaced, ABN formally requested that the Parma Court admit ABN's Claim
over Dr. Bondi's purported objection.  In support of its request, ABN filed before the Parma
Court certified copies of the original (i) Promissory Note dated March 27, 2003, signed by both
the representative of Wishaw, Mr. Tanzi (who certified the signature of the Wishaw
representative) (Docket No. 194, Exhibit A); and (ii) Guarantee, dated March 27, 2003, made by
Parmalat S.p.A. and signed by Mr. Tanzi and Luigi Panizzi of Banca Intesa (who certified the
signature of Mr. Tanzi).  (Docket No. 194, Exhibit B.)  To further support its Claim, ABN also
filed with the Parma Court:  (i) an explanatory table of the loan proposed by Wishaw to ABN
and of the Guarantee connected with the proposed financing transaction; (ii) an in-house
memorandum relating to the loan requested by Wishaw and the relevant Guarantee; (iii) an e-
mail message sent on March 10, 2003 by Angela Noique of ABN's branch in New York to

---

day on which the writing was registered or from the date of death or supervening physical
incapacity to sign of the person or persons who signed it, or from the date on which the contents of
such writing are reproduced in public acts,…or from the date on which other circumstances occur
which establish with equal certainty that the writing was drawn up previously.

The date of a private writing containing unilateral declarations which are not directed to any
specific person can be ascertained through any kind of evidence.

The court, according to the circumstances of the case, can allow the introduction of any kind of
evidence to ascertain the date of release of a debt. (Docket No. 198, Exhibit F.)

Tamara Cavallucci and Loredana Quintadamo, both of ABN's Milan branch, regarding the negotiations for the granting of the Guarantee; and (iv) an e-mail message sent on March 14, 2003 by Giorgia Bocchi of Parmalat S.p.a. to Tamara Cavallucci of ABN's Milan branch confirming acceptance by Parmalat of the format of the Note and Guarantee as drawn up by ABN.  (Docket No. 194, ¶ 22.)  The Parma Court, however, in contravention of its own civil law, refused to consider such documents or failed to consider such documents to satisfy the *data certa* statute.

ABN also obtained an order from the Parma Court compelling Parmalat to give ABN access to Parmalat's accounting records so that ABN could search for the list of guarantees issues by Parmalat in the first six months of 2003 on the basis of which Parmalat had calculated the aggregate amount of the guarantees as indicated in its note to the semi-annual accounts as of June 30, 2003.  (Docket No. 194, ¶ 29.)  When ABN attempted to have access to such accounting documents, however, it was informed by Parmalat's officer (Mr. Trovati) that the information did not exist or was not available and could not be reconstructed.  (Docket No. 194, ¶ 30.)  Furthermore, a calculation by Dr. Bondi of the aggregate guarantees granted by Parmalat in 2003 strongly suggested that Dr. Bondi had documents detailing the Guarantee but was refusing to release the information.  (Docket No. 194, ¶¶ 36-38.)

Contrary to Italian law wherein the date of a contract, such as the Guarantee, can be proven to the Court by the submission of documents sufficient to evidence the date on which the contract was executed, the Parma Court refused to even consider the documents submitted and arguments forwarded by ABN.  The Parma Court's refusal to even consider the documents and

the resulting prejudice gives rise to the denial of the permanent injunction request when analyzed under 11 U.S.C. § 304(c). Appeal of this decision is still pending in the Italian Court.[7]

The Parma Court has also been inconsistent in its treatment of ABN's Claim in comparison to claims filed by other holders of similar notes and guarantees and, therefore, has violated ABN's rights to due process. For example, Parmalat Netherlands B.V. issued $75 million of 7.52% notes due in 2005 that were guaranteed by Parmalat S.p.A. (the "7.5% Notes"). (Docket No. 159, ¶ 9.) With respect to guarantee claims filed against Parmalat S.p.A. in connection with the 7.5% Notes, the Parma Court admitted in full or conditionally admitted claims which, upon information and belief, are nearly identical to ABN's Claim. Id. Furthermore, while ABN is compelled to litigate its claim in the Parma Court, other similarly situated creditors will apparently receive distributions on account of their claims. This is yet another basis for a reversal of the grant of the permanent injunction.

Additionally, the Parma Court has refused to apply New York law to the Guarantee, as chosen by the banking entities. This refusal has prejudiced, and continues to prejudice, ABN in direct contravention of United States law and the Rome Convention and is a further basis for reversal of the grant of the request for the permanent injunction.

