UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | |
|---|---|
| In re<br><br>PARMALAT FINANZIARIA S.p.A., et al.,<br><br>   Debtors in a Foreign Proceeding. | Bankruptcy Court<br>Case No. 04-14268 (RDD)<br><br>In a Proceeding Under Section<br>304 of the Bankruptcy Code |

------------------------------------------------------------x

| | |
|---|---|
| ABN AMRO BANK N.V.,<br><br>                      Appellant,<br><br>- against -<br><br>PARMALAT FINANZIARIA S.p.A., et al.,<br><br>                      Appellee. | District Court<br>**Case No. 07-cv-07413 (PKC)** |

------------------------------------------------------------x

---

## REPLY BRIEF OF APPELLANT ABN AMRO BANK N.V.

---

Lawrence L. Ginsburg (LG 6370)
Scott E. Silberfein (SS 1947)
Christopher J. Caruso (CC 8005)
MOSES & SINGER LLP
405 Lexington Avenue
New York, New York 10174
(212) 554-7800

*Attorneys for Appellant*
ABN AMRO BANK N.V.

657334v6  009988.0102

## TABLE OF CONTENTS

                                         **Page**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT.................................................................................................................................. 2

I.     ABN'S CHOICE OF LAW ARGUMENT WAS INDISPUTABLY PRESERVED FOR APPEAL............................................................................................................... 2

     A.     ABN Raised the Argument in its Written Submissions to the Court..................... 3

     B.     ABN Raised and the Court Considered the Issue at Oral Argument..................... 5

     C.     Judge Drain Specifically Addressed the Choice of Law Argument in his Decision ................................................................................................................ 6

II.    THE COMITY INQUIRY DOES NOT END BECAUSE ITALIAN BANKRUPTCY PROCEEDINGS COMPORT WITH U.S. NOTIONS OF JUSTICE ...................................................................................................................... 6

     A.     The Parma Court Cannot Ignore the Choice of Law Provision ............................ 7

     B.     Parmalat Does Not Dispute New York's Strong Policy In Enforcing Choice Of Law Provisions .................................................................................... 9

III.   PARMALAT DOES NOT REFUTE THAT THE UNJUST AND ARBITRARY APPLICATION OF DATA CERTA BY THE PARMA COURT IS REPUGNANT TO UNITED STATES PRINCIPLES OF JUSTICE ............................ 10

IV.   PARMALAT DOES NOT DISPUTE THAT CONDITIONALLY GRANTING THE PERMANENT INJUNCTION IS WARRANTED ............................................... 12

CONCLUSION............................................................................................................................. 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

In re Artimm, S.r.l,
    278 B.R. 832, (Bankr. C.D. Cal. 2002) .................................................................. 7-8

Assuranceforeningen Skuld Den Danske Afdeling v. Allfirst Bank,
    96 Fed. Appx. 753 (2d Cir. 2004) (unpublished) ....................................................... 8

Bank of New York v. Treco (In re Treco),
    240 F.3d 148 (2d Cir. 2001) ........................................................................................ 6

Breeden v. Sphere Drake Insurance PLC (In re Bennett Funding Group, Inc.),
    1999 Bankr. LEXIS 1857 (Bankr. N.D.N.Y. Aug. 6, 1999) ...................................... 8

Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co.,
    363 U.S. 528 (1960) ................................................................................................. 12

Dubnoff v. Goldstein,
    385 F.2d 717 (2d Cir. 1967) ....................................................................................... 2

In re Enercons Virginia, Inc.,
    812 F.2d 1469 (4th Cir. 1987) ................................................................................... 7

Fuel & Marine Marketing LLC v. Allfirst Bank (In re Millenium Seacarriers, Inc.),
    2004 U.S.Dist. LEXIS 11399 (S.D.N.Y. Jun. 22, 2004) ............................................ 8

In re Harris,
    464 F.3d 263 (2d Cir. 2006) ....................................................................................... 2

International Minerals & Resources, S.A. v. Pappas,
    96 F.3d 586 (2d Cir. 1996) ....................................................................................... 10

Phillips v. Audio Active, Ltd.,
    494 F.3d 378 (2d Cir. 2007) ....................................................................................... 9

In re Regus Bus. Ctr. Corp.,
    301 B.R. 122 (Bankr. S.D.N.Y. 2003) ....................................................................... 8

