**EXHIBIT 2**

30.6.2000 | EN | Official Journal of the European Communities | L 160/1

I

*(Acts whose publication is obligatory)*

# COUNCIL REGULATION (EC) No 1346/2000

## of 29 May 2000

## on insolvency proceedings

THE COUNCIL OF THE EUROPEAN UNION,

Having regard to the Treaty establishing the European Community, and in particular Articles 61(c) and 67(1) thereof,

Having regard to the initiative of the Federal Republic of Germany and the Republic of Finland,

Having regard to the opinion of the European Parliament [1],

Having regard to the opinion of the Economic and Social Committee [2],

Whereas:

(1) The European Union has set out the aim of establishing an area of freedom, security and justice.

(2) The proper functioning of the internal market requires that cross-border insolvency proceedings should operate efficiently and effectively and this Regulation needs to be adopted in order to achieve this objective which comes within the scope of judicial cooperation in civil matters within the meaning of Article 65 of the Treaty.

(3) The activities of undertakings have more and more cross-border effects and are therefore increasingly being regulated by Community law. While the insolvency of such undertakings also affects the proper functioning of the internal market, there is a need for a Community act requiring coordination of the measures to be taken regarding an insolvent debtor's assets.

(4) It is necessary for the proper functioning of the internal market to avoid incentives for the parties to transfer assets or judicial proceedings from one Member State to another, seeking to obtain a more favourable legal position (forum shopping).

(5) These objectives cannot be achieved to a sufficient degree at national level and action at Community level is therefore justified.

(6) In accordance with the principle of proportionality this Regulation should be confined to provisions governing jurisdiction for opening insolvency proceedings and judgments which are delivered directly on the basis of the insolvency proceedings and are closely connected with such proceedings. In addition, this Regulation should contain provisions regarding the recognition of those judgments and the applicable law which also satisfy that principle.

(7) Insolvency proceedings relating to the winding-up of insolvent companies or other legal persons, judicial arrangements, compositions and analogous proceedings are excluded from the scope of the 1968 Brussels Convention on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters [3], as amended by the Conventions on Accession to this Convention [4].

(8) In order to achieve the aim of improving the efficiency and effectiveness of insolvency proceedings having cross-border effects, it is necessary, and appropriate, that the provisions on jurisdiction, recognition and applicable law in this area should be contained in a Community law measure which is binding and directly applicable in Member States.

---

[1] Opinion delivered on 2 March 2000 (not yet published in the Official Journal).
[2] Opinion delivered on 26 January 2000 (not yet published in the Official Journal).
[3] OJ L 299, 31.12.1972, p. 32.
[4] OJ L 204, 2.8.1975, p. 28; OJ L 304, 30.10.1978, p. 1; OJ L 388, 31.12.1982, p. 1; OJ L 285, 3.10.1989, p. 1; OJ C 15, 15.1.1997, p. 1.

L 160/2   [EN]   Official Journal of the European Communities   30.6.2000

(9) This Regulation should apply to insolvency proceedings, whether the debtor is a natural person or a legal person, a trader or an individual. The insolvency proceedings to which this Regulation applies are listed in the Annexes. Insolvency proceedings concerning insurance undertakings, credit institutions, investment undertakings holding funds or securities for third parties and collective investment undertakings should be excluded from the scope of this Regulation. Such undertakings should not be covered by this Regulation since they are subject to special arrangements and, to some extent, the national supervisory authorities have extremely wide-ranging powers of intervention.

(10) Insolvency proceedings do not necessarily involve the intervention of a judicial authority; the expression 'court' in this Regulation should be given a broad meaning and include a person or body empowered by national law to open insolvency proceedings. In order for this Regulation to apply, proceedings (comprising acts and formalities set down in law) should not only have to comply with the provisions of this Regulation, but they should also be officially recognised and legally effective in the Member State in which the insolvency proceedings are opened and should be collective insolvency proceedings which entail the partial or total divestment of the debtor and the appointment of a liquidator.

(11) This Regulation acknowledges the fact that as a result of widely differing substantive laws it is not practical to introduce insolvency proceedings with universal scope in the entire Community. The application without exception of the law of the State of opening of proceedings would, against this background, frequently lead to difficulties. This applies, for example, to the widely differing laws on security interests to be found in the Community. Furthermore, the preferential rights enjoyed by some creditors in the insolvency proceedings are, in some cases, completely different. This Regulation should take account of this in two different ways. On the one hand, provision should be made for special rules on applicable law in the case of particularly significant rights and legal relationships (e.g. rights in rem and contracts of employment). On the other hand, national proceedings covering only assets situated in the State of opening should also be allowed alongside main insolvency proceedings with universal scope.

(12) This Regulation enables the main insolvency proceedings to be opened in the Member State where the debtor has the centre of his main interests. These proceedings have universal scope and aim at encompassing all the debtor's assets. To protect the diversity of interests, this Regulation permits secondary proceedings to be opened to run in parallel with the main proceedings. Secondary proceedings may be opened in the Member State where the debtor has an establishment. The effects of secondary proceedings are limited to the assets located in that State. Mandatory rules of coordination with the main proceedings satisfy the need for unity in the Community.

(13) The 'centre of main interests' should correspond to the place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties.

(14) This Regulation applies only to proceedings where the centre of the debtor's main interests is located in the Community.

(15) The rules of jurisdiction set out in this Regulation establish only international jurisdiction, that is to say, they designate the Member State the courts of which may open insolvency proceedings. Territorial jurisdiction within that Member State must be established by the national law of the Member State concerned.

(16) The court having jurisdiction to open the main insolvency proceedings should be enabled to order provisional and protective measures from the time of the request to open proceedings. Preservation measures both prior to and after the commencement of the insolvency proceedings are very important to guarantee the effectiveness of the insolvency proceedings. In that connection this Regulation should afford different possibilities. On the one hand, the court competent for the main insolvency proceedings should be able also to order provisional protective measures covering assets situated in the territory of other Member States. On the other hand, a liquidator temporarily appointed prior to the opening of the main insolvency proceedings should be able, in the Member States in which an establishment belonging to the debtor is to be found, to apply for the preservation measures which are possible under the law of those States.

