**EXHIBIT 7**

# THE LAW OF INTERNATIONAL INSOLVENCIES AND DEBT RESTRUCTURINGS

## Editors

**James R. Silkenat**
*Arent Fox PLLC*
*New York, New York*

**Charles D. Schmerler**
*Fulbright & Jaworski LLP*
*New York, New York*

# Oceana Publications

A Division of Oxford University Press, Inc.

# Chapter 27

## The EC Insolvency Regulation:

## European Cross-Border Insolvency

*Michael Veder* and *Lucas Kortmann*
De Brauw Blackstone Westbroek N.V.
Amsterdam, The Netherlands

## I. Introduction

On 31 May 2002, the European Community Regulation on Insolvency Proceedings ("IR") of 29 May 2000 (1346/2000) entered into force. The IR mainly provides rules on private international law regarding insolvencies within the EU. It contains uniform rules on jurisdiction, applicable law and the recognition of insolvency proceedings and related judgments in other Member States.[1]

This chapter will provide a broad outline of the most important provisions of the IR.

## II. Goal and Scope of the IR

In the past decades, businesses and companies have become increasingly international. Especially within the EU, cross-border trading and cross-border company structures have developed rapidly.[2] Consequently, the attention devoted to cross-border insolvency has escalated in equal measure. In particular within the EU, a need existed to coordinate national insolvency proceedings at a European level. This had already been recognised during the negotiations that led to the 1968 "Brussels Convention" (on Jurisdiction and the Enforcement of Judgments in

---

1    Full text available at the Eur-Lex website http://europa.eu.int/eur-lex.

2    However, no (uniform) rules were developed on consolidated liquidation of a group of companies in bankruptcy.

Case 1:07-cv-07413-PKC    Document 16-8    Filed 06/03/2008    Page 4 of 16

Civil and Commercial Matters), which however did not apply to insolvency proceedings (Art. 1 of the Convention). It was therefore recognised that a convention on insolvency proceedings was necessary to complement the Brussels Convention.[3] The IR aimed to (eventually) solve the existing problems regarding cross-border insolvencies. The general objective of the IR is "to promote the proper functioning of the internal market, by enabling insolvency proceedings to operate efficiently and effectively throughout the Community."[4]

The IR has general application, is binding in its entirety, and is directly applicable in all Member States (as of 1 May 2004 including the 10 new entrants from central and eastern Europe), with the exception of Denmark.[5]

As set out above, the IR mainly provides rules of private international law. Save for a few exceptions, it does not contain rules of (uniform) substantive insolvency law.

It applies to collective insolvency proceedings which entail the partial or total divestment of a debtor and the appointment of a liquidator.[6] Annex A to the IR (exhaustively) lists the national insolvency proceedings per country that fall within the ambit of the IR.

The IR only applies to insolvency proceedings opened after its entry into force (31 May 2002) and does not apply to acts performed by the debtor before that date.[7]

Furthermore, the IR does not apply to insolvency proceedings concerning insurance undertakings, credit institutions, investment undertakings which provide services involving the holding of funds or securities for third parties, or to collective investment undertakings.[8] The reason they fall outside the IR is that they are subject to special arrangements and—to some extent—national supervisory authorities have extremely wide-ranging powers of intervention.[9] For example, the Council Directive (EC) 2001/17 on the reorganisation and winding-up of insurance undertakings applies to insurance undertakings. Council Directive (EC) 2001/24 on the reorganisation and winding-up of credit institutions deals with insolvency proceedings for such credit institutions. These directives have been im-

---

3    *See e.g.,* P.M. Veder, Cross-Border Insolvency Proceedings and Security Rights, Kluwer Legal Publishers, The Netherlands, 2004 (hereafter referred to as "Veder"), p. 94 *et seq.*

4    M. Virgós and F. Garcimartín, The European Insolvency Regulation: Law and Practice, The Hague, The Netherlands, 2004 (hereafter referred to as "Virgos c.s."), p. 3. *See also* Nrs. 2-4 of the Preamble to the Insolvency Regulation.

