UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
| | |
|---|---|
| In re | In a Proceeding Under Section 304 of the Bankruptcy Code |
| PARMALAT FINANZIARIA S.p.A. *et al.*, | |
| Debtors in a Foreign Proceeding. | Case No. 04-14268 (RDD) (Jointly Administered) |

------------------------------------------------------------x

| | |
|---|---|
| ABN AMRO BANK N.V., | |
| Appellant | District Court Case No. 07-cv-07413 (PKC) |
| - against - | |
| PARMALAT FINANZIARIA S.p.A., et al., | |
| Appellees. | |

------------------------------------------------------------x

**SUPPLEMENTAL MEMORANDUM OF APPELLEES
PARMALAT FINANZIARIA S.p.A., et al.**

Marcia L. Goldstein
Howard B. Comet
Brian J. Link
WEIL, GOTSHAL & MANGES, LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Appellees*
Parmalat Finanziaria S.p.A., et al.

Writing:

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................... 1  
THE PARMA COURT OPINION............................................................................ 1  
APPLICABLE CHOICE OF LAW PRINCIPLES .................................................. 4  
THE LAW APPLICABLE TO ABN'S BANKRUPTCY CLAIM .......................... 6  
CONCLUSION....................................................................................................... 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Agency for Deposit Insurance*, 313 B.R. 561 (S.D.N.Y. 2004), *aff'd*, 482 F.3d 612 (2d Cir. 2007)..........9

*Americredit Financial Services, Inc. v. Nichols (In re Nichols)*, 440 F.3d 850 (6th Cir. 2006)..........9

*Argo Fund Ltd. v. Board of Directors of Telecom Argentina (In re Board of Directors of Telecom Argentina)*, ___ F.3d ___, 2008 WL 2220682 (2d Cir. May 29, 2008)..........4, 6, 9, 13

*Buchwald v. Di Lido Beach Resort, Ltd. (In re McCann, Inc.)*, 318 B.R. 276 (Bankr. S.D.N.Y. 2004)..........9

*Canada Southern Railway Co. v. Gebhard*, 109 U.S. 527 (1883)..........4, 13

*Cunard S.S. Co. v. Salen Reefer Services AB*, 773 F.2d 452 (2d Cir. 1985)..........13

*In re EI International*, 123 B.R. 64 (Bankr. D. Idaho 1991)..........10, 12

*Lewis v. U.S. Department of Education (In re Lewis)*, 506 F.3d 927 (9th Cir. 2007)..........4, 9

*Pierro v. Taddeo (In re Taddeo)*, 685 F.2d 24 (2d Cir. 1982)..........9

*Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156 (1946)..........11

*Vesta Fire Insurance Corp. v. New Cap Reins. Corp*, 244 B.R. 209 (S.D.N.Y. 2000), *aff'd for reasons stated*, 238 F.3d 186 (2d Cir. 2001)..........10

## FOREIGN CASES

*In re Flightlease Ireland Ltd.*, [2005] IEHC 274 (High Court of Ireland 2005)..........11

*In re Parkside Flexibles SA*, [2006] B.C.C. 589 (U.K. High Court 2005)..........7

*Shierson v Vlieland-Boddy*, [2005] W.L.R. 3966, 3980 (U.K. Court of Appeal 2005)..........7

## FEDERAL STATUTES

11 U.S.C. § 304 ..................................................................................................... *passim*

11 U.S.C. § 1502(5) .........................................................................................................6

## FOREIGN LAW

EC Regulation 1346/2000 ..................................................................................... *passim*

Italian Civil Code Article 2704 ............................................................................. *passim*

Italian Bankruptcy Law Article 44 ................................................................................2

Italian Bankruptcy Law Article 45 ................................................................................2

Rome Convention of 1980 ..........................................................................................7, 8

## MISCELLANEOUS

M. Balz, "The European Convention on Insolvency Proceedings," 70 *Am. Bankr. L.J.* 485, 486 (1996) ..........................................................................4, 5, 7, 12

