UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re                                              :    In a Proceeding Under
                                                   :    Section 304 of the
PARMALAT FINANZIARIA S.p.A. et al.,                :    Bankruptcy Code
                                                   :
        Debtors in a Foreign Proceeding.           :    Case No. 04-14268 (RDD)
                                                   :    (Jointly Administered)
----------------------------------------------------------x
ABN AMRO BANK N.V.,                                :
                                                   :
                Appellant                          :    District Court
                                                   :    Case No. 07-cv-07413 (PKC)
- against -                                        :
                                                   :
PARMALAT FINANZIARIA S.p.A. et al.,                :
                                                   :
                Appellees.                         :
                                                   :
----------------------------------------------------------x

## DECLARATION OF UMBERTO TRACANELLA

Umberto Tracanella states under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.  I am an Italian lawyer, and am admitted to the Milan Bar Association. Since December 2003, I have represented Dr. Enrico Bondi in his capacity as Extraordinary Administrator of Parmalat S.p.A. and certain of its affiliates. I have appeared on behalf of Dr. Bondi in a number of Italian proceedings, including the proceeding referenced in paragraph 2 below.

2.  ABN has submitted a claim in the Extraordinary Administration proceedings for Parmalat S.p.A., which is pending in the Parma Law Court. In its claim, ABN asserts that, on March 27, 2003, Parmalat S.p.A. issued a guarantee of a promissory



note from Wishaw Trading S.A. ABN's claim was excluded or rejected by the presiding Judge based on Article 2704 of the Italian Civil Code and Article 45 of the Italian Bankruptcy Law.

3. ABN sought review of the presiding Judge's ruling by a three-judge panel of the Parma Law Court. On February 4, 2008, the three-judge panel rendered its decision, which unanimously upheld the determination to reject or exclude ABN's claim. A copy of the decision issued by the three-judge panel (the "Judgment") is attached as Exhibit A. I understand that an English language translation of the Judgment will also be submitted to the court.

4. Article 2704 is a provision of Italian law that governs the claims procedure in insolvency cases, including the Parmalat S.p.A. Extraordinary Administration proceedings. Specifically, as the Judgment discussed, Article 2704 provides that, when a bankruptcy claim is based on a written agreement – such as the guarantee document relied upon by ABN – the claim cannot be admitted unless the claimant demonstrates, in accordance with the requirements of the statute, that the document was dated prior to the commencement of the insolvency proceedings.

5. The requirements of Article 2704 do not apply to disputes that are directly between the parties to a written agreement. Article 2704 applies instead to the enforcement of the agreement against third parties, such as the bankruptcy creditors of Parmalat S.p.A. The Extraordinary Administrator of Parmalat S.p.A., Dr. Enrico Bondi, represents the bankruptcy creditors and has asserted their rights under Article 2704. In this instance, if ABN's claim were admitted, it would improperly dilute the value of the claims of other Parmalat creditors.

6.  Article 2704 does not govern the interpretation of a written agreement. Rather, it governs the admission of a bankruptcy claim based on a written agreement. As the Judgment recognizes, Article 2704 and certain implementing provisions of the Italian Bankruptcy Law are part of the law governing the admission of claims in an Italian bankruptcy or insolvency proceeding. As such, Article 2704 applies to any bankruptcy claim based on a written agreement, regardless of the law that would govern the agreement in a proceeding outside of bankruptcy and regardless of any governing law provision that may be included in the agreement.

7.  As the Judgment also recognized, the application of Article 2704 to claims in the Parmalat S.p.A. Extraordinary Administration is required not only by Italian law, but also by the applicable regulations of the European Community. The European Community regulations provide that insolvency proceedings are generally governed by the law of the country in which such proceedings are pending. EC Regulation No. 1346/2000, Article 4. In particular, the regulations provide that the law of the country in which the insolvency proceeding is pending governs both "the claims which are to be lodged against the debtor's estate and the treatment of claims arising after the opening of insolvency proceedings" and "the rules governing the lodging, verification and admission of claims." Article 4(2)(g)&(h).

