UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x

In re                                                          Bankruptcy Court
                                                               Case No. 04-14268 (RDD)
PARMALAT FINANZIARIA S.p.A., et al.,


    Debtors in a Foreign Proceeding.
---------------------------------------------------------x
ABN AMRO BANK N.V.,

                    Appellant,                                 District Court
                                                               **Case No. 07-cv-07413 (PKC)**

- against -

PARMALAT FINANZIARIA S.p.A.,

                    Appellee.
---------------------------------------------------------x

## DECLARATION OF GIUSEPPE CURTÓ
## SUBMITTED PURSUANT TO ORDER DATED MAY 1, 2008

**GIUSEPPE CURTÓ** hereby declares under penalty of perjury as follows:

### PERSONAL BACKGROUND AND QUALIFICATIONS

1.      I am an attorney at law in Milan, Italy.  I qualified at the Catholic University of Milan (Università Cattolica del Sacro Cuore di Milano) on July 11, 1997, and was admitted to the Milan bar in 2001.

2.      From March 2000 to April 2001, I worked as an attorney at law in the litigation department of Gianni Origoni Grippo & Partners.

3.      Since April 2001, I have been working as an attorney at law in the litigation department in the Milan office of Freshfields Bruckhaus Deringer, except for a period as a secondee in the international arbitration department in the Paris office of Freshfields Bruckhaus Deringer from January 2007 to September 2007.

4.      On April 28, 2004, I was appointed by ABN AMRO Bank N.V. New York branch ("ABN" or the "Bank") as its attorney at law in order to represent and assist the Bank in its legal proceedings against Parmalat S.p.A. ("Parmalat") in Extraordinary Administration (the "Proceeding" or "Extraordinary Administration").  In particular, I have assisted the Bank in the legal proceedings against the Extraordinary Commissioner in order to be recognized as an unsecured creditor of Parmalat's bankruptcy estate.

5.      Based upon my representation of ABN, I have personal knowledge of the matters set forth herein.  I submit this declaration to address and respond to the questions set forth in this Court's May 1, 2008 Order.

## ABN'S CLAIMS BEFORE THE PARMA COURT

6.      On June 4, 2004, the Bank filed before the Court of Parma ("Parma Court") an unsecured claim on the Parmalat bankruptcy estate totalling $9,999,999.91 (or € 8.071.025,00, at the exchange rate as of the declaration of insolvency of Parmalat).  (See Exhibit 1, p. 2). Specifically, ABN's claim was grounded on a guarantee (per aval) issued by Parmalat (the "Guarantee") securing payment of a Promissory Note for $9,999,999.91 issued by Wishaw Trading S.A. (a company controlled by Parmalat) on March 27, 2003 in favor of Archer Daniels Midland Company (for the payment of a supply of agricultural commodities).

7.      On July 29, 2004, the Extraordinary Commissioner of Parmalat filed his report including his position with the Parma Court regarding the claims to be included on the schedule of liabilities, indicating a negative opinion on the inclusion of ABN's claim.  The Extraordinary Commissioner argued that inclusion of the Bank's claim could not be enforced in the Proceeding pursuant to Article 45 of the Bankruptcy Law and Article 2704 of the Civil Code (the *data certa*

statute), due to the absence of certified dates in the documents to be enforced against Parmalat. (Id.).

8. In an order issued on August 3, 2004, the Parma Court set a deadline of September 18, 2004 for any comments concerning the provisional list of claims to be filed, and for the submission of any new documents in addition to those already filed with the request for listing on the schedule of liabilities. (Id.).

9. By the above-cited deadline, ABN filed its own comments, supplemented by new documents, which were followed by responses from the Extraordinary Commissioner on November 3, 2004, and rebuttal from ABN on November 8, 2004. (Id. at 3).

10. Once that brief exchange of written briefs was concluded, in an order of December 16, 2004, published in the Official Gazette of the Republic of Italy on December 28, 2004, the Delegate Judge ordered ABN's claim to be excluded from the list of creditors on *data certa* grounds. (Id.).

