# EXHIBIT 1

COPY FOR THE TRIAL RECORD

## COURT OF PARMA

### Bankruptcy Section – G.R. 1955/05 – Bankruptcy Judge Giuseppe Coscioni

In the opposition to the schedule of liabilities of Parmalat S.p.A. in Extraordinary

Administration, initiated by petition from

**ABM Amro Bank N.V.** (hereinafter "**ABN**" or the "**Bank**"), with Attorneys Cesare

Vecchio, Giuseppe Curtò, and Umberto Serra

*- claimant*

> COURT OF PARMA
> FILED IN THE REGISTRY
> DEC. 21, 2007
>
> THE CLERK B3
> Iride Andreoli [signed]

versus

the **Parmalat S.p.A. in Extraordinary Administration** Proceeding (hereinafter

"**Parmalat in E.A.**" or the "**Proceeding**"), with Attorneys Umberto Tracanella, Eduardo

Spano, Giuseppe Maggioni, and Raffaella Sarti

*- defendant*

### STATEMENT OF CLAIM ON BEHALF OF ABN AMRO BANK N.V.

\*     \*     \*

### FACTS AND PROGRESS OF THE TRIAL

**1.** In March 2003, the New York Branch of ABN AMRO Bank N.V., (hereinafter, "**ABN**" or the "**Bank**"), made available to the company Wishaw Trading S.A. (hereinafter "**Wishaw**"), a loan for the total amount of USD 10,000,000.00, for the purpose of allowing the beneficiary to purchase a delivery of agricultural products from the Archer Daniels Midland Company.

**2.** Wishaw made use of the loan by issuing a promissory note on March 27, 2003, backed by a guarantee of payment from Parmalat S.p.A., for an amount equal to USD 9,999,999.91, plus interest and additional costs as required by law, expiring on March 19, 2004, in favor of the supplier Archer Daniels Midland Company,

ITA123404/7102899-0563

which then transferred the promissory note to the Bank, and thus received payment for it (doc. **2** of the Proof of Debt Claim).

**3.** Subsequently, as of the expiration of the promissory note, Wishaw did not pay the amount due to the Bank.

**4.** Based on the guarantee of payment of the promissory note, Parmalat S.p.A. thus owed ABN, jointly and severally with Wishaw, in the amount of USD 9,999,999.91, equal to € 8,071,025.00.

**5.** By an order issued on December 24, 2003, the Ministry of Productive Activities ordered that Parmalat S.p.A. be subjected to an extraordinary administration procedure, and subsequently, in a decision issued on December 27, 2003, the Court of Parma declared Parmalat S.p.A. to be insolvent.

**6.** By a request filed at the Bankruptcy Registry of the Court of Parma on June 4, 2004, ABN requested that its claim of €8,071,025.00 be listed on the schedule of liabilities in the Extraordinary Administration Proceeding for Parmalat S.p.A.

**7.** On July 29, 2004, the Extraordinary Commissioner of the Parmalat S.p.A. Extraordinary Administration, filed at the Court of Parma his report including his position regarding the claims to be included on the Proceeding's schedule of liabilities, indicating a negative opinion on the inclusion of ABN's claim, arguing that the security cited as grounds for the Bank's request that the claim be included, could not be enforced in the Proceeding pursuant to art. 45 of the Bankruptcy Law and art. 2704 of the Civil Code, due to the absence of certified dates in the documents to be enforced against the Proceeding.

**8.** In an order issued on August 3, 2004, the Bankruptcy Judge set a deadline of September 18, 2004 for any comments concerning the provisional list of claims to be filed, and for the submission of any new documents in addition to those already filed with the request for listing on the schedule of liabilities.

2

**9.** By the above-cited deadline, ABN filed its own comments, supplemented by new documents, which were followed by responses from the Commissioner on November 3, 2004, and rebuttal from ABN on November 8, 2004.

**10.** Once that brief exchange of written briefs was concluded, in an order of December 16, 2004, published in the Official Gazette of the Republic of Italy on December 28, 2004, the Delegate Judge ordered ABN's claim to be excluded from the list of creditors, stating that: *"......all of the documents submitted by the instant claimant lack certified dates, and in particular, the claimant has not provided proof that the guarantees cited as grounds for the request were issued on a date before the bankruptcy proceeding was opened, nor that any facts exist which establish with certainty the precedence of the establishment of those guarantees (in particular, both the promissory note and the guarantee show only the date on which they are claimed to have been issued, without any certification of those dates; the letters and e-mails in the documents are not valid for the purpose of demonstrating certified dates, as there is no certification that they were written on the dates which they bear)."*

**11.** By an appeal pursuant to Art. 98 Bankruptcy Law, filed on January 27, 2004, ABN opposed the schedule of liabilities in the Proceeding, requesting that the Honorable Court include its claim on that schedule, based on the arguments we summarize here:

(i)      the law of the State of New York (United States of America), which governs the guarantee of payment issued by Parmalat S.p.A. on March 27, 2003 (the "**Guarantee**"), by virtue of Articles 9 and 14 of the Rome Convention, does not set any limits on the probatory effect of a private agreement with respect to third parties, even it lacks a certified date. Nor are there any limits in the Italian procedural system regarding the use of private agreements, where such evidence is generally

3

admitted. It follows that the documents filed in the proceeding fully prove the date of the claim held by ABN against the Proceeding;

(ii)    in any event, ABN submitted documents which demonstrate with certainty, in accordance with Art. 2704 of the Civil Code, the precedence of the issuance of the Guarantee with respect to the insolvency of Parmalat SpA;

(iii)    according to established case law, Art. 2704 of the Civil Code constitutes an evidentiary limit applicable only to the date of the entry, but not to the date of the act which produced the results which a party wishes to enforce against third parties. Indeed, such proof can be provided by any means allowed by law, including witnesses and prima facie evidence, provided that the relationship to be demonstrated does not require the written form *ad substantiam* or *ad probationem*.

ABN thus requested that a Court-appointed Expert Opinion be admitted, in order to analyze the functioning and operational characteristics of ABN's internal computer system, and the system for transmitting electronic mail messages used by ABN, in order to demonstrate the certainty of the dates which appear on the documents submitted. ABN also requested the admission of oral testimony aimed at proving that Parmalat sent the e-mail message of March 14, 2003, in which Mrs. Giorgia Bocchi confirmed to Mrs. Tamara Cavalucci that Parmalat S.p.A. had accepted the format of the documents containing the promissory note of March 27, 2003, and the Guarantee (our doc. 4, enclosed with the opposition to the schedule of liabilities).

**12.** In a statement of appearance of July 4, 2005, Parmalat SpA in E.A. appeared in this proceeding, requesting that ABN's opposition be dismissed, on the following grounds:

(i)    Articles 9 and 14 of the Rome Convention only govern the proof of existence of the legal act underlying the document, whereas the present proceeding regards a different problem, that of the attribution of a certified date to a

4

document, and the enforceability of that document against third parties. As a consequence, the only laws applicable to the case at hand are Art. 45 of the Bankruptcy Law and Art. 2704 of the Civil Code;

(ii)     according to Court of Cassation decisions, during the preparation of the schedule of liabilities, the bankruptcy trustee (in this case, the Extraordinary Commissioner) is alleged to be a third party with respect to the claimants and the bankrupt party, and thus the proof of precedence of the Guarantee with respect to the Extraordinary Commissioner, must be provided in accordance with Art. 2704 of the Civil Code, and can not be provided by witnesses or prima facie evidence;

(iii)    in any event, if the Court were to consider as applicable the tendency of case law which holds that the proof of execution of the transaction can be provided by any means allowed by law, then the documentary submissions made by ABN would however not be sufficient as prima facie evidence to prove that the promissory note and Guarantee were established prior to the time the Proceeding was opened;

(iv)    The Court-appointed Expert Opinion requested by ABN would be of an exploratory nature, and as such would be inadmissible.

**13.** By a brief pursuant to Articles 170 and 180 of the Civil Procedure Code (C.P.C.), ABN responded to the opposing party's appearance, noting that:

(i)     in accordance with Art. 2704 of the Civil Code, the certainty of the date of a private agreement which has not been authenticated or registered, may also be determined with respect to third parties through atypical tools other than those expressly indicated in the statutory provision, and the evaluation of the suitability of the tool used to establish the certainty of the date, constitutes an assessment which is de facto referred to the trial-level Judge;

5

(ii)     the dates which are shown on the documents and e-mails submitted are certified pursuant to Art. 2704 of the Civil Code, in as much as they were recorded automatically by computer systems which were no longer available to the authors of the documents, and therefore could not have been manipulated or forged by the same.

The Proceeding responded by repeating the considerations previously expressed in the statement of appearance.

