## TRIBUNALE DI PARMA

Sezione Fallimentare – R.G. 1955/05 – G.D. Dott. Giuseppe Coscioni

Nella causa di opposizione allo stato passivo di Parmalat S.p.A. in Amministrazione Straordinaria avviata su ricorso di

**ABN Amro Bank N.V.** (nel seguito *ABN* o la *Banca*), con gli avv.ti Cesare Vecchio, Giuseppe Curtò ed Umberto Serra

- *ricorrente* –

contro

la procedura di **Parmalat S.p.A. in Amministrazione Strordinaria** (nel seguito *Parmalat in A.S.* o la *Procedura*), con gli avv.ti Umberto Tracanella, Eduardo Spano, Giuseppe Maggioni, Raffaella Sarti

- *resistente* –

**COMPARSA CONCLUSIONALE NELL'INTERESSE DI ABN AMRO BANK N.V.**

\* \* \*

### FATTO E SVOLGIMENTO DEL PROCESSO

1. Nel marzo 2003 la ABN AMRO Bank N.V. Filiale di New York (nel prosieguo, *ABN* o la *Banca*) mise a disposizione della società Wishaw Trading S.A. (nel prosieguo, *Wishaw*) un finanziamento per l'ammontare complessivo di USD 10.000.000,00, diretto a consentire alla beneficiaria l'acquisto dalla Archer Daniels Midland Company di una fornitura di prodotti agricoli.

2. Il finanziamento veniva utilizzato dalla Wishaw attraverso l'emissione in data 27 marzo 2003 di una cambiale (*promissory note*), garantita per avallo da Parmalat S.p.A., per un ammontare pari a USD 9.999.999,91, oltre interessi e accessori di legge, con scadenza in data 19 marzo 2004, a beneficio della fornitrice Archer Daniels Midland Company, la

quale girava la cambiale alla Banca ricevendone il relativo pagamento (doc. 2 della domanda di insinuazione al passivo).

3. Successivamente, alla scadenza della cambiale Wishaw non versò alla Banca l'importo dovuto.

4. In forza della garanzia rilasciata per avallo della cambiale, Parmalat Sp.A. risultò debitrice verso ABN, in solido con Wishaw, dell'importo di USD 9.999.999,91, pari all'importo di €8.071.025,00.

5. Con decreto in data 24 dicembre 2003 il Ministero delle Attività Produttive dispose l'ammissione di Parmalat S.p.A. alla procedura di amministrazione straordinaria e, successivamente, con sentenza in data 27 dicembre 2003 il Tribunale di Parma dichiarò lo stato di insolvenza della stessa Parmalat S.p.A..

6. Con atto depositato presso la cancelleria fallimentare del Tribunale di Parma in data 4 giugno 2004 ABN chiese l'ammissione del proprio credito dell'importo di €8.071.025,00 al passivo della procedura di Amministrazione Straordinaria di Parmalat S.p.A.

7. In data 29 luglio 2004 il Commissario Straordinario della procedura di Amministrazione Straordinaria di Parmalat S.p.A. depositò presso il Tribunale di Parma la propria relazione contenente le indicazioni in merito ai crediti da ammettere allo stato passivo della Procedura, esprimendo parere negativo in merito all'ammissione del credito di ABN, atteso che il titolo posto a fondamento della domanda di insinuazione della banca sarebbe inopponibile alla procedura ex artt. 45 l.f. e 2704 c.c., ossia per la mancanza nei documenti forniti di data certa opponibile alla Procedura.

8. Con provvedimento in data 3 agosto 2004 il Giudice Delegato fissò al 18 settembre 2004 il termine per proporre eventuali osservazioni in relazione all'elenco provvisorio dei crediti e per produrre nuovi documenti ad integrazione di quanto depositato con la domanda di insinuazione al passivo.

9. Entro il suddetto termine ABN depositò le proprie osservazioni integrate da nuovi documenti, alle quali seguirono le repliche del Commissario in data 3 novembre 2004 e le controrepliche di ABN in data 8 novembre 2004.

10. Esaurito tale breve contraddittorio scritto, con provvedimento in data 16 dicembre 2004 pubblicato nella Gazzetta Ufficiale della Repubblica Italiana in data 28 dicembre 2004 il Giudice Delegato dispose l'esclusione del credito di ABN dall'elenco dei creditori affermando che: "......*tutti i documenti prodotti dall'istante sono privi di data certa e, in particolare, il creditore non ha fornito la prova che le garanzie richiamate a fondamento dell'istanza siano state rilasciate in data anteriore alla apertura della procedura concorsuale, né che vi siano fatti che stabiliscono in modo certo l'anteriorità della formazione delle stesse (in particolare, sia sulla promissory note che sulla garanzia vi è soltanto l'indicazione della data nella quale sarebbero state emesse, senza però alcuna certificazione al riguardo: le lettere e le e-mail in atti non hanno valore di data certa non essendovi alcuna certificazione che attesti che siano state scritte nelle date sulle stesse indicate).*

11. Con ricorso *ex* art. 98 legge fallimentare depositato il 27 gennaio 2004, ABN si è opposta allo stato passivo della Procedura, chiedendo a questo Ill.mo Tribunale di esservi ammessa sulla base, in sintesi, dei seguenti argomenti:

(i)     la legge dello stato di New York (Stati Uniti d'America), che disciplina la garanzia per avallo rilasciata da Parmalat S.p.A. in data 27 marzo 2003 (la *Garanzia*) in forza degli artt. 9 e 14 della Convenzione di Roma, non pone alcun limite all'efficacia probatoria della scrittura privata pur priva di data certa nei confronti dei terzi. Né l'impiego della scrittura privata trova alcun limite nell'ordinamento processuale italiano ove tale mezzo risulta generalmente

3

ammesso. Ne consegue che i documenti versati in atti provano pienamente la data del credito vantato da ABN nei confronti della Procedura;

(ii) in ogni caso ABN ha prodotto documenti che dimostrano con certezza ai sensi dell'art. 2704 c.c. l'anteriorità del rilascio della Garanzia rispetto all'insolvenza di Parmalat SpA;

(iii) secondo un consolidato orientamento giurisprudenziale l'art. 2704 c.c. costituisce un limite probatorio applicabile soltanto alla data della scrittura, ma non alla data del negozio produttivo degli effetti che si vogliano opporre ai terzi, tale prova può essere infatti fornita con qualsiasi mezzo consentito dalla legge, anche per testimoni e presunzioni, semprechè il rapporto negoziale da provare non richieda la forma scritta *ad substantiam* o *ad probationem*.

ABN ha quindi chiesto l'ammissione di consulenza tecnica d'ufficio al fine di analizzare il funzionamento e le caratteristiche operative del sistema telematico interno di ABN e del sistema di trasmissione dei messaggi di posta elettronica usato dalla stessa ABN al fine di dimostrare la certezza delle date che appaiono sui documenti depositati in giudizio, nonchè l'ammissione di prova testimoniale volta a provare l'invio da parte di Parmalat dell'e-mail in data 14 marzo 2003 con la quale la Dott.ssa Giorgia Bocchi aveva confermato alla Dott.ssa Tamara Cavallucci l'accettazione da parte di Parmalat S.p.A. del formato dei documenti contenenti la *promissory note* del 27 marzo 2003 e la Garanzia (ns. doc. 4 allegato al ricorso per opposizione allo stato passivo)

12. Con comparsa di costituzione del 4 luglio 2005, Parmalat SpA in AS si è costituita nel presente giudizio chiedendo il rigetto dell'opposizione di ABN per i seguenti motivi:

(i) gli artt. 9 e 14 della Convenzione di Roma disciplinerebbero solo la prova dell'esistenza dell'atto giuridico sottostante al documento, laddove il presente giudizio atterrebbe al diverso problema dell'attribuzione di data certa ad un

4

documento e dell'oppobinibilità di tale documento ai terzi, di conseguenza le norme applicabili al caso di specie sarebbero unicamente gli artt. 45 l.f. e 2704 c.c.;

(ii) secondo la giurisprudenza di legittimità, in sede di formazione dello stato passivo il curatore fallimentare (nel caso specifico il Commissario Straordinario) sarebbe terzo sia rispetto ai creditori che rispetto al fallito stesso, conseguentemente la prova dell'anteriorità della Garanzia nei confronti del Commissario Straordinario dovrebbe essere fornita ai sensi dell'art. 2704 c.c. e non potrebbe essere data per mezzo di testimoni o presunzioni;

(iii) in ogni caso, laddove si ritenesse applicabile l'orientamento giurisprudenziale che prevede che la prova della stipulazione del negozio possa essere fornita con tutti i mezzi consentiti dalla legge, le produzioni documentali effettuate da ABN non sarebbero comunque sufficienti a provare per presunzioni l'anteriorità della formazione della *promissory note* e della Garanzia all'aperura della procedura;

(iv) la CTU chiesta da ABN avrebbe carattere esplorativo e sarebbe come tale inammissibile.

13. Con memoria ex art. 170, 180 c.p.c. ABN ha replicato alla comparsa avversaria rilevando che:

(i) ai sensi dell'art. 2704 c.c. la certezza della data della scrittura privata non autenticata nella sottoscrizione e non registrata può essere determinata nei confronti dei terzi anche mediante strumenti atipici rispetto a quelli espressamente indicati dalla norma e la valutazione dell'idoneità dello strumento utilizzato per stabilire la certezza della data costituisce un apprezzamento di fatto rimesso al giudice di merito;

5

(ii) le date che risultano sui documenti e sugli *e-mails* da essa prodotti sono certe ex art. 2704 c.c. in quanto sono state registrate automaticamente da sistemi informatici sottratti alla disponibilità degli autori dei documenti e pertanto non possono essere state manipolate o falsificate dagli stessi.

A tale memoria la Procedura ha replicato ribadendo le considerazioni precedentemente espresse nella comparsa di risposta

**14.** Successivamente, all'udienza del 21 marzo 2006 il Giudice ha concesso termini per il deposito di memorie istruttorie al 15 ottobre 2006 e per deduzioni a prova contraria al 15 novembre 2006 rinviando le parti all'udienza del 26 novembre 2006 per l'ammissione dei mezzi istruttori.