---

[7] It is not uncommon for the federal courts to review a lower court's decision to apply international comity where foreign bankruptcy proceedings are pending. JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V., 412 F.3d 418, 422 (2d Cir. 2005) (reviewing lower court's decision to apply comity in light of a "pending foreign bankruptcy proceeding"); Finanz AG Zurich v. Banco Economico S.A., 192 F.3d 240, 242 (2d Cir. 1999) (reviewing extension of comity to on-going Brazilian liquidation proceedings); Jota v. Texaco, Inc., 157 F.3d 153, 159 (2d Cir. 1998) (reviewing extension of comity to pending proceedings in Ecuador); Pravin Banker Associates, Ltd. v. Banco Popular Del Peru, 109 F.3d 850 (2d Cir. 1997) (reviewing denial on grounds of comity of motion to stay U.S. proceedings in deference to pending foreign proceedings); Allstate Life Ins. Co. v. Linter Group Ltd., 994 F.2d 996, 999 (2d Cir. 1993) (reviewing extension of comity to pending Australian liquidation proceedings); Cunard S.S. Co. Ltd. v. Salen Reefer Services AB, 773 F.2d 452, 460 (2d Cir. 1985) (reviewing decision to grant comity to pending Swedish bankruptcy proceedings).

D.    **Permanent Injunction Proceedings**

By motion dated July 14, 2006, Dr. Bondi requested entry of a permanent injunction order (the "Permanent Injunction Motion").  (Docket No. 146.)  On February 20, 2007, ABN filed a Response to and Joinder in the Objection of Israel Discount Bank of New York to Entry of Proposed Permanent Injunction Order Pursuant to 11 U.S.C. § 304.  (Docket No. 183.)  ABN requested that the Bankruptcy Court deny Parmalat's request for a permanent injunction order, terminate the preliminary injunction and designate a United States administrator to marshal Parmalat's United States assets for the benefit of creditors discriminated against in the Italian proceedings or, in the alternative, condition any extension of the preliminary injunction on Parmalat's cooperating in discovery in the United States regarding the fairness of the Italian claims process.[8]

On March 30, 2007, ABN filed a Supplemental Objection to Entry of Proposed Permanent Injunction Order Pursuant to 11 U.S.C. § 304.  (Docket No. 193.)  On April 25, 2007, ABN filed a Sur-Reply in Support of its Supplemental Objection to Entry of Proposed Permanent Injunction.  (Docket No. 202.)  In its Sur-Reply, ABN requested that the Bankruptcy Court deny Parmalat's request for a permanent injunction or condition the grant of such permanent injunctive relief on Parmalat's agreement to withdraw their *data certa* objections to the allowance of ABN's claim.

On June 21, 2007, the Bankruptcy Court held a hearing on the Permanent Injunction Motion wherein ABN emphasized, *inter alia*, the Parma Court's refusal to give effect to the Guarantee's New York choice of law provision.  (Docket No. 214.)  On July 20, 2007, the

---

[8] Bank Boston, N.A., Fleet Boston Financial, Bank of America Corporation, Bank of America National Trust & Savings Association, Banc of America Securities LLC, Bank of America, N.A., the various noteholders and Israel Discount Bank of New York each filed a response and objection to the request for the permanent injunction.

Honorable Robert D. Drain, U.S.B.J. granted the permanent injunction and determined that application of the Italian *data certa* statute was not "so foreign to basic concepts of U.S. law that it would be denied comity out of the box" and was "consistent with U.S. notions of due process and fundamental fairness".  (Docket No. 215, Exhibit A pp. 8-9.)

## ARGUMENT

**I.    THE BANKRUPTCY COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO PROPERLY CONSIDER AND ANALYZE THE SECTION 304(c) FACTORS IN DECIDING WHETHER TO GRANT THE INJUNCTIVE RELIEF**

A bankruptcy court must "engage in a searching examination of the effects of a foreign insolvency proceeding on the individual rights of United States creditors before entering a § 304 order." In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd., 281 B.R. 200, 212-13 (Bankr. S.D.N.Y. 2002) (citing Bank of New York v. Treco (In re Treco), 240 F.3d 148, 156 (2d Cir. 2001)). Although the foreign insolvency need not mirror United States law, comity should not be extended if aspects of the foreign law or its application are "repugnant to the American laws or policies." Universal Cas. & Surety Co. v. Gee (In re Gee), 53 B.R. 891, 904 (Bankr. S.D.N.Y. 1985).  Similarly, comity should be extended only if the foreign law protects the rights of United States creditors in a manner that is substantially in accordance with their rights under United States law. See, e.g., In re Culmer, 25 B.R. 621, 631 (Bankr. S.D.N.Y. 1982) (noting that comity should extend only where foreign law is "not repugnant to our ideas of justice"); Bd. of Dirs. of Telecom Argentina, 2006 U.S. Dist. LEXIS 8524, at *63 (S.D.N.Y. Nov. 20, 2006).

It is in this light that bankruptcy courts have broad discretion to fashion appropriate injunctive relief under the particular facts and circumstances of each § 304 proceeding to avoid unfairness or prejudice towards the rights of United States creditors in foreign proceedings. Treco, 240 F.3d at 154-55 (the § 304(c) "'guidelines are designed to give the court the maximum flexibility in handling ancillary cases…. The court [should] make the appropriate orders under all

of the circumstances of each case, rather that being provided with inflexible rules'" (citing H.R. Rep. No. 95-595, at 324-25 (1977)); <u>Culmer</u>, 25 B.R. at 627-28 ("The legislative history of Section 304 articulates the flexibility available to a court in applying [the § 304(c)] factors to the specific circumstances in each case in order to arrive at a fair result.").