Roby v. Corporation of Lloyd's,
    996 F.2d 1353 (2d Cir. 1993) ..................................................................................... 9

In re Rosacometta, S.r.l,
    336 B.R. 557 (Bankr. S.D. Fla. 2005) ........................................................................ 7

In re Teligent Inc.,
    324 B.R. 479 (S.D.N.Y. 2005) ............................................................................9

U.S. v. Vulpis,
    961 F.2d 368 (2d Cir. 1992) ..............................................................................6

U.S. v. Bedford Associates,
    618 F.2d 904 (2d Cir. 1980) ............................................................................12

Victrix S.S. Co. S.A. v. Salen Dry Cargo A.B.,
    825 F.2d 709 (2d Cir. 1987) ..............................................................................7

Yavuz v. 61 MM, Ltd.,
    465 F.3d 418 (10th Cir. 2006) .........................................................................10

**STATE CASES**

Curtis, Mallet-Prevost, Colt & Mosle, LLP v. Garza-Morales,
    762 N.Y.S.2d 607 (1st Dep't 2003) .................................................................10

Marine Midland Bank, N.A. v. United Missouri Bank, N.A.,
    643 N.Y.S.2d 528 (1st Dep't 1996) ...................................................................9

**FEDERAL STATUTES**

11 U.S.C. § 304 ...........................................................................................................1

**STATE STATUTES**

McKinney's U.C.C. § 1-105 .......................................................................................9

## **PRELIMINARY STATEMENT**

ABN AMRO Bank N.V. ("ABN") submits this reply brief in further support of its appeal from the Order[1]. (Docket No. 215.)[2] ABN's argument, unrefuted and uncontradicted by Parmalat in its responsive brief, falls into two distinct issues: (1) the Parma Court's refusal to give effect to the parties' choice of law provisions in the Note and Guarantee; and (2) the arbitrary, capricious and unjust application of *data certa* by the Parma Court has prejudiced ABN to the point of being repugnant to United States' ideas of justice and due process. Both of these arguments warrant the vacatur of the Order and denial of the permanent injunction.

Additionally, Parmalat's responsive brief is disingenuous in its assertion that ABN failed to preserve its argument that the Note and Guarantee, negotiated and executed by and between two sophisticated business entities, contain a choice of law provision providing for the application of New York law and that the Parma Court improperly insisted on applying *data certa* to the otherwise valid contract and refuses to give effect to the parties' choice of law provision. As detailed below, during the briefing of the issues before the Bankruptcy Court and at oral argument, ABN argued Parma Court's failure and/or refusal to give effect to the choice of law provision was grounds to deny entry of a permanent injunction order pursuant to 11 U.S.C. § 304. Most telling, and conspicuously absent from Parmalat's responsive brief, is the fact that Judge Drain's decision, read from the bench at oral argument, contained specific holdings regarding ABN's choice of law arguments. If the argument was not raised and addressed in the briefs – and again at oral argument – it is manifest that Judge Drain would not have ruled on these issues from the bench.

---

[1] Unless otherwise noted, capitalized terms herein have the same meaning as in ABN's opening brief.

[2] Citations to documents included in the record on appeal are referenced herein as "Docket No. ___."

Parmalat's responsive brief also fails to address, much less refute, ABN's argument that the comity inquiry does not require voiding the choice of law provision or end because Italian bankruptcy proceedings are purportedly fair. Indeed, it is the Parma Court's failure to apply New York law to the Guarantee and/or its arbitrary and capricious application of *data certa* which requires a further inquiry into the granting of comity. The Bankruptcy Court erred in not conducting this inquiry or committed reversible error by failing to determine that the Parma Court's actions are repugnant to U.S. notions of justice.

Accordingly, ABN's appeal should be granted and the Order vacated.

## ARGUMENT

### I. ABN'S CHOICE OF LAW ARGUMENT WAS INDISPUTABLY PRESERVED FOR APPEAL

In a bankruptcy case, the scope of an appellate court's review is limited to the record and that which was presented below. Dubnoff v. Goldstein, 385 F.2d 717, 720 (2d Cir. 1967). Here, as discussed below, ABN raised the choice of law argument before the Bankruptcy Court in its written arguments and at oral argument. Moreover, the record reveals Judge Drain's Order, prepared before and read from the bench at oral argument, contained specific holdings regarding ABN's choice of law arguments. Therefore, the issue was preserved and New York law should apply thereby entitling ABN to recover on its enforceable Note and Guarantee.