(17) Prior to the opening of the main insolvency proceedings, the right to request the opening of insolvency proceedings in the Member State where the debtor has an establishment should be limited to local creditors and creditors of the local establishment or to cases where main proceedings cannot be opened under the law of the Member State where the debtor has the centre of his main interest. The reason for this restriction is that cases where territorial insolvency proceedings are requested before the main insolvency proceedings are intended to be limited to what is absolutely necessary. If the main insolvency proceedings are opened, the territorial proceedings become secondary.

30.6.2000    EN    Official Journal of the European Communities    L 160/3

(18) Following the opening of the main insolvency proceedings, the right to request the opening of insolvency proceedings in a Member State where the debtor has an establishment is not restricted by this Regulation. The liquidator in the main proceedings or any other person empowered under the national law of that Member State may request the opening of secondary insolvency proceedings.

(19) Secondary insolvency proceedings may serve different purposes, besides the protection of local interests. Cases may arise where the estate of the debtor is too complex to administer as a unit or where differences in the legal systems concerned are so great that difficulties may arise from the extension of effects deriving from the law of the State of the opening to the other States where the assets are located. For this reason the liquidator in the main proceedings may request the opening of secondary proceedings when the efficient administration of the estate so requires.

(20) Main insolvency proceedings and secondary proceedings can, however, contribute to the effective realisation of the total assets only if all the concurrent proceedings pending are coordinated. The main condition here is that the various liquidators must cooperate closely, in particular by exchanging a sufficient amount of information. In order to ensure the dominant role of the main insolvency proceedings, the liquidator in such proceedings should be given several possibilities for intervening in secondary insolvency proceedings which are pending at the same time. For example, he should be able to propose a restructuring plan or composition or apply for realisation of the assets in the secondary insolvency proceedings to be suspended.

(21) Every creditor, who has his habitual residence, domicile or registered office in the Community, should have the right to lodge his claims in each of the insolvency proceedings pending in the Community relating to the debtor's assets. This should also apply to tax authorities and social insurance institutions. However, in order to ensure equal treatment of creditors, the distribution of proceeds must be coordinated. Every creditor should be able to keep what he has received in the course of insolvency proceedings but should be entitled only to participate in the distribution of total assets in other proceedings if creditors with the same standing have obtained the same proportion of their claims.

(22) This Regulation should provide for immediate recognition of judgments concerning the opening, conduct and closure of insolvency proceedings which come within its scope and of judgments handed down in direct connection with such insolvency proceedings. Automatic recognition should therefore mean that the effects attributed to the proceedings by the law of the State in which the proceedings were opened extend to all other Member States. Recognition of judgments delivered by the courts of the Member States should be based on the principle of mutual trust. To that end, grounds for non-recognition should be reduced to the minimum necessary. This is also the basis on which any dispute should be resolved where the courts of two Member States both claim competence to open the main insolvency proceedings. The decision of the first court to open proceedings should be recognised in the other Member States without those Member States having the power to scrutinise the court's decision.

(23) This Regulation should set out, for the matters covered by it, uniform rules on conflict of laws which replace, within their scope of application, national rules of private international law. Unless otherwise stated, the law of the Member State of the opening of the proceedings should be applicable (*lex concursus*). This rule on conflict of laws should be valid both for the main proceedings and for local proceedings; the *lex concursus* determines all the effects of the insolvency proceedings, both procedural and substantive, on the persons and legal relations concerned. It governs all the conditions for the opening, conduct and closure of the insolvency proceedings.

(24) Automatic recognition of insolvency proceedings to which the law of the opening State normally applies may interfere with the rules under which transactions are carried out in other Member States. To protect legitimate expectations and the certainty of transactions in Member States other than that in which proceedings are opened, provisions should be made for a number of exceptions to the general rule.

(25) There is a particular need for a special reference diverging from the law of the opening State in the case of rights in rem, since these are of considerable importance for the granting of credit. The basis, validity and extent of such a right in rem should therefore normally be determined according to the *lex situs* and not be affected by the opening of insolvency proceedings. The proprietor of the right in rem should therefore be able to continue to assert his right to segregation or separate settlement of the collateral security. Where assets are subject to rights in rem under the *lex situs* in one Member State but the main proceedings are being carried out in another Member State, the liquidator in the main proceedings should be able to request the opening of secondary proceedings in the jurisdiction where the rights in rem arise if the debtor has an establishment there. If a secondary proceeding is not opened, the surplus on sale of the asset covered by rights in rem must be paid to the liquidator in the main proceedings.

L 160/4          EN          Official Journal of the European Communities          30.6.2000

(26) If a set-off is not permitted under the law of the opening State, a creditor should nevertheless be entitled to the set-off if it is possible under the law applicable to the claim of the insolvent debtor. In this way, set-off will acquire a kind of guarantee function based on legal provisions on which the creditor concerned can rely at the time when the claim arises.

(27) There is also a need for special protection in the case of payment systems and financial markets. This applies for example to the position-closing agreements and netting agreements to be found in such systems as well as to the sale of securities and to the guarantees provided for such transactions as governed in particular by Directive 98/26/EC of the European Parliament and of the Council of 19 May 1998 on settlement finality in payment and securities settlement systems([1]). For such transactions, the only law which is material should thus be that applicable to the system or market concerned. This provision is intended to prevent the possibility of mechanisms for the payment and settlement of transactions provided for in the payment and set-off systems or on the regulated financial markets of the Member States being altered in the case of insolvency of a business partner. Directive 98/26/EC contains special provisions which should take precedence over the general rules in this Regulation.

(28) In order to protect employees and jobs, the effects of insolvency proceedings on the continuation or termination of employment and on the rights and obligations of all parties to such employment must be determined by the law applicable to the agreement in accordance with the general rules on conflict of law. Any other insolvency-law questions, such as whether the employees' claims are protected by preferential rights and what status such preferential rights may have, should be determined by the law of the opening State.