5    For the purpose of this Chapter, when reference is made to "EU," "Community" or "Member State(s)," this excludes Denmark.

6    Art. 1 (1) IR.

7    Art. 43 IR.

8    Art. 1(2) IR.

9    Preamble, Nr. 9.

plemented (or are being implemented) in national legislation in the Member States, thus harmonising the private international law rules on insolvency proceedings concerning such undertakings.

The IR is applicable irrespective of whether the debtor is a natural person or legal person, trader or consumer.[10] However, as follows from Art. 4 IR the national law applicable to the insolvency proceedings determines against which (types of) debtors insolvency proceedings may be brought on account of their capacity.

The IR only applies if the centre of the debtor's main interests ("COMI") is situated in a Member State.[11] Thus, if the insolvency proceedings are commenced within a Member State, but the debtor's COMI is situated outside the EU, the IR does not apply. Furthermore, it does not apply to insolvency proceedings opened outside the EU.

Only the intra-Community effects of insolvency proceedings are regulated by the IR. The effects vis-à-vis third countries are governed by the standard rules of private international law of the forum.[12]

It follows from the above that the application of the IR is limited in several respects. Therefore, it remains complemented by national law.

## III. Main Proceedings

### A. International Jurisdiction

The IR contains uniform rules on jurisdiction that determine in which Member State insolvency proceedings may be opened. Art. 3(1) IR provides that the courts of the Member State within the territory of which a debtor's COMI is situated shall have jurisdiction to open insolvency proceedings, bearing the character of "main proceedings."

Such main proceedings have universal scope and are intended to encompass all of the debtor's assets and affect all creditors, regardless of their location. The IR stipulates that main insolvency proceedings may be opened in only one location (Member State). The courts of other Member States may only open (secondary) "territorial proceedings," provided the debtor has an establishment within the territory of that other Member State.[13] Such territorial proceedings merely affect the assets of the debtor situated in the territory where the territorial proceedings have been opened. Furthermore, such proceedings limit the scope of the main proceedings, since those proceedings no longer affect the assets within the territory of the

---

10    *Ibid.*

11    Art. 3 IR; Preamble, Nr. 14.

12    Veder, p. 101, Virgos c.s., p. 22.

13    Art. 3(2) IR.

territorial proceedings. The territorial proceedings will be dealt with in more detail below.

## B. COMI

It follows from Art. 3(1) IR that the COMI is decisive in determining where the main proceedings may be opened. The national court (dealing with a request to open insolvency proceedings) is to establish whether a debtor's COMI is located in the territory of that Member State.

It is important that a uniform interpretation of the COMI concept by the various national courts (and third parties) exists. Nr. 13 of the Preamble refers to the COMI as "the place where the debtor conducts the administration of its interests on a regular basis and is therefore ascertainable by third parties." According to Art. 3(1), in the case of a company or legal person, in the absence of proof to the contrary, the place of the registered office (statutory seat[14]) shall be presumed to be the COMI.

However, the above is only a presumption. The fact a company that is incorporated under the laws of a non-Member State or has its registered office outside the EU does not preclude the applicability of the IR if that company's COMI is situated within a Member State.[15]

Recent case law on a national level shows that several national courts use different factual circumstances as decisive factors in determining where the COMI of a debtor is situated. As a result, several national courts have referred to the European Court of Justice ("ECJ") for a preliminary ruling on questions regarding COMI.[16] Thus, the ECJ may eventually provide for a more precise definition of COMI. Until then, differences between the several Member States in the interpretation of the COMI concept will continue to exist.