Black's Law Dictionary (8th ed. 2004) ........................................................................2

Federal Judicial Center, *International Insolvency* (2008) ..........................................5

I. Fletcher, *European Union Regulation on Insolvency Proceedings,* in *3 Collier Int'l Business Insolvency Guide (2007)* ................................................................4

I. Fletcher, *Insolvency in Private International Law* (1st ed. 1999) ........................8

G. Moss, I. Fletcher & S. Isaacs, *The EC Regulation on Insolvency Proceedings* (2002) ................................................................................................................11

J. Silkenat & C. Schmerler, *The Law of International Insolvencies and Debt Restructurings* (2006) .....................................................................................5, 6

A. Smits & I. O'Hearn, *Multinational Insolvency Forum Shopping,* in J. Silkenat, & C. Schmerler, *The Law of International Insolvencies and Debt Restructurings* 479 (2006) ............................................................................5, 6

M. Veder & L. Kortmann, *The EC Insolvency Regulation: European Cross-Border Insolvency*, in J. Silkenat & C. Schmerler, *The Law of International Insolvencies and Debt Restructurings* 567 (2006) ................................................. 5, 6

Virgos-Schmit Report on the Convention on Insolvency Proceedings ........................... 7, 8

Appellees Parmalat Finanziaria S.p.A., et al., respectfully submit this supplemental memorandum to respond to the issues raised in the Court's May 1, 2008 order. For the reasons discussed below and in Appellees' previously-filed brief ("Parmalat Brief"), the arguments asserted in this appeal by ABN Amro Bank N.V. ("ABN") lack merit and this Court should affirm the order of the Bankruptcy Court.

**Introduction**

The February 4, 2008 opinion of the three-judge Parma Court (the "Parma Court Opinion"), which upheld the rejection of ABN's bankruptcy claim, is relevant to all of the issues raised by this Court's May 1, 2008 order. The Parma Court Opinion is Exhibit A to the accompanying Declaration of Umberto Tracanella. A certified translation of the Parma Court Opinion – which corresponds to the pagination of the original – is Exhibit 1 in the accompanying Exhibit Binder. (All further references to "Exhibit" or "Exh." are to documents included in the Exhibit Binder).

The discussion below first summarizes the Parma Court rulings that relate to each of the issues raised by the Court. Thereafter, the broader context for those rulings under the law of Italy and the European Community is discussed.

**The Parma Court Opinion**

1. The first issue raised by the Court's order concerns the basis under choice of law principles for applying Article 2704 of the Italian Civil Code to ABN's bankruptcy claim. This issue involves a choice between Italian insolvency law and the contract law applicable to ABN's claim in the absence of any insolvency proceeding. The Parma Court held that, in an insolvency proceeding, the choice of law issue is governed by European Community law; specifically, Regulation 1346/2000 (the "EC Regulation")

(Exhibit 2), which "orders the application, to insolvency proceedings, of the law of the Member State in whose territory the proceeding itself was opened." (Parma Court Opinion at 7-8). The insolvency law of the forum country is the "*lex concursus*."[1] (Id.)

Under the EC Regulation, the forum's insolvency law governs "the claims which are to be lodged against the debtor's estate and the treatment of claims arising after the opening of the insolvency proceedings, [and] the rules governing the lodging, verification and admission of claims." (Parma Court Opinion at 8, quoting EC Regulation, Article 4(2)(g) & (h)). The Parma Court held that Articles 44 and 45 of the Italian Bankruptcy Law and Article 2704 of the Italian Civil Code make up the *lex concursus* and so govern the proof required for the admission of bankruptcy claims, since they "are dictated to protect the mass of creditors as a whole."[2] (Parma Court Opinion at 8). The Parma Court therefore rejected ABN's argument that "the applicable law was the law of the State of New York, with the resulting inapplicability of art. 2704 of the Italian Civil Code and art. 45 of the Italian Bankruptcy Law." (Id. at 7, 8-9).