8.  The Judgment fully considered and rejected ABN's argument that, notwithstanding Italian law and the European Community regulations, its bankruptcy claim should be governed by a provision in the guarantee document that provides for New York law to govern. ABN may seek to appeal that decision to the Court of Appeal of Bologna and, if unsuccessful there, to the Supreme Court of Cassation of Italy.

Because an issue is also presented under the law of the European Community, if ABN is unsuccessful in the Italian courts, it may seek further review of that issue by the European Court of Justice, which is composed of judges from all member states of the European Community and is the highest authority on the law of the European Community.

9. The Judgment also considered in detail ABN's argument that it had presented (or could present) evidence that would satisfy the requirements of Article 2704. Every item of evidence relied upon by ABN is discussed in the Judgment and found to be insufficient. ABN may also seek to appeal that ruling to the Court of Appeal of Bologna and, if unsuccessful there, to the Supreme Court of Cassation of Italy.

Executed in Milan this 30th day of May, 2008.

Umberto Tracanella

# EXHIBIT A

Case 1:07-cv-07413-PKC   Document 18   Filed 06/03/2008   Page 5 of 19




**TRIBUNALE DI PARMA**

REPUBBLICA ITALIANA

IN NOME DEL POPOLO ITALIANO

Il Tribunale di Parma, composto dai Magistrati

Dr. Stellario BRUNO            Presidente
Dr. Giuseppe COSCIONI          Giudice est.
Dr. Giampaolo FABBRIZZI        Giudice

ha pronunciato la presente

S E N T E N Z A

Nella causa di opposizione allo stato passivo promossa da:

ABN AMRO BANK N.V., in persona del legale rappresentante pro tempore, rappresentato e difeso nel presente giudizio dagli Avv. Umberto Serra, Cesare Vecchio e Giuseppe Curtò, elettivamente domiciliato presso lo studio del primo in Parma,

ATTRICE

contro

PARMALAT S.p.a. in AMMINISTRAZIONE STRAORDINARIA, in persona del Commissario Straordinario, rappresentato e difeso nel presente giudizio dagli Avv. Raffaella



Sarti, Umberto Tracanella, Eduardo Spano e Giuseppe Maggioni, come da delega a margine della comparsa di risposta, elettivamente domiciliata presso lo studio della prima in Parma,

CONVENUTA

Iscritta la causa al n.1955/05 del Ruolo Generale, e dispostane l'assegnazione a sentenza all'udienza del 24 ottobre 2007, dopo che i Procuratori delle parti hanno presentato le seguenti conclusioni:

I Procuratori di parte attrice hanno così concluso: "Abn Amro Bank NV, come sopra rappresentata e difesa, chiede l'accoglimento delle seguenti conclusioni: Nel merito: -ammettere Abn Amro Bank NV allo stato passivo della procedura di Parmalat S.p.a. in Amministrazione Straordinaria in via chirografaria per l'importo di Euro 8.071.025,00.

In via istruttoria:

disporre una consulenza tecnica d'ufficio finalizzata a confermare: i) le date di spedizione (dal sistema informatico ABN Italia, di ABN New York, ABN Brasile), il tragitto percorso attraverso una o più *network service providers* e le date in cui sono transitati da tali *network services providers* di

2

tutti messaggi e-mail prodotti in causa come produzioni 6 e 9 allegate al ricorso per opposizione allo stato passivo; e

(ii) il funzionamento del sistema informatico utilizzato da ABN dal quale sono stati estratti i documenti prodotti come produzioni 7 e 8 allegate al ricorso per opposizione allo stato passivo e, in particolare, la non modificabilità o comunque l'alto grado di oggettività dei dati inseriti in tale sistema informatico.