11. By a motion, pursuant to Article 98 of Italian Bankruptcy Law, filed on January 27, 2005, ABN opposed the schedule of liabilities in the Proceeding. (Id.; see Exhibit 2).[1]

12. In its motion, ABN requested that the Court include its claim based, in part, on the argument that the law of the State of New York governs the Guarantee by virtue of Articles 9 and 14 of the Rome Convention.[2] (Exhibit 1, p. 3; Exhibit 2, pp. 3-6).

---

[1] There is a typographical error in Exhibit 2. The original should have been dated January 27th, 2005, and not 2004. The brief clearly refers to events occurring during 2004, and it was served on the Extraordinary Commissioner at the end of February 2005.

[2] The Rome Convention does not set any limits on the probative effect of a private agreement with respect to third parties, even if it lacks a certified date.

13.     In a statement of appearance of July 4, 2005, Parmalat appeared in the proceeding, requesting that ABN's opposition be dismissed. (Exhibit 1, p. 4). Parmalat's request addressed ABN's New York choice of law arguments. (Id. at 4-5).

14.     By way of a brief submitted pursuant to Articles 170 and 180 of the Civil Procedure Code (C.P.C.), ABN responded to Parmalat's appearance. (Id. at 5).

15.     Subsequently, at the hearing on March 21, 2006, the Parma Court set October 15, 2006 as the deadline for filing preliminary briefs, and November 15, 2006 for rebuttal evidence arguments. (Id. at 6). The Proceeding was adjourned until the hearing scheduled on November 26, 2006, for the admission of evidence. (Id.).

16.     ABN reiterated its arguments by a brief submitted pursuant to Article 184 of the Civil Procedure Code. (Id.).

17.     Despite both the Promissory Note and Guarantee containing a choice of law provision as the result of an arms-length negotiation between sophisticated business entities selecting New York law as the applicable law, the Parma Court excluded ABN's request to be admitted among the creditors of Parmalat. (Id. at 8).

18.     On February 4, 2008, the Parma Court issued its final judgement denying ABN's claim in the Extraordinary Administration on *data certa* grounds (the "Judgment"). (Exhibit 3). The Parma Court, in apparent reliance upon European Regulation 1346 of June 30, 2000, Articles 44, paragraph 1, and 45 of Italian bankruptcy law, and Article 2704, paragraph 1, of Italian civil code, denied both ABN's attempts to present evidence as to the validity and date of the Guarantee and, contrary to how ABN's claims would have been adjudicated in the United States, ABN's claim in its entirety. (Exhibit 3).

**QUESTIONS AND RESPONSES**

**Q 1(a):   Are choice of law principles routinely applied in contract matters by Italian Courts as to the validity, enforceability and execution of a contract?**

19.   Yes, in disputes between the parties to a contract but **not** in circumstances where a contract is sought to be enforced against a third party (such as the Extraordinary Commissioner or a receiver in bankruptcy). Under Italian law, in fact, the Extraordinary Commissioner has both the right to step into the shoes of the insolvent entity (such as Parmalat) where it so chooses and, for a number of purposes (in particular for evidentiary purposes), has the unique benefit of opting, where it is beneficial, to be treated as a third party (affording it protection of the more stringent evidentiary rules, including *data certa*). The Italian Supreme Court has held that:

> The receiver in bankruptcy, in determining the insolvent entity's list of creditors and liabilities of the bankruptcy estate, acts as a third-party both vis à vis the creditors of the insolvent entity requesting the admission of their claims and vis à vis the insolvent entity itself. A consequence of this principle is the applicability of Article 2704 of the Italian civil code and, for this reason, the requirement of a certain date of the documents to be used as evidence of the claim.[3]

20.   Thus, the parties' choice of law would not be given effect in an insolvency context. Here, the Parma Court did not apply the parties' choice of New York law provision to determine the enforceability, validity, and execution of the Promissory Note and Guarantee.