**14.** Subsequently, at the hearing of March 21, 2006, the Judge set October 15, 2006 as the deadline for filing preliminary briefs, and November 15, 2006 for rebuttal evidence arguments, and adjourned the proceeding until the hearing of November 26, 2006, for the admission of evidence.

**15.** By a brief pursuant to Article 184 of the Civil Procedure Code, ABN:

(i)     reiterated its request that the Honorable Court order a Court-appointed Expert Witness to verify the dates of transmission and receipt, and the path traveled by the e-mail messages submitted as Documents 6 and 9 in the proceeding, and to verify the functioning of the computer system used by ABN from which the documents submitted as No. 7 and 8 in the proceeding were extracted;

(ii)     requested the admission of certain new items of testimonial evidence regarding the transmission by the electronic mail system of the messages submitted as docs. 6 and 9 in the proceeding;

(iii)     requested that the Honorable Court order the Procedure to exhibit, pursuant to Art. 210 of the Civil Procedure Code, the details of the guarantees issued by Parmalat SpA existing as of the date of the company's insolvency, and to order the Proceeding, the Public Prosecutor's Office at the Court of Milan, and the President of the Panel before which criminal case G.R. No. 12473/04 is pending, to exhibit the Grant Thornton SpA working papers used for the

6

certification of the Parmalat Finanziaria SpA Consolidated Financial Statements as of June 30, 2003;

**16.** Through a preliminary reply brief on the date of November 14, 2006, the Procedure opposed ABN's preliminary motions, revealing the following:

(i) the technical consulting and the testimonial evidence requested by ABN would have been inadmissible since it was claimed they were aimed at getting around the order noted in Art. 2704 of the Civil Code by attributing to the judge the task of supplementing the opposing party's claimed lack of evidence;

(ii) the motion for the production of the list of the guarantees issued by Parmalat SpA and in existence at December 2003 would not be admissible inasmuch as:

(a)     the opposing party had generically indicated the documents whose production they were requesting;

(b)     the documentation which was the subject of the production request would not in any case be adequate to prove the antecedence of the issue of the Guarantee to the opening of the extraordinary administration procedure in the absence of the requisites noted in Art. 2704 of the Civil Code;

(c)     the data in Parmalat SpA's financial statement at December 31, 2002, and of Parmalat Finanziaria SpA's financial statement at June 30, 2003 taken into consideration by ABN in formulating its production request, would be unreliable and irrelevant since it was declared to be false in ruling no. 681 of 2004 by the Court of Parma;

(d)     the drawing up of the Restructuring Plan by the Extraordinary Commissioner would not be a comparable equivalent to the procedure of verification of liabilities, therefore no charge can be made against the Commissioner for having abused Art. 2704 of the Civil Code.

7

**17.** Through an order on the date of January 9, 2007 the Judge, setting aside the reservation ordered in the November 29, 2006 hearing, rejected the preliminary motions submitted by ABN, affirming that "...*having read the case deeds, setting aside the reservation, having found that the opposing party's preliminary motions cannot be accepted since the CTU [Court-appointed Technical Consultant] appears to be of an exploratory nature, the request for production appears irrelevant given that the presence of the guarantee in a list could not state anything about its actual date, the evidence from witnesses cannot be admitted since facts adequate for the unmistakable establishment of the certainty of the date of a unauthenticated private document and, therefore, its antecedence to the creation of the document, for the purposes of its enforcement against third parties cannot be the subject of testimonial evidence (see Cassation no. 3742/86*" and therefore set the hearing for the specification of conclusions for October 24, 2007.

**18.** At the October 24, 2007 hearing, the parties therefore specified their respective conclusions as follows:

For ABN: **ON THE MERITS:** - *to admit Abn Amro bank NV into the list of creditors for the procedure for Parmalat S.p.A. in Extraordinary Administration as an unsecured creditor for the amount of 8,071,025.00 euros*: **PRELIMINARILY**: *order a court-appointed technical consultant for the purpose of confirming: (i) the sending dates (from the information systems of ABN Italy, of ABN New York and of Parmalat SpA), the receipt dates (by the information systems of ABN Italy, ABN New York, ABN Brazil), the routing traveled through one or more network service providers and the dates in which they were routed through these network service providers, for all the email messages produced in the lawsuit as exhibits 6 and 9 attached to the appeal for inclusion in the list of creditors; and (ii) the operation of the information system used by ABN from which were extracted the documents produced as exhibits 7 and 8 attached to the appeal for inclusion in the list of creditors, and, in particular, the inability to modify the data, or in any case the high degree of objectivity of the data entered into this information system.*

8

*In order to allow the Court-appointed Technical Consultant nominated to carry out the required analyses, ABN herewith requests the Hon. Court, among other things, to: authorize the Court-appointed Technical Consultant to access the information systems of ABN Italy, ABN New York, ABN Brazil and Parmalat SpA and acquire copies, also computerized, of the emails produced as exhibits 6 and 9 attached to the appeal for inclusion in the list of creditors; authorize the Court-appointed Technical Consultant to access the information systems of the network service provider(s), through whom the emails produced as exhibits 6 and 9 attached to the appeal for inclusion in the list of creditors were routed and where (necessarily) a copy is stored, and to acquire a copy, also computerized; order the Court-appointed Technical Consultant to analyze the headers automatically generated by the different information systems for the sending, receipt and passage of the emails produced as exhibits 6 and 9 attached to the appeal for inclusion in the list of creditors; and order the Court-appointed Technical Consultant to access and analyze the operations and the operating and technical features of ABN New York's information system; **order, under the terms of Art. 210 of the Civil Procedure Code** (a) the Procedure of Parmalat SpA in EA, to produce **the list of the guarantees issued by Parmalat SpA and in existence** on the date of Parmalat SpA's insolvency and of every other document used by the Extraordinary Commissioner to determine and indicate the total value of the guarantees issued by Parmalat SpA as 9,679 million euros in the Restructuring Plan, and, in particular, of the **list or every other document that allowed the determination of the value of the "Promissory Notes" guarantees in the amount of 826.7 million euros**; and in addition (b) to the Procedure, the Public Prosecutor's Office at the Court of Milan and the Chairman of the Court before which criminal proceeding G.R. 12473/04 is pending, **the production of the workpapers of the audit firm Grant Thornton, on the basis of which the consolidated accounting prospectus of Parmalat Finanziaria S.p.A. at June 30, 2003 was certified**; papers which are found in the criminal proceeding G.R. 12473/04 case deeds; **to admit the following***

9

*points of testimonial evidence*: 1. It is true that on the date of March 14, 2003, Ms. Giorgia Bocchi, an employee of the Parmalat S.p.A. company, sent from her own email account within Parmalat's information system (giorgia.bocchi@parmalat.net) an email message (herein attached) to Ms. Tamara Cavallucci, at the address tamara.cavalluci@it.abnamro.com, confirming to her Parmalat S.p.A.'s acceptance of the format of the promissory note issued by Wishaw Trading S.A. to the benefit of the supplier, Archer Daniels Midland Company, and of Parmalat S.p.A.'s relative [endorsement of] the guarantee as drawn up by ABN. 2. It is true that on the date of March 17, 2003 Ms. Tamara Cavallucci of ABN's Milan branch office sent from her own email account within ABN's information system tamara.cavallucci@it.abnamro.com an email message (herein attached) to Ms. Margaret Sirovatka Margaret.Sirovatka@us.abnamro.com containing the English translation of the email message noted in point 1. 3. It is true that on the date of March 10, 2003, Ms. Angela Noique, of ABN's New York branch office, sent from her own email account within the framework of ABN's information system (angela.noique@abnamro.com) to Ms. Tamara Cavallucci and Loredana Quintadamo, at the email addresses tamara.cavallucci@it.abnamro.com and loredana.quintadamo@it.abnamro.com and in copy to Messrs. Terrence Ward, Margaret Sirovatka, John Curch at the addresses Terrence.Ward@us.abnamro.com, Margaret.Sirovatka@us.abn.amro.com, John.Curch@us.abn.amro.com, an email message (herein attached) wherein it was communicated that Ms. Margaret Sirovatka had obtained confirmation from the Archer Daniels Midland Company on the possibility of asking Parmalat for the inclusion, in the formulation of the guarantee [for endorsement] by Parmalat S.p.A., of a part concerning the 'Country Risk Event' and the "New Money Credit Event". To testify on point 1, we call Ms. **Giorgia Bocchi**, domiciled c/o Parmalat S.p.A. in

10

*Extraordinary Administration, via Oreste Grassi, Collecchio (PARMA); on point 2, Ms.* **Tamara Cavallucci** *domiciled c/o ABN's Milan branch office, via Ludovisi 16, Milan, and on point 3, Ms.* **Angela Noique**, *domiciled c/o ABN's New York branch office, Credit Portfolio Management department. With expenses, fees and honoraria to be paid by the other party";*

For the Procedure:

*"May this Hon. Court, having rejected every opposing action, exception and/or deduction taken, on the merits, reject the ex adverso opposition proposed for all the reasons noted in its defensive documents, and for this purpose, confirm the exclusion from the list of creditors of Parmalat SpA in Extraordinary Administration, of the amount claimed by ABN AMBRO BANK N.V. with expenses, fees and honoraria to be paid by the other party."*

**19**. The Judge then granted the parties the legal period for the filing of concluding briefs and responses.

## LAW

### 1.    THE DOCUMENTS BEARING A CERTAIN DATE PRODUCED BY **ABN** TO DEMONSTRATE CREDIT AGAINST **P**ARMALAT **S**P**A** IN **EA**.