**15.** Con memoria ex art. 184 c.p.c. ABN:

(i) ha reiterato la richiesta di disposizione da parte di codesto Ill.mo Giudice di una CTU avente ad oggetto l'accertamento delle date di spedizione e ricezione e del tragitto percorso dai messaggi *e-mail* prodotti in causa come docc. 6 e 9, nonché l'accertamento del funzionamento del sistema informatico utilizzato da ABN dal quale sono stati estratti i documenti prodotti in giudizio con i nn. 7 e 8;

(ii) ha chiesto l'ammissione di alcuni nuovi capitoli di prova testimoniale aventi ad oggetto la trasmissione mediante il sistema di posta elettronica dei messaggi prodotti in giudizio come docc. 6 e 9 ;

(ii) ha chiesto a codesto Ill.mo Giudice di ordinare alla Procedura l'esibizione ex art. 210 c.p.c. del dettaglio delle garanzie rilasciate da Parmalat SpA ed in essere alla data di insolvenza della stessa, nonché di ordinare alla Procedura, alla Procura della Repubblica presso il Tribunale di Milano ed al Presidente del Collegio davanti al quale pende il processo penale di R.G. n. 12473/04 l'esibizione delle carte di lavoro della società di revisione Grant Thornton SpA utilizzate per la

6

certificazione del bilancio consolidato di Parmalat Finanziaria SpA al 30 giugno 2003;

16. Con memoria istruttoria di replica in data 14 novembre 2006 la Procedura si è opposta alle istanze istruttorie di ABN rilevando quanto segue:

(i)   la consulenza tecnica e le prove testimoniali richieste da ABN sarebbero inammissibili in quanto asseritamente volte ad aggirare il disposto di cui all'art. 2704 c.c. attribuendo al giudice il compito di supplire alla asserita carenza probatoria della opponente;

(ii)  l'istanza di esibizione del dettaglio delle garanzie emesse da Parmalat SpA ed in essere al dicembre 2003 non sarebbe ammissibile in quanto:

(a)   l'opponente avrebbe indicato genericamente i documenti di cui chiede l'esibizione;

(b)   la documentazione oggetto della richiesta di esibizione non sarebbe comunque idonea a provare l'anteriorità dell'emissione della Garanzia all'apertura della procedura di amministrazione straordinaria in mancanza dei requisiti di cui all'art. 2704 c.c.;

(c)   i dati del bilancio di Parmalat SpA al 31 dicembre 2002 e di Parmalat Finanziaria SpA al 30 giugno 2003 presi in considerazione da ABN per articolare la propria istanza di esibizione sarebbero inattendibili ed irrilevanti in quanto dichiarati falsi con sentenza del Tribunale di Parma n. 681 del 2004;

(d)   la redazione del Piano di Ristrutturazione da parte del Commissario Straordinario non sarebbe equiparabile alla procedura di verificazione del passivo, pertanto nessun addebito potrebbe essere mosso al Commissario per aver abusato dell'art. 2704 c.c.

17. Con provvedimento in data 9 gennaio 2007 il Giudice, sciogliendo la riserva disposta all'udienza del 29 novembre 2006, ha rigettato le istanze istruttorie presentate da ABN affermando: *"...letti gli atti, a scioglimento della riserva, rilevato che non possono essere accolte le istanze istruttorie dell'opponente in quanto la CTU appare avere natura esplorativa, la richiesta di esibizione appare irrilevante posto che la presenza della garanzia in un elenco nulla potrebbe dire sulla effettiva data, la prova per testi non può essere ammessa in quanto i fatti idonei a stabilire inequivocabilmente la certezza della data di una scrittura privata non autenticata e, quindi, l'anteriorità della formazione del documento, ai fini della sua opponibilità ai terzi non possono formare oggetto di prova testimoniale (vedi Cass. n. 3742/86"* ed ha quindi fissato al 24 ottobre 2007 l'udienza di precisazione delle conclusioni.

18. All'udienza in data 24 ottobre 2007 le parti hanno quindi precisato le rispettive conclusioni come segue:

Per ABN: **NEL MERITO**: *- ammettere Abn Amro bank NV allo stato passivo della procedura di Parmalat S.p.A. in Amministrazione Straordinaria in via chirografaria per l'importo di Euro 8.071.025,00;* **IN VIA ISTRUTTORIA**: *disporre una consulenza tecnica d'ufficio finalizzata a confermare: (i) le date di spedizione (dal sistema informatico ABN Italia, di ABN New York e di Parmalat SpA), le date di ricezione (da parte del sistema informatico di ABN Italia, ABN New York, ABN Brasile), il tragitto percorso attraverso uno o più network service providers e le date in cui sono transitati da tali network service providers di tutti messaggi e-mail prodotti in causa come produzioni 6 e 9 allegate al ricorso per opposizione allo stato passivo; e (ii) il funzionamento del sistema informatico utilizzato da ABN dal quale sono stati estratti i documenti prodotti come produzioni 7 e 8 allegate al ricorso per opposizione allo stato passivo e, in particolare, la non modificabilità o comunque l'alto grado di oggettività dei dati inseriti in tale sistema*