As recognized by the Second Circuit in <u>Treco</u>, the court must weigh all the factors of § 304(c) in determining whether to extend comity to a foreign proceeding. <u>Treco</u>, 240 F.3d at 157. The factors to be considered by the court are:

(1)  just treatment of all holders of claims against or interests in such estate;

(2)  protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;

(3)  prevention of preferential or fraudulent dispositions of property of such estate;

(4)  distribution of proceeds of such estate substantially in accordance with the order prescribed by this title;

(5)  comity; and

(6)  if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns.

11 U.S.C. § 304(c).

The Bankruptcy Court erred, and abused its discretion, in failing to properly consider and analyze these factors in deciding whether to grant the permanent injunction. Specifically, and as more fully discussed below, ABN does not seek reversal of the Order because the insolvency laws of Italy, as a whole, are repugnant to United States ideals and notions of due process. Rather, the Parma Court's failure to respect and apply the choice of law provision chosen by the banking institutions in the Guarantee is prejudicial to ABN and fails to uphold a compelling interest of the United States and New York in enforcing the parties' choice of law. In addition, the application of the *data certa* statute by the Parma Court has prejudiced ABN, has not been

justly applied to all claimants, and is so repugnant to the ideals and notions of due process that

the Bankruptcy Court abused its discretion in failing to deny the Foreign Debtors' motion and/or

in failing to condition its grant of the injunction in Parmalat's withdrawal of the *data certa*

defense in the Parma Court.

"Section 304 embraces 'a modified form of universalism accepting the central premise of

universalism, that is, that assets should be collected and distributed on a worldwide basis, but

reserving to local courts discretion to evaluate the fairness of home country procedures and to

protect the interests of local creditors.'"  Treco, 240 F.3d at 154 (quoting In re Maxwell

Commc'ns Corp., 170 B.R. 800, 816 (Bankr. S.D.N.Y. 1994), aff'd, 186 B.R. 807 (S.D.N.Y.

1995); aff'd, 93 F.3d 1036 (2d Cir. 1996).  Here, the local court (the Bankruptcy Court) should

have properly evaluated the §304(c) factors and protected ABN and the other banks.  Denying

the request for a permanent injunction or, as discussed below, requiring Parmalat to withdraw its

*data certa* defense in Italy would have ensured just and fair treatment of ABN's claim without

disrupting the orderly claims process in the Foreign Proceeding.  Accordingly, the Order should

be reversed and the Foreign Debtors' motion for a permanent injunction denied.

## II.   THE BANKRUPTCY COURT ERRED AND ABUSED ITS DISCRETION IN GRANTING THE PERMANENT INJUNCTION DESPITE THE GUARANTEE'S NEW YORK CHOICE OF LAW PROVISION

### A.   The Granting Of Comity Does Not Require Obviating The Choice Of Law Provision In The Guarantee

The Bankruptcy Court erred and abused its discretion by rejecting ABN's argument that

the choice of law provision in the Guarantee in which the parties, both sophisticated business

entities, selected New York law as the governing law negates application of *data certa* to this

dispute.  In support of its decision, the Bankruptcy Court cited J.P. Morgan Chase Bank v. Altos

Hornos de Mexico, S.A. De C.V., 412 F.3d 418 (2d Cir. 2005), for the proposition that

"regardless of the parties' pre-litigation agreement, once a party declares bankruptcy in a foreign

state and a foreign court asserts jurisdiction over the distribution of assets, U.S. courts *may* defer

to the foreign bankruptcy proceeding on international comity grounds." (Docket No. 215,

Exhibit A 14.) (Emphasis added.) A "similar analysis" to that in Altos Hornos does not apply in

the instant case. Id.

First, ABN did not and does not advocate that comity should not be granted simply

because a New York choice of law provision is in the Guarantee. Rather, ABN argued and

continues to maintain that the Parma Court is unjustly treating ABN and prejudices ABN by

failing to give effect to the New York choice of law provision. To remedy the unjust and

prejudicial consequences of the Parma Court's actions, ABN is entitled to pursue its claim in

New York (necessitating the reversal of the Bankruptcy Court's grant of the permanent

injunction) or to have the permanent injunction conditioned on the Parma Court's enforcement of

the New York choice of law provision.

Bankruptcy courts in New York routinely apply foreign choice of law provisions[9] when

this narrow exception is not met. See Assuranceforeningen Skuld Den Danske Afdeling v.

Allfirst Bank, 96 Fed. Appx. 753 (2d Cir. 2004) (unpublished) (Norwegian law); Fuel & Marine

Mktg. LLC v. Allfirst Bank (In re Millenium Seacarriers, Inc.), 2004 U.S. Dist. LEXIS 11399

(S.D.N.Y. June 22, 2004) (English law); In re Regus Bus. Ctr. Corp., 301 B.R. 122 (Bankr.