Parmalat's attempt to frame ABN's argument as raised for the first time on appeal and rooted in the notion that "it is repugnant to U.S. law for a foreign bankruptcy court to apply its own bankruptcy laws" is disingenuous. (Responsive Brief, p. 20). As evidenced below, ABN has and continues to maintain, that the Parma Court's refusal to give effect to the parties' choice of law provision (and the Parma Court's insistence on applying *data certa* instead) requires denial of Section 304 relief.

Because the issue was raised before the Bankruptcy Court with the parties' written submissions and again at oral argument, there can be no unfairness to Parmalat by this court considering the issue. See In re Harris, 464 F.3d 263, n.3 (2d Cir. 2006) (observing that where the appellee addressed the question of whether the lower courts dismissal was an abuse of discretion "there is, then, no unfairness to appellee in considering the issue...")

### A. ABN Raised the Argument in its Written Submissions to the Court

Both ABN's memoranda of law and the affidavits submitted in support thereof raised the issue of the Parma Court's refusal to honor the parties' choice of law provision. For example, in the Declaration of Giuseppe Curto, submitted by ABN to the Bankruptcy Court, Mr. Curto declared:

> 25.     The main argument set forth by the Bank in its memorials are the following:
>
> (i) Article 2704 of the Italian civil code does not apply to the Guarantee. In fact, the parties to the Guarantee chose New York Law as the applicable law to the Guarantee. According to articles 14 and 9 of the Rome Convention of 1980, the evidentiary regime of the Guarantee is therefore regulated by New York Law. Under New York Law there are not additional evidentiary requirements equivalent to the Italian date certain rule in order to enforce a document against an insolvency receiver. The "Alice in Wonderland" justification for refusing to apply New York law is that, by reason of the lack of a date certain, the Guarantee is presumed to have been signed after the Extraordinary Commissioner was appointed and therefore cannot be referred to Parmalat...

(emphasis added) (Docket No. 194, ¶ 25.) In addition, ABN argued in its sur-reply in opposition to Parmalat's motion for a permanent injunction that "As both the Note and Guarantee expressly provide that they are to be governed by New York, why indeed should ABN AMRO have

anticipated the application of Italian law in this regard?" (Docket No. 202, p. 2.)[3] Similarly, in the Supplemental Objection of ABN AMRO Bank N.V. to Entry of Debtors' Proposed Injunction Order Pursuant to 11 U.S.C. Section 304, ABN argued that Dr. Bondi "concluded that the Guarantee was not enforceable for its lack of date certain – a conclusion that is patently preposterous based on the evidence available to Dr. Bondi <u>and under the governing New York law</u>." (emphasis added) (Docket No. 193, ¶ 10.) In the same document and part of the record on this appeal, ABN argued "Parmalat is relying on *data certa* – a provision of Italian law that is antithetical to the principles of United States bankruptcy law – to object to ABN's guarantee claim in the Italian proceedings despite the fact that the guarantee is conspicuously dated and is <u>governed by New York law</u>." (emphasis added) (Id., at 2.) Again, "ABN is not being treated justly and has been and continues to be prejudiced by the claims process in the Italian proceeding." (Id., at ¶ 14.)

ABN's choice of law argument was articulated on numerous occasions throughout the briefing process. (Docket No. 15, ¶ 6 ("The note provides...(5) that it shall be governed by the laws of New York and that legal action to enforce the rights of the holder thereunder may be commenced, inter alia, in the courts of the State of New York."); Docket No. 183, ¶ 7 ("The Note and Guarantee provide that New York law governs and that any legal action or proceeding

---

[3] *See also* Response of ABN AMRO Bank N.V. to and Joinder in Objection of Israel Discount Bank of New York to Entry of Debtors' Proposed Permanent Injunction Order Pursuant to 11 U.S.C. § 304 (Docket No. 183, ¶¶ 7 and 11) (incorporating the arguments set forth in Docket No. 159, where Israel Discount Bank of New York argued at ¶ 24 that "litigation could continue for years under Italian law over basic Notes and Guarantees that are plainly enforceable under New York law, and which have been allowed in the Italian proceeding with respect to other claimants."); Objection of Certain Noteholders to Extension of the Preliminary Injunction Order or, in the Alternative, Motion to Condition Extension on the Establishment of a US Claims Procedure (Docket No. 101, Ex. D ¶ 11) ("The Claim Objections cannot be deemed to have been made in good faith by the Foreign Debtors, particularly since the notes and the guarantees are expressly governed by New York law and most of the Claim Objections allege insufficiencies under Italian law. Moreover, even under Italian law, most of the Claim Objections lack merit.")