(29) For business considerations, the main content of the decision opening the proceedings should be published in the other Member States at the request of the liquidator. If there is an establishment in the Member State concerned, there may be a requirement that publication is compulsory. In neither case, however, should publication be a prior condition for recognition of the foreign proceedings.

(30) It may be the case that some of the persons concerned are not in fact aware that proceedings have been opened and act in good faith in a way that conflicts with the new situation. In order to protect such persons who make a payment to the debtor because they are unaware that foreign proceedings have been opened when they should in fact have made the payment to the foreign liquidator, it should be provided that such a payment is to have a debt-discharging effect.

(31) This Regulation should include Annexes relating to the organisation of insolvency proceedings. As these Annexes relate exclusively to the legislation of Member States, there are specific and substantiated reasons for the Council to reserve the right to amend these Annexes in order to take account of any amendments to the domestic law of the Member States.

(32) The United Kingdom and Ireland, in accordance with Article 3 of the Protocol on the position of the United Kingdom and Ireland annexed to the Treaty on European Union and the Treaty establishing the European Community, have given notice of their wish to take part in the adoption and application of this Regulation.

(33) Denmark, in accordance with Articles 1 and 2 of the Protocol on the position of Denmark annexed to the Treaty on European Union and the Treaty establishing the European Community, is not participating in the adoption of this Regulation, and is therefore not bound by it nor subject to its application,

HAS ADOPTED THIS REGULATION:

CHAPTER I

GENERAL PROVISIONS

Article 1

Scope

1. This Regulation shall apply to collective insolvency proceedings which entail the partial or total divestment of a debtor and the appointment of a liquidator.

2. This Regulation shall not apply to insolvency proceedings concerning insurance undertakings, credit institutions, investment undertakings which provide services involving the holding of funds or securities for third parties, or to collective investment undertakings.

---

([1]) OJ L 166, 11.6.1998, p. 45.

30.6.2000 | EN | Official Journal of the European Communities | L 160/5

*Article 2*

**Definitions**

For the purposes of this Regulation:

(a) 'insolvency proceedings' shall mean the collective proceedings referred to in Article 1(1). These proceedings are listed in Annex A;

(b) 'liquidator' shall mean any person or body whose function is to administer or liquidate assets of which the debtor has been divested or to supervise the administration of his affairs. Those persons and bodies are listed in Annex C;

(c) 'winding-up proceedings' shall mean insolvency proceedings within the meaning of point (a) involving realising the assets of the debtor, including where the proceedings have been closed by a composition or other measure terminating the insolvency, or closed by reason of the insufficiency of the assets. Those proceedings are listed in Annex B;

(d) 'court' shall mean the judicial body or any other competent body of a Member State empowered to open insolvency proceedings or to take decisions in the course of such proceedings;

(e) 'judgment' in relation to the opening of insolvency proceedings or the appointment of a liquidator shall include the decision of any court empowered to open such proceedings or to appoint a liquidator;

(f) 'the time of the opening of proceedings' shall mean the time at which the judgment opening proceedings becomes effective, whether it is a final judgment or not;

(g) 'the Member State in which assets are situated' shall mean, in the case of:

— tangible property, the Member State within the territory of which the property is situated,

— property and rights ownership of or entitlement to which must be entered in a public register, the Member State under the authority of which the register is kept,

— claims, the Member State within the territory of which the third party required to meet them has the centre of his main interests, as determined in Article 3(1);

(h) 'establishment' shall mean any place of operations where the debtor carries out a non-transitory economic activity with human means and goods.

*Article 3*

**International jurisdiction**

1. The courts of the Member State within the territory of which the centre of a debtor's main interests is situated shall have jurisdiction to open insolvency proceedings. In the case of a company or legal person, the place of the registered office shall be presumed to be the centre of its main interests in the absence of proof to the contrary.

2. Where the centre of a debtor's main interests is situated within the territory of a Member State, the courts of another Member State shall have jurisdiction to open insolvency proceedings against that debtor only if he possesses an establishment within the territory of that other Member State. The effects of those proceedings shall be restricted to the assets of the debtor situated in the territory of the latter Member State.

3. Where insolvency proceedings have been opened under paragraph 1, any proceedings opened subsequently under paragraph 2 shall be secondary proceedings. These latter proceedings must be winding-up proceedings.

4. Territorial insolvency proceedings referred to in paragraph 2 may be opened prior to the opening of main insolvency proceedings in accordance with paragraph 1 only:

(a) where insolvency proceedings under paragraph 1 cannot be opened because of the conditions laid down by the law of the Member State within the territory of which the centre of the debtor's main interests is situated; or

(b) where the opening of territorial insolvency proceedings is requested by a creditor who has his domicile, habitual residence or registered office in the Member State within the territory of which the establishment is situated, or whose claim arises from the operation of that establishment.

*Article 4*

**Law applicable**

1. Save as otherwise provided in this Regulation, the law applicable to insolvency proceedings and their effects shall be that of the Member State within the territory of which such proceedings are opened, hereafter referred to as the 'State of the opening of proceedings'.

L 160/6    EN    Official Journal of the European Communities    30.6.2000

2. The law of the State of the opening of proceedings shall determine the conditions for the opening of those proceedings, their conduct and their closure. It shall determine in particular:

(a) against which debtors insolvency proceedings may be brought on account of their capacity;

(b) the assets which form part of the estate and the treatment of assets acquired by or devolving on the debtor after the opening of the insolvency proceedings;

(c) the respective powers of the debtor and the liquidator;

(d) the conditions under which set-offs may be invoked;

(e) the effects of insolvency proceedings on current contracts to which the debtor is party;

(f) the effects of the insolvency proceedings on proceedings brought by individual creditors, with the exception of lawsuits pending;

(g) the claims which are to be lodged against the debtor's estate and the treatment of claims arising after the opening of insolvency proceedings;

(h) the rules governing the lodging, verification and admission of claims;

(i) the rules governing the distribution of proceeds from the realisation of assets, the ranking of claims and the rights of creditors who have obtained partial satisfaction after the opening of insolvency proceedings by virtue of a right in rem or through a set-off;

(j) the conditions for and the effects of closure of insolvency proceedings, in particular by composition;

(k) creditors' rights after the closure of insolvency proceedings;

(l) who is to bear the costs and expenses incurred in the insolvency proceedings;

(m) the rules relating to the voidness, voidability or unenforceability of legal acts detrimental to all the creditors.