Once main proceedings have been opened in a Member State, the debtor's insolvent status is established and the courts of other Member States may subsequently open secondary proceedings without the debtor's insolvency being examined.[17]

## C. Choice of Law Rules

Pursuant to Article 17(1) IR, the decision opening the main proceedings produces the same effects in any other Member State as under the law of the Member State

---

14    See the other language versions (e.g., "siège statutaire"), see Virgos c.s., p. 45.

15    E.g., High Court of Justice (Ch D) of February 7 2003, Re BRAC Rent-A-Car International Inc, [2003] EWHC (Ch 128).

16    E.g., C 1/04 (Staublitz-Schreiber, judgment of the Court 17 January 2006) and C 341/04 (Eurofood, Opinion advocate general 27 September 2005), full text available at http://www.europa.eu.int/cj/en/transitpage.htm.

17    Art. 3(3) and 27 IR

of the opening of the main proceedings (*lex concursus*) unless the IR provides otherwise and as long as no territorial proceedings have been opened.

Articles 4-15 provide for a set of uniform conflict rules that determine which Member State's law is to be applicable to issues which will typically be encountered during the course of insolvency proceedings.[18] In cases where the laws of several Member States (and sometimes also third States) may potentially be applicable in a given situation, these uniform rules indicate which law shall govern that situation.

The objective of these conflict of law rules is to enable the parties affected (such as creditors) to calculate in advance what legal risks their relationship with the debtor entails, and to predict what law will govern their relationship in case of an insolvency of the debtor. The uniform rules ensure that any problems of applicable law in case of insolvency proceedings are resolved in the same manner in all of the Member States: they aim to achieve international harmony of result.[19]

It is again emphasised that, in principle, the IR and thus also these choice of law provisions are limited to regulating the intra-Community effects of insolvency proceedings.[20]

The choice of law provisions of the IR only refer to the substantive domestic law of the Member State concerned. They do not refer to choice of law rules, since that would defeat the very objective of the IR.[21]

### D. Main Rule: *lex concursus*

Art. 4(1) IR lays down the main rule that the law applicable to the insolvency proceedings is that of the State where the proceedings are opened (*lex concursus*). This general rule applies to both main proceedings and territorial proceedings.[22] The article gives a very broad and general description which includes the opening, conduct and closure of the insolvency proceedings, as well as their effects, both procedural and substantive, on the rights and obligations of all the parties concerned.[23]

---

18   *See also* C. Moss, I.F. Fletcher and S. Izaacs, The EC Regulation on insolvency proceedings: a commentary and annotated guide, Oxford University Press, 2002 (hereafter referred to as Moss c.s.) p. 45.

19   *See* Virgos c.s., p. 70.

20   *See also* Moss c.s., p. 46.

21   *See* Moss, p. 46/47.

22   *See* Moss c.s., p. 179; Virgos c.s., p. 72.

23   Virgos, c.s., p. 73.

Case 1:07-cv-07413-RKG Document 16-8   Filed 06/03/2008   Page 8 of 16

Art. 4(2) IR elaborates on the general rule of Art. 4(1) IR and contains a (non-exhaustive) list of matters which are subject to the law of the Member State in which the proceedings are opened.

The general rule stated in Art. 4 IR is subject to a number of exceptions, set out in Articles 5-15 of the IR. These exceptions aim to protect the legitimate expectations and the certainty of transactions in other Member States, as the application of the *lex concursus* may interfere with the rules under which transactions are carried out in other Member States.[24]

### E. Exceptions[25]

In a number of cases, the rights of creditors are excluded altogether from the effects of the insolvency proceedings. This is the approach adopted in respect of rights in rem, set-off and reservation of title.[26] In other cases, the IR provides that certain effects are governed not (only) by the *lex concursus*, but (also) by the law of the Member State concerned. In this respect the IR on the one hand provides for the effects to be given to the main proceedings in other Member States to be derived solely from the law of that other Member State. This approach has been adopted in respect of the effects of the main proceedings on contracts relating to immoveable property, payment systems and financial markets, contracts of employment, and pending lawsuits.[27] On the other hand, the IR in some cases requires a "cumulative application" of the *lex concursus* and the law of the Member State governing the transaction. This approach has been adopted in respect of the effects of the main proceedings on rights subject to registration.[28]

Hereafter, each exception mentioned above will be dealt with briefly.