Accordingly, while ABN relies upon a guarantee that contains a New York choice of law clause, the Parma Court held that Italian insolvency law governs the proof needed for admission of a bankruptcy claim based on that document. As discussed below, this

---

[1] A "concursus" is a legal proceeding, such as an insolvency case, which adjudicates the claims of two or more creditors to a fund or estate. *Black's Law Dictionary* (8th ed. 2004). The "lex" or law "concursus" is therefore the law of the insolvency proceeding.

[2] A certified translation of Articles 44 and 45 of the Italian Bankruptcy Law is set forth in Exhibit 3. Articles 44 and 45 invalidate transactions carried out after the date when an insolvency proceeding has been filed and bar bankruptcy claims that fail to satisfy the requirements of Article 2704 for proof that an agreement preceded the insolvency filing. These statutes apply equally to all creditors, both Italian and non-Italian.

2

ruling adheres to both the EC Regulation and settled choice of law rules, including rules that are consistently applied by U.S. courts (and were applied as recently as last week by the Second Circuit). Those rules dictate that, insofar as the proof or admission of bankruptcy claims is concerned, bankruptcy laws supersede the contract law (or other nonbankruptcy law) that would apply outside of bankruptcy.

2. The Parma Court Opinion establishes that ABN had the opportunity to present – and fully presented – its choice of law argument to the Italian court. The Parma Court considered and rejected that argument on the merits. (Parma Court Opinion at 7-9). Therefore, any issue about whether ABN sufficiently presented its choice of law argument is apparently moot.

3. The Parma Court Opinion also establishes that ABN fully presented its arguments and evidence on the "other circumstances" provision of Article 2704 (including proposed evidence and proposed discovery of additional evidence). The Parma Court discussed every item of evidence or proposed evidence, including every item referenced in ABN's brief in this Court. (See ABN Brief at 7-8). For the reasons stated by the Parma Court, ABN's evidence was found to be insufficient to prove its bankruptcy claim under long-established requirements of Italian insolvency law. (Parma Court Opinion at 2-5, 10-13).

4. The Parma Court rejected on the merits ABN's arguments: (1) that New York law, rather than Italian insolvency law, governs the admission of its bankruptcy claim; and (2) that ABN offered sufficient evidence to satisfy "the requirement [of Italian insolvency law] of the certainty of the date." (Parma Court Opinion at 6-7). The basis for the decision is described above and in the following sections of this memorandum.

3

**Applicable Choice of Law Principles**

The Parma Court applied a nearly universal choice of law principle, as embodied in the EC Regulation, that a forum's insolvency laws govern the admission of bankruptcy claims and therefore supersede (within their scope) the nonbankruptcy law that would otherwise apply to a legal claim.[3] U.S. courts have consistently followed the same principle, both (1) in holding that nonbankruptcy law is pre-empted by the Bankruptcy Code,[4] and (2) in granting comity to foreign proceedings in which foreign bankruptcy laws have superseded U.S. law.[5] Just last week, the Second Circuit upheld Section 304 relief regarding a foreign insolvency case that impaired rights under the federal Trust Indenture Act. *Argo Fund Ltd. v. Bd. of Dirs. of Telecom Argentina (In re Bd. of Dirs. of Telecom Argentina)*, ___ F.3d ___, 2008 WL 2220682, at *6 (2d Cir. May 29, 2008).

This principle is included in the EC Regulation as part of a "uniform code of choice of law rules for the cases to which it applies." Fletcher, *European Union*

---

[3] The EC Regulation "reaffirms the widely accepted rule that the *lex concursus* determines the effects of insolvency proceedings, both procedural and substantive, on the persons and legal relations concerned." I. Fletcher, *European Union Regulation on Insolvency Proceedings*, in 3 *Collier Int'l Business Insolvency Guide* at 43-29 (2007) (excerpted in Exh. 4). *See* M. Balz, "The European Convention on Insolvency Proceedings," 70 *Am.Bankr.L.J.* 485, 486 (1996) (insolvency law is a form of "'meta-law,' which modifies or supersedes practically all other branches of national legal systems") (Exh. 5).