Al fine di consentire al CTU nominato di effettuare le analisi necessarie, ABN chiede fin d'ora che Ill.mo Tribunale, tra l'altro:

(a) autorizzi il CTU ad accedere ai sistemi informatici di ABN Italia, ABN New York, ABN Brasile e Parmalat SpA ed acquisire copia anche informatica degli e-mails prodotti come produzioni 6 e 9 allegate al ricorso per opposizione allo stato passivo;

(b) autorizzi il CTU ad accedere ai sistemi informatici (del o) dei *network service providers* attraverso cui gli e-mails prodotti come produzioni 6 e 9 allegate al ricorso per opposizione allo stato passivo sono transitate e presso cui è (necessariamente) conservata una copia ed acquisire tale copia anche informatica;

(c) ordini al CTU di analizzare gli *headers* generati automaticamente dai diversi sistemi informatici di invio, ricezione e passaggio degli e-mails prodotti come produzioni 6 e 9 allegati al ricorso per opposizione allo stato passivo; e

(d) ordini al CTU di accedere ed analizzare il funzionamento e le caratteristiche operative e tecniche del sistema informatico di ABN New York;

**ordinare ai sensi dell'art. 210 c.p.c.**

(a)   alla Procedura di Parmalat SpA in AS, l'esibizione **del dettaglio delle garanzie rilasciate da Parmalat SpA ed in essere** alla data di insolvenza di Parmalat SpA e di ogni altro documento utilizzato dal Commissario Straordinario per determinare ed indicare nel Programma di Ristrutturazione il valore complessivo delle garanzie rilasciate da Parmalat

3

corso per SpA in 9.679 milioni di Euro e, in particolare, del dettaglio o di ogni altro documento che hanno permesso di determinare il valore delle garanzie di "*Promissory notes*" nell'importo di 826,7 milioni di Euro; e inoltre

(b) alla Procedura, alla Procura della Repubblica presso il Tribunale di Milano e al Presidente del Collegio davanti al quale è pendente il processo penale R.G. 12473/04, l'esibizione delle carte di lavoro della società di revisione Grant Thornton sulla base delle quali è stato certificato il prospetto contabile consolidato di Parmalat Finanziaria S.p.A. al 30 giugno 2003, carte che si trovano nel fascicolo del dibattimento del giudizio penale R.G. 12473/04;

ammettere i seguenti capitoli di prova testimoniale:

1. Vero che in data 14 marzo 2003 la sig.ra Giorgia Bocchi, dipendente della società Parmalat S.p.A., ha inviato dal proprio *account* di posta elettronica nell'ambito del sistema informatico Parmalat (giorgia.bocchi@parmalat.net) un messaggio e-mail (che si rammostra) alla sig.ra Tamara Cavallucci, all'indirizzo tamara.cavallucci@it.abnamro.com, confermandole l'accettazione da parte di Parmalat S.p.A. del formato della *promissory note* emessa da Wishaw Trading S.A. a beneficio della fornitrice Archer Daniels Midland Company e della relativa garanzia per avallo di Parmalat S.p.A. così come redatti da ABN.

2. Vero che in data 17 marzo 2003 la sig.ra Tamara Cavallucci di Abn filiale di Milano ha inviato dal proprio *account* di posta elettronica nell'ambito del sistema informatico di ABN tamara.cavallucci@it.abnamro.com un messaggio e-mail (che si rammostra) alla sig.ra Margaret Sirovatka Margaret.Sirovatka@us.abnamro.com contenente la traduzione in inglese del messaggio e-mail di cui al capitolo 1.