21.   Indeed, in disputes involving an Extraordinary Commissioner, rather than applying choice of law principles, Italian Courts (like the Parma Court) first apply the gatekeeper statute of *data certa* before reaching a choice of law analysis.

---

[3]   Judgement of the Supreme Court, July 20th, 2000, n. 9539; see also: Supreme Court, Section I, November 22, 2007, n. 24320; Supreme Court, Section 1, September 22, 2004, n. 18998; Supreme Court, Section I, November 19, 2003, n. 17543.

**Q 1(b):    What principles, under Italian law, permitted the Court in Parma to apply the <u>data certa</u> principle (Article 2704 of the Italian Civil Code) to the agreement at issue?**

22.    The Parma Court apparently relied upon European Regulation 1346 of June 30, 2000, Articles 44, paragraph 1, and 45 of Italian bankruptcy law, and Article 2704, paragraph 1, of Italian civil code rather than the parties' choice of law provision.  As detailed below, the Parma Court's application of these principles was contrary to a well settled Italian law concerning (i) the right of parties' to choose the controlling law in a contract; and (ii) the ability of a party to prove the existence of a contract as of a certain date.

23.    Pursuant to Article 44, paragraph 1, of Italian bankruptcy law: "*any contracts entered into by the insolvent company and any payments made by the same after the declaration of insolvency are ineffective vis à vis the creditors* [of the insolvent company]."  This means that should a creditor need to file its claim in the bankruptcy proceedings, it needs to provide evidence that its claim against the insolvent company arose before the date of the declaration of insolvency.

24.    Article 45 of the Italian bankruptcy law states that: "*Any formalities necessary to enforce any contract against third parties have no effect against the creditors* [of the insolvent company] *if they are performed after the date of the declaration of insolvency*."

25.    Under Article 2704, paragraph 1, of the Italian civil code: "*the date of a document the signature of which has not been certified is not certain and cannot be asserted vis à vis third parties, except from the day on which the document was registered into a public register or from the date of death or supervening physical incapacity to sign of the person or persons who signed it, or from the date on which other facts occur which establish with equal certainty that the document was created earlier*."  This is known as the *data certa* statute.

26. Article 2704, paragraph 1, of the Italian civil code is a specific Italian rule regulating the evidentiary value of a document when filed as evidence against a third party (such as in the circumstances of the Extraordinary Commissioner). The aim of the *data certa* statute is to avoid collusion between the parties to a document to the detriment of a third party (e.g., artificially creating a document proving a false debt to the detriment of other creditors).

27. The above provisions provide that a document may not be used as evidence of a claim against a bankruptcy estate (as a third party) unless it has a date certain (within the meaning of Article 2704, paragraph 1, of the Italian civil code) preceding the opening of an insolvency proceeding.

28. The Parma Court held that the law applicable to the Proceeding was that of Italy, in whose territory the bankruptcy proceeding was opened. (Exhibit 3, p. 8). This law, *lex concursus*, determines the conditions for the opening of the proceedings, their conduct and their closure. (Id.). In particular, *lex concursus* establishes "the claims which are to be lodged against the debtor's estate and the treatment of claims arising after the opening of the insolvency proceedings, the rules governing the lodging, verification and admission of claims." (Id.).

29. Accordingly, the Parma Court never considered the parties' choice of New York law but, rather, applied Italian civil law to determine the validity and enforceability of the Guarantee.

30. Similarly, the Parma Court ignored ABN's attempts to avail itself of the opportunity to request that the Parma Court consider evidence under the "other circumstances" exception of Article 2704.

31. If the Parma Court had found that the Promissory Note and Guarantee had a date certain (i.e., did not use *data certa* as a gate-keeping statute to bar ABN's claim), it is conceivable that

the Parma Court would have then applied New York law to determine the enforceability of the Promissory Note and Guarantee in the Proceeding. But, that stage was never reached because the Parma Court did not initially apply the parties' choice of New York law provision in considering the existence and validity of the contracts.