Many of the documents produced in the lawsuit by ABN are undoubtedly adequate to attribute a certain date to the Guarantees that is prior to the declaration of insolvency by Parmalat Spa pursuant to Art. 2704 of the Civil Code, first paragraph, last part, since they are **equivalent** to the typical facts listed by this law, and are equally endowed with the adequate requisites to establish the document's date in a certain and unmistakable manner, as can be verified in this judgment.

In particular, under the terms of Art. 2704 of the Civil Code, [the following] have a certain date:

**(i)** the email message sent on the date of March 14, 2003 by Giorgia Bocchi of Parmalat S.p.A. to Tamara Cavallucci of ABN's Milan branch offices (and in copy to Fabio Conti Medugno of ABN's Brazilian branch office) for the purpose of confirming Parmalat S.p.A.'s acceptance of the format of the *promissory note*

11

and Guarantee documents drawn up by ABN (exhibit no. **6** attached to the appeal for inclusion in the list of creditors containing the email and also produced in the brief pursuant to Art. 184 of the Civil Procedure Code as doc. **18** together with the relative attachments, the drafts of the Guarantee and of the *promissory note*);

**(ii)** the email message sent on the date of March 17, 2003 by Tamara Cavallucci of ABN's Milan branch office to Margaret Sirovatka of ABN's New York branch office (and in copy to Anna Clivio and Loredana Quintadamo of ABN's Milan branch office) containing the translation of the above-mentioned message from Giorgia Bocchi (exhibit no. **6** attached to the appeal for inclusion in the list of creditors and also produced in the brief pursuant to Art. 184 of the Civil Procedure Code as doc. **18**);

**(iii)** the email message sent on the date of March 10, 2003 by Angela Noique of ABN AMBRO's New York Branch Office to Tamara Cavallucci and Loredana Quintadamo of ABN AMRO's Milan Branch Office relative to the negotiations for the issue of the Guarantee by Parmalat S.p.A. (exhibit no. **9** attached to the appeal for inclusion in the list of creditors).

**The transmission of these documents through email is a fact equivalent** to typical facts listed by Art. 2704, paragraph 1, of the Civil Code and, equally **endowed with adequate requisites to establish the document's date in a certain and unmistakable manner, as can be verified in this judgment.**

According to constant jurisprudence, in fact:

(a) "*[....] the certainty of the date of a private document, not authenticated at its signature and not registered, can be determined, against third parties,* **also indirectly through the proof of a fact that is adequate to establish the antecedence of the document in an equally certain manner**, *according to an evaluation on the merits submitted to the judge* (Cassation 622-1984) [...]" (Cassation August 12, 1997, no. 7530, in *Giust. civ. Mass.*, 1997, 1408);

12

(b) "*any "fact" can be adequate to establish the antecedence of the document, including so-called legal acts;* a*nd to exclude the latter, the circumstance that they come from the same party who had an interest in conferring the certain date on the document cannot even be valid;* (Cassation, June 7, 1994,. no. 5502, in *Giur. it,* 1995, I, 1, 1582);

(c) "*The evaluation of the fact's adequacy to confer a certain date on a private document is a mere appreciation of fact [....] in the absence of a complete listing, for Art. 2704 Civil Code, it must be held that **it is the judge, on a case by case basis, must establish if a said fact can be recognized as having the force to confer a data certain upon a document** (Cassation September 3, 1985, no. 4577; Cassation May 30, 1969, no. 1910)*" (Cassation June 7, 1994, no. 5502, cited; see also Cassation March 10, 1994, no. 2347, in *Giust. civ. Mass*, 1994, 291; Cassation August 24, 1990, no. 8692, in Giust. civ. Mass., 1990, f. 8; and Cassation, August 31, 1984, no. 4738 in *Giur. it.*, 1985, I, 1, 772).

Every *email* message sent by an information system, in fact, travels a route through numerous computers, which, at every passage, automatically attribute a passage date and time to it. **In particular, in its route towards the addressee's computer, every email travels by the following routing at least, with the relative automatic attribution of date and time:**

(i) departure from the sender *server* which automatically records the date and the time of the message's departure;

(ii) p**assage through one (or more)** *network service providers* **which copy the message, store a copy in their hard drive and automatically record the date and time of the communication's passage;**

(iii) **arrival at the addressee'***s server* **which records date and time of arrival.**

**The date and the time of sending, passage and receipt** of *emails* sent are a**utomatically generated and recorded** by the information systems involved and **stored** in pages

13

which are not immediately visible in the *emails* themselves (the so-called **headers**), which therefore can be subject to evaluation by the Judge for the purposes of verifying the certain date of these emails, eventually on the basis of a CTU [Court-appointed Technical Consultant] ordered for this purpose.

**The *network service providers*** (understood as suppliers of network services who manage the computers which the emails pass through in their routing to the destination computer, as well as the computers through which these network services are provided), **just as the addressee's information system, are third parties relative to the sender's *server*. As such, the recording in their *servers* of the date of passage of the message cannot be manipulated in any way by those who have access to the departure *server*.**

**Consequently, the date and the time of passage of the *emails* recorded by the *network service providers* and in the addressee's information system are certain pursuant to Art. 2704 of the Civil Code.**

**Having considered the (above-described) technical third-party features and the inability of manipulating the communication via email, this communication system is undoubtedly identical to the *telex* system, which according to the Supreme Court's jurisprudence (confirmed more than once, precisely with reference to the Parmalat procedure, also by this Hon. Court), is an adequate means to attribute a certain date enforceable against third parties pursuant to Art. 2704 of the Civil Code**: "*to make the act of a transfer of credit enforceable in the seller's bankruptcy, notification through a court official is not necessary, but a document bearing a certain date prior to the bankruptcy is sufficient, which could be a telex transmission*" [see Cassation September 29, 1999, no. 10788, in *Foro it*., 2000, I, 825].

On this occasion, **the Supreme Court clarified that, in general, the date of a communication's transmission must be held to be certain under the terms of Art. 2704 of the Civil Code every time that this date is recorded through a communications instrument which cannot be manipulated by the user**, thus also recognizing

14

that forms of communication other than the typical ones foreseen by Art. 2704 of the Civil Code are enforceable against third parties.

The principle outlined by the Supreme Court can undoubtedly be extended to an *email* message since **the automatic recording of the date of the *email*'s passage from the *network service providers*' computers and the addressee's information system** (persons who are certainly third parties relative to the sender and the sender's server) **cannot be manipulated in any way by those who have access to the departure servers.**

\* \* \*

In the same manner, the excerpts from the ABN group's information systems are adequate to supply a certain date, considering that they also, as already observed, are distinguished by specific reliability and objectivity since they are systems that cannot be manipulated, **aimed at complying with the banks' statistical notification obligations** foreseen by EU laws for the protection of public savings and which, as such, d**o not allow operators to intervene or alter the archived data** (which, otherwise, would escape the possibility of any controls) and in particular:

**(i)** the explanatory charts of the loan proposed by Wishaw Trading S.A. to ABN, as well as the guarantees connected to the proposed loan transactions (exhibit no. **7** attached to the appeal for inclusion in the list of creditors);

**(ii)** ABN's internal report concerning the loan requested by Wishaw Trading S.A. to ABN (exhibit no. **8** attached to the appeal for inclusion in the list of creditors).


**2. The Request for a CTU [Court-appointed Technical Consultant] for the Description of the Technical Operations for the Attribution of the Date in ABN's Emails and in its Data Base**

Through its preliminary brief, ABN requested to this Hon. Judge, whenever the Court would hold it to be necessary in order to be able to appreciate the technical correctness

15

of what this defense has affirmed, that a court-appointed technical consultant be ordered, for the purpose of verifying:

(i) the sending dates (from the information systems of ABN Italy, ABN New York and of Parmalat SpA), the receipt dates (by the information systems of ABN Italy, ABN New York, ABN Brazil), the route traveled through one or more *network service provider*s and the dates in which all the *email* messages produced in the lawsuit as exhibits 6 and 9 attached to the appeal for inclusion in the list of creditors were routed through these *network service providers*; and

(ii) the operation of the operating system used by ABN from which the documents produced as exhibits 7 and 8 attached to the appeal for inclusion in the list of creditors were extracted, and, in particular, the inability to modify the data or in any case, the high degree of objectivity of the data entered in this information system.