*informatico. Al fine di consentire al CTU nominato di effettuare le analisi necessarie, ABN chiede fin d'ora che Ill.mo Tribunale, tra l'altro: autorizzi il CTU ad accedere ai sistemi informatici di ABN Italia, ABN New York, ABN Brasile e Parmalat SpA ed acquisire copia anche informatica degli e-mails prodotti come produzioni 6 e 9 allegate al ricorso per opposizione allo stato passivo; autorizzi il CTU ad accedere ai sistemi informatici (del o) dei network service providers attraverso cui gli e-mails prodotti come produzioni 6 e 9 allegate al ricorso per opposizione allo stato passivo sono transitate e presso cui è (necessariamente) conservata una copia ed acquisire tale copia anche informatica; ordini al CTU di analizzare gli headers generati automaticamente dai diversi sistemi informatici di invio, ricezione e passaggio degli e-mails prodotti come produzioni 6 e 9 allegati al ricorso per opposizione allo stato passivo; e ordini al CTU di accedere ed analizzare il funzionamento e le caratteristiche operative e tecniche del sistema informatico di ABN New York; **ordinare ai sensi dell'art. 210 c.p.c. (a)** alla Procedura di Parmalat SpA in AS, l'esibizione **del dettaglio delle garanzie rilasciate da Parmalat SpA ed in essere alla data di insolvenza di Parmalat SpA e di ogni altro documento utilizzato dal Commissario Straordinario per determinare ed indicare nel Programma di Ristrutturazione il valore complessivo delle garanzie rilasciate da Parmalat SpA in 9.679 milioni di Euro e, in particolare, del dettaglio o di ogni altro documento che hanno permesso di determinare il valore delle garanzie di "Promissory notes" nell'importo di 826,7 milioni di Euro;** e inoltre **(b)** alla Procedura, alla Procura della Repubblica presso il Tribunale di Milano e al Presidente del Collegio davanti al quale è pendente il processo penale R.G. 12473/04, l'esibizione **delle carte di lavoro della società di revisione Grant Thornton sulla base delle quali è stato certificato il prospetto contabile consolidato di Parmalat Finanziaria S.p.A. al 30 giugno 2003, carte che si trovano nel fascicolo del dibattimento del giudizio penale R.G. 12473/04; ammettere i seguenti***

9

*capitoli di prova testimoniale: 1. Vero che in data 14 marzo 2003 la sig.ra Giorgia Bocchi, dipendente della società Parmalat S.p.A., ha inviato dal proprio account di posta elettronica nell'ambito del sistema informatico Parmalat (giorgia.bocchi@parmalat.net) un messaggio e-mail (che si rammostra) alla sig.ra Tamara Cavallucci, all'indirizzo tamara.cavallucci@it.abnamro.com, confermandole l'accettazione da parte di Parmalat S.p.A. del formato della promissory note emessa da Wishaw Trading S.A. a beneficio della fornitrice Archer Daniels Midland Company e della relativa garanzia per avallo di Parmalat S.p.A. così come redatti da ABN. 2. Vero che in data 17 marzo 2003 la sig.ra Tamara Cavallucci di Abn filiale di Milano ha inviato dal proprio account di posta elettronica nell'ambito del sistema informatico di ABN tamara.cavallucci@it.abnamro.com un messaggio e-mail (che si rammostra) alla sig.ra Margaret Sirovatka Margaret.Sirovatka@us.abnamro.com contenente la traduzione in inglese del messaggio e-mail di cui al capitolo 1. 3. Vero che in data 10 marzo 2003 la sig.ra Angela Noique, di ABN filiale di New York, ha inviato dal proprio account di posta elettronica nell'ambito del sistema informatico di ABN (angela.noique@abnamro.com) alle signore Tamara Cavallucci e Loredana Quintadamo agli indirizzi di posta elettronica tamara.cavallucci@it.abnamro.com e loredana.quintadamo@it.abnamro.com e per conoscenza ai signori Terrence Ward, Margaret Sirovatka, John Curch agli indirizzi Terrence.Ward@us.abnamro.com, Margaret.Sirovatka@us.abnamro.com, John.Curch@us.abnamro.com, un messaggio e-mail (che si rammostra) ove veniva comunicato che la signora Margaret Sirovatka aveva ottenuto la conferma da parte di Archer Daniels Midland Company circa la possibilità di richiedere a Parmalat l'inclusione nella formulazione della garanzia per avallo di Parmalat S.p.A. di una parte concernente il "Country Risk Event" e il "New Money Credit Event". Si chiama a testimoniare sul capitolo 1 la sig.ra **Giorgia Bocchi** domiciliata presso Parmalat S.p.A. in*

*Amministrazione Straordinaria via Oreste Grassi Collecchio (PR), sul capitolo 2 la sig.ra Tamara Cavallucci domiciliata presso la filiale di Milano di ABN, via Ludovisi 16 Milano e sul capitolo 3 la sig.ra Angela Noique domiciliata presso ABN filiale di New York dipartimento Credit Portfolio Management. Con vittoria di spese, diritti ed onorari";*

Per la Procedura:

*"Voglia l'Ill.mo Tribunale adito, ogni contraria azione, eccezione e/o deduzione reietta, nel merito, respingere l'opposizione ex adverso proposta per i motivi tutti di cui ai propri atti difensivi e, per l'effetto, confermare l'esclusione dallo stato passivo di Parmalat SpA in Amministrazione Straordinaria dell'importo richiesto da ABN AMRO BANK N.V. Con vittoria di spese diritti ed onorari".*

**19.** Il Giudice ha quindi concesso alle parti i termini di legge per il deposito di memorie conclusionali e di note di replica.