---

[9] Relying on M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972), the court in Roby v. Corp. of Lloyd's, 996 F.2d 1353 (2d Cir. 1993) explained that while "forum selection and choice of law clauses are presumptively valid where the underlying transaction is fundamentally international in character …[,] [t]his presumption of validity may be overcome … by a clear showing that the clauses are unreasonable under the circumstances." Id. at 1362-62 (citation and internal quotation marks omitted). This exception is construed narrowly: "forum selection and choice of law clauses are 'unreasonable' (1) if their incorporation into the agreement was the result of fraud or overreaching, (2) if the complaining party will for all practical purposes be deprived of his day in court, due to the grave inconvenience or unfairness of the selected forum, (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy, or (4) if the clauses contravene a strong public policy of the forum state. Id. at 1363 (citation and internal quotation marks omitted). No such exception exists here.

S.D.N.Y. 2003) (English law, but court did not retain jurisdiction); <u>Breeden v. Sphere Drake Ins.</u>

<u>PLC (In re Bennett Funding Group, Inc.)</u>, 1999 Bankr. LEXIS 1857 (Bankr. N.D.N.Y. Aug. 6,

1999) (Bermuda law). To reciprocally require the Parma Court to apply the New York choice of

law provision is fair, just, and warranted to ensure the parties (sophisticated commercial entities)

receive the benefit of the provisions they bargained for while at the same time respecting the

efficiency of the Parma Court's handling of the Foreign Debtors' insolvency proceedings. And,

since the Parma Court is apparently unwilling to do so, and because choice of law provisions are

a pillar of a strong policy to respect and enforce choice of New York law, particularly when

made by financial institutions, the permanent injunction should have been denied.

> **B.** **The Bankruptcy Court's Reliance On The Altos Hornos Case Was Reversible Error**

The Bankruptcy Court misconstrued ABN's argument based upon the New York choice

of law provision in the Guarantee and erroneously relied on <u>Altos Hornos</u> in support of its

decision. <u>Altos Hornos</u> does not hold or stand for the proposition that a foreign bankruptcy court

may construe an agreement according to its domestic law while ignoring a choice of law

provision in that agreement. Rather, it simply holds that comity may be granted in favor of

foreign proceedings, where it is otherwise warranted, despite the existence of a choice of law or

forum selection clause in the agreement at issue. Indeed, in <u>Altos Hornos</u>, the court granted

comity to Mexican bankruptcy court proceedings despite the existence of New York choice of

law and forum selection clauses because nothing in the record suggested "that the actions taken

by the Mexican bankruptcy court are not approved or allowed by American law." <u>Altos Hernos</u>,

412 F.3d at 428.

The situation in the instant case is inapposite. It is indisputable that choice of law

provisions do not prohibit courts from extending comity to foreign bankruptcy proceedings

"*where deference is otherwise warranted*." Altos Hornos, 412 F.3d at 429 (emphasis added); see also Allstate Life Ins. Co. v. Linter Group, Ltd., 994 F.2d 996, 1000 (2d Cir. 1993) (same). Thus, ABN does not contend that the New York choice of law provision in the Guarantee barred the Bankruptcy Court from granting comity to the Parma Court. Instead, ABN maintains that in order for comity to be granted, the Parma Court must apply New York law to construe the Guarantee, as called for by the choice of law provision, since failure to do so would violate "the laws and public policy of the forum state and the rights of its residents." Allstate, 994 F.2d at 999; see also Altos Hornos, 412 F.3d at 424 (stating that under the principles of international comity, "deference to the foreign court is appropriate so long as the foreign proceedings are procedurally fair and … do not contravene the laws or public policy of the United States.").

The Parma Court's failure to apply the New York choice of law provision is certainly "not approved or allowed by American Law." See Altos Hornos, 412 F.3d at 428. Accordingly, since the Parma Court has and apparently will continue to apply Italian law to construe the Guarantee and ignore the New York choice of law provision, comity must be denied. See In re Treco, 240 F.3d 148, 157 (2d Cir. 2001) ("The principle of comity has never meant categorical deference to foreign proceedings. It is implicit in the concept that deference should be withheld where appropriate to avoid the violation of laws, public policies, or rights of the citizens of the United States."); In re PSINet, Inc., 268 B.R. 358, 378 (Bankr. S.D.N.Y. 2001) ("interests of comity are to be respected but … in determining which law is to be afforded comity, a court should look at the totality of the circumstances to determine the concerns that are to be advanced, and which jurisdiction has a more appropriate interest in regulating such concerns"). Comity should not be invoked here because the Italian court has and will continue to ignore and fail to give effect to the New York choice of law provision in the Guarantee.