relating to the Note or Guarantee may be brought in New York State Court or the United States District Court for the Southern District of New York."); Docket No. 193, ¶ 9 (same); Docket No. 194, ¶ 19 ("The parties to the Guarantee chose New York Law as the applicable law..."). See also, Docket No. 101, ¶ 15, and Ex. D ¶ 11; Docket No. 122, ¶¶ 5 and 23; Docket No. 159, ¶¶ 6, 24, and 27.)

Since ABN repeatedly articulated its choice of law argument in its written submissions, the issue is preserved for appeal.

### B.    ABN Raised and the Court Considered the Issue at Oral Argument

In addition to raising the issue in its written submissions, ABN raised the choice of law issue at oral argument before Judge Drain. (Docket No. 214, pp. 103-07.) Specifically, ABN argued:

> ...when it comes to an interpretation of a document, the law that the parties agree to should be the law that governs that interpretation....Here, you have an interpretation of contract, a document signed, to be governed by New York law.

(Docket No. 214, 104:22–105:7.) And, "That guaranty provided, in very clear tones, that it was to be governed by the laws of New York, and that the enforcement of disputes under the guaranty were to be held in New York." (Docket No. 214, 103:24-104:2.) Id., 104:15-16. Further, ABN argued "This is a loan made in New York, to be governed by New York law". (Id., 104:15-16.)

> Most poignantly, ABN contended:
>
> ...we don't see why this Court can't fairly deal with a statutory scheme while prohibiting what is a fundamental, unfair and *repugnant* result, which is a guaranty signed, dated on its face, independently verified, and subject to independent verification, where the Court, imposing a law, fails to give the type of credibility that any U.S. Court would give.

(emphasis added) (Docket No. 214, 106:15–107:2.)

By raising the issue at oral argument, in addition to in its written submissions, ABN preserved the issue for appeal.

### C. Judge Drain Specifically Addressed the Choice of Law Argument in his Decision

Judge Drain's decision, read into the record at oral argument, evidences the existence of ABN's choice of law argument before the Bankruptcy Court and that the court considered the issue raised in the written submissions and at oral argument. For example, Judge Drain held:

> And perhaps that should lead into the last point on the *data certa* issue, which is a point raised by ABN AMRO, which notes that its documents have **U.S. choice of law and forum selection provisions.**

(emphasis added) (Docket No. 214, 140:18–21.)[4]

Because ABN raised the choice of law argument in its written submissions and, again, at oral argument, ABN preserved the issue for this appeal. Indeed, a court's finding stated orally and recorded in open court is sufficient to permit an appellate court to perform its appellate review function if it informs the court of appeals of the basis of the decision. See U.S. v. Vulpis, 961 F.2d 368, 371 (2d Cir. 1992). Here, Judge Drain's findings at oral argument (Docket No. 214), and his subsequent written, modified bench ruling (Docket No. 215, Ex. A) sufficiently inform this court of the basis of his decision.

For all of the foregoing reasons, ABN preserved its choice of law argument for appeal.

### II. THE COMITY INQUIRY DOES NOT END BECAUSE ITALIAN BANKRUPTCY PROCEEDINGS COMPORT WITH U.S. NOTIONS OF JUSTICE

Parmalat advocates the adoption of a legal standard that ends the inquiry into comity once it is determined that a foreign country's proceedings, on their face, are fair. The proper inquiry, however, does not end there. A court is required to weigh the factors set forth in Bank of New

---

[4] *See also* Response Brief, p. 19 (Parmalat itself highlighting Judge Drain's holdings and the basis of his decision.)

657334v6 009988.0102

6

York v. Treco (In re Treco), 240 F.3d 148 (2d Cir. 2001), and delve into the foreign country's application of its laws. If such application is repugnant to United States notions of fairness, comity should not be granted. Here, both the Parma Court's refusal to apply the parties' choice of law provision (and, instead, apply data certa to determine the validity of the Guarantee rather than New York law) and its unjust, arbitrary and capricious application of *data certa* are repugnant to U.S. notions of justice. Accordingly, the injunction should have been denied.