### Article 5

### Third parties' rights in rem

1. The opening of insolvency proceedings shall not affect the rights in rem of creditors or third parties in respect of tangible or intangible, moveable or immoveable assets — both specific assets and collections of indefinite assets as a whole which change from time to time — belonging to the debtor which are situated within the territory of another Member State at the time of the opening of proceedings.

2. The rights referred to in paragraph 1 shall in particular mean:

(a) the right to dispose of assets or have them disposed of and to obtain satisfaction from the proceeds of or income from those assets, in particular by virtue of a lien or a mortgage;

(b) the exclusive right to have a claim met, in particular a right guaranteed by a lien in respect of the claim or by assignment of the claim by way of a guarantee;

(c) the right to demand the assets from, and/or to require restitution by, anyone having possession or use of them contrary to the wishes of the party so entitled;

(d) a right in rem to the beneficial use of assets.

3. The right, recorded in a public register and enforceable against third parties, under which a right in rem within the meaning of paragraph 1 may be obtained, shall be considered a right in rem.

4. Paragraph 1 shall not preclude actions for voidness, voidability or unenforceability as referred to in Article 4(2)(m).

### Article 6

### Set-off

1. The opening of insolvency proceedings shall not affect the right of creditors to demand the set-off of their claims against the claims of the debtor, where such a set-off is permitted by the law applicable to the insolvent debtor's claim.

2. Paragraph 1 shall not preclude actions for voidness, voidability or unenforceability as referred to in Article 4(2)(m).

### Article 7

### Reservation of title

1. The opening of insolvency proceedings against the purchaser of an asset shall not affect the seller's rights based on a reservation of title where at the time of the opening of proceedings the asset is situated within the territory of a Member State other than the State of opening of proceedings.

2. The opening of insolvency proceedings against the seller of an asset, after delivery of the asset, shall not constitute grounds for rescinding or terminating the sale and shall not prevent the purchaser from acquiring title where at the time of the opening of proceedings the asset sold is situated within the territory of a Member State other than the State of the opening of proceedings.

3. Paragraphs 1 and 2 shall not preclude actions for voidness, voidability or unenforceability as referred to in Article 4(2)(m).

*Article 8*

**Contracts relating to immoveable property**

The effects of insolvency proceedings on a contract conferring the right to acquire or make use of immoveable property shall be governed solely by the law of the Member State within the territory of which the immoveable property is situated.

*Article 9*

**Payment systems and financial markets**

1. Without prejudice to Article 5, the effects of insolvency proceedings on the rights and obligations of the parties to a payment or settlement system or to a financial market shall be governed solely by the law of the Member State applicable to that system or market.

2. Paragraph 1 shall not preclude any action for voidness, voidability or unenforceability which may be taken to set aside payments or transactions under the law applicable to the relevant payment system or financial market.

*Article 10*

**Contracts of employment**

The effects of insolvency proceedings on employment contracts and relationships shall be governed solely by the law of the Member State applicable to the contract of employment.

*Article 11*

**Effects on rights subject to registration**

The effects of insolvency proceedings on the rights of the debtor in immoveable property, a ship or an aircraft subject to registration in a public register shall be determined by the law of the Member State under the authority of which the register is kept.

*Article 12*

**Community patents and trade marks**

For the purposes of this Regulation, a Community patent, a Community trade mark or any other similar right established by Community law may be included only in the proceedings referred to in Article 3(1).

*Article 13*

**Detrimental acts**

Article 4(2)(m) shall not apply where the person who benefited from an act detrimental to all the creditors provides proof that:

— the said act is subject to the law of a Member State other than that of the State of the opening of proceedings, and

— that law does not allow any means of challenging that act in the relevant case.

*Article 14*

**Protection of third-party purchasers**

Where, by an act concluded after the opening of insolvency proceedings, the debtor disposes, for consideration, of:

— an immoveable asset, or

— a ship or an aircraft subject to registration in a public register, or

— securities whose existence presupposes registration in a register laid down by law,

the validity of that act shall be governed by the law of the State within the territory of which the immoveable asset is situated or under the authority of which the register is kept.

*Article 15*

**Effects of insolvency proceedings on lawsuits pending**

The effects of insolvency proceedings on a lawsuit pending concerning an asset or a right of which the debtor has been divested shall be governed solely by the law of the Member State in which that lawsuit is pending.

CHAPTER II

RECOGNITION OF INSOLVENCY PROCEEDINGS

*Article 16*

**Principle**

1. Any judgment opening insolvency proceedings handed down by a court of a Member State which has jurisdiction pursuant to Article 3 shall be recognised in all the other Member States from the time that it becomes effective in the State of the opening of proceedings.

L 160/8 EN    Official Journal of the European Communities    30.6.2000

This rule shall also apply where, on account of his capacity, insolvency proceedings cannot be brought against the debtor in other Member States.

2. Recognition of the proceedings referred to in Article 3(1) shall not preclude the opening of the proceedings referred to in Article 3(2) by a court in another Member State. The latter proceedings shall be secondary insolvency proceedings within the meaning of Chapter III.

### Article 17

### Effects of recognition

1. The judgment opening the proceedings referred to in Article 3(1) shall, with no further formalities, produce the same effects in any other Member State as under this law of the State of the opening of proceedings, unless this Regulation provides otherwise and as long as no proceedings referred to in Article 3(2) are opened in that other Member State.