### F. Third Parties' Rights in rem[29]

Art. 5(1) provides that the opening of insolvency proceedings shall not affect the rights in rem of creditors or third parties in respect of tangible or intangible, moveable or immoveable assets—both specific assets and collections of indefinite assets as a whole which change from time to time—belonging to the debtor, which are situated within the territory of another Member State at the time of the opening of the proceedings. According to Nr 25 of the Preamble there is a particular need for the exception regarding rights in rem, since these are of considerable importance for the granting of credit. The basis, validity and extent of such a right

---

24   Preamble Nr. 24.

25   *See* Veder, pp. 181-182.

26   Arts. 5, 6 and 7 IR.

27   Art. 8, 9, 10 and 15 IR.

28   Art. 11 IR.

29   On third parties' rights in rem, *see* Veder, in particular Chapter III (pp. 253-366).

in rem should therefore normally be determined according to the *lex situs* and not be affected by the opening of insolvency proceedings. The effect of Art. 5 is to exclude such rights in rem over assets located in another Member State from the universal scope of the main proceedings. Since Art. 4 does not apply, all matters relating to these rights in rem are governed by their own applicable law. As a practical effect of this exception, a holder of a right in rem can exercise that right over the debtors' local assets (in accordance with local law) regardless of whether the law governing the main proceedings or local insolvency law permits this. Any surplus remaining after the exercise of the rights in rem will be subject to the law and scope of the main proceedings.[30] It must be noted that Art. 5 does not prevent secondary proceedings from being commenced in respect of those local assets which may prevent the enforcement of such right in rem over the local assets, insofar as the local law applicable to the secondary proceedings determines this.[31]

Art. 5(1) applies to rights in rem over all types of assets, including intellectual and industrial property rights, claims and receivables and shifting pools of assets.[32] Art. 5(2) provides a list of rights which are to be regarded as being rights in rem within the meaning of Art. 5(1).

## G. Set-Off

Art. 6 IR provides that the opening of insolvency proceedings shall not affect the right of creditors to demand the set-off of their claims against the claims of the debtor, where such a set-off is permitted by the law applicable to the insolvent debtor's claim.

It is noted that set-off must be permitted by the law applicable to the *debtor's* claim and not to the creditor's claim. It is considered that Art. 6 only covers rights to set-off arising in respect of mutual claims incurred prior to the opening of the main proceedings. Whether claims arising after the opening can be set-off should be determined by the law of the insolvency proceedings pursuant to Art. 4 IR.[33]

## H. Reservation of Title

Pursuant to Art. 7(1) (IR) the opening of insolvency proceedings against the *purchaser* of an asset shall not affect the seller's rights based on a reservation of title where at the time of the opening of proceedings the asset is situated within the territory of a Member State other than the State of opening of these proceedings.

Art. 7(2) stipulates that opening of insolvency proceedings against the *seller* of an asset, after delivery of the asset, shall not constitute grounds for rescinding or ter-

---

30    *See* Moss, c.s., p. 181 and Preamble Nr. 25.

31    Moss, p. 182.

32    Virgos c.s., p. 101.

33 .  *See* Moss, c.s., p. 185.

minating the sale and shall not prevent the purchaser from acquiring title where at the time of the opening of proceedings the asset sold is situated within the territory of a Member State other than the State of the opening of these proceedings.