[4] See cases discussed in Parmalat Brief at 23-26. The Ninth Circuit recently reiterated in *Lewis v. U.S. Dept. of Education (In re Lewis)*, 506 F.3d 927 (9th Cir. 2007), that "the very essence of bankruptcy laws is the modification or impairment of contractual obligations." *Id.* at 932 (quoting *In re Webber*, 674 F.2d 796, 802 (9th Cir. 1982)).

[5] See Parmalat Brief at 23-24, discussing *Canada Southern Ry. Co. v. Gebhard*, 109 U.S. 527 (1883), which granted comity to a Canadian bankruptcy proceeding that impaired obligations under New York contract law, and held that such impairment was "in entire harmony with the spirit of bankrupt laws, the binding force of which, upon those who are subject to the jurisdiction, is recognized by all civilized nations." *Id.* at 539.

4

*Regulation*, at 43-28.[6] "The purpose of these rules is to delineate the issues which are properly governed by insolvency law from those that should be treated as nonbankruptcy issues because nonbankruptcy policies should prevail, and then to determine the law applicable to such insolvency law situations." Balz, Exh. 5, at 506.

Paragraph 23 of the Preamble to the EC Regulation states the general principle established by the choice of law rules:

> This Regulation should set out, for the matters covered by it, uniform rules on conflict of laws, which replace, within their scope of application, national rules of private international law. Unless otherwise noted, the law of the Member State of the opening of the proceedings should be applicable (*lex concursus*) . . . [T]he *lex concursus* <u>determines all the effects of the insolvency proceedings, both procedural and substantive, on the persons and legal relations concerned.</u> It governs all the conditions for the opening, conduct and closure of the insolvency proceedings. [Emphasis added].

By adopting this principle, the EC Regulation gives notice of the applicable law and fosters the predictability of debtor-creditor relations in the event of insolvency. The EC Regulation gives primacy to the forum insolvency law for a "main proceeding," which the debtor must file in the country where it has its "center of main interests" or "COMI."[7] The EC Regulation therefore allows a creditor to determine (in advance of

---

[6] *Accord,* Federal Judicial Center, *International Insolvency* at IV.C.1 (2008) (the EC Regulation "provides uniform choice-of-law rules to determine the governing law for issues arising in a transnational insolvency proceeding, including the determination of the rights of foreign creditors and other parties in interest") (Exh. 6); M. Veder & L. Kortmann, *The EC Insolvency Regulation: European Cross-Border Insolvency*, in J. Silkenat & C. Schmerler, *The Law of International Insolvencies and Debt Restructurings* 567, 571 (2006) (the EC Regulation includes "a set of uniform conflict rules that determine which Member State's law is to be applicable to issues which will typically be encountered during the course of insolvency proceedings.") (Exh. 7).

[7] A. Smits & I. O'Hearn, *Multinational Insolvency Forum Shopping*, in Silkenat, at 479, 487 ("There can be only one main proceeding and it must take place in the member state

5

entering into a transaction) where its counterparty would file an insolvency proceeding and to identify the law that would apply in that proceeding – and be guided accordingly.[8] Here, it must have been obvious to ABN that a main insolvency proceeding concerning Parmalat S.p.A. (an Italian corporation based in Italy) would have to be filed in Italy and would be governed by Italian insolvency law (including Article 2704) to the extent required by the EC Regulation. Under U.S. law, comity should be accorded to that main proceeding. *Argo Fund*, 2008 WL 2220682 (upholding comity under Section 304 for Argentine insolvency proceeding of Argentine company).[9]

**The Law Applicable to ABN's Bankruptcy Claim**

The primary choice of law rule in the EC Regulation appears in subsection (1) of Article 4, which provides that "the law applicable to insolvency proceedings and their effects shall be that of the Member State within the territory of which such proceedings are opened." Although certain exceptions to this rule are stated in Articles 5-15, none of the exceptions applies to ABN's bankruptcy claim against Parmalat S.p.A.[10]

---

where the debtor has its COMI.") (Exh. 8). The EC Regulation specifically seeks to prevent forum shopping. EC Regulation, Preamble ¶ (4).