3. Vero che in data 10 marzo 2003 la sig.ra Angela Noique, di ABN filiale di New York, ha inviato dal proprio *account* di posta elettronica nell'ambito del sistema informatico di

ABN (angela.noique@abnamro.com) alle signore Tamara Cavallucci e Loredana Quintadamo agli indirizzi di posta elettronica tamara.cavallucci@it.abnamro.com e loredana.quintadamo@it.abnamro.com e per conoscenza ai signori Terrence Ward, Margaret Sirovatka, John Curch agli indirizzi Terrence.Ward@us.abnamro.com, Margaret.Sirovatka@us.abnamro.com, John.Curch@us.abnamro.com, un messaggio e-mail (che si rammostra) ove veniva comunicato che la signora Margaret Sirovatka aveva ottenuto la conferma da parte di Archer Daniels Midland Company circa la possibilità di richiedere a Parmalat l'inclusione nella formulazione della garanzia per avallo di Parmalat S.p.A. di una parte concernente il "Country Risk Event" e il "New Money Credit Event".

Si chiama a testimoniare sul capitolo 1 la sig.ra **Giorgia Bocchi** domiciliata presso Parmalat S.p.A. in Amministrazione Straordinaria via Oreste Grassi Collecchio (PR), sul capitolo 2 la sig.ra **Tamara Cavallucci** domiciliata presso la filiale di Milano di ABN, via Ludovisi 16 Milano e sul capitolo 3 la sig.ra **Angela Noique** domiciliata presso ABN filiale di New York dipartimento Credit Portfolio Management.

Con vittoria di spese, diritti ed onorari.

5

I Procuratori di parte convenuta hanno così concluso:

"Voglia l'Ill.mo Tribunale adito, ogni contraria azione eccezione e/o deduzione reietta, nel merito respingere l'opposizione ex adverso proposta per i motivi tutti di cui ai propri atti difensivi e, per l'effetto, confermare l'esclusione dalla stato passio della Parmalat S.p.a. in A.S. dell'importo richiesto da ABN Amro Bank N.V. Con vittoria di spese, diritti ed onorari di giudizio."

### SVOLGIMENTO DEL PROCESSO

Con ricorso ex art. 98 R.D. 267/42 Abn Amro Bank proponeva opposizione avverso l'esclusione del proprio credito dallo stato passivo di Parmalat S.p.A. in A.S., a seguito di provvedimento del Tribunale di Parma del 16/12/2004, chiedendo l'ammissione del credito vantato.

A base della propria richiesta l'opponente deduceva di aver messo a disposizione della Wishaw Trading S.A. un finanziamento per l'ammontare complessivo di USD 10.000.000,00, finanziamento che veniva utilizzato da Wishaw attraverso l'emissione in data 27 marzo 2003 di una *promissory note* garantita per avallo da Parmalat S.p.a.

Il giudice delegato aveva escluso la domanda di ammissione al passivo di Abn Amro Bank ritenendo che i documenti prodotti dalla opponente fossero privi

di data certa.; tale conclusione era errata in quanto la legge applicabile era quella dello stato di New York con conseguente inapplicabilità degli artt.2704 c.c. e 45 l.f.; alla luce dei documenti che si producevano sussisteva comunque il requisito della certezza della data.

Si costituiva l'opposta Parmalat S.p.A. in A.S., contestando gli assunti avversari e chiedendo il rigetto dell'opposizione ex adverso intrapresa e la conferma del decreto di esclusione opposto.

Dopo il deposito delle memorie ex artt.180, 183 e 184, l'opponente insisteva per l'ammissione delle prove orali dedotte in atto introduttivo e nella memoria istruttoria; con provvedimento 7/12/2006, a scioglimento della riserva, il giudice istruttore rigettava l'istanza di ammissione di prove avanzata dall'opponente e fissava per la precisazione delle conclusioni l'udienza del 24/10/2007.

Le parti precisavano le proprie conclusioni e, all'udienza del 24 ottobre 2007, la causa veniva assegnata a sentenza

### MOTIVI DELLA DECISIONE

La domanda dell'opponente è infondata e, pertanto, deve essere respinta.