**Q 2:** **Are there procedural requirements governing the proper and adequate presentation the Court in Parma of an argument to that New York law ought to apply as to the validity, enforceability and execution of the agreement at issue? Does the record reflect whether ABN AMRO complied with those requirements?**

32. Yes and yes. There are procedural requirements governing the proper and adequate presentation of an argument by ABN to the Court in Parma that New York law ought to apply as to the validity, enforceability and execution of the Promissory Note and Guarantee. And, the record reflects that ABN fulfilled its obligations for asserting its argument that New York law ought to be applied.

33. Notably, ABN dedicated multiple pages to briefing this issue before the Parma Court. (Exhibit 2, pp. 3-6). And, the Parma Court acknowledged in the Judgment that ABN presented the argument. (Exhibit 3, p. 7). ABN's final statement of defense, submitted to the Parma Court in relation to the Judgment, described in greater detail the procedural requirements ABN complied with. (Exhibit 1, pp. 1-11).

34. There was no mention in the Proceeding that ABN had not properly presented its argument to the Court or otherwise complied with the requisite procedures.

35. Rather, the Parma Court never reached the issue of whether New York law, chosen by the sophisticated business parties, is to be applied to the Guarantee. Instead, the Parma Court chose to apply Italian civil law (Article 2704) to the Guarantee.

**Q 3(a):** **Was ABN AMRO afforded the opportunity to present evidence on the "other circumstances" exception under Article 2704?**

36. Absolutely not. ABN's attempts to present evidence, which are summarized below and set forth at length in the exhibits referenced below and attached hereto, were rejected by the Parma Court.

**Q 3(b):** **Did it avail itself of that opportunity?**

37. ABN availed itself of the opportunity to request that the Parma Court consider evidence under the "other circumstances" exception of Article 2704. Indeed, ABN attempted to introduce evidence on numerous occasions and, as set forth below, the Parma Court rejected each attempt and refused to reconsider its decisions. Ultimately, the Parma Court issued the Judgment, which states:

> With regard to the evidentiary requests re-proposed by the objecting party during the pleading stage, it must be pointed out that the proof by means of witnesses claimed by the objecting party cannot be admitted as the facts for unequivocally establishing the certainty of the date of a non-authenticated private agreement and, therefore, the prior nature of the formation of the document, so that it can be objected to with regard to third parties, in accordance with art. 2704 of the Italian Code, cannot be the subject of testimonial proof … this principle, as has been seen, finds its logic and legal grounds in the regulations of art. 2704 of the Italian Civil Code which, by establishing that the date of a private agreement, not authenticated, can only be verified, with respect to the third parties, with registration or by means of the equivalent situations and facts, specified in clause 1, including all those facts which can establish the prior nature of the formation of the document ….

(Exhibit 3, pp. 11-12). This ruling essentially vitiates the "other circumstances" exception to Article 2704.

38. In its attempts to prove, pursuant to the "other circumstances" exception, that the Guarantee was dated prior to the Extraordinary Administration, ABN filed the following documents with the Parma Court:

(a) An explanatory table of the loan proposed by Wishaw Trading S.A. to ABN and of the Guarantee connected with the proposed financing transaction (Exhibit 4) (the "Table");

(b) An in-house memorandum relating to the loan requested by Wishaw Trading S.A. and the relevant Guarantee (Exhibit 5) (the "In-House Memorandum");

(c) An e-mail message sent on March 10, 2003 by Ms. Angela Noique of ABN's branch in New York to Ms. Tamara Cavallucci and Ms. Loredana Quintadamo, both of ABN's branch in Milan, regarding the negotiations for the granting of the Guarantee (Exhibit 6) (the "March 10 E-Mail"); and

(d) An e-mail message sent on March 14, 2003 by Ms. Giorgia Bocchi of Parmalat to Ms. Tamara Cavallucci of ABN's branch in Milan to confirm the acceptance by Parmalat of the format of the promissory note and the Guarantee as drafted by ABN (Exhibit 7) (the "March 14 E-Mail").