In order to allow the Court-appointed Technical Consultant to carry out the necessary analyses, ABN has offered and offers, among other things:

(a)     to authorize the CTU [Court-appointed Technical Consultant] to access the information systems of ABN Italy, ABN New York, ABN Brazil and Parmalat SpA and acquire copies, also computerized, of the *emails* produced as exhibits 6 and 9 attached to the appeal for inclusion in the list of creditors:

(b)     to authorize the CTU [Court-appointed Technical Consultant] to access the information systems of the *network service provider(s)* through which the *emails* produced as exhibits 6 and 9 attached to the appeal for inclusion in the list of creditors were routed and where a copy is (necessarily) stored and acquire this copy, also computerized;

(c)     to deliver and have the CTU [Court-appointed Technical Consultant] analyze the *headers* automatically generated by the different information systems for the sending, receipt and passage of the *emails* produced as exhibits 6 and 9 attached to the appeal for inclusion in the list of creditors; and

16

(d)    to allow the CTU [Court-appointed Technical Consultant] to access and analyze the operation and the technical and operating features of ABN New York's information system.

Through an order dated January 9, 2007, as anticipated in the narrative, this Hon. Judge rejected the request for a CTU [Court-appointed Technical Consultant] holding that it was exploratory in nature.

This defense respectfully notes that the considerations made by this Hon. Judge on the request for a CTU [Court-appointed Technical Consultant] do not appear to be at all shared and appear instead to be the result of a superficial examination of the complex problems underlying therein.

In fact:

(a) **The CTU [Court-appointed Technical Consultant] requested by ABN is not exploratory (indeed, it is not at all exploratory).**

**ABN clearly illustrated** in its documents the **probative value of the *email* messages and the computerized documents produced in the judgment and has specified that the CTU [Court-appointed Technical Consultant] requested is aimed at providing the Court** with the technical instruments (that is to say, the **technical computer knowledge**) **to understand the characteristics** of quality, security, integrity and the inability to modify the **ABN AMRO group's internal email systems and information systems, which were illustrated by this party and which are indispensable for the evaluation of the validity of these affirmations and, consequently, the probative value of the *emails* and the other elements produced and deduced by ABN** for the purpose of demonstrating the certain date of the documents and/or the antecedence of the Bank's credit which is the subject of the action for admission to Parmalat SpA's composition with creditors procedure.

**The CTU [Court-appointed Technical Consultant]** requested by ABN (which is certainly anything but explorative) **would be, at worst, useless if (and only if) this Court had the technical computer knowledge needed for the evaluation of the technical features of the electronic mail systems used by the ABN AMRO group**, and consequently, the validity of the affirmation by the opposing party about the certainty and inability to modify the reported date,                                                          17

knowledge which in truth is not of common experience (not even for those who, not being computer technicians, use, even if professionally, more or less standard electronic mail systems).

**The above is even more valid for the excerpts from ABN AMRO's internal information system, not for public use, and, as such, unknown not only to the user public, but also to computer experts who have not had an opportunity to analyze its technical features.**

**In this proceeding, ABN did everything that it was its responsibility to do: to bring to the attention of the Court facts and documents (the sending of electronic mail messages with specific contents) unquestionable and undisputed**, **affirming that these messages have a certain date and therefore they are adequate to give a certain date to the documents therein recalled. Such an affirmation does not require any proof but only an investigation of a purely technical nature on ABN's inability to manipulate the systems. And this investigation cannot be ordered except by the Court, eventually assisted by a CTU [Court-appointed Technical Consultant], since if ABN itself should propose it through technicians which ABN itself assigns,** the **affirmations by these technicians would be for undisputed jurisprudence nothing else but allegations by the party which would be exactly assimilable to those of its defense attorneys**. (Cassation May 6, 2002, no. 6432; Milan Court December 3, 2005, no. 14015, in *Giustizia a Milano* 2006, 1, 7; Bari Court July 5, 2006, no. 11870; in *Guida al diritto* 2007, 5, 9);

(b) The CTU [Court-appointed Technical Consultant] requested by ABN, moreover, **could investigate additional facts** (relative to those it has already proven) which can be **verified solely by a person having the necessary technical-computer knowledge**, **in particular, the CTU [Court-appointed Technical Consultant] could lead to the identification of the *network service providers* through whom the *emails* exchanged between Parmalat and ABN and between the different branch offices of the ABN AMRO group were routed and to verify the dates of passage affixed by the *network service providers* onto the *emails* (dates**

18

which, as has been repeated more than once, are certain under the terms of Art. 2704 of the Civil Code because they were affixed by third parties and were unable to be manipulated by the sender and/or the addressee and by their respective information systems).

As is known, through constant jurisprudence, the CTU [Court-appointed Technical Consultant], despite having "a*s a rule, the function of providing the judge with* [elements for] *the evaluation of the facts which were already acquired as evidence*", "**_can represent an objective source of evidence when also used as an instrument for the investigation of situations which can be found only with the contribution of determined technical knowledge_**" (Cassation November 30, 2005, no. 26083, in *Giust. civ. Mass*, 2005, 11). In this case, the judge entrusts "*to the technical consultant not only the assignment of evaluating facts which were ascertained or given as existing (a so-called deductive consultant), but also that of ascertaining the facts themselves (a so-called percipient consultant).* **_In the second case, in which the technical consulting itself is a source of evidence, it is necessary and sufficient that the interested party deduce the fact and that the judge hold that the investigation requires specific technical knowledge_**" (Cassation December 7, 2005, no. 27002, in *Giust. civ. Mass.*, 2005, 12; see also, among the many, Cassation June 22, 2005, no. 13401, in *Giust. civ. Mass*, 2005, 6, and, especially, Cassation Jt. Sess. November 4, 1996, no. 9522, in *Danno e resp.*, 1997, 15).

**Therefore, ABN requests that this Hon. Court (wherever it deems it necessary to be able to express a judgment about the parties' affirmations) to place the lawsuit in the preliminary investigative phase and order the requested court-appointed technical consulting.**

3.    THE REQUEST FOR A PRODUCTION ORDER PURSUANT TO ART. 210 OF THE CIVIL PROCEDURE CODE

In its preliminary brief, ABN also requested this Hon. Court, under the terms of Art. 210 of the Civil Procedure Code, to order:

(a) the Procedure of Parmalat SpA in EA, to produce **the list of the guarantees issued by Parmalat SpA and in existence** on the date of Parmalat SpA's insolvency and of every other document used by the Extraordinary Commissioner to determine and indicate in the                                                                                          19

Restructuring Plan the total value of the guarantees issued by Parmalat SpA as 9,679 million euros, and in particular, **the list or every other document that allowed the determination of the value of the *"Promissory Note"* guarantees in the amount of 826.7 million euros**; and furthermore

(b) the Procedure, the Office of the Public Prosecutor at the Court of Milan and the Chairman of the Court before which the criminal trial proceeding G.R. 12473/04 is pending, to produce **the workpapers of the Grant Thornton audit firm on the basis of which the consolidated accounting prospectus of Parmalat Finanziaria S.p.A. at June 30, 2003 was certified,** papers which are found in the folder of the proceedings of criminal trial G.R. 12473/04.

ABN has argued its preliminary motion as follows.