## DIRITTO

**1.   I DOCUMENTI DOTATI DI DATA CERTA PRODOTTI DA ABN A DIMOSTRAZIONE DEL CREDITO NEI CONFRONTI DI PARMALAT SPA IN AS.**

Molti dei documenti prodotti in causa da ABN sono senz'altro idonei ad attribuire alle Garanzie data certa anteriore alla dichiarazione di insolvenza di Parmalat SpA *ex* art. 2704, primo comma, ultima parte, c.c., in quanto **equipollenti** ai fatti tipici elencati da tale norma e, al pari di essi, dotati dei requisiti di idoneità a stabilire in maniera certa ed inequivocabile la data del documento, come potrà essere accertato in questo giudizio.

In particolare, hanno data certa ai sensi dell'art. 2704 c.c.:

(i)   il messaggio e-mail inviato in data 14 marzo 2003 da Giorgia Bocchi di Parmalat S.p.A. a Tamara Cavallucci di ABN filiale di Milano (e per conoscenza a Fabio Conti Medugno della filiale brasiliana di ABN) al fine di confermare l'accettazione da parte di Parmalat S.p.A. del formato dei documenti *promissory*

11

*note* e Garanzia redatti da ABN (produzione n. 6 allegata al ricorso per opposizione allo stato passivo contenente l'e-mail e prodotta anche con la memoria ex art. 184 c.p.c. come doc. 18 insieme ai relativi allegati, le bozze della Garanzia e della *promissory note*);

(ii) il messaggio e-mail inviato in data 17 marzo 2003 da Tamara Cavallucci di ABN filiale di Milano a Margaret Sirovatka di ABN filiale di New York (e per conoscenza ad Anna Clivio e Loredana Quintadamo di ABN filiale di Milano) contenente la traduzione del summenzionato messaggio di Giorgia Bocchi (produzione n. 6 allegata al ricorso per opposizione allo stato passivo e prodotta anche con la memoria ex art. 184 c.p.c. come doc. 18);

(iii) il messaggio e-mail inviato in data 10 marzo 2003 da Angela Noique di ABN AMRO Filiale di New York a Tamara Cavallucci e Loredana Quintadamo di ABN AMRO Filiale di Milano relativo alle trattative per il rilascio della Garanzia da parte di Parmalat S.p.A. (produzione n. 9 allegata al ricorso per opposizione allo stato passivo).

**La trasmissione di tali documenti mediante posta elettronica è un fatto equipollente** ai fatti tipici elencati dall'art. 2704, comma 1, c.c. e, al pari di essi, **dotato dei requisiti di idoneità a stabilire in maniera certa ed inequivocabile la data del documento, come** potrà essere accertato in questo giudizio.

Secondo giurisprudenza costante, infatti:

(a) "[...] *la certezza della data della scrittura privata non autenticata nella sottoscrizione e non registrata, può essere determinata, nei confronti dei terzi, anche indirettamente con la prova di un fatto idoneo a stabilire in modo ugualmente sicuro l'anteriorità del documento, secondo una valutazione rimessa al giudice di merito (Cass. 622-1984)* [...]" (Cass. 12 agosto 1997, n. 7530, in *Giust. civ. Mass.*, 1997, 1408);

(b) *"qualsiasi "fatto" può essere idoneo a stabilire l'anteriorità della scrittura, compresi i c.d. atti giuridici; e ad escludere questi ultimi non può valere neppure la circostanza che essi provengano dalla stessa parte che aveva interesse a conferire al documento la data certa"* (Cass. 7 giugno 1994, n. 5502, in *Giur. it.*, 1995, I, 1, 1582);

(c) *"La valutazione dell'idoneità del fatto a conferire la data certa ad una scrittura privata costituisce mero apprezzamento di fatto [...] in mancanza di una elencazione tassativa, deve ritenersi che per l'art. 2704 cod. civ., **è il giudice che, caso per caso, deve stabilire se a un dato fatto possa riconoscersi la forza di conferire ad un documento la data certa** (Cass. 3 settembre 1985, n. 4577; Cass. 30 maggio 1969, n. 1910)"* (Cass. 7 giugno 1994, n. 5502, *cit.*; cfr. anche Cass. 10 marzo 1994, n. 2347, in *Giust. civ. Mass.*, 1994, 291; Cass. 24 agosto 1990, n. 8692, in *Giust. civ. Mass.*, 1990, f. 8; e Cass. 31 agosto, 1984, n. 4738, in *Giur. it.*, 1985, I, 1, 772).