C.    **New York Has A Strong Policy In Respecting And Enforcing New York Choice Of Law Provisions By Banking And Financial Institutions**

In the United States and New York, it is well-established that choice of law clauses are highly favored and should be respected.  See Phillips v. Audio Active, Ltd., 494 F.3d 378 (2d Cir. 2007) (stating that "federal courts give substantial weight to choice of law provisions."); Roby v. Corporation of Lloyd's, 996 F.2d 1353, 1362-63 (2d Cir. 1993) ("The Supreme Court certainly has indicated that forum selection and choice of law clauses are presumptively valid where the underlying transaction is fundamentally international in character. … Forum selection and choice of law clauses eliminate uncertainty in international commerce and insure that the parties are not unexpectedly subjected to hostile forums and laws." (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972))).  Significantly, in the international context, the Second Circuit in Roby stated that "international comity dictates that American courts enforce these sorts of clauses out of respect for the integrity and competence of foreign tribunals."  Id. at 1363 (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 629 (1985)).  Moreover, "New York law is unambiguous in the area of express choice of law provisions in a contract. … Absent fraud or violation of public policy, contractual selection of governing law is generally determinative so long as the State selected has sufficient contacts with the transaction." International Minerals & Resources, S.A. v. Pappas, 96 F.3d 586, 592 (2d Cir. 1996) (citations and quotation marks omitted).  Accordingly, if the Parma Court will not give effect to the New York choice of law provision, deference to the Italian insolvency proceeding is error.

Additionally, the strength of this policy is reinforced by the recent cases that have held that "under federal law the courts should ordinarily honor an international commercial agreement's forum-selection provision *as construed under the law specified in the agreement's choice-of-law provision*."  Yavuz v. 61 MM, Ltd., 465 F.3d 418 (10th Cir. 2006) (emphasis in

original); see also Phillips, 494 F.3d at 386 (agreeing with Yavuz in stating that "we cannot understand why the interpretation of a forum selection clause should be signed out for application of any law other than that chosen to govern the interpretation of the contract as a whole."); Global Link, LLC v. Karamtech Co., Ltd., 2007 WL 1343684, at *1-2 (E.D. Mich. May 8, 2007) (noting that "it is logical to interpret a provision of an agreement under the law that the parties agreed would govern issues arising out of the agreement" and that there is "no particular reason, at least in the international context, why a forum-selection clause, among the multitude of provisions in a contract, should be singled out as a provision not to be interpreted in accordance with the law chosen by the contracting parties.").[10]

In Curtis, Mallet-Prevost, Colt & Mosle, LLP v. Garza-Morales, 762 N.Y.S.2d 607 (1st Dep't 2003), the defendant, a former employee of plaintiff, sought to litigate in Mexico, while plaintiff sought to compel arbitration in New York, in accordance with a clause in their agreement, and to enjoin the Mexican litigation. Defendant argued that his Mexican claims could only be pursued in a Mexican labor tribunal and argued that comity prohibited the New York court from enjoining a litigation there in favor of the New York arbitration.

---

[10]   In addition, application of comity in this circumstance, if carried to its logical extremes, leads to unreasonable, unintended, and impractical results. The parties signed the Guarantee with the understanding that New York law governed. Under New York law, the Guarantee did not require notarization. If the Order and Bankruptcy Court's logic is extended to its ends, a party to any contract must understand that its counter-party may file for bankruptcy in a foreign jurisdiction. Thus, a party must make sure in advance that their contract is enforceable in any of potentially hundreds of jurisdiction where a bankruptcy may be filed. In this case, although Parmalat is an Italian company, it has subsidiaries and affiliates all over the world, and therefore, could have filed for bankruptcy in many jurisdictions. It seems patently unreasonable to require that ABN should have verified that, even though the Guarantee is to be enforced under New York law as selected by the parties, it would also be enforceable in the multiple jurisdictions in which Parmalat could reasonably have chosen to file a bankruptcy petition. For example, Wishaw is a Uruguayan corporation. It was possible for Wishaw to file for bankruptcy protection in Uruguay and then the validity of the Note may have been determined by the Uruguayan court. Would ABN have had to comply with the notarization statutes in Uruguay too? What if, as an affiliate of the Foreign Debtors, Parmalat also chose to file for insolvency protection in Uruguay. Would ABN have had to comply with the notarization statutes in Uruguay for the Guarantee too?

As further proof of New York's strong policy to enforce New York choice of law provisions in bank guarantees and that New York Courts routinely enforce choice of law and choice of forum provisions, the Court refused comity, directed defendant to arbitrate in New York and enjoined the Mexican litigation.  It found that these parties, like many others, had placed their reliance on a New York choice of forum and method of dispute resolution clause to control their commercial risks, and that New York had a "compelling interest" in enforcing their choices:

> In closing, we observe that the Court of Appeals urged us in *Ehrlich-Bober* to safeguard New York's "recognized interest in maintaining and fostering its undisputed status as the preeminent commercial and financial nerve center of the Nation and the world" (49 N.Y.2d at 581 [citations omitted]).  This compelling interest is served by the policy favoring arbitration.  <u>Particularly in contracts between individuals or firms of different nationalities, parties stipulate to arbitration in New York largely for the purpose of controlling the risks of doing business by defining, in advance and by voluntary agreement, the forum and method of dispute resolution</u>.  Through decades of consistent enforcement of such arbitration agreements, the  courts of this State have helped to foster New York's position as the international capital of business and finance.