### A.    The Parma Court Cannot Ignore the Choice of Law Provision

Parmalat argues that the purpose of Section 304 is satisfied by simply granting comity to the Italian Proceedings. (Response Brief, pp. 17-18.)[5] To support this argument, Parmalat cites cases holding that Italy's bankruptcy system comports with U.S. standards of fundamental fairness.[6]

ABN, however, is not and does not argue that Italy's bankruptcy system in general fails to comport with fundamental fairness. Rather, ABN asserts that the Italian proceedings fail to give effect to the parties' choice of law provision and that the arbitrary and unjust application of *data certa* within the Italian Proceedings, in the face of such a New York choice of law provision, is repugnant to U.S. notions of fundamental fairness.

Thus, the cases cited by Parmalat do not defeat ABN's argument. For example, in In re Rosacometta, S.r.l, 336 B.R. 557, 564 (Bankr.S.D.Fla. 2005), the court found that Italian law

---

[5] Here, Parmalat erroneously asserted that "there is, in effect, a presumption that comity should be extended to foreign bankruptcy cases." (Response Brief, p. 17.) There is no such presumption. The case cited by Parmalat merely notes a trend amongst bankruptcy courts to grant section 304 relief.

[6] One case cited by Parmalat in support of its position regarding the purpose of Section 304 is Victrix S.S. Co. S.A. v. Salen Dry Cargo A.B., 825 F.2d 709 (2d Cir. 1987). The Victrix Court, however, supports ABN's position: "Federal courts generally extend comity whenever the foreign court had proper jurisdiction *and enforcement does not prejudice the rights of United States citizens or violate domestic public policy.*" 825 F.2d at 713 (emphasis added).

concerning <u>automatic stays</u> in bankruptcy proceedings "comport with U.S. standards of procedural fairness and are not inimical to the laws or policy of the United States." This is not analogous to the Parma Court's refusal to give effect to the parties' choice of law provision. Similarly, in <u>In re Enercons Virginia, Inc.</u>, 812 F.2d 1469, 1473 (4th Cir. 1987), and <u>In re Artimm, S.r.l</u>, 278 B.R. 832 (Bankr. C.D.Cal. 2002), the court only found that Italian law was substantially similar to United States law. In sum, Parmalat fails to cite any authority where a U.S. court approved of the foreign court's refusal to honor the parties' choice of law provisions.[7]

Parmalat attempts to overcome this deficiency by relying on <u>Can. S. Ry. v. Gebhard</u> for the proposition that "every person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government." Parmalat contends that ABN's argument is that of the dissent in <u>Can. S. Ry.</u>: that because the contract at issue was governed by New York law, enforcement of the contract should not be impaired by foreign bankruptcy laws. (Response Brief, p. 23 n. 11). Parmalat misconstrues ABN's argument. ABN does not dispute that bankruptcy law may curtail rights of contractual creditors. Instead, ABN argues that because the Note and Guarantee are governed by New York law, the Parma Court needs to enforce the contractual choice of law provision. If the Parma Court refuses to do so, and applies its own laws instead, as is this case here, comity is not proper.

---

[7] In addition, Parmalat fails to address, much less rebut, the cases cited by ABN to support the application of foreign law by U.S. courts. Bankruptcy courts in New York routinely apply foreign choice of law provisions when this narrow exception is not met. See <u>Assuranceforeningen Skuld Den Danske Afdeling v. Allfirst Bank</u>, 96 Fed. Appx. 753 (2d Cir. 2004) (unpublished) (Norwegian law); <u>Fuel & Marine Mktg. LLC v. Allfirst Bank (In re Millenium Seacarriers, Inc.)</u>, 2004 U.S. Dist. LEXIS 11399 (S.D.N.Y. June 22, 2004) (English law); <u>In re Regus Bus. Ctr. Corp.</u>, 301 B.R. 122 (Bankr. S.D.N.Y. 2003) (English law, but court did not retain jurisdiction); <u>Breeden v. Sphere Drake Ins. PLC (In re Bennett Funding Group, Inc.)</u>, 1999 Bankr. LEXIS 1857 (Bankr. N.D.N.Y. Aug. 6, 1999) (Bermuda law). To reciprocally require the Parma Court to apply the New York choice of law provision is fair, just, and warranted to ensure the parties (sophisticated commercial entities) receive the benefit of the provisions they bargained for while at the same time respecting the efficiency of the Parma Court's handling of the Foreign Debtors' insolvency proceedings. And, since the Parma Court is apparently unwilling to do so, and because choice of law provisions are a pillar of a strong policy to respect and enforce the choice of New York law, particularly when made by financial institutions, the permanent injunction should have been denied.