2. The effects of the proceedings referred to in Article 3(2) may not be challenged in other Member States. Any restriction of the creditors' rights, in particular a stay or discharge, shall produce effects vis-à-vis assets situated within the territory of another Member State only in the case of those creditors who have given their consent.

### Article 18

### Powers of the liquidator

1. The liquidator appointed by a court which has jurisdiction pursuant to Article 3(1) may exercise all the powers conferred on him by the law of the State of the opening of proceedings in another Member State, as long as no other insolvency proceedings have been opened there nor any preservation measure to the contrary has been taken there further to a request for the opening of insolvency proceedings in that State. He may in particular remove the debtor's assets from the territory of the Member State in which they are situated, subject to Articles 5 and 7.

2. The liquidator appointed by a court which has jurisdiction pursuant to Article 3(2) may in any other Member State claim through the courts or out of court that moveable property was removed from the territory of the State of the opening of proceedings to the territory of that other Member State after the opening of the insolvency proceedings. He may also bring any action to set aside which is in the interests of the creditors.

3. In exercising his powers, the liquidator shall comply with the law of the Member State within the territory of which he intends to take action, in particular with regard to procedures for the realisation of assets. Those powers may not include coercive measures or the right to rule on legal proceedings or disputes.

### Article 19

### Proof of the liquidator's appointment

The liquidator's appointment shall be evidenced by a certified copy of the original decision appointing him or by any other certificate issued by the court which has jurisdiction.

A translation into the official language or one of the official languages of the Member State within the territory of which he intends to act may be required. No legalisation or other similar formality shall be required.

### Article 20

### Return and imputation

1. A creditor who, after the opening of the proceedings referred to in Article 3(1) obtains by any means, in particular through enforcement, total or partial satisfaction of his claim on the assets belonging to the debtor situated within the territory of another Member State, shall return what he has obtained to the liquidator, subject to Articles 5 and 7.

2. In order to ensure equal treatment of creditors a creditor who has, in the course of insolvency proceedings, obtained a dividend on his claim shall share in distributions made in other proceedings only where creditors of the same ranking or category have, in those other proceedings, obtained an equivalent dividend.

### Article 21

### Publication

1. The liquidator may request that notice of the judgment opening insolvency proceedings and, where appropriate, the decision appointing him, be published in any other Member State in accordance with the publication procedures provided for in that State. Such publication shall also specify the liquidator appointed and whether the jurisdiction rule applied is that pursuant to Article 3(1) or Article 3(2).

Case 1:07-cv-07413-PKC   Document 16-3   Filed 06/03/2008   Page 10 of 19

2. However, any Member State within the territory of which the debtor has an establishment may require mandatory publication. In such cases, the liquidator or any authority empowered to that effect in the Member State where the proceedings referred to in Article 3(1) are opened shall take all necessary measures to ensure such publication.

### Article 22

### Registration in a public register

1. The liquidator may request that the judgment opening the proceedings referred to in Article 3(1) be registered in the land register, the trade register and any other public register kept in the other Member States.

2. However, any Member State may require mandatory registration. In such cases, the liquidator or any authority empowered to that effect in the Member State where the proceedings referred to in Article 3(1) have been opened shall take all necessary measures to ensure such registration.

### Article 23

### Costs

The costs of the publication and registration provided for in Articles 21 and 22 shall be regarded as costs and expenses incurred in the proceedings.

### Article 24

### Honouring of an obligation to a debtor

1. Where an obligation has been honoured in a Member State for the benefit of a debtor who is subject to insolvency proceedings opened in another Member State, when it should have been honoured for the benefit of the liquidator in those proceedings, the person honouring the obligation shall be deemed to have discharged it if he was unaware of the opening of proceedings.

2. Where such an obligation is honoured before the publication provided for in Article 21 has been effected, the person honouring the obligation shall be presumed, in the absence of proof to the contrary, to have been unaware of the opening of insolvency proceedings; where the obligation is honoured after such publication has been effected, the person honouring the obligation shall be presumed, in the absence of proof to the contrary, to have been aware of the opening of proceedings.

### Article 25

### Recognition and enforceability of other judgments

1. Judgments handed down by a court whose judgment concerning the opening of proceedings is recognised in accordance with Article 16 and which concern the course and closure of insolvency proceedings, and compositions approved by that court shall also be recognised with no further formalities. Such judgments shall be enforced in accordance with Articles 31 to 51, with the exception of Article 34(2), of the Brussels Convention on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters, as amended by the Conventions of Accession to this Convention.

The first subparagraph shall also apply to judgments deriving directly from the insolvency proceedings and which are closely linked with them, even if they were handed down by another court.

The first subparagraph shall also apply to judgments relating to preservation measures taken after the request for the opening of insolvency proceedings.

2. The recognition and enforcement of judgments other than those referred to in paragraph 1 shall be governed by the Convention referred to in paragraph 1, provided that that Convention is applicable.

3. The Member States shall not be obliged to recognise or enforce a judgment referred to in paragraph 1 which might result in a limitation of personal freedom or postal secrecy.

### Article 26 (¹)

### Public policy

Any Member State may refuse to recognise insolvency proceedings opened in another Member State or to enforce a judgment handed down in the context of such proceedings where the effects of such recognition or enforcement would be manifestly contrary to that State's public policy, in particular its fundamental principles or the constitutional rights and liberties of the individual.

### CHAPTER III

### SECONDARY INSOLVENCY PROCEEDINGS

### Article 27

### Opening of proceedings

The opening of the proceedings referred to in Article 3(1) by a court of a Member State and which is recognised in another Member State (main proceedings) shall permit the opening in that other Member State, a court of which has jurisdiction pursuant to Article 3(2), of secondary insolvency proceedings without the debtor's insolvency being examined in that other State. These latter proceedings must be among the proceedings listed in Annex B. Their effects shall be restricted to the assets of the debtor situated within the territory of that other Member State.