## I. Contracts Relating to Immoveable Property

Art. 8 stipulates that the effects of insolvency proceedings on a contract relating to immoveable property shall be governed solely by the law of the Member State within the territory of which the immoveable property is situated. Art. 8 applies to both contracts for the use of immoveable property (such as leases) and contracts covering the sale and transfer of immoveable property. [34]

## J. Payment Systems and Financial Markets

The effects of insolvency proceedings on the rights and obligations of the party to a payment or a settlement system or to a financial market shall be governed solely by the law of the Member State applicable to that system or market.[35] According to Nr. 27 of the Preamble there is a need for special protection in the case of payment systems and financial markets. It applies, for example, to the position-closing agreements and netting agreements to be found in such systems, as well as to the sale of securities and to the guarantees provided for such transactions. The only law which is material should thus be that applicable to the system or market concerned. The provision is intended to prevent the possibility of mechanisms for such payments and settlements being altered in the case of insolvency of a business partner.

## K. Contracts of Employment

The effects of insolvency proceedings on employment contracts and relationships shall be governed solely by the law of the Member State applicable to the contract of employment.[36] This provision recognises that there is a legitimate interest in contracts of employment and labour relations being governed only by the relevant national law. It should be noted, however, that only the contracts of the employment itself are governed by this exception. Issues arising out of contracts of employment in the context of insolvency proceedings (for example, the priority of a claim) will be governed by the law of the State of the opening of proceedings.[37]

The question of which national law is applicable to a contract of employment is determined by the Rome Convention.

---

34   Moss c.s., p. 187.

35   Art. 9 IR.

36   Art. 10 IR.

37   Moss c.s., p. 188.

## L. Rights Subject to Registration

Art. 11 provides that the effects of insolvency proceedings on the rights of the debtor in immoveable property, a ship or an aircraft subject to registration in a public register shall be determined by the law of the Member State under the authority of which the register is kept. This article recognises the significant role registration plays in protecting trade and legal certainty.[38] It is noted that Art. 11, in contrast to articles 8, 9, 10 and 15, does not provide that the right shall be determined solely by the law of the Member State. Therefore, Art. 11 gives competence to the law of the State of the register, but does not exclude the application of the *lex concursus*.

## M. Detrimental Acts

Art. 4(2)(m) provides that the *lex concursus* shall determine the rules relating to the voidness, voidability or unenforceability of legal acts detrimental to all creditors. Pursuant to Art. 13 this Art. 4(2)(m) shall not apply where the person who benefited from such act detrimental to all creditors provides proof that (i) the said act is subject to the law of the Member State other than that of the State of the opening of the proceedings *and* (ii) that law does not allow any means of challenging that act in the relevant case.

The wording "any means" is said to indicate that the act must not be capable of being challenged either under rules relating to insolvency or under the general law of the relevant Member State.[39]

## N. Protection of Third-Party Purchasers

If, after the opening of insolvency proceedings a debtor disposes, for consideration, of (i) an immoveable asset, (ii) a (publicly) registrable ship or aircraft or (iii) securities whose existence presupposes registration in a register, the validity of such act is governed by the law of the State within the territory of which the immoveable asset is situated or under the authority of which the register is kept.[40]

Like Art. 11 IR, Art. 14 IR does not provide that the validity of the act shall be determined solely by the law of the Member State. Thus it does not exclude the application of the *lex concursus*.

---

38    Virgos c.s., p. 141.

39    Moss c.s., p. 191.

40    Art 14 IR.

## O. Pending Lawsuits

Pursuant to Art. 15 IR the effects of insolvency proceedings on a pending lawsuit concerning an asset or a right of which the debtor has been divested, shall be governed solely by the law of the Member State in which the lawsuit is pending.

This article does not concern the effects of the insolvency proceedings on individual *enforcement actions* by creditors (such as execution and attachment), which are governed by the law of the Member State of the opening).[41] It only regulates the effects of the insolvency proceedings on litigation on the merits of the case (*i.e.*, pending lawsuits).[42]

## IV. Territorial (Secondary) Proceedings

### A. Function and Moment of Opening

As outlined above, the opening of main proceedings aims to provide for a single all-encompassing insolvency procedure, in accordance with the insolvency law of that single Member State. Under certain circumstances, however, it may be appropriate to commence secondary territorial proceedings.