[8] "The objective of these conflict of law rules is to enable the parties affected (such as creditors) to calculate in advance what legal risks their relationship with the debtor entails, and to predict what law will govern their relationship in case of an insolvency of the debtor." M. Veder, Exh. 7, at 571.

[9] After Parmalat's bankruptcy filing, the comity requirement of Section 304 was replaced and continued by Article 15 of the Bankruptcy Code, which provides that comity should be accorded to a "foreign main proceeding" filed "in the country where the debtor has its center of main interests." 11 U.S.C. § 1502(5). This "center of main interests" language coordinates U.S. law with the EC Regulation and other international insolvency law. *See* Smits, Exh. 8, at 489-94.

[10] The exceptions include real property contracts and employment contracts. (EC Regulation, Articles 8 & 10). These exceptions for certain types of contracts confirm that the

6

ABN's claim is also governed by subsection (2) of Article 4, which lists specific subjects that are governed by the forum law. As relevant here, subsection (2) provides that forum law "shall determine in particular": (1) "the effects of insolvency proceedings on current contracts to which the debtor is a party," (2) "the claims which are to be lodged against the debtor's estate and the treatment of claims arising after the opening of insolvency proceedings," and (3) "the rules governing the lodging, verification and admission of claims." EC Regulation, Article 4(2)(e), (g) & (h).

Under Article 4 of the EC Regulation, the forum's insolvency law supersedes the contract law that would otherwise apply to a particular agreement. The EC Regulation thus takes priority over the 1980 Rome Convention, which gives effect in other contexts to the parties' choice of law in a contract. The Rome Convention is another European Community agreement and is the principal authority previously relied upon by ABN. (See ABN Brief at 20-22).

The priority of the EC Regulation over the Rome Convention is discussed in the Virgos-Schmit Report on the Convention on Insolvency Proceedings (the "Virgos-Schmit Report"), which is tantamount to the "legislative history" of the EC Regulation.[11] The

---

forum's insolvency laws supersede (within their scope) the nonbankruptcy law applicable to other types of contracts, including the guarantee on which ABN's claim is based.

[11] Relevant excerpts from the Virgos-Schmit Report are Exhibit 9. "It is common ground that resort may be had to the [Virgos-Schmit] report in order to assist in the interpretation of the [EC] Regulation." *Shierson v. Vlieland-Boddy*, [2005] 1 W.L.R. 3966, 3980 ¶ 47 (U.K. Court of Appeal 2005) (Exh. 10). *Accord, In re Parkside Flexibles SA*, [2006] B.C.C. 589 ¶ 4 (U.K. High Court 2005) (Exh. 11); Balz, Exh. 5, n.51 (the Virgos-Schmit Report "was discussed extensively and agreed to by the expert delegates but, unlike the Convention, was not formally approved by the Council of Ministers. Nonetheless, it will have considerable authority for courts in Member States.").

Virgos-Schmit Report explains that, under the EC Regulation, the forum's insolvency law displaces

> the law normally applicable under the common pre-insolvency rules on conflict of laws, to the act concerned. This happens for instance when Article 4 makes applicable the law of the State of opening of proceedings to invalidate any act (e.g., a contract) detrimental to all the creditors, even if the act is governed under the general rules on conflict of laws (if a contract, those of the 1980 Rome Convention), by the law of a different State.