Per quanto infatti riguarda la normativa applicabile, il Regolamento Europeo 1346 del 30

7

giugno 2000 dispone l'applicazione alla procedura concorsuale della legge dello Stato membro nel cui territorio è aperta la procedura stessa. Sempre in base al Regolamento, tale legge ("lex concursus") determina - tra le altre cose - quali siano "i crediti da insinuare nel passivo del debitore e la sorte di quelli successivi all'apertura della procedura di insolvenza, le disposizioni relative all'insinuazione, alla verifica e all'ammissione dei crediti".

Tra queste certamente vi sono le norme che dispongono in merito alla inopponibilità alla procedura, e quindi la inammissibilità allo Stato Passivo della stessa, degli atti privi di data certa; in particolare, proprio perché i medesimi sono dettati a tutela della massa dei creditori, gli articoli 44 e 45 L.F. e l'art. 2704 c.c. devono considerarsi componenti la lex concursus e sono quindi applicabili al caso di specie.

Relativamente poi alla posizione del Commissario Straodinario, nessun dubbio vi può essere sul fatto che lo stesso, come il Curatore Fallimentare, debba essere considerato soggetto terzo rispetto ai creditori che richiedono l'insinuazione al passivo e rispetto al fallito, per tutti gli atti e i negozi compiuti dalla società in bonis; proprio per questo motivo chi pretende di far valere un credito nei

8

confronti della procedura è tenuto a dimostrare la certezza della data in cui tale credito sia sorto ai sensi dell'articolo 2704 c.c. (cfr. ad esempio: Sentenza Corte di Cassazione 22 settembre 2004 n.18998; Sentenza Corte di Cassazione 4 giugno 2003 n. 8914; Sentenza Corte di Cassazione, sez I, 28 maggio 2003 n. 8545; Sentenza Corte di Cassazione, sez I, 20 luglio 2000, n. 9539, in Giust. Civ., Mass. 2000, 1580; Sentenza Corte di Cassazione 8 febbraio 2000, n. 1370 in Giust. Civ., Mass. 2000, 265; Sentenza Corte di Cassazione 6 maggio 1998, n. 4551 in Giust. Civ., Mass. 1998, 945).

Ai sensi degli artt.45 L.F. e 2704 c.c. la scrittura privata non autenticata può essere opposta al fallimento (in questo caso all'amministrazione straordinaria) solo se munita di data certa; in particolare l'art.2704 c.c., nel disporre che la certezza della data di una scrittura privata (non sottoposta a registrazione né ad autentica), deve ritenersi raggiunta rispetto ai terzi dal giorno in cui si verifica un fatto, diverso dagli eventi ivi specificamente previsti, che stabilisca in modo egualmente certo l'anteriorità della formazione del documento, lascia all'interprete di decidere caso per caso se ad un fatto possa attribuirsi eguale forza probante.

9

L'art. 2704 c.c. fornisce dunque tre esempi di atto giuridico: l'autenticazione della sottoscrizione della scrittura, la registrazione della scrittura, la riproduzione della scrittura in atto pubblico; in tutti e tre i casi quella che rileva non è la data originale del documento primitivo, ma quella, successiva, dell'atto giuridico idoneo a conferire al documento la certezza di datazione.

Si deve poi rilevare come l'applicazione dell'art. 2704 c.c. debba essere particolarmente rigorosa essendo la norma di cui si tratta volta a tutelare i creditori concorsuali proprio nel caso - statisticamente frequente - in cui il debitore, nonostante l'intervenuta procedura concorsuale, compia atti dispositivi del proprio patrimonio o assuma obbligazioni.

Relativamente al merito della presente causa, nessuno dei documenti prodotti in giudizio riporta una dichiarazione, una data ed una firma apposti da un pubblico ufficiale.

Un altro dei principali argomenti sostenuti dalla difesa di parte opponente consiste nei messaggi e-mail estratti dal data base di ABN nei quali vengono registrati i dati relativi alle operazioni concluse dalla banca con i propri clienti; ciò che impedisce però di ritenere che i messaggi in esame soddisfino il requisito della "data certa" è il contenuto degli

10

stessi, posto che negli stessi il riferimento a garanzie prestate da Parmalat S.p.a. è estremamente generico (quale garanzia? per quale opèrazione?), per cui anche una consulenza tecnica sul punto non avrebbe alcuna rilevanza.