39. In its briefs (see Exhibit 1, pp. 11-15), ABN argued that these further documents could be used to prove that the Guarantee was dated prior to the Extraordinary Administration for the following reasons:

(a) The Table and the In-House Memorandum were extracted from the internal ABN data bases and archives where every date of any transaction executed by the Bank with its clients (as well as any relevant information regarding its clients) are registered. The date and time of creation of any of these documents is automatically assigned by the internal software of the Bank, and are not user-generated, nor can the date and time be modified or altered by the end-user in any way, without leaving a trace of such modification/alteration; and

(b) The March 10 and 14 E-Mails were sent or received through the Bank's internet service provider ("ISP"). The ISP automatically logs date and time of transmission of any e-mails. The internal logging system is managed by the ISP, a third party completely unrelated to ABN, and therefore the date and time of the e-mails could not have been modified by the Bank (and could be independently verified by requesting the same logs to the ISP).

40. As these documents make explicit reference to the Guarantee, ABN stated that the documents submitted to the Court were capable of establishing the date of the Guarantee itself. In other words, the fact that such documents had a *data certa* and made reference to the guarantee were "facts which establish with equal certainty that the document was created earlier" according to Article 2704, paragraph 1, of the Italian civil code.

41. In furtherance of its efforts to satisfy the "other circumstances" exception to Article 2704, ABN also requested that the Parma Court appoint an expert to confirm that the dates of e-mails and other documentation extracted from ABN's data base were not alterable by the parties and therefore could be used to establish that the Guarantee was dated prior to the Extraordinary Administration. (See Exhibit 1, pp. 15-19).

42. By interim order dated October 24, 2007, the Parma Court rejected ABN's application for the appointment of an expert. ABN requested that the Parma Court reconsider the interim order. The Parma Court, however, refused the application and in the Judgment finally rejected it once again. (Exhibit 3).

43. ABN persisted in its efforts to introduce evidence to establish that the date of the Guarantee preceded the Extraordinary Administration. Specifically, ABN applied to the Parma Court to be allowed to submit witnesses on the e-mails exchanged between ABN and Parmalat during the negotiations of the Guarantee. (Exhibit 1, pp. 32-39). In particular, ABN's submission on oral evidence related to the following facts:

    (a) That on March 14, 2003, Ms. Giorgia Bocchi, a Parmalat employee, sent an e-mail message to Ms. Tamara Cavallucci, an ABN employee, in order to confirm that Parmalat had accepted the wording of the promissory note issued by Wishaw Trading and the relevant guarantee;

(b) that on March 17, 2003, Ms. Tamara Cavallucci sent to Ms. Margaret Sirovatka, an ABN employee, a translation of the March 14 E-Mail (see Exhibit 7); and

(c) that on March 10, 2003 Ms. Angela Noique, an ABN employee, sent to Ms. Tamara Cavallucci and to Ms. Loredana Quintadamo an e-mail message giving notice that Ms. Sirovatka obtained Archer Daniels Midland Company's (the beneficiary of the promissory note) confirmation that ABN could request Parmalat to include the "Country Risk Event" and the "New Money Credit Event" clauses in the Guarantee (see Exhibit 6).

44. In an interim order dated October 24, 2007, the Parma Court rejected ABN's application for oral evidence, and held that pursuant to Article 2704 facts which can only be proved through certainty of the date of a document cannot be proved by oral evidence. This determination also precluded ABN from obtaining the oral evidence of Banca Intesa, S.p.A. – a bank located in Parma whose officer, L. Panizzi, actually witnessed the signature of Parmalat's chairman on the Guarantee. (Exhibit 8).[4]

45. ABN requested that the Parma Court reconsider its interim order, arguing that its decision not to allow ABN's evidentiary submissions was in breach of well established principles set out by the Italian case law, stating that oral evidence can be used in order to provide evidence of facts which may prove "with equal certainty that the document was created before [the same facts]" (Article 2704 of the Italian Civil Code) in order to indirectly prove the date of a document.[5]

---

[4]  The original Promissory Note and Guarantee was a two-sided document. (Exhibit 8, p. 1 ¶ 3).