**A.** In the years preceding the financial trouble, Parmalat SpA gave guarantees for very considerable sums, especially to subsidiaries, as results:

**(i)** from contingent liabilities and guarantees in Parmalat SpA's financial statement at December 31, 2002, which contain the aggregate value of the guarantees in existence at the time, which amounts to 5,632 million euros, of which 5,446 million euros were guarantees for subsidiaries (see doc. 10 attached to the brief pursuant to Art. 184 of the Civil Procedure Code); and

**(ii)** from the Restructuring Plan submitted to the Ministry of Production Activities by the Extraordinary Commissioner Mr. Enrico Bondi, pursuant to Art. 4, paragraph 2, Decree Law no. 347/03 (doc. 11 attached to the brief pursuant to Art. 184 of the Civil Procedure Code) (the ***Restructuring Plan***), in which the Extraordinary Commissioner has expressly recognized the existence of guarantees by Parmalat SpA (and by other Parmalat Group companies subject to composition with creditors) prior to the declaration of the state of insolvency, as shown in the following chart no. 3.26 titled "*Guarantees issued by the companies*

20

*subject to composition with creditors*" noted in paragraph 3.7 of the Restructuring Plan titled "*Guarantees*" (page 95):

| €mln | Loans and Derivatives | Bonds | Private Placements | Promissory Notes | Other | Total |
|---|---|---|---|---|---|---|
| Parmalat S.p.A. | 1,430.7 | 5,966.1 | 1,045.6 | 826.7 | 373.9 | 9,679.0 |
| Parmalat Finanziaria S.p.A. | 191.0 | 723.3 | - | - | 190.7 | 1,105.0 |
| Eurolat S.p.A. | - | - | - | - | 93.4 | 93.4 |
| Lactis S.p.A. | - | - | - | - | 0.2 | 0.2 |
| **Total** | **1,621.7** | **6,689.4** | **1,045.6** | **826.7** | **658.3** | **10,877.7** |

In particular, through the chart noted above, it emerges that Parmalat SpA had guarantees in existence for a total value of **9,679 million euros** on the date of December 23, 2003, **of which 826.7 were guarantees for "*Promissory notes*"**(therefore also to guarantee loans granted by third parties**)**. Through a comparison of the aggregate data noted in this chart and in the contingent liabilities and guarantees in Parmalat SpA's financial statement at December 31, 2002, it therefore results that the aggregate value of the guarantees issued by Parmalat SpA at the date of its insolvency is different (and greater by 4,407 million euros) compared to the aggregate value of the guarantees at December 31, 2002. T**his value of 4,407 million euros corresponds therefore to the value of the guarantees issued by Parmalat SpA after December 31, 2002 and until the date of reference of the Restructuring Plan (the value of the guarantees issued are those supported and confirmed by Mr. Bondi himself on the basis of the investigation which he himself carried out).**

From the same Restructuring Plan, it results also that (a) the aggregate value of the guarantees issued by Parmalat SpA was defined on the basis of the calculations by the audit firm Price Waterhouse Coopers S.p.A. (hereafter, PWC) which had been assigned by the Extraordinary Commissioner to carry out "*the recalculation of the net consolidated financial positions on the basis of the accounting and financial results at September 30, 2003; the audit of some transactions with associated persons and parties; the collection and the safekeeping*

*of information and data*" (see doc. 11, page 61) and (b) the debt of the Parmalat Group's companies within the area of the composition with creditors was found by considering as the **date of reference the** "*date of the decree of admission* [of each company] *to the Procedure (for example, for Parmalat S.p.A. at 00.00 hours on December 24, 2003* **[...]**" (doc. 11, page 70).

The disparity between the aggregate value of Parmalat SpA's guarantees in existence on the date of Parmalat SpA's insolvency and the aggregate value of Parmalat S.p.A's guarantees in existence on December 31, 2002 (4,407 million euros), demonstrates that **the Extraordinary Commissioner (and PWC, which carried out the recalculation of the consolidated financial position at September 30, 2003 and on the basis of whose work the Extraordinary Commissioner evidently determined the values expressed in the Restructuring Plan) had access to documents and evidence which contained the specific indication of the guarantees issued by Parmalat SpA (if not indeed the guarantees themselves) and was received in the Restructuring Plan's indication that the aggregate data of Parmalat SpA's guarantees in existence at the date of insolvency (and therefore having certain date at a time which was prior to it).**

As demonstrated in the chart shown above, **the Extraordinary Commissioner was indeed able to indicate in detail the type and the source of the obligations guaranteed by Parmalat SpA** and by other companies of the group ("*Loans and Derivatives*", "*Bonds*", "*Private Placements*", "*Promissory Notes*") and this would certainly not have been possible if the Extraordinary Commissioner did not have at his disposal the documentary evidence which allowed him to calculate the amount of the guarantees in existence at the date of Parmalat SpA's insolvency and to subdivide them according to the type of credit guaranteed. It is furthermore evident how the commissioner's behavior during the preparation of the Restructuring Plan must have confessory validity for the purposes of this judgment.

22

**B.** Prior to PWC's being assigned by the Extraordinary Commissioner to recalculate the net consolidated financial position of the Parmalat Group at the date of insolvency, the audit firm which had access to the accounting records of Parmalat SpA (for the purpose of verifying and certifying their correctness in the financial statements and their truthfulness) was Grant Thornton S.p.A. (today Italaudit S.p.A.) (hereafter, ***Grant Thornton***). The last activity performed by Grant Thornton for the Parmalat Group was the verification of Parmalat SpA's accounting documents on the occasion of the half-yearly accounting report consolidated at June 30, 2003 by the parent company Parmalat Finanziaria S.p.A. (doc. 12 attached to the brief pursuant to Art. 184 of the Civil Procedure Code).

Given that, as is known, the drawing up and the subsequent certification of a half-yearly consolidated accounting report is based, among other things, on the balance sheets of the companies included in the consolidation area and on the workpapers of the relative audit firm, **in Grant Thornton's workpapers**, on the basis of which, Deloitte, the parent company's audit firm, certified the parent company's half-yearly accounting report at June 30, 2003 **certainly contains the detailed indication of the guarantees issued during the period from January 1, 2003 to June 30, 2003** (the period in which the Guarantee which is the subject of this lawsuit was issued). Grant Thornton's workpapers were acquired by the Office of the Public Prosecutor at the Court of Milan within the scope of the preliminary investigations of criminal proceeding G.R. 12473/04 and were subsequently transmitted in the folder of the trial which is currently underway.

**C.** Production pursuant to Art. 210 of the Civil Procedure Code of the workpapers of Grant Thornton, PWC and the Extraordinary Commissioner are indispensable to be able to establish with certainty the antecedence of the Guarantee to Parmalat SpA's declaration of insolvency. **In fact, (i) the consolidated accounting prospectus of Parmalat Finanziaria S.p.A. at June 30, 2003 has in fact without a doubt a certain date under the terms of Art. 2704 of the Civil Code since it was published by**

23

**Borsa Italiana S.p.A. and communicated to CONSOB [Italian National Commission for Listed Companies and the Stock Exchange] under the terms of Articles 81 and 97 of CONSOB Regulation no. 11971 and (ii) the restructuring plan for the companies participating in the composition with creditors is a document which originates from the Extraordinary Commissioner himself:** the specification by the Extraordinary Commissioner of the data prior to the admission of Parmalat SpA to the extraordinary administration procedure in which the guarantees issued by Parmalat SpA (on December 23, 2003) were in existence has confessory value of the antecedence of the Guarantee to the admission of Parmalat SpA to the extraordinary administration procedure, given that, by constant jurisprudence (see for all Cassation September 2, 2004, no. 17691, in *Foro it.,* 2005, I, 2769; Brescia Court of Appeal March 10, 2004, published on the internet site www.ilcaso.it), the exception of data certain is available to the Extraordinary Commissioner.

This motion was also rejected by this Hon. Judge, who, through an order dated January 9, 2007, held that the motion was irrelevant for the purposes of the decision since "*the presence of the guarantee in a list could say nothing about the actual date of its creation*".

In this regard, this defense observes that once again the observation seems to be marked by excessive haste.

In fact:

**A.** The documents for which ABN requested production represent a textbook case on equivalent facts pursuant to Art. 2704 of the Civil Code to give proof of the antecedence of the relationship upon which the credit is based: the Supreme Court has always held that it is adequate to attribute a certain date to a document in the circumstances where it is attached, mentioned or used in the drawing up another document of a public nature (having, as such, a certain date) (see Cassation November 8, 2006, no. 23793, in relation to the allegation of guarantee in a bankruptcy petition filed in Court; Cassation May 26, 1997, no. 4646 relative to

24

the mention of a guarantee in the accounting ledgers of a company, duly stamped by a public official; Cassation March 24, 1979, no. 1701 relative to the annotation of a security in the documents attached to the financial statement of a bank filed at the Bank of Italy; Milan Court of Appeal, January 9, 1987, in *Giur. comm.*, 1988, II, 110 relative to the extraction of copies from accounting documents filed at the clerk's office of business companies or at other public offices);

**B. All the documents whose production ABN has requested this Hon. Court to order were manifestly relevant in this judgment because through them, can certainly be found, as observed, the antecedence of the date of the Guarantees compared to Parmalat SpA's declaration of insolvency.**

**C. All the legal presuppositions to order the production of the documents requested are present in the case in point**. As is known, for a production order, the law requires (pursuant to Articles 210 of the Civil Procedure Code, and 94 current ord. of the Civil Procedure Code): (i) a motion by the party; (ii) the specific identification of the document (or the item) whose production is requested, and, if necessary, offering evidence that the party or the third party possesses them; (iii) that the order does not cause grave harm to the party or the third party and does not force them to violate one of the secrets foreseen in articles 351 and 352 of the Civil Procedure Code; and (iv) the need for the acquisition for the purposes of evidence of the facts in the case.