Ogni messaggio *e-mail* inviato da un sistema informatico, infatti, compie un percorso attraverso numerosi computer che, ad ogni passaggio, gli attribuiscono automaticamente data e ora di passaggio. **In particolare, nel suo tragitto verso il computer di destinazione, ogni e-mail compie quanto meno il seguente percorso, con relativa automatica attribuzione di data e di ora:**

(i) partenza da un *server* mittente che registra automaticamente la data e l'ora di partenza del messaggio;

(ii) passaggio attraverso uno (o più) *network service provider* che copia il messaggio, ne conserva una copia nel proprio disco fisso e registra automaticamente data e ora di passaggio della comunicazione;

(iii) arrivo al *server* destinatario che registra data ed ora di arrivo.

**La data e l'ora di invio, di passaggio e di ricezione degli** *e-mail* **inviati sono generate e registrate automaticamente** dai sistemi informatici interessati e **conservate** in pagine non

immediatamente visibili degli stessi *e-mails* (c.d. *headers*), che quindi possono essere oggetto di valutazione da parte del Giudice ai fini dell'accertamento della data certa di tali *e-mail*, eventualmente sulla base di una CTU disposta a tal fine.

I *network service providers* (intesi sia come fornitori di servizi di rete che gestiscono i computer attraverso i quali gli e-mail passano nel loro tragitto verso il computer di destinazione, sia come computer attraverso i quali sono forniti tali servizi di rete), così come il sistema informatico del destinatario, sono terzi rispetto al *server* del mittente. In quanto tali, la registrazione nei loro *server* della data di passaggio del messaggio non è in alcun modo manipolabile da chi ha accesso ai *server* di partenza.

Di conseguenza la data e l'ora di passaggio degli *e-mail* registrate dai *network service providers* e nel sistema informatico del destinatario sono certe *ex* art. 2704 c.c.

Considerate le (sopra descritte) caratteristiche tecniche di terzietà e di non manipolabilità della comunicazione tramite e-mail, tale sistema di comunicazione è senz'altro analogo al sistema *telex* che, secondo la giurisprudenza della Suprema Corte (confermata più volte, proprio con riferimento alla procedura Parmalat, anche da codesto Ill.mo Tribunale), è mezzo idoneo ad attribuire data certa opponibile ai terzi *ex* art. 2704 c.c.: "*per rendere opponibile al fallimento del cedente l'atto di cessione del credito non è necessaria la notificazione a mezzo ufficiale giudiziario, ma è sufficiente un atto munito di data certa anteriore al fallimento, quale può essere la trasmissione a mezzo telex*"[cfr. Cass. 29 settembre 1999, n. 10788, in *Foro it.* 2000, I, 825].

In tale occasione, la Suprema Corte ha chiarito che, in generale, la data di trasmissione di una comunicazione deve ritenersi certa a norma dell'art. 2704 c.c. ogni volta che tale data venga registrata mediante uno strumento di comunicazione non suscettibile di manipolazione da parte dell'utente, con ciò riconoscendo

l'opponibilità ai terzi anche a forme di comunicazione diverse da quelle tipiche previste dall'art. 2704 c.c.

Il principio delineato dalla Suprema Corte può essere senz'altro esteso al messaggio *e-mail* poiché **la registrazione automatica della data di passaggio dell'*e-mail* dai computers *network service providers* e dal sistema informatico del destinatario** (soggetti certamente terzi rispetto al mittente ed al server del mittente) **non è in alcun modo manipolabile da chi ha accesso ai *server* di partenza.**

*   *   *

Allo stesso modo, sono idonei a fornire data certa gli estratti dai sistemi informatici del gruppo ABN, considerato che anch'essi, come già osservato, si connotano per particolare attendibilità ed oggettività in quanto sistemi non manipolabili **finalizzati all'adempimento degli obblighi di segnalazione statistica delle banche** previsti dalle normative comunitarie per la tutela del pubblico risparmio e che, in quanto tali, **non consentono agli operatori di intervenire od alterare i dati archiviati** (i quali, altrimenti, sfuggirebbero alla possibilità di ogni controllo) ed in particolare:

(i) le tabelle esplicative del finanziamento proposto dalla Wishaw Trading S.A. ad ABN, nonché delle garanzie connesse alle operazioni di finanziamento proposte (produzione n. 7 allegata al ricorso per opposizione allo stato passivo);

(ii) la relazione interna ad ABN concernente il finanziamento richiesto da Wishaw Trading S.A. ad ABN (produzione n. 8 allegata al ricorso per opposizione allo stato passivo).

2. LA RICHIESTA DI CTU PER LA DESCRIZIONE DEL FUNZIONAMENTO TECNICO DELL'ATTRIBUZIONE DELLA DATA NEGLI E-MAILS E NEL DATA BASE DI ABN.