762 N.Y.S.2d at 613 (emphasis added).

Similarly, although a case primarily regarding a party's choice of forum, in <u>Credit Francais Int'l, S.A. v. Sociedad Financiera de Comercio, C.A.</u>, 490 N.Y.S.2d 670 (Sup. Ct. N.Y. Co. 1985), the Court enforced a choice of law and choice of forum clause in a case over a defaulted loan between a French bank and a Venezuelan financial institution, neither of which had offices in New York.  The Court based its ruling on the public policy of enforcing choice of New York forum clauses relating to international business and trade:

> <u>New York, as the center of international trade and finance, has expressly recognized, as a service to the business community, that its courts will be hospitable to the resolution of all substantial contractual disputes in which the parties have agreed beforehand that our neutrality and expertise should govern their relationships</u>.  Just as the dollar has become the international standard for monetary transactions, so may parties agree that New York law is the standard for international disputes….

* * * * *

> <u>Rather, public policy favors New York courts retaining lawsuits where New York
> is the designated forum.  The center of world banking, trade, finance and other
> activities should, and indeed, with the enactment of General Obligations Law § 5-
> 1402, <em>must</em> extend itself to treat with such controversies</u>.  New York has had no
> aversion to dealing with multinational litigation before, even when there were
> minimal contacts with the State, when business or equitable considerations
> indicated that it should. ( Zeevi & Sons v Grindlays Bank [Uganda], 37 NY2d
> 220.)  "It is a financial capital of the world, serving as an international
> clearinghouse and market place for a plethora of international transactions * * *
> In order to maintain its preeminent financial position, it is important that the
> justified expectations of the parties to the contract be protected."

490 N.Y.S.2d at 676, 678 (emphasis added).

The State of New York generally permits parties to a contract to choose New York law to govern their contract, whether or not the contract bears a reasonable relationship to the state, if the contract covers not less than $250,000.  N.Y. General Obligations Law § 5-1401.  The amounts at issue here far exceed $250,000.

Thus, New York law, not Italian law applies here.  Accordingly, the Bankruptcy Court erred and abused its discretion in granting the permanent injunction.

**D.     The Rome Convention Dictates That Effect Should Be Given To The Choice Of Law Provision In The Guarantee**

As outlined above, the Parma Court's refusal to enforce the choice of law clause in the Guarantee runs counter to U.S. law and policy, is prejudicial to ABN, and comity should be denied.  In addition, even if ABN concedes that Italian law would govern the Foreign Debtors' insolvency proceedings, it is reasonable for ABN to believe that its New York choice of law provision is given effect pursuant to the Rome Convention of 1980 ("Rome Convention").[11]

---

[11]  See Docket No. 194, ¶ 25(i).

The provisions of the Rome Convention "apply to contractual obligations in any situation involving a choice between the laws of different countries." Rome Convention, Article 1(1). Article 3 of the Rome Convention states: "A contract shall be governed by the law chosen by the parties. The choice must be expressed or demonstrated with reasonable certainty by the terms of the contract or the circumstances of the case." Article 9 of the Rome Convention provides:

> 1. A contract concluded between persons who are in the same country is formally valid if it satisfies the formal requirements of the law which governs it under this Convention or of the law of the country where it is concluded.
>
> 2. *A contract concluded between persons who are in different countries is formally valid if it satisfies the formal requirements of the law which governs it under this Convention or of the law of one of those countries.*

(emphasis added).

The Rome Convention has been expressly endorsed by New York Courts. See, e.g. International Indosuez Fin., B.V. v. National Reserve Bank, 1999 N.Y. Misc. LEXIS 476, at *12-14 (Sup. Ct. N.Y. Co. 1999) (rejecting argument that confirmations were null and void under Russian law and holding that Russian law was irrelevant because the confirmations provided an English choice of law provision and did not contemplate or permit application of Russian law under any circumstances, and where "under New York law, it is the policy of the courts of this State to enforce contractual provisions for choice of law and selection of a forum for litigation", "issues of validity and enforceability or voidability of [an agreement] are plainly matters of substance as to which the parties' choice of law will be honored", and since England was a signatory to the Rome Convention, "under English law, an express choice of law by the parties will be respected, including questions as to validity and formation.").

Finally, Article 14(2) of the Rome Convention provides: "A contract or an act intended to have legal effect may be proved by any mode of proof recognized by the law of the forum or by

any of the laws referred to in Article 9 under which that contract or act is formally valid,

provided that such mode of proof can be administered by the forum."

The Rome Convention supports ABN's contention New York law governs the Guarantee

and, under New York law, the Guarantee is valid and enforceable.

III.    **APPLICATION OF *DATA CERTA* IS REPUGNANT TO UNITED STATES
PRINCIPLES OF JUSTICE THEREBY REQUIRING DENIAL OF THE
PERMANENT INJUNCTION**

The Bankruptcy Court "shall be guided by what will best assure an economical and

expeditious administration of such estate consistent with (1) just treatment of all holders of

claims or interests in such estate; (2) protection of claim holders in the United States against

prejudice and inconvenience in the processing of claims in such foreign proceeding …[and] (5)

comity…."  The Second Circuit has instructed that Congress intended that courts "look beyond

these 'macro systemic concepts'" in "determining whether affording comity will be repugnant to

American public policies."  Treco, 240 F.3d at 158.  In the Order, the Bankruptcy Court also

acknowledged that, in determining whether to accord comity, courts assess whether the law to be

applied in a foreign jurisdiction is "'repugnant' to U.S. notions of either substantive or

procedural law and justice" or whether it is "'substantially in accordance' with U.S. law."