### B. Parmalat Does Not Dispute New York's Strong Policy In Enforcing Choice Of Law Provisions

Though the policy behind Section 304 is to provide for the orderly and efficient distribution of assets in the Italian Proceeding, such policy concern would simply not warrant overriding New York's very substantial interest in resolving a dispute in a commercial transaction centered here. (Brief of Appellant, pp. 17-20.) Marine Midland Bank, N.A. v. United Missouri Bank, N.A. 223 A.D.2d 119, 643 N.Y.S.2d 528 (1st Dep't 1996) (holding New York law applies in an action against a deceased Kansas debtor's estate seeking recovery on a debt which accrued in New York under an agreement providing that New York law would govern in any action for its enforcement, where Kansas law – like the Parma Court's unjust application of *data certa* – would bar claims on procedural grounds).

As a general rule, the proper law governing a draft or note is the law which the parties to the instrument intended to govern. McKinney's U.C.C. § 1-105. Both New York and federal choice of law rules requires that a contractual choice of law provision, such as in the Note and Guarantee, should be honored provided that there is some relationship between the law chosen and the transaction. In re Teligent Inc., 324 B.R. 479, 489 (S.D.N.Y. 2005). ABN obtained the Note and Guarantee, which are facially valid under New York law. The Bankruptcy Court's granting of the permanent injunction, however, is tantamount to finding that ABN should nonetheless subject itself to Italian law - *data certa* – while threatening New York's status as the preeminent commercial and financial nerve center of the Nation and the world.

As outlined in ABN's opening brief, choice of law clauses are highly favored and should be respected. See Phillips v. Audio Active, Ltd., 494 F.3d 378 (2d Cir. 2007) (stating that "federal courts give substantial weight to choice of law provisions."); Roby v. Corporation of Lloyd's, 996 F.2d 1353, 1363 (2d Cir. 1993) (In the international context, the Second Circuit in

Roby stated that "international comity dictates that American courts enforce these sorts of clauses out of respect for the integrity and competence of foreign tribunals" (internal citations omitted)). Moreover, "New York law is unambiguous in the area of express choice of law provisions in a contract. ... Absent fraud or violation of public policy, contractual selection of governing law is generally determinative so long as the State selected has sufficient contacts with the transaction." International Minerals & Resources, S.A. v. Pappas, 96 F.3d 586, 592 (2d Cir. 1996) (citations and quotation marks omitted). Accordingly, if the Parma Court will not give effect to the New York choice of law provision, deference to the Italian insolvency proceeding is error. The strength of this policy is reinforced by the recent authorities that have held that "under federal law the courts should ordinarily honor an international commercial agreement's forum-selection provision as construed under the law specified in the agreement's choice-of-law provision." Yavuz v. 61 MM, Ltd., 465 F.3d 418 (10th Cir. 2006) (emphasis in original).

This is especially so because New York has a strong public policy to enforce New York choice of law provisions in bank guarantees. Parties, like ABN, place their reliance in New York's enforcement of a choice of law provision to control their commercial risks, and New York has a "compelling interest" as the banking center of the world in enforcing their choices. Curtis, Mallet-Prevost, Colt & Mosle, LLP v. Garza-Morales, 762 N.Y.S.2d 607 (1st Dep't 2003).

Accordingly, comity is not warranted and the Order should be vacated.

### III. PARMALAT DOES NOT REFUTE THAT THE UNJUST AND ARBITRARY APPLICATION OF DATA CERTA BY THE PARMA COURT IS REPUGNANT TO UNITED STATES PRINCIPLES OF JUSTICE

Parmalat fails to refute, in any meaningful way, the facts that in addition to failing to give effect to the parties' choice of law provision, the Parma Court has and continues to unjustly and

prejudicially apply *data certa* to the Note and Guarantee. As evidence of the Parma Court's unjust, arbitrary and capricious application of *data certa* against ABN, the Parma Court:

- Refused to consider certified copies of the original Note and Guarantee, including e-mails regarding the negotiation of the Note and Guarantee, an explanatory table of the loan proposed by Wishaw, and an in-house memorandum relating to the loan (Docket No. 194, ¶¶ 18-24);