---

(¹) Note the Declaration by Portugal concerning the application of Articles 26 and 37 (OJ C 183, 30.6.2000, p. 1).

*Article 28*

**Applicable law**

Save as otherwise provided in this Regulation, the law applicable to secondary proceedings shall be that of the Member State within the territory of which the secondary proceedings are opened.

*Article 29*

**Right to request the opening of proceedings**

The opening of secondary proceedings may be requested by:

(a) the liquidator in the main proceedings;

(b) any other person or authority empowered to request the opening of insolvency proceedings under the law of the Member State within the territory of which the opening of secondary proceedings is requested.

*Article 30*

**Advance payment of costs and expenses**

Where the law of the Member State in which the opening of secondary proceedings is requested requires that the debtor's assets be sufficient to cover in whole or in part the costs and expenses of the proceedings, the court may, when it receives such a request, require the applicant to make an advance payment of costs or to provide appropriate security.

*Article 31*

**Duty to cooperate and communicate information**

1. Subject to the rules restricting the communication of information, the liquidator in the main proceedings and the liquidators in the secondary proceedings shall be duty bound to communicate information to each other. They shall immediately communicate any information which may be relevant to the other proceedings, in particular the progress made in lodging and verifying claims and all measures aimed at terminating the proceedings.

2. Subject to the rules applicable to each of the proceedings, the liquidator in the main proceedings and the liquidators in the secondary proceedings shall be duty bound to cooperate with each other.

3. The liquidator in the secondary proceedings shall give the liquidator in the main proceedings an early opportunity of submitting proposals on the liquidation or use of the assets in the secondary proceedings.

*Article 32*

**Exercise of creditors' rights**

1. Any creditor may lodge his claim in the main proceedings and in any secondary proceedings.

2. The liquidators in the main and any secondary proceedings shall lodge in other proceedings claims which have already been lodged in the proceedings for which they were appointed, provided that the interests of creditors in the latter proceedings are served thereby, subject to the right of creditors to oppose that or to withdraw the lodgement of their claims where the law applicable so provides.

3. The liquidator in the main or secondary proceedings shall be empowered to participate in other proceedings on the same basis as a creditor, in particular by attending creditors' meetings.

*Article 33*

**Stay of liquidation**

1. The court, which opened the secondary proceedings, shall stay the process of liquidation in whole or in part on receipt of a request from the liquidator in the main proceedings, provided that in that event it may require the liquidator in the main proceedings to take any suitable measure to guarantee the interests of the creditors in the secondary proceedings and of individual classes of creditors. Such a request from the liquidator may be rejected only if it is manifestly of no interest to the creditors in the main proceedings. Such a stay of the process of liquidation may be ordered for up to three months. It may be continued or renewed for similar periods.

2. The court referred to in paragraph 1 shall terminate the stay of the process of liquidation:

— at the request of the liquidator in the main proceedings,

— of its own motion, at the request of a creditor or at the request of the liquidator in the secondary proceedings if that measure no longer appears justified, in particular, by the interests of creditors in the main proceedings or in the secondary proceedings.

30.6.2000 | EN | Official Journal of the European Communities | L 160/11

Article 34

**Measures ending secondary insolvency proceedings**

1. Where the law applicable to secondary proceedings allows for such proceedings to be closed without liquidation by a rescue plan, a composition or a comparable measure, the liquidator in the main proceedings shall be empowered to propose such a measure himself.

Closure of the secondary proceedings by a measure referred to in the first subparagraph shall not become final without the consent of the liquidator in the main proceedings; failing his agreement, however, it may become final if the financial interests of the creditors in the main proceedings are not affected by the measure proposed.

2. Any restriction of creditors' rights arising from a measure referred to in paragraph 1 which is proposed in secondary proceedings, such as a stay of payment or discharge of debt, may not have effect in respect of the debtor's assets not covered by those proceedings without the consent of all the creditors having an interest.

3. During a stay of the process of liquidation ordered pursuant to Article 33, only the liquidator in the main proceedings or the debtor, with the former's consent, may propose measures laid down in paragraph 1 of this Article in the secondary proceedings; no other proposal for such a measure shall be put to the vote or approved.

Article 35

**Assets remaining in the secondary proceedings**

If by the liquidation of assets in the secondary proceedings it is possible to meet all claims allowed under those proceedings, the liquidator appointed in those proceedings shall immediately transfer any assets remaining to the liquidator in the main proceedings.

Article 36

**Subsequent opening of the main proceedings**

Where the proceedings referred to in Article 3(1) are opened following the opening of the proceedings referred to in Article 3(2) in another Member State, Articles 31 to 35 shall apply to those opened first, in so far as the progress of those proceedings so permits.

Article 37 (¹)

**Conversion of earlier proceedings**

The liquidator in the main proceedings may request that proceedings listed in Annex A previously opened in another Member State be converted into winding-up proceedings if this proves to be in the interests of the creditors in the main proceedings.

The court with jurisdiction under Article 3(2) shall order conversion into one of the proceedings listed in Annex B.

Article 38

**Preservation measures**

Where the court of a Member State which has jurisdiction pursuant to Article 3(1) appoints a temporary administrator in order to ensure the preservation of the debtor's assets, that temporary administrator shall be empowered to request any measures to secure and preserve any of the debtor's assets situated in another Member State, provided for under the law of that State, for the period between the request for the opening of insolvency proceedings and the judgment opening the proceedings.

CHAPTER IV

**PROVISION OF INFORMATION FOR CREDITORS AND LODGEMENT OF THEIR CLAIMS**

Article 39

**Right to lodge claims**

Any creditor who has his habitual residence, domicile or registered office in a Member State other than the State of the opening of proceedings, including the tax authorities and social security authorities of Member States, shall have the right to lodge claims in the insolvency proceedings in writing.

Article 40

**Duty to inform creditors**

1. As soon as insolvency proceedings are opened in a Member State, the court of that State having jurisdiction or the liquidator appointed by it shall immediately inform known creditors who have their habitual residences, domiciles or registered offices in the other Member States.