The commencement of territorial insolvency proceedings according to the domestic law of the State in question serves to provide the necessary protection of local interests. By virtue of these proceedings, foreign debtors who operate through a local establishment can be made subject to the same insolvency rules as domestic debtors. As a result, privileges attached to a claim by local law may be protected which could otherwise be lost where these privileges are not recognised in foreign proceedings.[43]

Another valid ground may be found in the efficient administration of an estate too complex to administer as a unit, or where differences between the legal system concerned are so great that difficulties may arise from the extension of effects deriving from the law of the Member State governing the main proceedings to other States where (parts of the) assets are located.[44] The opening of territorial proceedings may for instance be necessary to include proprietary security rights of creditors in respect of assets situated in another Member State at the time of opening the main proceedings which, by virtue of Art. 5 IR, would otherwise not be affected.[45]

---

41    Art. 4(2)(f).

42    *See* Virgos c.s., p. 140.

43    Veder, p. 115; Virgos c.s., p. 156.

44    Preamble, Nr 19.

45    Veder, p. 115.

In principle secondary proceedings are opened subsequent to the opening of main proceedings. Art. 3(4) IR provides for two situations in which territorial insolvency proceedings may be opened prior to the opening of main insolvency proceedings:

> a) where main proceedings cannot be opened because of the conditions laid down by the law of the Member State within the territory of which the debtor's COMI is situated; or

> b) where the opening of territorial proceedings is requested by a creditor who has his domicile, habitual residence or registered office in the Member State within the territory of which the establishment is situated, or whose claim arises from the operation of that establishment.[46]

The liquidator in the main proceedings or any other person empowered under the national laws of the Member State within the territory of which the opening of secondary proceedings is requested, may file a request for secondary proceedings.

The liquidator in the main proceedings has certain powers to influence the territorial proceedings, with respect to a stay of liquidation, measures ending the territorial proceedings or the transfer of remaining assets therein.[47] The liquidators in both types of proceedings have a duty to communicate information to and cooperate with each other.[48]

Territorial proceedings instituted prior to main proceedings are not "secondary" proceedings and may be referred to as "independent territorial proceedings." Once main proceedings are opened such territorial proceedings become "secondary."[49]

## B. Establishment

The jurisdiction in which to open territorial proceedings is the courts of each Member State where the debtor (whose COMI must be located elsewhere within the EU) possesses an "establishment": any place of operations where the debtor carries out a non-transitory economic activity with human means and goods.[50] It is said that in order for a debtor to have an establishment there must be a certain level of organisation and stability and iteration with the forum.[51]

---

46    For the meaning of "establishment" see below.

47    Art. 33-35 IR.

48    Art. 31 IR.

49    Art. 36 IR.

50    Art. 2 (h) IR.

51  · Virgos c.s., p. 161.

The assessment whether a debtor has an establishment in a Member State is carried out at the date of the judgment opening the proceedings. It will not suffice that there was an establishment at an earlier date, nor is the judgment opening proceedings affected by a subsequent closure or cancellation of the establishment.[52]

## C. Scope

The presence of an establishment is thus critical in determining whether a court has jurisdiction to open territorial proceedings. However, whereas the effects thereof are restricted to those assets of the debtor that are situated within the territory of the Member State where these proceedings are commenced, it is irrelevant whether these assets are linked to the economic activities of the establishment.[53]

Art. 2 (g) IR further specifies the criteria determining whether or not different types of assets are "situated" within, thus falling under, the laws of the Member State where the territorial proceedings are conducted.[54]

## V. Recognition of Insolvency Proceedings

Art. 16 IR provides for an automatic recognition of the insolvency proceedings from the time that the judgment concerned becomes effective in the Member State opening the proceedings. The recognition does not depend on any formal requirement such as publication, registration or prior court approval.[55]

The grounds for non-recognition of the other Member State's decision are limited.[56] By virtue of Art. 26 IR, a Member State may only refuse to recognise proceedings opened in another Member State or to enforce a judgment handed down in the context of such proceedings where the effects of such recognition or enforcement would be manifestly contrary to that State's public policy, in particular its fundamental principles or the constitutional rights and liberties of the individual.