Virgos-Schmit Report, Exh. 9, at 65, ¶ 90.[12]

We are not aware of any authority which holds that the Rome Convention is controlling where it conflicts with the EC Regulation. Indeed, even before the EC Regulation became effective in 2002, the rule was that insolvency law superseded the Rome Convention.[13] There is no basis, therefore, for ABN to dispute that, under the EC Regulation, Italian insolvency law supersedes the New York choice of law clause in the guarantee on which ABN's bankruptcy claim is based. Equally important, there is no basis for ABN to argue that this Court should deny comity to the Parma Court because it

---

[12] *Accord* Virgos-Schmit Report, Exh. 9, at 66 ¶ 91(e) ("To the extent necessary, the law of the State of the opening displaces the law of the contract determined in accordance with the 1980 Rome Convention."); *id.* at 80 ¶ 117 ("The general rule on conflicts of law is that it falls to the law of the Contracting State of the opening of proceedings to regulate the effects of the proceedings on current contracts to which the debtor is a party (Article 4(2)(e)). To this extent, the applicable national insolvency law interferes with and over-laps the rules applicable to contracts, which derive from the law applicable under the 1980 Rome Convention.").

[13] The U.K., like Italy, has adopted the Rome Convention. I. Fletcher, *Insolvency in Private International Law* 79 (1st ed. 1999) (Exh. 12). Nevertheless, under U.K. law, "in the event of any divergence between the effects generated by the governing law of the contract and those imposed by the law of bankruptcy itself, the latter will invariably prevail for the purpose of any proceeding over which the courts of the *forum concursus* have jurisdiction." *Id.*

8

applied a choice of law principle that is required by the EC Regulation and that, wholly apart from the EC Regulation, has been consistently applied by the U.S. courts.[14]

It is settled that U.S. bankruptcy laws may impair contract obligations that are enforceable outside of bankruptcy. *E.g., Americredit Financial Services, Inc. v. Nichols (In re Nichols)*, 440 F.3d 850, 854 (6th Cir. 2006) ("Bankruptcy laws have long been construed to authorize the impairment of contractual obligations."). ABN cannot argue, therefore, that Section 304 relief should be denied because the applicable foreign law (the EC Regulation) authorizes impairment of contract obligations by foreign insolvency laws (Article 2704). Indeed, just last week, the Second Circuit rejected the argument that Section 304 relief should be denied because Argentine insolvency laws impair rights under the Trust Indenture Act in the same way that U.S. bankruptcy laws impair rights under the Trust Indenture Act.[15] *Argo Fund*, 2008 WL 2220682, at *6.

---

[14] Contrary to ABN's arguments, bankruptcy laws supersede state statutes and other nonbankruptcy laws, including federal statutes, that are supported by strong public policy. (ABN Brief at 17-20; ABN Reply Brief at 9-10). "[T]he public policy of New York cannot override the unambiguous language of the Bankruptcy Code regardless of the wisdom of that policy." *Buchwald v. Di Lido Beach Resort, Ltd. (In re McCann, Inc.)*, 318 B.R. 276, 287 (Bankr. S.D.N.Y. 2004). *Accord, Argo Fund*, 2008 WL 2220682, at *6 (U.S. and Argentine bankruptcy laws supersede the public policy of the Trust Indenture Act); *Pierro v. Taddeo (In re Taddeo)*, 685 F.2d 24, 29 (2d Cir. 1982) ("A state law to the contrary must fall before the Bankruptcy Code."); *In re Agency for Deposit Ins.*, 313 B.R. 561, 564 (S.D.N.Y. 2004) (the Bankruptcy Code supersedes a "mandatory state statute," since "no state law can stand in the way of enforcement of § 304 of the Bankruptcy Code"), *aff'd on other gnds.*, 482 F.3d 612 (2d Cir. 2007).

[15] The Second Circuit upheld Section 304 relief even though the Argentine insolvency law – which impaired both contract obligations and rights under the Trust Indenture Act – was enacted *after* the debt instruments in question were issued. *See Argo Fund*, 2008 WL 2220682, at *1-2. *See also, Lewis*, 506 F.3d at 931-32 (bankruptcy laws may retroactively impair contract obligations). In contrast, the *data certa* law is a long-established Italian rule that ABN knew or should have known about before entering into the transaction on which its bankruptcy claim is based. (See Parmalat Brief at 7-8 & n.5).