Peraltro, neppure l'ulteriore documentazione prodotta dalla ricorrente in fase di opposizione fornisce la prova necessaria per l'ammissione al passivo del preteso credito.

Non vi è infatti alcun elemento per ritenere che la promissory note, la garanzia e le lettere in atti siano stati effettivamente scritti nelle date risultanti sugli stessi, mentre per quanto riguarda il fax, la data può essere modificata dall'utilizzatore.

Non essendo stata fornita la prova che le garanzie per le quali è causa siano state formate in data anteriore rispetto a quella di apertura della procedura concorsuale, la domanda attrice non può trovare accoglimento

Quanto alle richieste istruttorie riproposte dall'opponente in sede di precisazione delle conclusioni, si deve precisare come non possa essere ammessa la prova per testi dedotta dalla opponente in quanto i fatti idonei a stabilire inequivocabilmente la certezza della data di una scrittura privata non autenticata e, quindi,

11

l'anteriorità della formazione del documento, ai fini della sua opponibilità ai terzi, ai sensi dell'art. 2704 c.c. non possono formare oggetto di prova testimoniale ( vedi Cass. N.3742/66; Cass. 12.12.1974 n. 4235; Cass. 9.6.1972 n. 1806); tale principio, come è stato rilevato, trova logico e giuridico fondamento nella disposizione del citato art. 2704, la quale, stabilendo che la data di una scrittura privata, non autenticata, può essere accertata, rispetto ai terzi, solo con la registrazione oppure a mezzo delle situazioni e dei fatti equipollenti, previsti dal comma 1, in esse compresi tutti quei fatti idonei a stabilire l'anteriorità della formazione del documento, comporta implicitamente la esclusione della prova testimoniale (Cass. 9 maggio 1962 n. 931), con la conseguente inammissibilità anche per l'ipotesi in cui essa abbia per oggetto diretto ed immediato l'accertamento di tali fatti, in funzione strumentale rispetto all'accertamento della data ("Seppure si può ammettere una prova testimoniale e, quindi, per presunzioni, per dimostrare la data della sopravvenuta impossibilità fisica di uno dei sottoscrittori del documento o la data della registrazione o della morte, quando i pubblici registri siano andati distrutti o smarriti, e tali mezzi di prova possono essere altresì invocati per

12

dimostrare uno degli altri fatti o accadimenti dai quali si possa desumere, in modo ugualmente certo, che il documento è stato formato prima del fatto o dell'accadimento stesso, non è ammessa la prova per testimoni e, quindi, per presunzioni, per accertare la data della scrittura privata non autenticata di fronte ai terzi" (Cass. 28 giugno 1963 n. 1760).

Del tutto irrilevante appare anche la richiesta di esibizione, posto che le ricostruzioni effettuate dal Commissario Straordinario o da società di revisione in epoca non immediatamente successiva alla apertura della amministrazione straordinaria non sarebbe comunque idonea a fornire la prova del requisito della data certa, potendo unicamente dimostrare che alla data della ricostruzione vi era la menzione di una garanzia, ma nulla potendo dire su quando la stessa fosse stata formata.

Le spese seguono la soccombenza.

P.Q.M.

Il Tribunale, definitivamente pronunciando, disattesa o respinta ogni contraria o diversa istanza, eccezione e deduzione, così decide:

A) respinge l'opposizione;

B) condanna l'opponente al pagamento delle spese di lite in favore della convenuta, liquidate in € 18.400,00, di cui € 200,00 per spese, € 2.200,00 per

diritti, € 16.000,00 per onorari, oltre rimborso spese generali, IVA e C.P.A..

Parma, 4 febbraio 2008

   Il Giud.est.                       Il Presidente



14