[5]  To reject all of ABN's attempts to prove the existence of the Guarantee under the "other circumstances" exception to Article 2704 is contrary to the express holdings of the Italian Supreme Court. The highest court in Italy has held that "Article 2704 of the Italian civil code does not contain an exhaustive list of facts on the basis of which the date of a non certified document may be considered 'certain' vis à vis third party. Article 2704 of the Italian civil code allows the Judge discretion to evaluate, on a case by case basis, the existence of a fact, different from the registration in a public register, capable to obtain the s.c. 'data certa' of a document (Supreme Court, section I, June 28, 1963, n. 1760). The case law, while it prevents the use of witnesses and circumstantial evidence on the date

46.     Notwithstanding ABN's attempt to challenge the interim order of the Parma Court, the Parma Court rejected once again all submissions for oral evidence. (Exhibit 3, pp. 11-13).

47.     In order to prove that the Guarantee was issued by Parmalat before the commencement of the Extraordinary Administration, on September 6, 2004 ABN filed before the Parma Court an application to be allowed access to Parmalat's accounting records held by the Extraordinary Commissioner. (Exhibit 9). In particular, Parmalat's accounting documentation containing the list of guarantees issued by Parmalat in the first six months of 2003 on the basis of which Parmalat had calculated the aggregate amount of the guarantees as indicated in the semi-annual accounts as of June 30, 2003.

48.     ABN's application was granted by the Parma Court on September 7, 2004.

49.     However, when ABN attempted to have access to such accounting records, Parmalat's officer (Mr. Trovati) denied that any of such information existed/was available and that it was therefore impossible to reconstruct the list of the guarantees.

50.     On September 15, 2004, ABN formally requested that the Extraordinary Commissioner formally confirm that a list of guarantees granted by Parmalat in favor of any company existed in

---

itself of a document (Supreme Court, section I, June 4, 1986, n. 3742), nevertheless **allows the use of witnesses and circumstantial evidence on the other facts which are capable of establishing with equal certainty that the document was created earlier**" (emphasis added) (Italian Supreme Court, November 6, 2006, n. 23793).

The same principle, explained better, has been applied by the District Court of Vicenza clarifying that: "… if it is undisputed that the certainty of the date of a document may be given through the evidence of facts or events occurred before the relevant event (in the circumstances the insolvency), from which it is possible to infer with equal certainty that the document has been drafted before such fact or event, there is no reason why proof of such facts or events cannot be obtained through witnesses. This is not excluded by Article 2704 of the Italian civil code which, as said, only relates to the evidence of the date of the document and not to the evidence of facts capable to give certainty to the date of the same document. This is not excluded by the first Paragraph of Article 2704 of the Italian civil code, which does not require that facts or events be proved by a documentary evidence … Limits of Article 2704 of the Italian civil code do not concern the possible means of evidence, but the possible object of the proof, which is limited to facts establishing with equal certainty that the document was created earlier …" (District Court of Vicenza, March 10, 1984).

Parmalat's files. The Extraordinary Commissioner never replied to such request. (Exhibit 10; see also ¶ 52, infra).

51. In order to give evidence that the Guarantee had been issued before the Proceeding commenced, ABN further argued as follows.

52. In the restructuring plan submitted by the Extraordinary Commissioner to the Ministry of Productive Activities under Article 4, par. 2, Marzano Decree (the "Restructuring Plan"), the Extraordinary Commissioner acknowledged that the aggregate amount of all the guarantees granted by Parmalat as of December 24, 2003 (date of declaration of insolvency) was in excess of €9,000 million, consisting of the following:

    (a)    €1,403,7 million for loans and derivatives;

    (b)    €5,966,1 million for bonds;

    (c)    €826,7 million for promissory notes; and

    (d)    €373,9 million for others debts.