**D.** It is not possible to deny the existence of the documents whose production has been requested and their contents since:

**(i) without the documents containing the list of each individual guarantee, the Extraordinary Commissioner could never have had reconstructed the aggregate value** (and broken down by category of obligations) of **the guarantees issued by Parmalat SpA and in existence at December 24, 2003** contained in chart no. 3.26 of the Restructuring Plan;

25

(ii) the activity for the certification of a financial statement consists, among other things, of auditing the accounting reconstruction made by the administrators in drawing up the financial statement and, in particular, in checking that the aggregate values recorded in the financial statements correspond to the documents actually executed by the company, which cannot be done without knowing the list of the individual documents, the sum of which determined the recording in the financial statement of a determined aggregate value; and

(iii) the existence of these documents was never disputed by a counterparty.

**E.** The proof of the possession of documents whose production is requested pursuant to Art. 210 of the Civil Procedure Code can be logically deduced by other known elements, as the Court of Cassation has expressly affirmed in a case in point similar to today's case (in that case, a party requested the judge to order production of the registration papers of vehicles which had been inventoried in the bankruptcy assets, the Supreme Court held that the indication of the vehicles in the inventory of bankruptcy assets was an adequate *"conjectural"* proof of the existence in the Procedure's documents of the same vehicles' registration papers): *"it must be held that, on the basis of general principles, the above-stated evidence [*that is to say, **the proof that the party or the third party against whom the production order is requested, possesses the document***] can also be of conjectural nature, and therefore be deduced from other known facts, as a reasonably possible result of their existence, according to a criteria of normality. And in the case under examination, the hypothesis formulated by the appellate judges that the bankruptcy trustee might not be in possession of the registration papers for the vehicles inventoried in the bankruptcy's assets is obviously gratuitous, in addition to being without plausible foundation"* (Cassation April 4, 1997, no. 2935, in *Giust. civ. Mass.*, 1997, 553).

**F.** The circumstance, evidenced by the counterparty, that Parmalat Finanziaria S.p.A.'s financial statement at December 13, 2002 was declared to be false through ruling no. 681 of 2004 by the Court of Parma in the case between CONSOB and Parmalat Finanziaria is completely irrelevant since

(aside from the fact that in the case in point it concerns Parmalat SpA's financial statement, not those of the parent company, Parmalat Finanziaria SpA) this means that the Extraordinary Commissioner (and PWC) certainly had an opportunity to analyze the list of the guarantees issued by Parmalat SpA to its subsidiaries for the purpose of carrying out the reconstruction which appears in the Restructuring Plan. What is significant at this time is not the truthfulness of the financial statement, but the fact that for the purpose of drawing up the financial statement (truthful or false as it might have been) evidence was analyzed which demonstrates that on that date (prior to its submission to the composition with the creditors procedure) Parmalat SpA's guarantee had been given.

**G.** Equally irrelevant for the purpose of excluding the confessory validity of the affirmation contained in the Restructuring Plan is the fact that the Extraordinary Commissioner (after having reconstructed in detail the amount of the guarantees issued by Parmalat S.p.A. in existence at the date of the insolvency, also indicating exactly the nature of the debt guaranteed) took care to affirm that this reconstruction would not be valid for the recognition or investigation of debts owed by Parmalat Group companies to third parties.

**H. This same Court of Parma, within the scope of the procedure for the verification of credits to be included in the list of creditors, had authorized an essentially identical request from ABN, also in reference to the credit which is the subject of this case, which the Procedure intentionally left unanswered (documents 14, 15, 16** attached to the brief pursuant to Art. 184 of the Civil Procedure Code). The order for production of the documents containing the list of the guarantees issued by Parmalat SpA in 2003 would be in fact nothing else but **a reiteratio**n, within the scope of this judgment for inclusion in the list of creditors, of **the September 7, 2004 rulings through which this same Court** (upon motion by ABN and Banco ABN AMRO Real S.A. and in relation to the credit which is the subject of

27

this lawsuit) **ordered the Procedure to allow access to the same Procedure's accounting documentation containing the list of the guarantees issued by Parmalat SpA,** an order which was completely ignored by the Extraordinary Commissioner (after the order was issued, in fact, it was de facto impossible for the petitioning creditors to accessing this documentation due to the lack of cooperation from the Procedure and asked the Extraordinary Commissioner to attest that among the documents found at the offices of Parmalat SpA, there were no official or unofficial accounting document in which the detailed list of the individual guarantees/sureties given by Parmalat SpA between 2000 and 2003, but the Extraordinary Commissioner, due to the inopportunity of formally stating a falsehood, obviously never proceeded with it, see doc. **17** attached to the brief pursuant to Art. 184 of the Civil Procedure Code).

Having considered the September 7, 2004 rulings and the Extraordinary Commissioner's behavior, **it incomprehensible why this same Court, after having deemed it necessary in the investigative phase of the composition with creditors to order access to the Procedure's documents,** for the purpose of verifying the antecedence of the Guarantees which are the subject of the lawsuit to Parmalat's insolvency (and although the petitioners were not able to do so due to the Extraordinary Commissioner's hindering behavior) **within the scope of this judgment of opposition, deemed not to issue the same ruling, affirming that the production of these documents would be irrelevant.**

\*  \*  \*

The matters relative to the September 7, 2004 rulings in addition shed light on the totally presumptuous and exploitive attitude held by the Extraordinary Commissioner within the scope of today's judgment and which was confirmed by the following additional circumstances.

28

**As already observed by ABN in the preliminary brief,** with an astonishing (it would better to say, **"brazen"**) *"turnabout"* the Extraordinary Commissioner, **during the preparation of the financial statement of Parmalat SpA in EA at December 31, 2003** (see doc. 13 attached to the brief pursuant to Art. 184 of the Civil Procedure Code pages 115 and 149), h**eld that it was legal to totally ignore the value of the guarantees in existence on December 23/24 2003** (9,679,000,000.00 euros) **which he had previously reconstructed and confirmed on the basis of Parmalat SpA's accounting records found at the company (and which was the subject of PWC's work) and placed as the basis of the Restructuring Plan** (see doc. 11 page 96).

**In Parmalat S.p.A.'s financial statement at December 31, 2003 the Extraordinary Commissioner had in fact written off more than 9.1 billion (sic!) euros from the aggregate value of the guarantees resulting from the Restructuring Plan** (and of more than 4 billion euros in the value resulting from the financial statement at December 31, 2002), **holding that he was legally able to do so by exploiting the law on certain date noted in Art. 2704 of the Civil Code** (the Extraordinary Commissioner affirmed that this difference would be "*the effect* [...] *of the composition with creditors procedure underway*": see doc. 13, page 149).

This is completely specious and unacceptable: the Extraordinary Commissioner should not certainly be equally comparable to an uninhibited private person legally able to pursue his own interests through any means, **but is instead a body of a composition with creditors procedure whose purposes are those of pursuing the interests of creditors and of the insolvent company.**

May it be allowed moreover to point out in this regard a recent pronouncement by the Constitutional Court (Constitutional Court April 28, 2006, no 174), which, a pronouncement relative to the constitutional legitimacy of Art. 146, paragraph 3, of the President of the Republic's Decree no. 115 May 30, 2002 (Basic Law of the legal and regulatory provisions on the subject of judicial expenses) being requested in reference to articles 3 and 36 of the Constitution, in the part in which it does not foresee that the "expenses and honoraria" to the trustee are expenses advanced by the Tax Agency, defined

29

the trustee (in our case, the Extraordinary Commissioner) as "*an auxiliary body of justice*" confirming the expert in public law function he performs.

The duty of diligence, on which basis the Commissioner should comply in his behavior for the performance of the functions which by law he is responsible for, is moreover expressly codified in Art. 38 Bankruptcy Law relative to the trustee, and is applicable to the Extraordinary Commissioner by virtue of the general continuance enacted in Art. 8 of Legislative Decree 347/2003, the so-called "Marzano Decree", by law 270/99, which in Art. 15, paragraph 3, recalls Art. 38 of the Bankruptcy Law.

In a now-dated decision the Court of Milan in an extremely clear and brief manner, had thus described the due diligence owed by the trustee due to the expert in public law function held (in our case, by the Extraordinary Commissioner): "*The bankruptcy's trustee assumes the position of an auxiliary body for the administration of justice, who is charged with fulfilling the position's duties with such diligence to better allow the achievement of the public interest in the quickest composition of business entrepreneurs' interests, as this body is called upon to cooperate with the other bodies of the procedure and to provide them with the most timely and complete information on the status of the bankruptcy, to make it possible to effectively exercise those powers of delegated judge and prevent the bankruptcy procedure from being enacted with delay, with prejudice to creditors*" (Milan Court, May 20, 1985, in *Fall.,* 1985, 977).