Con la propria memoria istruttoria ABN ha chiesto a codesto Ill.mo Giudice che, ove il Tribunale lo ritenesse necessario al fine di essere in grado di apprezzare la correttezza

tecnica di quanto affermato da questa difesa, fosse disposta una consulenza tecnica d'ufficio al fine di accertare:

(i) le date di spedizione (dal sistema informatico di ABN Italia, di ABN New York e di Parmalat SpA), le date di ricezione (da parte del sistema informatico di ABN Italia, ABN New York, ABN Brasile), il tragitto percorso attraverso uno o più *network service providers* e le date in cui sono transitati da tali *network service providers* di tutti messaggi *e-mail* prodotti in causa come produzioni 6 e 9 allegate al ricorso per opposizione allo stato passivo; e

(ii) il funzionamento del sistema informatico utilizzato da ABN dal quale sono stati estratti i documenti prodotti come produzioni 7 e 8 allegate al ricorso per opposizione allo stato passivo e, in particolare, la non modificabilità o comunque l'alto grado di oggettività dei dati inseriti in tale sistema informatico.

Al fine di consentire al CTU nominato di effettuare le analisi necessarie, ABN ha offerto e offre, tra l'altro:

(a) di autorizzare il CTU ad accedere ai sistemi informatici di ABN Italia, ABN New York, ABN Brasile e Parmalat SpA ed acquisire copia anche informatica degli *e-mails* prodotti come produzioni 6 e 9 allegate al ricorso per opposizione allo stato passivo;

(b) di autorizzare il CTU ad accedere ai sistemi informatici (del o) dei *network service providers* attraverso cui gli *e-mails* prodotti come produzioni 6 e 9 allegate al ricorso per opposizione allo stato passivo sono transitate e presso cui è (necessariamente) conservata una copia ed acquisire tale copia anche informatica;

(c) di consegnare e fare analizzare al CTU gli *headers* generati automaticamente dai diversi sistemi informatici di invio, ricezione e passaggio degli *e-mails* prodotti come produzioni 6 e 9 allegati al ricorso per opposizione allo stato passivo; e

(d) di consentire al CTU di accedere ed analizzare il funzionamento e le caratteristiche operative e tecniche del sistema informatico di ABN New York.

Con ordinanza in data 9 gennaio 2007, come anticipato in narrativa, codesto Ill.mo Giudice ha rigettato la richiesta CTU ritenendone la natura esplorativa.

Questa difesa nota rispettosamente che le considerazioni effettuate da codesto Ill.mo Giudice sulla richiesta CTU non paiono per nulla condivisibili e paiono piuttosto il frutto di un superficiale esame dei complessi problemi ivi sottesi.

Infatti:

(a) **La CTU richiesta da ABN non è esplorativa (anzi non ha proprio nulla di esplorativo).**

**ABN ha chiaramente illustrato** nei propri atti il **valore probatorio dei messaggi** *e-mails* **e dei documenti informatici prodotti in giudizio e ha specificato che la CTU richiesta è finalizzata a fornire al Tribunale** gli strumenti tecnici (vale a dire, **le conoscenze tecniche informatiche) per comprendere le caratteristiche** di qualità, sicurezza, integrità ed immodificabilità **dei sistemi di posta elettronica e dei sistemi informatici interni del gruppo ABN AMRO, che sono state illustrate da questa parte e che sono indispensabili per valutare la fondatezza di tali asserzioni e, conseguentemente, la valenza probatoria degli** *e-mails* **e degli altri elementi prodotti e dedotti da ABN ai fini della dimostrazione della data certa dei documenti e/o dell'anteriorità del credito della Banca oggetto di causa all'ammissione di Parmalat SpA alla procedura concorsuale.**

**La CTU richiesta da ABN (che certo tutto è tranne che esplorativa) sarebbe al limite, pertanto, inutile se (e solo se) codesto Tribunale avesse le conoscenze tecnico-informatiche necessarie per valutare le caratteristiche tecniche dei sistemi di posta elettronica utilizzati dal gruppo ABN AMRO e, conseguentemente, la fondatezza delle** asserzioni dell'opponente circa la certezza e immodificabilità della data riportata,

conoscenze che per la verità non sono di comune esperienza (neppure da parte di chi, non essendo un tecnico informatico, utilizza, se pure professionalmente, sistemi, più o meno standard, di posta elettronica).

**Quanto sopra vale ancor a maggior ragione per gli estratti dal sistema informatico interno di ABN AMRO, non di pubblico utilizzo e, come tale, sconosciuto non solo al pubblico degli utenti, ma anche agli esperti informatici che non abbiano avuto modo di analizzarne le caratteristiche tecniche.**

In questo procedimento ABN ha fatto tutto quanto era suo onere fare: portare all'attenzione del Tribunale fatti e documenti (l'invio di messaggi di posta elettronica di specifico contenuto) pacifici ed incontestati, affermando che gli stessi hanno data certa e quindi sono idonei a dare data certa ai documenti ivi richiamati. Una tale affermazione non richiede prova alcuna ma solo un accertamento di carattere puramente tecnico circa la non manipolabilità dei sistemi da parte di ABN. E tale accertamento non lo può disporre che il Tribunale, eventualmente assistito da un CTU, giacchè ove lo proponesse ABN stessa attraverso tecnici dalla stessa incaricati, le affermazioni di tali tecnici sarebbero per pacifica giurisprudenza null'altro che allegazioni di parte esattamente assimilabili a quelle dei difensori della stessa (Cass. 6 maggio 2002, n. 6432; Trib. Milano 3 dicembre 2005, n. 14015, in *Giustizia a Milano* 2006, 1, 7; Tribunale di Bari 5 luglio 2006, n. 11870, in *Guida al diritto* 2007, 5, 9);