(Docket No. 215, Exhibit A 6.)

ABN and the other banks repeatedly advised the Bankruptcy Court that the Parma

Court's *application* of *data certa* was unjust and prejudicial.  The Bankruptcy Court, however,

misconstrued ABN's argument and stated that ABN's position is that "the *data certa* law itself is

repugnant to fundamental notions of United States law."  (Docket No. 215, Exhibit A, p. 8.)  In

addition, the Bankruptcy Court misconstrued ABN's argument and/or misapplied the §304(c)

factors and -

- held that "the *data certa* law has been applied by the Italian courts in a way that is consistent with U.S. notions of due process and fundamental fairness."  (Id. at.9.)

- held that it did "not believe that the requirement of fundamental fairness and due process requires the admission of all requested evidence, particularly where such evidence would arguably be irrelevant in light of the statute."  (Id. at 9-10.)

- determined that the Italian courts are proceeding in this matter and are likely to provide due process to the parties.[12]

ABN is not challenging the fairness or constitutionality of the *data certa* statute.  Rather, as ABN stated in its Sur-Reply (Docket No. 202) and again at oral argument, ABN is challenging the manner in which *data certa* has been applied by the Parma Court.

As evidence of the Parma Court's unjust application of *data certa* against ABN, the Parma Court:

- Refused to consider certified copies of the original Note and Guarantee, including e-mails regarding the negotiation of the Note and Guarantee, an explanatory table of the loan proposed by Wishaw, and an in-house memorandum relating to the loan (Docket No. 194, ¶¶ 18-24);

- Refused to acknowledge that "the [G]uarantee is conspicuously dated" (Docket No. 193, p. 2);

- Rejected all of ABN's (1) requests for evidence from Parmalat that would prove that Parmalat was capable of calculating its aggregate guarantees during relevant times, and (2) requests to admit e-mails and expert testimony regarding the date of the note and guaranty (Docket No. 194, ¶¶ 32-41);

- Refused to acknowledge that the Guarantee was signed by the executive of Parmalat, the signature was witnessed by a separate Italian bank, and then entered into the ABN AMRO computer system (Docket No. 214, 104:3-12);

---

[12] Moreover, the Bankruptcy Court's analogy to lien recordation statutes under United States law is misplaced. Failure to record a mortgage or perfect a lien may result in a creditor being treated as an unsecured creditor but the creditor will still have an unsecured claim against the estate and will have an opportunity to prove its right to payment. *Data certa*, on the other hand, completely eliminates the creditor's right to a claim regardless of whether the creditor has a legal or equitable right to payment within the meaning of § 101(5) of the Bankruptcy Code. Indeed, the lien recordation statutes are intended to place third-parties on notice; *data certa* has no similar purpose.

- Refused to acknowledge that the Note and Guarantee had computer-generated proof of dating and prohibited ABN from hiring an expert to prove that the computer-generated dating system was valid (Docket No. 214, 105:14-23);

- Prevented ABN from presenting witnesses from the third-party Italian bank that witnessed the signature (Docket No. 214, 106:1-8); and

- Prevented ABN from presenting proof of a signed, dated on its face, independently verified Note and Guarantee (Docket No. 214, 106:17-21).

The Parma Court's arbitrary and prejudicial application of *data certa* extended to the third-party banks as well. For example, the Parma Court:

- Disregarded the fact that Parmalat provided legal opinions "that, regardless of whether Italian, US or Netherlands' law is applied, the documents are valid and enforceable in accordance with their terms" (Docket No. 101, ¶ 17);

- Refused to acknowledge that "the Claims were actually admitted subject only to the provision of original documentation and the Italian Court did not even refer to the *data certa* principle in its comments on the Claims" (Docket No. 101, ¶ 24);

- Ignored "blue ink" original documents that were signed and witnessed years before Parmalat's insolvency proceedings and that Parmalat itself has repeatedly acknowledged the Noteholders' Claims in this Court, in other US Courts, and in their restructuring plan in Italy (Docket No. 101, ¶ 45);

- Upheld an objection by Parmalat where it was impossible for the guarantee to be executed after Parmalat was declared insolvent because the creditor was incarcerated at the time (Docket No. 157, ¶ 21);

- Ignored "copious documents demonstrating beyond serious dispute that the relevant guarantees were executed by Parmalat S.p.A. before the opening of the Italian proceeding (Docket No. 157, ¶ 1); and

- Applied inconsistent treatment as evidenced by either fully or conditionally admitting claims that were nearly identical to other claims, without apparent justification (Docket No. 159, ¶ 9).

It is repugnant to United States ideas of justice for a duly signed Guarantee, entered into with the understanding that it was valid under New York law, to be, in essence, declared null and void by the Parma Court based on the technical notary requirements of the jurisdiction that the Foreign Debtors selected – from other options – in which to file their bankruptcy petition while

refusing or failing to consider ample evidence submitted by ABN and the other banks in support

of its position as required by the *data certa* statute.  It is repugnant to United States law for

ABN's claim to be disallowed because the Parma Court refused to hear from witnesses regarding

the execution of the Guarantee.