- Refused to acknowledge that "the [G]uarantee is conspicuously dated" (Docket No. 193, p. 2);

- Rejected all of ABN's (1) requests for evidence from Parmalat that would prove that Parmalat was capable of calculating its aggregate guarantees during relevant times, and (2) requests to admit e-mails and expert testimony regarding the date of the note and guaranty (Docket No. 194, ¶¶ 32-41);

- Refused to acknowledge that the Guarantee was signed by the executive of Parmalat, the signature was witnessed by a separate Italian bank, and then entered into the ABN AMRO computer system (Docket No. 214, 104:3-12);

- Refused to acknowledge that the Note and Guarantee had computer-generated proof of dating and prohibited ABN from hiring an expert to prove that the computer-generated dating system was valid (Docket No. 214, 105:14-23);

- Prevented ABN from presenting witnesses from the third-party Italian bank that witnessed the signature (Docket No. 214, 106:1-8); and

- Prevented ABN from presenting proof of a signed, dated on its face, independently verified Note and Guarantee (Docket No. 214, 106:17-21).

Parmalat has no response to these injustices or why comity should be granted in the face of such arbitrary and prejudicial actions. It is repugnant to United States ideas of justice for a duly signed Guarantee, entered into with the understanding that it was valid under New York law, to be, in essence, declared null and void by the Parma Court based on the <u>arbitrary and capricious application</u> of the *data certa* statute by the Parma Court in refusing to consider ample evidence submitted ABN and other books. It is also repugnant to United States law for ABN's claim to be disallowed because the Parma Court refused to hear from witnesses regarding the execution of the Guarantee – a procedure incorporated into the *data certa* statute.

Because the Parma Court's application of *data certa* to ABN's claim has been unjust, prejudicial and repugnant to United States' notions of due process, the Foreign Debtors' motion for a permanent injunction should have been denied.

### IV. PARMALAT DOES NOT DISPUTE THAT CONDITIONALLY GRANTING THE PERMANENT INJUNCTION IS WARRANTED

Nor does Parmalat even attempt to refute that the Bankruptcy Court could have – indeed, should have – conditionally granted the permanent injunction. Like this Court, the Bankruptcy Court is free to exercise the typical powers of a court of equity and *has the power to impose conditions requiring maintenance of the status quo*. Brotherhood of Locomotive Engineers v. Missouri-Kansas-Texas R. Co., 363 U.S. 528 (1960) (emphasis added)[8]; U.S. v. Bedford Associates, 618 F.2d 904, 914, 922 (2d Cir. 1980).

Here, a conditional injunction would have served the purposes of the Foreign Debtors by ensuring the continued consolidated claims administration in Italy while at the same time ensuring that ABN was treated fairly and not prejudiced by the Parma Court's refusal to honor the parties' choice of law provision or the Parma Court's unjust and arbitrary application of *data certa*. Thereafter, the Foreign Debtors could have with impunity decided not to "pay the price"

---

[8] The Supreme Court observed that "Conditions of this nature traditionally may be made the price of relief when the injunctive powers of the court are invoked and the conditions are necessary to do justice between the parties." Id. at 531-32. The Court continued:

> (The court) will avoid injury so far as may be, by attaching conditions to the award. '(I)t is the duty of a court of equity granting injunctive relief to do so upon conditions that will protect all whose interests the injunction may affect.' Since the power to condition relief is essential to ensure that extraordinary equitable remedies will not become the engines of injustice, it would require the clearest legislative direction to justify the truncation of that power.

Id. at 532 (citations omitted.) Therefore, unless the bankruptcy laws contain express provisions circumscribing the equitable powers of the court (which they do not), the Bankruptcy Court had the power to impose conditions in its grant of the permanent injunction.

of refraining from asserting *data certa* claims in Italy by simply electing to forego the benefit of the § 304 injunction they demanded.

## CONCLUSION

For the foregoing reasons, ABN's appeal should be granted and the Order vacated.

Dated: New York, New York
       November 30, 2007

                                                      MOSES & SINGER LLP
                                                    *Attorneys for Appellant*

                                                    _____
                                                    Lawrence L. Ginsburg (LG 6370)
                                                    Scott E. Silberfein (SS 1947)
                                                    Christopher J. Caruso (CC 8005)
                                                    405 Lexington Avenue
                                                    New York, New York 10174
                                                    (212) 554-7800