---

(¹) Note the Declaration by Portugal concerning the application of Articles 26 and 37 (OJ C 183, 30.6.2000, p. 1).

2. That information, provided by an individual notice, shall in particular include time limits, the penalties laid down in regard to those time limits, the body or authority empowered to accept the lodgement of claims and the other measures laid down. Such notice shall also indicate whether creditors whose claims are preferential or secured in rem need lodge their claims.

*Article 41*

**Content of the lodgement of a claim**

A creditor shall send copies of supporting documents, if any, and shall indicate the nature of the claim, the date on which it arose and its amount, as well as whether he alleges preference, security in rem or a reservation of title in respect of the claim and what assets are covered by the guarantee he is invoking.

*Article 42*

**Languages**

1. The information provided for in Article 40 shall be provided in the official language or one of the official languages of the State of the opening of proceedings. For that purpose a form shall be used bearing the heading 'Invitation to lodge a claim. Time limits to be observed' in all the official languages of the institutions of the European Union.

2. Any creditor who has his habitual residence, domicile or registered office in a Member State other than the State of the opening of proceedings may lodge his claim in the official language or one of the official languages of that other State. In that event, however, the lodgement of his claim shall bear the heading 'Lodgement of claim' in the official language or one of the official languages of the State of the opening of proceedings. In addition, he may be required to provide a translation into the official language or one of the official languages of the State of the opening of proceedings.

CHAPTER V

TRANSITIONAL AND FINAL PROVISIONS

*Article 43*

**Applicability in time**

The provisions of this Regulation shall apply only to insolvency proceedings opened after its entry into force. Acts done by a debtor before the entry into force of this Regulation shall continue to be governed by the law which was applicable to them at the time they were done.

*Article 44*

**Relationship to Conventions**

1. After its entry into force, this Regulation replaces, in respect of the matters referred to therein, in the relations between Member States, the Conventions concluded between two or more Member States, in particular:

(a) the Convention between Belgium and France on Jurisdiction and the Validity and Enforcement of Judgments, Arbitration Awards and Authentic Instruments, signed at Paris on 8 July 1899;

(b) the Convention between Belgium and Austria on Bankruptcy, Winding-up, Arrangements, Compositions and Suspension of Payments (with Additional Protocol of 13 June 1973), signed at Brussels on 16 July 1969;

(c) the Convention between Belgium and the Netherlands on Territorial Jurisdiction, Bankruptcy and the Validity and Enforcement of Judgments, Arbitration Awards and Authentic Instruments, signed at Brussels on 28 March 1925;

(d) the Treaty between Germany and Austria on Bankruptcy, Winding-up, Arrangements and Compositions, signed at Vienna on 25 May 1979;

(e) the Convention between France and Austria on Jurisdiction, Recognition and Enforcement of Judgments on Bankruptcy, signed at Vienna on 27 February 1979;

(f) the Convention between France and Italy on the Enforcement of Judgments in Civil and Commercial Matters, signed at Rome on 3 June 1930;

(g) the Convention between Italy and Austria on Bankruptcy, Winding-up, Arrangements and Compositions, signed at Rome on 12 July 1977;

(h) the Convention between the Kingdom of the Netherlands and the Federal Republic of Germany on the Mutual Recognition and Enforcement of Judgments and other Enforceable Instruments in Civil and Commercial Matters, signed at The Hague on 30 August 1962;

(i) the Convention between the United Kingdom and the Kingdom of Belgium providing for the Reciprocal Enforcement of Judgments in Civil and Commercial Matters, with Protocol, signed at Brussels on 2 May 1934;

(j) the Convention between Denmark, Finland, Norway, Sweden and Iceland on Bankruptcy, signed at Copenhagen on 7 November 1933;

(k) the European Convention on Certain International Aspects of Bankruptcy, signed at Istanbul on 5 June 1990.

2. The Conventions referred to in paragraph 1 shall continue to have effect with regard to proceedings opened before the entry into force of this Regulation.

30.6.2000 [ EN ] Official Journal of the European Communities L 160/13

3. This Regulation shall not apply:

(a) in any Member State, to the extent that it is irreconcilable with the obligations arising in relation to bankruptcy from a convention concluded by that State with one or more third countries before the entry into force of this Regulation;

(b) in the United Kingdom of Great Britain and Northern Ireland, to the extent that is irreconcilable with the obligations arising in relation to bankruptcy and the winding-up of insolvent companies from any arrangements with the Commonwealth existing at the time this Regulation enters into force.

### Article 45

**Amendment of the Annexes**

The Council, acting by qualified majority on the initiative of one of its members or on a proposal from the Commission, may amend the Annexes.

### Article 46

**Reports**

No later than 1 June 2012, and every five years thereafter, the Commission shall present to the European Parliament, the Council and the Economic and Social Committee a report on the application of this Regulation. The report shall be accompanied if need be by a proposal for adaptation of this Regulation.

### Article 47

**Entry into force**

This Regulation shall enter into force on 31 May 2002.

This Regulation shall be binding in its entirety and directly applicable in the Member States in accordance with the Treaty establishing the European Community.

Done at Brussels, 29 May 2000.