The principle of automatic recognition applies to both main proceedings and territorial proceedings. However, the effects of such recognition differ: main proceedings have universal effects, whereas the effects of territorial proceedings are

---

52   *See* Moss c.s., p. 175.

53   *Ibid*, p. 163.

54   Regarding the allocation of patents and trademarks, Art. 12 IR provides that a Community patent, a Community trademark or any other similar right established by Community law may be included only in the main proceedings.

55   Cf. Art. 16 and 17 IR.

56   Virgos c.s., pp. 211-212.

restricted to the assets of the debtor situated in the Member State where the terri-
torial proceedings have been opened.

Where Art. 16 IR provides for the automatic recognition of judgments opening
the insolvency proceedings, Art. 17 IR stipulates that the effects of the insolvency
under the law of the State of the opening of the proceedings shall be recognised in
all other Member States. Furthermore the powers of the liquidator must be recog-
nised in all other Member States.[57] Art. 25 rounds out the picture of recognition
by providing for the general recognition and enforcement of judgments relating to
the conduct and closure of insolvency proceedings (for example, compositions
approved by the court).[58]

## VI. UNCITRAL Model Law on Cross-Border Insolvency

As set out above, when describing the scope of the IR, the Regulation does not
apply beyond the borders of the EU. In other words, the IR only provides for rules
of private international law (conflict of law) within the EU. Consequently, there
may be a lacuna in the legislation, as far as the effects of insolvencies beyond the
borders of the EU are concerned. This lacuna will have to be filled in by national
legislation on private international law.

> For example, if a company is incorporated under the laws of a non-Member State
> and has its registered office outside the EU, but is declared bankrupt in a Member
> State where its COMI is situated, the IR will be applicable as far as the effects of
> the proceedings with the EU are concerned. However, whether such proceedings
> will also have effect in the non-Member State in which the company has its regis-
> tered office, depends on the rules of private international law of that State. Simi-
> larly, the effects of a bankruptcy opened in a non-Member State are not regulated
> by the IR. Such effects depend on each Member State's national rules of private in-
> ternational law.

To ultimately achieve global harmonisation in addressing cross-border aspects
of insolvency proceedings, on 30 May 1997, the United Nations Commission on
International Trade Law (UNCITRAL) adopted a Model Law on Cross-Border
Insolvency ("Model Law"). The Model Law serves as a flexible piece of legisla-
tion upon which States can base their national legislation pertaining to issues of
insolvency that extend beyond their borders of national jurisdiction.

Consequently, the legislators of the countries within the EU can utilize both the
Insolvency Regulation and the Model Law as guiding instruments for their na-
tional legislation. For example, Spain, Germany and Belgium have implemented

---

57    Art. 18 IR.

58    Moss c.s., p. 208.

national legislation on cross-border insolvency proceedings that is (to a large extent) based on the IR. England is on the verge of implementing the Model Law in national legislation.

Michael Veder
De Brauw Blackstone Westbroek
Tripolis
Burgerweeshuispad 301
1076 HR Amsterdam
The Netherlands
P.O. Box 75084
1070 AB Amsterdam
The Netherlands
Phone: 31-20-577-1470
Fax: 31-20-577-1737
E-mail: michael.veder@debrauw.com

Lucas P. Kortmann
De Brauw Blackstone Westbroek
Tripolis
Burgerweeshuispad 301
1076 HR Amsterdam
The Netherlands
P.O. Box 75084
1070 AB Amsterdam
The Netherlands
Phone: 31-20-577-1479
Fax: 31-20-577-1737
E-mail: lucas.kortmann@debrauw.com