The decision in *In re EI Int'l*, 123 B.R. 64 (Bankr. D. Idaho 1991), is squarely on point. *EI Int'l* held that the Bankruptcy Code superseded an Ontario choice of law clause in a Canadian creditor's contract with the debtor. As a result, the court disallowed the creditor's bankruptcy claim for damages that may be recovered under Ontario law, but are not authorized by the Bankruptcy Code. *Id.* at 67-68.[16] Since this U.S. ruling is the exact equivalent (or "mirror image") of the Parma Court ruling in the present case, the Parma Court's choice of law analysis cannot be repugnant to U.S. law or justify denying Section 304 relief. *Vesta Fire Ins. Corp. v. New Cap Reins. Corp*, 244 B.R. 209, 213 (S.D.N.Y. 2000) ("it is 'difficult to label as so prejudicial and inconvenient to U.S. creditors as to warrant denial of [§ 304] injunctive relief that which we [apply to] foreign creditors in our own cases'"), *aff'd for reasons stated*, 238 F.3d 186 (2d Cir. 2001).

In fact, "ABN does not dispute that bankruptcy law may curtail rights of contractual creditors." (ABN Reply Brief at 8). Nevertheless, "ABN argues that because the Note and Guarantee are governed by New York law, the Parma Court needs to enforce the contractual choice of law provision." (Id.). But ABN offers no explanation or authority for this argument. Under the settled rule codified in the EC Regulation, the New York choice of law provision is clearly superseded by Italian law requirements for the proof and admission of bankruptcy claims.

If ABN contends that Article 2704 does not govern the admission of claims in Italian insolvency proceedings, then its argument is plainly wrong. As the Parma Court

---

[16] The court stated that "Ontario Hydro asserts the [Ontario] choice of law provision in the standard contract governs the issue of damages. However, the proof and allowance of claims in bankruptcy are in the first instance, matters of federal [bankruptcy] law." *EI Int'l*, 123 B.R. at 67.

explained, Article 2704 applies when the rights of non-parties to an agreement are involved (here, the other creditors of Parmalat), and it therefore governs the proof required for the admission of bankruptcy claims. (Parma Court Opinion at 8). Even ABN's own Italian counsel conceded below that,

> under Italian law, if a creditor wants to rely on a document in order to prove its own credit vis a vis the Extraordinary Commissioner [Parmalat's bankruptcy trustee], Article 2704 of the Italian civil code applies. . . . In this context, the Extraordinary Commissioner should invoke the *data certa* requirement whenever there are reasonable doubts of the completeness and reliability of the documentation filed as a ground for (or in support of) the claim.

Declaration of Giuseppe Curto, R. 23, ¶¶ 9, 13.[17]

The Parma Court held that, under the EC Regulation, Article 2704 applies here because it governs the "admission of claims" and dictates the proof required for certain bankruptcy claims. (Parma Court Opinion at 8 (quoting EC Regulation Article 4(2)(g)). Under the choice of law rules in the EC Regulation, forum laws that govern the proof required for bankruptcy claims unquestionably supersede nonbankruptcy laws.[18] Again, this choice of law rule cannot possibly be repugnant to U.S. law, since U.S. courts follow the same rule. *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 162-63 (1946) ("In determining what claims are allowable and how a debtor's assets shall be

---

[17] As the quotation indicates, Mr. Curto did not dispute that Article 2704 applies to the admission of claims in Parmalat's insolvency case, but only whether the Extraordinary Commissioner properly applied Article 2704 to ABN's claim. (Id., R. 23, ¶¶ 18-21).