53. By comparing the aggregate value of the guarantees resulting from the Restructuring Plan with the one resulting from Parmalat's financial statements as of December 31, 2002 (€5,632 million), it would result that between January, 2003 and December 24, 2003, Parmalat had issued guarantees for an amount of €4,407 million. (See Exhibit 11, pp. 70, 94-95; Exhibit 12).

54. Moreover, the fact that the Extraordinary Commissioner could calculate the aggregate amount of the guarantees granted by Parmalat in 2003 (as detailed above), suggested that:

    (a)    the Extraordinary Commissioner had documentation available showing details of the guarantees;

    (b)    the Extraordinary Commissioner had the documents containing details of each guarantee granted by Parmalat on 2003; and

 (c) the Extraordinary Commissioner's denial as to the existence of internal records showing the list of guarantees was a clear lie and its refusal to give access to the list of the guarantees as resulting from his records was clearly illegal.

55. In its brief, ABN also pointed out that before the Proceeding commenced, Grant Thornton was an accountant to Parmalat and that therefore the detailed indication of the guarantees issued between January 1, 2003 and June 30, 2003 (this is the period in which the Guarantee was issued) should be available in Grant Thornton's working papers. (See Exhibit 1, pp. 6-7, 9, 20, 23, 32).

56. In the light of all above, ABN requested that the Parma Court order disclosure under Article 210 of the Italian code for civil proceedings:

 (a) of any documents held by the Extraordinary Commissioner as used to calculate the aggregate amount of the guarantees issued by Parmalat as indicated in the Restructuring Plan; and

 (b) of any working paper used by Grant Thornton as auditor of Parmalat.

(Exhibit 1, pp. 19-32).

57. With an *interim* order dated October 27, 2007, the Parma Court rejected ABN's application for discovery, affirming that the indication of the details of the guarantees in files held by the Extraordinary Commissioner would only prove that some guarantee would exist but it would not guarantee the *data certa* to the Guarantee.

58. ABN invited the Court to reconsider this *interim* order, clarifying once again the importance of such discovery. But, the Parma Court eventually rejected ABN's request in its Judgment. (Exhibit 3).

59.     After approximately three and one-half years, on February 4, 2008, the Parma Court rejected ABN's claim after refusing to admit any of the evidence submitted by ABN. (Exhibit 3).

**Q 4(a):     Did ABN Amro properly and adequately preserve it claims on appeal that the judgment of the Court in Parma was in error?**

60.     Yes. As set forth above, ABN sought to introduce extensive evidence demonstrating the date of the Guarantee as permitted by the clear and unambiguous text of the *data certa* statute, Article 2704 ("…other facts which establish with equal certainty that the document was created earlier"). Judge Coscioni (the judge responsible for the interim rulings and a member of the three judge panel responsible for the Judgment) rejected each effort to introduce such evidence on an interim basis and rejected ABN's requests for reconsideration. The Parma Court ultimately held in the Judgment that ABN's claim would not be allowed without admitting any of the evidence ABN sought to introduce. ABN is going to appeal the Judgment shortly to the Court of Appeal of Bologna. It is anticipated that this appeal will not be resolved until 2011-12.

**Q 4(b):     Under what principles did the appellate court sustain the decision of the Court in Parma?**

61.     No appellate court has ruled on the Judgment.

62.     The Parma Court sustained the decisions of Judge Coscioni, which excluded the evidence ABN sought to present, concluding, among other things, that oral testimony could never be admitted to prove the date of the Guarantee.[6]

---

[6] As stated above, there was an individual from an independent bank who witnessed Parmalat's chairman's signature and could have testified if Italian law did not preclude such evidence.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 2nd day of June 2008

_____
Giuseppe Curtó