In light of the role and the duties which pertain to the Extraordinary Commissioner on the basis of the law code, it is evident that **the law in Art. 2704 of the Civil Code is not aimed at allowing the Extraordinary Commissioner to dispute, at his discretion, the effectiveness and enforcement of any document produced against him which he well knows, on the basis of internal evidence, for the purpose of not speciously admitting the certain and existing credits**

30

**but is instead aimed at protection of the interests of the class of the group of creditors in a bankruptcy proceeding,** deemed to be significant by the lawmaker **in the case in which the extraordinary commissioner was not able to reconstruct its effectiveness, or, in any case, has well-founded doubts on the completeness and reliability of the documentation exhibited by creditors to third parties** (for which, against the request for inclusion in the list of creditors filed by a creditor for a credit based upon a document without a data certain prior to the insolvency, the extraordinary commissioner who cannot find this credit in the insolvent company's accounting records and/or documentation, and therefore has doubts about this credit's actual antecedence to the insolvency, will be legally able to except the document's lack of a certain date, turning back onto the creditor, for the credit which is to be included in the list of creditors, the burden of proving the credit's antecedence to the insolvency).

**However, in the case in point, the Extraordinary Commissioner of Parmalat SpA in EA was certainly able to reconstruct Parmalat SpA's accounting records as regards the guarantees issued by Parmalat SpA and in existence on the date of its insolvency, as the Extraordinary Commissioner himself confirmed by attesting in the Restructuring Plan that Parmalat SpA on December 23/24, 2003 had in existence guarantees for circa 9.6 billion euros.**

**The decision by the Extraordinary Commissioner to ignore the just-reconstructed and published accounting records of Parmalat SpA and <u>not to recognize guarantees issued by Parmalat SpA for 9.1 billion euros</u> is therefore completely arbitrary, exploitative, specious and disconcerting and is based upon a totally specious and illegal use of the law in Art. 2704 of the Civil Code.**

Moreover, the absurdity of the Commissioner's behavior and the absolute significance of the issue of an order for production under the terms of Art. 210 of the Civil Procedure Code are even more evident when it is observed that:

31

(i) within the scope of criminal proceeding G.R.C.N. 1345/2006 pending before the Court of Parma against Messrs. Massimo Armanini, Carlo Arosio, Giorgio Di Domenico, Marco Pracca, Tommaso Zibordi and Guido Williams for the crimes noted in Articles 81, para. 2, 110, 112, para. 1, no. 1, of the Civil Code, 217, para. 1, numbers 4-224, para. 1, no. 1, 223, para. 2, no. 2), Royal Decree 267/42, 8, Decree Law no. 347 12.23.2003, converted into Law no. 39 2.18.2004; Legislative Decree 95 7.8.1999, no. 270, **a part of Grant Thornton's workpapers were subject to seizure;**

**(ii) among Grant Thornton's workpapers seized within the scope of the above-mentioned criminal proceeding, there is only one file relative to the item "*risks, commitments and guarantees*" (sub-item of the "*contingent liabilities and guarantees*" item) which in its turn only contains the list of Parmalat SpA's guarantees in existence in the year 2002;**

**which evidently means that the list containing the guarantees issued by Parmalat S.p.A. in the following year (2003) is found among the papers seized within the scope of the criminal proceeding pending before the Court of Milan (G.R.C.N. 12473/04 + 9538/05).**

**In light of all the foregoing, ABN requests that this Hon. Court again place the lawsuit in the preliminary investigation phase, by accepting the motion for the issue of the production order pursuant to Art. 210 of the Civil Procedure Code as specified above.**

4.    TESTIMONIAL EVIDENCE

Starting with the introductory action, ABN has requested this Hon. Judge to admit the following points of testimonial evidence:

1. It is true that on the date of March 14, 2003, Ms. Giorgia Bocchi, an employee of the Parmalat S.p.A. company, sent from her own email *account* within Parmalat's information system (giorgia.bocchi@parmalat.net) an email message (herein attached)

to Ms. Tamara Cavallucci, at the address tamara.cavalluci@it.abnamro.com, confirming to her Parmalat S.p.A.'s acceptance of the format of the *promissory note* issued by Wishaw Trading S.A. to the benefit of the supplier, Archer Daniels Midland Company, and of Parmalat S.p.A.'s relative [endorsement of] the guarantee as drawn up by ABN.

2. It is true that on the date of March 17, 2003 Ms. Tamara Cavallucci of ABN's Milan branch office sent from her own email *account* within ABN's information system tamara.cavallucci@it.abnamro.com an email message (herein attached) to Ms. Margaret Sirovatka Margaret.Sirovatka@us.abnamro.com containing the English translation of the email message noted in point 1.

3. It is true that on the date of March 10, 2003, Ms. Angela Noique, of ABN's New York branch office, sent from her own email *account* within the framework of ABN's information system (angela.noique@abnamro.com) to Ms. Tamara Cavallucci and Loredana Quintadamo, at the email addresses tamara.cavallucci@it.abnamro.com and loredana.quintadamo@it.abnamro.com and in copy to Messrs. Terrence Ward, Margaret Sirovatka, John Curch at the addresses Terrence.Ward@us.abnamro.com, Margaret.Sirovatka@us.abn.amro.com, John.Curch@us.abn.amro.com, an email message (herein attached) wherein it was communicated that Ms. Margaret Sirovatka had obtained confirmation from the Archer Daniels Midland Company regarding the possibility of asking Parmalat for the inclusion, in the formulation of the guarantee [for endorsement] by Parmalat S.p.A., of a part concerning the "Country Risk Event" and the "New Money Credit Event".

ABN indicated as witnesses on the above-mentioned points: Ms. **Giorgia Bocchi**, domiciled c/o Parmalat S.p.A. in Extraordinary Administration, via Oreste Grassi, Collecchio (PARMA); Ms. **Tamara Cavallucci** domiciled c/o ABN's Milan branch

33

office, via Ludovisi 16, Milan, and Ms. **Angela Noique**, domiciled c/o ABN's New York branch office, Credit Portfolio Management department.

In support of the admissibility of the testimonial evidence requested, ABN recalled the jurisprudential interpretation according to which Art. 2704 of the Civil Code prevents evidence from witnesses pending directly on the document's date **but admits, on the other hand, testimonial evidence having as its subject <u>facts adequate to confer certainty on the document's date under the terms of Art. 2704, of the Civil Code, paragraph 1, second part.</u>**

This interpretation was applied by the judges relative to cases similar to the case in point: the Court of Vicenza, in its sentence of March 10, 1984 (precisely relative to a case of a request for admission to the list of creditors having as its subject a credit deriving from a security) in fact did hold that the prohibition of testimonial evidence pending on the creation date of a document would derive from "*the same law in which in the second paragraph of Art. 2704 of the Civil Code, which, admitting the freedom of proof only for documents containing unilateral statements which are not subject to being effective until a party has acknowledged receipt, does not allow, evidently to prove through witnesses the apparent date of the other private documents...*" However, the first paragraph of law establishes that the proof of the date is the result of the proof of the facts indicated by the law "*and the characteristic of the proof is that it, in all cases legally foreseen, does not concern the time of the document's creation, and much less so its content, but the document's have been in existence prior to a determined event.*"

In light of these considerations, therefore, the Court of Vicenza affirmed that:

"*if it is true that the certainty of the date can be given by facts or events antecedent to the event taken into consideration (in the case, the bankruptcy) from which it can be deduced, in an equally certain way, that the document had been created prior to the fact or the event itself, it is not evident why the proof of this fact or event should not be provided through witnesses. It is not excluded by the 2nd paragraph of Art. 2704 of the Civil Code, which*"

34

as stated, concerns the proof of the date of the document's creation, and not that of the facts which the same law holds to be adequate to confer certainty to its date. **It is not excluded by the 1ˢᵗ paragraph of Art. 2704 of the Civil Code, which does not require circumstances or situations whose verification must necessarily be pre-constituted."**

In other words, according to the Court of Vicenza, "**the limitation noted in Art. 2704 of the Civil Code does not concern the means of proof, instead, it concerns the subject of the evidence, which is, precisely limited to those facts which establish in an equally certain manner the antecedence of the document's creation**...this deals with a question of fact devolved to the judge on which merits he is given the liberty of evaluating if the circumstance on which the testimonial evidence is pending is adequate to provide, in a certain and reassuring manner, the certainty of the antecedence of the document's creation and if the witnesses are reliable" (Court of Vicenza, March 10, 1984, in *Giur. comm.,* 1985, II, 390 and ss).