(b)     La CTU richiesta da ABN, inoltre, potrebbe accertare fatti ulteriori (rispetto a quelli già provati dalla stessa) accertabili unicamente da un soggetto dotato delle necessarie cognizioni tecnico-informatiche, in particolare la CTU potrebbe portare ad individuare i *network service providers* attraverso cui sono transitatigli *e-mail* scambiati tra la Parmalat ed ABN e tra le diverse filiali del gruppo ABN AMRO ed a verificare le date di passaggio apposte dai *network service providers* sugli *e-mails* (date

che, come si è più volte ripetuto, sono certe ai sensi dell'art. 2704 c.c. perché apposte da soggetti terzi e non manipolabili dal mittente e/o dal destinatario e dai rispettivi sistemi informatici).

Come è noto, per giurisprudenza costante, la CTU, malgrado abbia *"di regola, la funzione di fornire al giudice* [elementi per] *la valutazione dei fatti già probatoriamente acquisiti"*, "*può costituire fonte oggettiva di prova quando si risolva anche in uno strumento di accertamento di situazioni rilevabili solo con il concorso di determinate cognizioni tecniche*" (Cass. 30 novembre 2005, n. 26083, in *Giust. civ. Mass.*, 2005, 11). In questo caso, il giudice affida "*al consulente tecnico non solo l'incarico di valutare fatti accertati o dati per esistenti (cosiddetto consulente deducente), ma anche quello di accertare i fatti stessi (cosiddetto consulente percipiente). Nel secondo caso, in cui la consulenza costituisce essa stessa fonte di prova, è necessario e sufficiente che la parte interessata deduca il fatto e che il giudice ritenga che l'accertamento richieda specifiche cognizioni tecniche*" (Cass. 7 dicembre 2005, n. 27002, in *Giust. civ. Mass.*, 2005, 12; cfr. anche, tra le tante, Cass. 22 giugno 2005, n. 13401, in *Giust. civ. Mass.*, 2005, 6 e, soprattutto, Cass. Sez. Un. 4 novembre 1996, n. 9522, in *Danno e resp.*, 1997, 15).

**ABN chiede, pertanto, che codesto Ill.mo Tribunale (ove lo ritenga necessario per poter esprimere un giudizio circa le affermazioni delle parti) rimetta la causa in istruttoria e disponga la richiesta consulenza tecnica d'ufficio.**

3. LA RICHIESTA DI UN ORDINE DI ESIBIZIONE EX ART. 210 C.P.C.

Nella propria memoria istruttoria ABN ha altresì chiesto a codesto Ill.mo Tribunale di ordinare ai sensi dell'art. 210 c.p.c.:

(a) alla Procedura di Parmalat SpA in AS, l'esibizione **del dettaglio delle garanzie rilasciate da Parmalat SpA ed in essere** alla data di insolvenza di Parmalat SpA e di ogni altro documento utilizzato dal Commissario Straordinario per determinare ed indicare nel

19

Programma di Ristrutturazione il valore complessivo delle garanzie rilasciate da Parmalat SpA in 9.679 milioni di Euro e, in particolare, del **dettaglio o di ogni altro documento che hanno permesso di determinare il valore delle garanzie di** *"Promissory notes"* **nell'importo di 826,7 milioni di Euro**; e inoltre

(b) alla Procedura, alla Procura della Repubblica presso il Tribunale di Milano e al Presidente del Collegio davanti al quale è pendente il processo penale R.G. 12473/04, l'esibizione **delle carte di lavoro della società di revisione Grant Thornton sulla base delle quali è stato certificato il prospetto contabile consolidato di Parmalat Finanziaria S.p.A. al 30 giugno 2003**, carte che si trovano nel fascicolo del dibattimento del giudizio penale R.G. 12473/04.

ABN ha argomentato la propria istanza istruttoria come segue.

A. Negli anni precedenti il dissesto finanziario Parmalat SpA ha prestato garanzie per ingentissimi ammontari, soprattutto a favore di imprese controllate, come risulta:

(i) dai conti d'ordine del bilancio di Parmalat SpA al 31 dicembre 2002, che riportano il valore aggregato delle garanzie all'epoca in essere che ammonta a 5.632 milioni di Euro, di cui 5.446 milioni di Euro per garanzie a favore di imprese controllate (cfr. doc. 10 allegato alla memoria ex art. 184 c.p.c.); e

(ii) dal Programma di Ristrutturazione presentato al Ministero delle Attività Produttive dal Commissario Straordinario Dott. Enrico Bondi *ex* art. 4, comma 2, D.L. n. 347/03 (doc. 11 allegato alla memoria ex art. 184 c.p.c.) (il *Programma di Ristrutturazione*), con il quale il Commissario Straordinario ha espressamente riconosciuto l'esistenza di garanzie da parte di Parmalat SpA (e di altre società del Gruppo Parmalat oggetto di concordato) anteriormente alla dichiarazione dello stato di insolvenza, come risulta dalla seguente tabella n. 3.26 intitolata *"Garanzie rilasciate dalle società*