Because the Parma Court's application of *data certa* to ABN's claim has been unjust,

prejudicial and repugnant to United States' notions of due process, the Foreign Debtors' motion

for a permanent injunction should have been denied.

**IV.    THE BANKRUPTCY COURT ERRED AND ABUSED ITS DISCRETION IN NOT
        CONDITIONALLY GRANTING THE PERMANENT INJUNCTION ON
        PARMALAT'S WITHDRAWAL OF ITS *DATA CERTA* DEFENSE OR ON THE
        PARMA'S COURT ENFORCEMENT AND APPLICATION OF THE CHOICE
        OF LAW PROVISION**

Even if the Bankruptcy Court wanted to grant comity to the Parma Court's proceedings

and grant the Foreign Debtors' motion for a permanent injunction, it should have done so with

one or more conditions ensuring the just treatment of ABN in the foreign proceeding.

Specifically, the Bankruptcy Court should have conditioned the grant of the permanent

injunction on the Parma Court's enforcement of the parties' choice of law provision and/or on

the Foreign Debtors' withdrawal of its *data certa* defense.

Like this Court, the Bankruptcy Court is free to exercise the typical powers of a court of

equity and *has the power to impose conditions requiring maintenance of the status quo.*

Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co., 363 U.S. 528 (1960)

(emphasis added) (the Supreme Court, in an opinion by Chief Justice Warren, upheld the

imposition of certain conditions upon a strike injunction issued in a railway labor dispute and

concluded that conditions are warranted "at least where they are designed not only to promote

the interests of justice …")[13]; United States v. Bedford Associates, 618 F.2d 904, 914, 922 (2d

Cir. 1980).  The Second Circuit held "Such a condition merely expresses the price the suitor

must pay in order to obtain the benefit sought from his opponent, and the suitor can with

impunity decide not to pay the price by simply electing to forego the benefit he had previously

demanded."  "If the district court could not impose such conditions, it would be left with two

unpalatable choices: "either to deny the injunction even though the government has demonstrated

irreparable injury and fair grounds for litigation, or to grant the government an injunction to

which, as a matter of substantive law, it is not entitled."); Yakus v. United States, 321 U.S. 414

(1944) ("[Courts of equity] will avoid such inconvenience and injury so far as may be, by

attaching conditions to the award, such as the requirement of an injunction bond conditioned

upon payment of any damage caused by the injunction if the plaintiff's contentions are not

sustained.").  See Long Island R.R. Co. v. System Fed'n No. 156, Am. Fed'n of Labor, 289

F.Supp. 119 (E.D.N.Y. 1968) ("The injunction which is being granted will be conditioned on the

railroad not putting the three-trick, seven day operation into effect until the procedures of the

Railway Labor Act have been completed, and will be without prejudice to any rights of the union

upon the completion of said procedures."); United States v. Franchi, 756 F.Supp. 889 (E.D.Pa.

---

[13] The Supreme Court observed that "Conditions of this nature traditionally may be made the price of relief when the injunctive powers of the court are invoked and the conditions are necessary to do justice between the parties." Id. at 531-32.  The Court continued:

> (The court) will avoid injury so far as may be, by attaching conditions to the award.  '(I)t is the duty of a court of equity granting injunctive relief to do so upon conditions that will protect all whose interests the injunction may affect.'  Since the power to condition relief is essential to ensure that extraordinary equitable remedies will not become the engines of injustice, it would require the clearest legislative direction to justify the truncation of that power.

Id. at 532 (citations omitted.)  Therefore, unless the bankruptcy laws contain express provisions circumscribing the equitable powers of the court (which they do not), the Bankruptcy Court had the power to impose conditions in its grant of the permanent injunction.

1991) (holding "the court need not grant the total relief sought by the applicant, but may mold its decree to meet the exigencies of the particular case or may enter conditional preliminary relief.").

Here, a conditional injunction would have served the purposes of the Foreign Debtors by ensuring the continued consolidated claims administration in Italy while at the same time ensuring ABN was treated fairly and not prejudiced by the Parma Court's application of *data certa*.[14]  Thereafter, the Foreign Debtors (if they so elected) could have with impunity decided not to "pay the price" of refraining from asserting *data certa* claims in Italy by simply electing to forego the benefit of the § 304 injunction they demanded.

## <u>CONCLUSION</u>

For the foregoing reasons, ABN's appeal should be granted and the Order vacated.

Dated: New York, New York
      October 5, 2007

              MOSES & SINGER LLP
              *Attorneys for Appellant*

              _____/s/_____
              Lawrence L. Ginsburg (LG 6370)
              Scott E. Silberfein (SS 1947)
              Christopher J. Caruso (CC 8005)
              405 Lexington Avenue
              New York, New York 10174
              (212) 554-7800

---

[14] As discussed above, a conditional injunction also would have ensured that ABN received the benefit it bargained for by giving effect to the New York choice of law provision.