*For the Council*

*The President*

A. COSTA

L 160/14 ⸏EN⸏ Official Journal of the European Communities 30.6.2000

## ANNEX A

### Insolvency proceedings referred to in Article 2(a)

**BELGIË—BELGIQUE**

— Het faillissement/La faillite

— Het gerechtelijk akkoord/Le concordat judiciaire

— De collectieve schuldenregeling/Le règlement collectif de dettes

**DEUTSCHLAND**

— Das Konkursverfahren

— Das gerichtliche Vergleichsverfahren

— Das Gesamtvollstreckungsverfahren

— Das Insolvenzverfahren

**ΕΛΛΑΣ**

— Πτώχευση

— Η ειδική εκκαθάριση

— Η προσωρινή διαχείριση εταιρίας. Η διοίκηση και η διαχείριση των πιστωτών

— Η υπαγωγή επιχείρησης υπό επίτροπο με σκοπό τη σύναψη συμβιβασμού με τους πιστωτές

**ESPAÑA**

— Concurso de acreedores

— Quiebra

— Suspensión de pagos

**FRANCE**

— Liquidation judiciaire

— Redressement judiciaire avec nomination d'un administrateur

**IRELAND**

— Compulsory winding up by the court

— Bankruptcy

— The administration in bankruptcy of the estate of persons dying insolvent

— Winding-up in bankruptcy of partnerships

— Creditors' voluntary winding up (with confirmation of a Court)

— Arrangements under the control of the court which involve the vesting of all or part of the property of the debtor in the Official Assignee for realisation and distribution

— Company examinership

**ITALIA**

— Fallimento

— Concordato preventivo

— Liquidazione coatta amministrativa

— Amministrazione straordinaria

— Amministrazione controllata

**LUXEMBOURG**

— Faillite

— Gestion contrôlée

— Concordat préventif de faillite (par abandon d'actif)

— Régime spécial de liquidation du notariat

**NEDERLAND**

— Het faillissement

— De surséance van betaling

— De schuldsaneringsregeling natuurlijke personen

**ÖSTERREICH**

— Das Konkursverfahren

— Das Ausgleichsverfahren

**PORTUGAL**

— O processo de falência

— Os processos especiais de recuperação de empresa, ou seja:

— A concordata

— A reconstituição empresarial

— A reestruturação financeira

— A gestão controlada

30.6.2000 | EN | Official Journal of the European Communities | L 160/15

SUOMI—FINLAND

— Konkurssi/konkurs

— Yrityssaneeraus/företagssanering

SVERIGE

— Konkurs

— Företagsrekonstruktion

UNITED KINGDOM

— Winding up by or subject to the supervision of the court

— Creditors' voluntary winding up (with confirmation by the court)

— Administration

— Voluntary arrangements under insolvency legislation

— Bankruptcy or sequestration

L 160/16 [ EN ]   Official Journal of the European Communities   30.6.2000

## ANNEX B

### Winding up proceedings referred to in Article 2(c)

**BELGIË—BELGIQUE**

— Het faillissement/La faillite

**DEUTSCHLAND**

— Das Konkursverfahren

— Das Gesamtvollstreckungsverfahren

— Das Insolvenzverfahren

**ΕΛΛΑΣ**

— Πτώχευση

— Η ειδική εκκαθάριση

**ESPAÑA**

— Concurso de acreedores

— Quiebra

— Suspensión de pagos basada en la insolvencia definitiva

**FRANCE**

— Liquidation judiciaire

**IRELAND**

— Compulsory winding up

— Bankruptcy

— The administration in bankruptcy of the estate of persons dying insolvent

— Winding-up in bankruptcy of partnerships

— Creditors' voluntary winding up (with confirmation of a court)

— Arrangements under the control of the court which involve the vesting of all or part of the property of the debtor in the Official Assignee for realisation and distribution

**ITALIA**

— Fallimento

— Liquidazione coatta amministrativa

**LUXEMBOURG**

— Faillite

— Régime spécial de liquidation du notariat

**NEDERLAND**

— Het faillissement

— De schuldsaneringsregeling natuurlijke personen

**ÖSTERREICH**

— Das Konkursverfahren

**PORTUGAL**

— O processo de falência

**SUOMI—FINLAND**

— Konkurssi/konkurs

**SVERIGE**

— Konkurs

**UNITED KINGDOM**

— Winding up by or subject to the supervision of the court

— Creditors' voluntary winding up (with confirmation by the court)

— Bankruptcy or sequestration

## ANNEX C

### Liquidators referred to in Article 2(b)

**BELGIË—BELGIQUE**

— De curator/Le curateur

— De commissaris inzake opschorting/Le commissaire au sursis

— De schuldbemiddelaar/Le médiateur de dettes

**DEUTSCHLAND**

— Konkursverwalter

— Vergleichsverwalter

— Sachwalter (nach der Vergleichsordnung)

— Verwalter

— Insolvenzverwalter

— Sachwalter (nach der Insolvenzordnung)

— Treuhänder

— Vorläufiger Insolvenzverwalter

**ΕΛΛΑΣ**

— Ο σύνδικο

— Ο προσωρινός διαχειριστής. Η διοικούσα επιτροπή των πιστωτών

— Ο ειδικός εκκαθαριστής

— Ο επίτροπος

**ESPAÑA**

— Depositario-administrador

— Interventor o Interventores

— Síndicos

— Comisario

**FRANCE**

— Représentant des créanciers

— Mandataire liquidateur

— Administrateur judiciaire

— Commissaire à l'exécution de plan

**IRELAND**

— Liquidator

— Official Assignee

— Trustee in bankruptcy

— Provisional Liquidator

— Examiner

**ITALIA**

— Curatore

— Commissario

**LUXEMBOURG**

— Le curateur

— Le commissaire

— Le liquidateur

— Le conseil de gérance de la section d'assainissement du notariat

**NEDERLAND**

— De curator in het faillissement

— De bewindvoerder in de surséance van betaling

— De bewindvoerder in de schuldsaneringsregeling natuurlijke personen

**ÖSTERREICH**

— Masseverwalter

— Ausgleichsverwalter

— Sachwalter

— Treuhänder

— Besondere Verwalter

— Vorläufiger Verwalter

— Konkursgericht

L 160/18 EN Official Journal of the European Communities 30.6.2000

PORTUGAL

— Gestor judicial

— Liquidatário judicial

— Comissão de credores

SUOMI—FINLAND

— Pesänhoitaja/boförvaltare

— Selvittäjä/utredare

SVERIGE

— Förvaltare

— God man

— Rekonstruktör

UNITED KINGDOM

— Liquidator

— Supervisor of a voluntary arrangement

— Administrator

— Official Receiver

— Trustee

— Judicial factor