[18] *In re Flightlease Ireland Ltd.*, [2005] IEHC 274 (High Court of Ireland 2005) (Exh. 13) (under EC Regulation Article 4(2)(g) & (h), Irish law governed the admission of a claim filed in an Irish insolvency proceeding, regardless of any contrary French law); G. Moss, I. Fletcher & S. Isaacs, *The EC Regulation on Insolvency Proceedings* 49 (2002) ("The importance of paragraphs (g), (h), and (i) should also be noted, since they ensure that the law of the state of opening is determinative of each stage of the process of distribution of the estate, including the matter of what debts are, and are not, provable; . . . *[and] all aspects bearing upon proof and admission of claims*"). (Emphasis added) (Exh. 14).

11

distributed, a bankruptcy court does not apply the law of the state where it sits. . . . [B]ankruptcy courts must administer and enforce the Bankruptcy Act as interpreted by this Court in accordance with authority granted by Congress to determine how and what claims shall be allowed under equitable principles."); *EI Int'l*, 123 B.R. at 67 (Ontario choice of law clause was superseded by U.S. bankruptcy law, which governs "the proof and allowance of claims in bankruptcy").

Finally, if ABN contends that the Parma Court erred in its application of Article 2704 or the EC Regulation to ABN's specific claim, that is <u>not</u> an argument that Italian or European Community law is repugnant to U.S. law, and is not a basis for denying comity to the Parma Court.[19] Under Section 304 of the Bankruptcy Code, U.S. courts do not sit as appellate tribunals to correct individual errors supposedly made by foreign judges in applying the laws of their own countries. (See Parmalat Brief at 26-29). If ABN contends that there was such an error here, its remedy is to appeal to the Court of Appeal of Bologna and, if unsuccessful there, to the Italian Supreme Court. In addition, if ABN disputes the Italian courts' application of the EC Regulation, it may seek to appeal from the Italian Supreme Court to the European Court of Justice, which has the final say on European Community law. Balz, at 22 ("the ECJ is given jurisdiction to interpret the [EC Regulation] with binding effect on all Member States").

---

[19] ABN has asserted that it "is not challenging the fairness or constitutionality of the *data certa* statute," but rather only "the manner in which *data certa* has been applied by the Parma Court" (ABN Brief at 23), and that the Parma Court acted "in contravention of its own civil law" (ABN Brief at 8). Similarly, ABN has not challenged the choice of law principle under which insolvency laws supersede contract law. Instead, ABN has argued (without explanation) only that "the Parma Court needs to enforce the contractual choice of law provision." (ABN Reply Brief at 8; see also <u>id.</u> at 2).

The remedy ABN is seeking instead (denial of Section 304 relief) is effectively a request to relitigate in the U.S. courts the same claim ABN filed in Parmalat's insolvency proceeding in Italy. Put another way, ABN seeks to stop the Italian trial and appellate process in which it has fully participated (and continues to have appellate rights); switch judicial systems; and pursue a collateral attack in the United States on the final judgment of the Parma Court. As the Second Circuit recently reiterated, such a request

> is contrary to our longstanding recognition that foreign courts have an interest in conducting insolvency proceedings concerning their own domestic business entities, *see Cunard S.S. Co. v. Salen Reefer Servs. AB*, 773 F.2d 452, 458 (2d Cir. 1985), and that "creditors of an insolvent foreign corporation may be required to assert their claims against a foreign bankrupt before a duly convened bankruptcy tribunal," *id.* at 458-59; *see also Canada S. Ry. v. Gebhard*, 109 U.S. 527, 537 (1883) ("[E]very person who deals with a foreign corporation impliedly subjects himself to such laws of the foreign government, affecting the powers and obligations of the corporation with which he voluntarily contracts . . . .").

*Argo Fund*, 2008 WL 2220682, at *9.

## CONCLUSION

For the reasons discussed above and in Appellees' prior brief, the Court should affirm the order of the Bankruptcy Court.

Dated: New York, New York
June 3, 2008

/s/ Howard B. Comet
Marcia L. Goldstein
Howard B. Comet
Brian J. Link

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

Attorneys for Appellees