The interpretation expressed in this sentence was fully confirmed by the Court of Cassation in a case in point relative to the enforceability of a preliminary contract of sale, stipulated through an unauthenticated private document, against the holder of the pre-emptive rights, (a third party in relation to the document): "*the enforceability of that date* (of the document containing the preliminary contract of sale, editor's note) *against the holder of the pre-emptive rights, in the absence of one of the typical cases of certainty contemplated in the first part of the law cited (registration, death or incapacitation of a signatory, reproduction in a public document), requires, for the application of the second part of the same law, that a fact which is adequate to establish the antecedence of the document's creation in an equally certain manner be deduced and demonstrated: **the above-mentioned demonstration, therefore, may also avail itself of evidence by witnesses or circumstantially, if they evidence a fact endowed with the attitude specified above, not also when this proof are aimed at, in an circumstantial and inductive manner, generating a judgment of mere verisimilitude of the date***

35

**affixed upon the document** (*as in the case of the elements which can be deduced through the execution of the contract*)" (Cassation, October 11, 1985, no. 4945, in *Riv. giur. agr.* 1985, 481, also recalled in Cassation November 8, 2001, no 13813 in an *obiter dictum* in which expressly gave notice of the jurisprudential interpretation just cited; in the same sense, in addition, see Court of Modena, December 10, 1976 in *Dir. Fall.,* 1977, II, 275; Cassation June 28, 1963, no. 1760 in *Foro it.* 1963, I, c. 1902).

<u>**This interpretation was further confirmed by the Court of Cassation in a recent decision in which the Court expressly affirmed that the law noted in Art. 2704 of the Civil Code exclusively concerns circumstantial and testimonial evident aimed at directly demonstrating the document's date, while it does not concern, and therefore does not exclude the circumstantial and testimonial evidence of those facts (also atypical) which are adequate under the terms of the same law to establish in an equally certain manner the antecedence of the document's creation**</u> (in the case in point, in the light of the aforesaid principle, the Court of Cassation quashed the sentence by the trial judge, because he had not explained why the circumstances of the production, in a proceeding brought for the declaration of a guarantor's bankruptcy, of a private document containing the guarantee did not allow to hold that the private document was antecedent to the bankruptcy): "*[...] Art. 2704 of the Civil Code [...] does not contain a complete list of the facts upon which basis the date of an unauthenticated private document must be held to be certain in regard to third parties and leaves the trial judge the evaluation, on a case-by-case basis, of the existence of a fact, other than its registration, which is adequate according to the party's allegations, to demonstrate the certain date (Cassation, 1st Sec. June 28, 1963, no. 1760, m. 262702).* <u>*Jurisprudence, if it excludes the admissibility of circumstantial or testimonial evidence directly pending on the date (Cassation, 1st Sec. June 4, 1986, no. 3742, m. 446622), admits that circumstantial or testimonial evident may have as its subject facts which are adequate to establish with certainty the antecedence of*</u>

***the document's creation*** (*Cassation, 3rd Sec., October 11, 1985, no. 4945, m. 442318; Cassation 11.8.2001, no. 13813, m. 550082*). *In the case in point, the Court of Appeal, in affirming that the claimant had merely supplied circumstantial evidence which was inadequate to provide grounds for the proof of the antecedence of the guarantee to the opening of the composition with creditors procedure, did not take into express consideration either the registered letter of confirmation of the receipt of guarantee dated 11.7.1988 or the filing of a copy of the private document during the submission of the motion for the declaration of bankruptcy by Pathè Comunicazioni, documents which had been duly produced by the claimant, and did not explain why, in its opinion, the latter had provided merely circumstantial evidence, insufficient to provide grounds for the full proof of the guarantee's antecedence to the bankruptcy. The trial Court, in particular, should have clarified why the production of the private document containing the guarantee in the proceeding brought for the declaration of bankruptcy by the company which later went bankrupt did not allow to hold that the antecedence of the document to the bankruptcy had been proven, according to that foreseen by Art. 2704 of the Civil Code, paragraph 1, last part. From this it is derived that the motivation for the impugned sentence is lacking because of the outlines herewith mentioned, indeed the sentence is to be quashed with a continuance to another section of the Court of Appeal of Rome, which will rule also on the expenses for the Cassation judgment.*" (Cassation, November 8, 2006, no. 23793, in *Giust. civ. Mass.,* 2006, 11).

Through an order on the date of October 5, 2006 this Hon. Judge however rejected the testimonial evidence requested by ABN, affirming that *"the facts which are adequate to unmistakably establish the certainty of a date of an unauthenticated private document and, therefore, the antecedence of the document's creation, for the purposes of its enforcement against third parties cannot be the subject of testimonial evidence"* recalling in support of this affirmation the sentence by the Court of Cassation no. 3742 of 1986.

37

In the humble opinion of ABN's defense counsel, the Supreme Court sentence cited by this Hon. Judge is not in any way decisive for the purpose of correctly identifying the limits of admissibility of testimonial evidence deriving from Art. 2704 of the Civil Code (and therefore for the evaluation of the admissibility of the points of evidence formulated by ABN) and this on the one hand is completely contrary to (as well as completely superceded by) the undisputable interpretation by the Supreme Court (confirmed as observed also by a very recent sentence in November, 2006) and on the other hand, in consideration of its total opaqueness and contradictory nature.

In the case decided by the sentence cited by this Hon. Judge testimonial evidence had as its subject the circumstance that the promissory notes [bills of exchange] whose admission to the list of creditors was requested were the same promissory notes which the creditor enforced during a forced execution against the bankrupt prior to the declaration of bankruptcy. In this regard, the Supreme Court on the one hand confirmed the decision by the Court of Appeals which had held the evidence to be inadmissible since it was pending on facts which under the terms of Art. 2704 of the Civil Code cannot be the subject of testimonial evidence; on the other hand, completely contradicting that previously upheld, it expressly affirmed the admissibility of testimonial evidence on facts which are adequate under the terms of Art. 2704 of the Civil Code to prove the antecedence of a document with certainty. More specifically, after having excluded that testimonial evidence could have as its subject the verification of the facts indicated in Art. 2704 of the Civil Code instrumentally relative to the verification of the date of a document, in the paragraph immediately following, the Court of Cassation declares exactly the opposite: "***Although testimonial evidence can be admitted and, therefore, circumstantially,*** *to demonstrate the date of one of the document's signatory becoming incapacitated, or the registration date or the date of death, when public records have been destroyed or lost, and these means of evidence can also be invoked* ***to demonstrate one of the facts or events from which it can be deduced, in an equally certain manner, that the document was created prior to the fact or***

38

*event itself, testimonial evidence is not admissible and, therefore, circumstantially, to verify the date of the unauthenticated private document before third parties* (word for word, Cassation June 28, 1963, no. 1760, in motivation)."

In reading the decision the distinction (confirmed by it) between fact which can be the subject of testimonial evidence and facts that cannot be the subject of testimonial evidence, it is completely incomprehensible and it certainly is incomprehensible who it was applied in the actual case in point. It is evident that the two affirmations by the Supreme Court are in glaring contradiction between themselves and that therefore it is certain that an unmistakable principle, adequate to overcome the jurisprudential approach pointed out by ABN cannot be acquired from the sentence recalled by this Hon. Judge.

**Therefore, ABN insists that this Hon. Judge again place this lawsuit in the preliminary investigative phase admitting the points of testimonial evidence it has formulated.**

\*     \*     \*

The foregoing having been stated, ABN AMRO Bank N.V., as represented and defended above, insists that the conclusions submitted be accepted.


Milan-Parma, December 21, 2007          STAMP: COURT OF PARMA
                                        FILED AT THE CHANCERY
Atty. Cesare Vecchio                          DEC 21 2007
                                         CHANCELLOR [INITIALS]
Atty. Stefano Lombrassa                 [ILLEG.]

Atty. Umberto Serra

[SIGNATURE ILLEG.]

39



**TRANSPERFECT**

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BERLIN
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBAI
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PHOENIX
PORTLAND
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
SYDNEY
TOKYO
TORONTO
VANCOUVER
WASHINGTON, DC

City of New York, State of New York, County of New York

I, Liesse-Marie Slemon, hereby certify that the following is, to the best of my knowledge and belief, a true and accurate translation of the document: "comparsa conclusionale nell'interesse di ABN AMRO BANK NV RG 1995_05_EN" from Italian into English.

*Liesse Marie Slemon*

Signature

Sworn to before me this
May 27, 2008

Signature, Notary Public

Katherine L Perekslis
Notary Public, State of New York
No. 01PE6181423
Qualified in QUEENS County
Commission Expires Jan 28, 2012

Stamp, Notary Public

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016    T 212.689.5555    F 212.689.1059    WWW.TRANSPERFECT.COM