# EXHIBIT 2

Attorney UMBERTO SERRA
Via Mentana 41, PARMA 43100
Tel. 0521 774246

Opp. No. 233

[illegible]

ORIGINAL

## COURT OF PARMA

## BANKRUPTCY SECTION

### EXTRAORDINARY ADMINISTRATION PROCEDURE FOR PARMALAT S.P.A.

### DELEGATE JUDGE: GIUSEPPE COSCIONI

### EXTRAORDINARY COMMISSIONER: ENRICO BONDI

**ABM Amro Bank N.V.**, with registered office at Via Gustav Mahlerlaan, Amsterdam, and U.S. headquarters at 55 East 52nd Street, New York, N.Y. 10055, in the person of the legal representative, the Senior Vice President Mr. Parker H. Douglas, represented and defended by virtue of the Special Power of Attorney authenticated and apostilled under the hand of Notary Laurette K. Kanavos of the State of New York (and submitted as Doc. 1 in the Proof of Debt Claim filed at the Bankruptcy Registry of the Court of Parma on June 4, 2004), by Attorneys Cesare Vecchio and Giuseppe Curtò, with offices in Milan, and also Attorney Umberto Serra, with offices at via Mentana 41, Parma. For the purposes of the present proceeding, the Bank has elected domicile in the offices of the latter,

[illegible]
[signed]

### APPEAL IN OPPOSITION TO THE SCHEDULE OF LIABILITIES

\*    \*    \*

### IN MATTERS OF FACT

**1.** In March 2003, the New York Branch of ABN AMRO Bank N.V., (hereinafter, "**ABN**" or the "**Bank**"), made available to the company Wishaw Trading S.A. (hereinafter "**Wishaw**"), a loan for the total amount of USD 10,000,000.00, for the purpose of allowing the beneficiary to purchase a delivery of agricultural products from the Archer Daniels Midland Company.

**2.** Wishaw made use of the loan by issuing a promissory note on March 27, 2003, backed by a guarantee of payment from Parmalat S.p.A., for an amount equal to USD 9,999,999.91, plus interest and additional costs as required by law, expiring on March 19, 2004,

Attorney Umberto Serra

Viale Mentana n. 41, Parma 43100    tel. 0521774246, fax 0521701740

in favor of the supplier Archer Daniels Midland Company, which then transferred the promissory note to the Bank, and thus received payment for it (Doc. **2** of the Proof of Debt Claim).

**3.** Subsequently, as of the expiration of the promissory note, Wishaw did not pay the amount due to the Bank.

**4.** Based on the guarantee of payment of the promissory note, Parmalat S.p.A. thus owed ABN, jointly and severally with Wishaw, the amount of USD 9,999,999.91, equal to €8,071,025.00).

**5.** By an order issued on December 24, 2003, the Ministry of Productive Activities ordered that Parmalat S.p.A. be subjected to an extraordinary administration procedure, and subsequently, in a decision issued on December 27, 2003, the Court of Parma declared Parmalat S.p.A. to be insolvent.

**6.** By a request filed at the Bankruptcy Registry of the Court of Parma on June 4, 2004, ABN requested that its claim of € 8,071,025.00 be listed on the schedule of liabilities in the Extraordinary Administration Proceeding for Parmalat S.p.A.

**7.** On July 29, 2004, the Extraordinary Commissioner of the Parmalat S.p.A. Extraordinary Administration, filed at the Court of Parma his report including his position regarding the claims to be included on the Proceeding's schedule of liabilities, indicating a negative opinion on the inclusion of ABN's claim, arguing that the security cited as grounds for the Bank's request that the claim be included, could not be enforced in the Proceeding pursuant to Art. 45 Bankruptcy Law and Art. 2704 Civil Code, due to the absence of certified dates in the documents to be enforced against the Proceeding.

**8.** In an order issued on August 3, 2004, the Delegate Judge set a deadline of September 18, 2004 for any comments concerning the provisional list

of claims to be filed, and for the submission of any new documents in addition to those already filed with the request for listing on the schedule of liabilities.

**9.** By the above-cited deadline, ABN filed its own comments, supplemented by new documents, which were followed by responses from the Commissioner on November 3, 2004, and rebuttal from ABN on November 8, 2004.

**10.** Once that brief exchange of written briefs was concluded, in an order of December 16, 2004, published in the Official Gazette of the Republic of Italy on December 28, 2004, the Delegate Judge ordered ABN's claim to be excluded from the list of creditors, stating that:

*"......all of the documents submitted by the instant claimant lack certified dates, and in particular, the claimant has not provided proof that the guarantees cited as grounds for the request were issued on a date before the bankruptcy proceeding was opened, nor that any facts exist which establish with certainty the precedence of the establishment of those guarantees (in particular, both the promissory note and the guarantee show only the date on which they are claimed to have been issued, without any certification of those dates; the letters and e-mails in the documents are not valid for the purpose of demonstrating certified dates, as there is no certification that they were written on the dates which they bear)."*

That order is in error with regards to the claim brought by the claimant against the company in Extraordinary Administration, and thus should be reversed

**on the following grounds, as a matter of**

**LAW**

**A. APPLICABILITY OF ART. 14, SECT. 2 OF THE ROME CONVENTION TO THE SECURITY CITED AS GROUNDS FOR THE PROOF OF DEBT CLAIM.**

3

The Extraordinary Commissioner of Parmalat S.p.A. has rejected the Proof of Debt Claim submitted by ABN, arguing that the private agreement which established the guarantee, cited as grounds for the Claim, lacks a certified date that can be enforced in the Extraordinary Administration Procedure, in accordance with the combined effect of Art. 45 of the Bankruptcy Law and Art. 2704 of the Civil Code. It is essential to note that the provisions included in Art. 2704 of the Civil Code and Art. 45 of the Bankruptcy Law do not constitute probative limits applicable to the guarantee issued by Parmalat S.p.A., and cited as grounds for ABN's Proof of Debt Claim.

In fact, the aforementioned guarantee, which was entered into between companies in different countries, is an international act, and as such, is governed by the Rome Convention of 1980 on the law applicable to contractual obligations. In this regard, we note that the guarantee under consideration is subject to the application of the Rome Convention, whereas in accordance with the laws of the State of New York (which govern the substantive relationship, as expressly agreed upon by the Parties), guarantee obligations which are incidental to security relationships have full contractual nature, and not the nature of a certified bond.

On the subject of proof, Art. 14, Sect. 2 of the cited Convention states the following: *"A contract or an act intended to have legal effect may be proved by any mode of proof recognized by the law of the forum or by any of the laws referred to in Article 9 under which that contract or act is formally valid, provided that such mode of proof can be administered by the forum."*

In the alternative, by virtue of the combined effect of Art. 14 Sect. 2, and Art. 9 of the Convention, proof of the relationship can be provided according to the law of the relevant forum, and that is, the law of the State of New York (United States), which governs the agreement by virtue of the understandings reached between the Parties.

As emerges in the **Official Report on the Rome Convention** by M. Giuliano and P. Lagarde (as well as in the writings of many other authoritative Authors), **Art. 14,**

4

**Sect. 2 of the Convention, establishes a system of proof which favors the proof of the act, aimed at respecting the legitimate expectations of the parties, who, at the time of concluding their act, relied upon the modes of proof provided for by the law governing the formal validity of the contract, when that law contains provisions which are more favorable than those of the forum.** (M. Giuliano, P. Lagarde, *Report on the Convention on the law applicable to contractual obligations* OJEC No. 282/1980; A. Lucchini, *The governing of form and proof in the Rome Convention*, in *The Rome Convention on law applicable to international contracts*, Milan 1994; T. Ballarino, *International Private Law*, Padua, 1999; F. Mosconi, *Course in international private and procedural law*, 1991, Milan).

The authors of the Official Report, in order to provide an example, specified in particular that: ***"if the law governing the formal validity of the act only requires oral agreement and allows such an agreement to be proved by witnesses, the expectations of parties who had relied on that law would be disappointed if such proof were to be held inadmissible solely on the ground that the law of the trial court required written evidence of all acts intended to have legal effect."*** (M. Giuliano, P. Lagarde, *Report on the Convention on the law applicable to contractual obligations*, op. cited).

In the case at hand, the law of the State of New York (United States), which applies to the guarantee issued by Parmalat S.p.A. according to Articles 9 and 14 of the Rome Convention, as we have explained above, does not set any limits on the evidentiary value of private agreements with respect to third parties, even if they lack a certified date. Nor are there any limits in the Italian procedural system regarding the use of private agreements, where such evidence is generally admitted.

In light of this fact, the date of ABN's claim with respect to Parmalat S.p.A. has therefore been fully proven, whereas Articles 2704 of the Civil Code and 45 of the Bankruptcy Law should not, and could not,

5

have been applied to the case at hand, since they were established by a different legal system than the one which the Parties agreed to follow in the agreement which governs the substantive relationship.

**B) Concerning the proof of the precedence of the guarantee of payment with respect to the declaration of insolvency of Parmalat S.p.A.**

It is known that an established line of case law holds that the bankruptcy trustee (in the event of Extraordinary Administration, the Extraordinary Commissioner) acts as a third party with respect to the claimants and the bankrupt party (see, *inter alia*, Cassation decision No. 6465, May 9, 2001). It follows from that principle, that for a private agreement to be enforced against the bankruptcy trustee, it must have a certified date in accordance with Art. 2704 of the Civil Code.

However, according to another established line of case law, **Art. 2704 of the Civil Code only applies to proof of the date of the private agreement, and not proof of the date of the act which produced the results which one wishes to enforce against third parties.**

**Indeed, such proof can be provided by any means allowed by law, including witnesses and prima facie evidence, provided that the relationship to be demonstrated does not require the written form *ad substantiam* or *ad probationem*, which undoubtedly does not apply to an act of guarantee such as the one under discussion here** (Cassation decision No. 3347, April 9, 1994; Cassation decision No. 1016, January 27, 1993; Cassation decision No. 4738, August 31, 1984; Trieste Appeals, December 1, 1990, in *Il Fallimento*, 1991, 869; Milan Appeals, October 21, 1980, in *Arch. Civ.* 1980, 1070; Court of Naples, April 9, 2002, in *Il Fallimento* 2003, 1230; Court of Turin, March 26, 1990, in *Il Fallimento* 1990, 1068; Court of Verona, November 26, 1997, in *Foro padano* 1999, I, 279; Court of Milan, May 30, 1985, in *Il Fallimento* 1985, 1191).

On this point, it is useful to cite some of the principles expressed by the Cassation Judges: *"unenforceability in accordance with Art. 2704 of the Civil Code does not regard the act, but rather the date of the entry. The proof of the act and its establishment prior to the insolvency can be*

6

*provided by all modes allowed, including by witnesses or prima facie evidence."* (Cassation decision No. 9539, July 20, 2000); also: *"... unenforceability does not involve the act, but the date of the entry. That is, it concerns only the intention of providing proof of the time the act was entered into, (only) through the entry, and thus **does not exclude the possibility that proof of the act and its precedence with respect to the insolvency may be provided by any other modes allowed, including with respect to third parties, of the nature and subject of the act"*** (Cassation, No. 1016, January 27, 1993, op. cited).

From the preceding considerations, it follows that, even if the documents submitted in order to provide proof of the act with respect to the trustee do not have a certified date, they may still be assessed by the Judge as evidence, if they have the characteristics described in Art. 2729, Section 1, of the Civil Code.

In accordance with the line of case law just mentioned, ABN has provided proof of the precedence of its claim against Parmalat S.p.A. with respect to the declaration of insolvency of the same, **both by way of documents with certified dates, and by providing weighty, precise and concordant elements of evidence, in accordance with Art. 2729, Section 1 of the Civil Code**, which corroborate the aforementioned circumstance.

In particular, ABN has submitted the following documents.

1) **Documents with certified dates.**

(i) Tables explaining the loan proposed by Wishaw Trading S.A. to ABN, and the guarantees in connection with the proposed financing operations (Doc. 5 of the preliminary brief of September 18, 2004).

(ii) Internal report concerning the loan requested by Wishaw Trading S.A. from ABN (Doc. 6 of the preliminary brief of September 18, 2004);

(iii) E-mail message sent on March 10, 2003 from Angela Noique of the New York Branch of ABN AMRO to Tamara Cavallucci and Loredana Quintadamo of the Milan Branch of

7

ABN AMRO, regarding the negotiations for the provision of a guarantee by Parmalat S.p.A. (Doc. 7 of the preliminary brief of September 18, 2004).

(iv) E-mail message sent on March 14, 2003 from Giorgia Bocchi of Parmalat S.p.A. to Ms. Tamara Cavallucci of the Milan Branch of ABN, to confirm that Parmalat S.p.A. had accepted the format of the documents containing the promissory note and guarantee drawn up by ABN (Doc. 4 in the preliminary brief of September 18, 2004).

As already stated in the comments of September 18, 2004, and the rebuttal of November 8, 2004, the documents identified in points (i)-(iii) were extracted entirely from the ABN data base in which the data regarding transactions carried out by the Bank with its clients are recorded, along with all other information concerning the client and transactions which from time to time are the subject of negotiations.

**That system is an internal computer system, in which each document and any changes made to it automatically acquire a date, without any interference by the author of the document.** By virtue of the mechanical recording of that temporal data, those documents **can not be backdated**; that is, their dates can not materially be falsified. Nor can the contents be changed, of course (except by creating a new document/message on a subsequent date).

However, the Honorable Bankruptcy Court has ruled that the documentation provided by ABN and extracted from its database, is not sufficient to establish with certainty the precedence of the establishment of the guarantee with respect to the declaration of insolvency of the company.

ABN therefore requests that the Honorable Court order a Court-appointed Expert Witness to verify the functioning and operational characteristics of ABN's internal computer system.

Such an Expert Opinion will show the clear analogy between the cited computer system and the telex system, which Court of Cassation decisions have found to be a means of communication

8

suitable to attribute a certified date that may be enforced against third parties, in accordance with Art. 2704 of the Civil Code: *"to make the act of assignment of a claim enforceable against the bankruptcy of the assignor, service by a judicial official is not necessary; an act bearing a certified date prior to the bankruptcy, such as the transmission by telex, is sufficient"* (Civil Cassation decision No. 10788, September 29, 1999).

In the cited decision, in which the Court of Cassation reaffirmed the reasoning of the trial Judges, the Court specified that the date of transmission of a communication must be considered certified pursuant to Art. 2704 of the Civil Code any time that the date is recorded by a communications instrument not susceptible to manipulation by the user, thus recognizing the enforceability against third parties of forms of communication other than the typical ones provided for by Art. 2704 of the Civil Code.

As such, the Court of Cassation essentially ruled that:

(i) the forms of communication suitable to provide certified dates of transmission enforceable against third parties pursuant to Art. 2704 of the Civil Code are not limited in number;

(ii) all instruments of communication whose technical methods of operation allow for mechanical recording (without the possibility of being manipulated by the user) of the temporal circumstances of the transmission, are suitable to provide a certified date enforceable against third parties pursuant to Art. 2704 of the Civil Code.

As regards the document identified in point (iv), that document consists of an e-mail sent from the Parmalat S.p.A. computer system to the ABN computer system.

On this point, it is essential to specify that each e-mail message follows a path which proceeds more or less as follows: (i) departure from the sending server, which automatically records the time and date of departure of the message; (ii) **passage through one or more network service providers, which copy the message, make a copy on their hard disk, and in turn automatically record the time and date of passage of the communication;** (iii) arrival in the receiving server, which records the time and date of arrival.

9

In this regard, it is essential to note that **the network service providers, and also the sender's computer system (Parmalat, in the case at hand), are third parties with respect to the recipient's server (ABN, in the case at hand), and as such, the recording on their servers of the date of passage of the message can in no manner be manipulated by those who access the arrival server (ABN, again). As a consequence, the time and date of passage of the e-mail messages recorded by the network service providers and the sender's computer system must be considered as certified. Therefore, the analogy of that means of communication with the telex system, is valid *a fortiori*.**

In this regard, ABN requests that the Honorable Bankruptcy Court also order a Court-appointed Expert Witness to verify the circumstances just described, authorizing the Expert Witness to access both the computers of Ms. Giorgia Bocchi (or the computer system of Parmalat S.p.A., in general) in order to verify the path traveled by the e-mail message (sending from the Parmalat S.p.A., passage through the network service providers, receipt by the ABN system), and to verify that the message was sent from the Parmalat server, and in particular from the address of Ms. Giorgia Bocchi (giorgia.bocchi@parmalat.net) on March 14, 2003, to the computer system of the network service provider(s) through which that message passed, to verify the dates of passage.

In addition, in order to prove the circumstances described here, we submit the following items for testimonial evidence:

1. It is true that on March 14, 2003, Ms. Giorgia Bocchi, an employee of the company Parmalat S.p.A., sent from her account within the Parmalat computer system (giorgia.bocchi@parmalat.net) an e-mail message to Ms. Tamara Cavallucci, to the address tamara.cavallucci@it.abnamro.com, confirming the acceptance by Parmalat S.p.A. of the format of the promissory note issued by Wishaw

10

in favor of the supplier Archer Daniels Midland Company, and the relevant guarantee of payment issued by Parmalat S.p.A., as drawn up by ABN.

We call on Ms. Giorgia Bocchi, domiciled at the Parmalat S.p.A. company in Collecchio (Parma), to testify as to the cited circumstances.

**2.    Documents valid as circumstantial evidence.**

ABN has produced the following documents which are valid as weighty, precise and concordant evidence pursuant to Art. 2729, paragraph 1 of the Civil Code:

(i) an authentic copy of the promissory note issued by Wishaw Trading S.A. on March 27, 2003 in favor of the Archer Daniels Midland Company, for which a guarantee of payment was provided by Parmalat (Doc. 2 of the Proof of Debt Claim).

(ii) a memorandum drawn up by the Chapman and Cutler law offices on March 25, 2003 (Doc. 1), in which the attorneys approve the inspection carried out by the Milan Branch of ABN AMRO in connection with the signing of the guarantee by Mr. Calisto Tanzi, and in which they confirm the validity and effect of the following documents:

    **1.**   promissory note of March 27, 2003;

    **2.**   guarantee provided by Parmalat S.p.A. on March 27, 2003:

    **3.**   letter from Wishaw Trading S.A. to ABN on March 27, 2003, with which Wishaw Trading S.A. enclosed the promissory note and agreed to pay the amount due to ABN in accordance with that note;

    **4.**   letter of confirmation on March 20, 2003 from ADM to ABN in relation to the discounting of the promissory note;

    **5.**   Minutes of the Parmalat S.p.A. Board of Directors meeting of May 16, 2001, which certify the conferral of powers upon Calisto Tanzi;

(iii) letter sent on March 25, 2003 from the Archer Daniels Midland Company to ABN, in which the bank information was communicated for the discounting of the promissory note issued by Wishaw Trading S.A. (Doc. 2);

(iv) declaration of March 25, 2003 by Archer Daniels Midland Company certifying that the documentation necessary for the issue of the promissory note by Wishaw Trading S.A. was original (Doc. 3). The documents covered by the declaration are, in particular, the invoice regarding the provision of the agricultural products by the Archer Daniels Midland Company, and the shipping receipts for those products;

The indicated elements of proof have the value of weighty, precise and concordant prima facie evidence, and as such, they are valid as suitable proof of the date on which the guarantee issued by Parmalat S.p.A. was established, prior to the opening of the Extraordinary Administration Proceeding involving that company.

In any event, the circumstances listed above will be confirmed by the witnesses whom ABN reserves the right to designate in the preliminary brief to be filed by the deadline to be set, which ABN hereby requests be set.

*      *      *

Now, therefore, ABN, represented and defended as indicated above, brings an

### APPEAL IN OPPOSITION

to the order of December 28, 2004, in which the Honorable Delegate Judge of the Court of Parma ordered that ABN not be included among the creditors on the schedule of liabilities of Parmalat S.p.A. in Extraordinary Administration, and

### REQUESTS

On the merits:

- that the Honorable Delegate Judge, upon setting the date of the hearing for the appearance of the instant claimant and the Extraordinary Commissioner, admit

12

ABN's claim of **€ 8,071,025** as an unsecured claim on the schedule of liabilities of the Parmalat S.p.A. Extraordinary Administration proceeding, for the reasons presented in the narrative section, and thus modify the schedule of liabilities of the Parmalat S.p.A. Extraordinary Administration, as set in the order of December 28, 2004.

In the pre-trial phase:

- that the Honorable Delegate Judge order a Court-appointed Expert Opinion be prepared to verify the circumstances indicated in the narrative section;

- that the Honorable Delegate Judge admit item 1 of testimonial evidence presented in the narrative section, with the witness designated there.

We reserve the right to present further arguments and submissions, and to present additional items of evidence.

We submit copies of the documents enclosed with the Request for inclusion on the schedule of liabilities of June 4, 2004, and the documents enclosed with the subsequent acts, according to the numbering sequence indicated in those acts.

Milan-Parma, January 27, 2004

[stamp:
Court of
Parma]

Attorney Cesare Vecchio


Attorney Umberto Serra

[signed]

Attorney Giuseppe Curtò

We declare that the amount at issue in this proceeding is greater than 520,000.00 euros.

[signed]

13

FEES COLLECTED
X COPY auth.
CERTIFIED
WITH REVENUE
STAMPS  8.26
[illeg.]  25-02- [illeg.]
[illeg.]  [signed]

[seal: Republic of Italy]

# COURT OF PARMA

The Delegate Judge Giuseppe Coscioni, considering Art. 98, of Royal Decree No. 267 of March 16, 1942,

**hereby sets**

the hearing for the appearance before this Court of the instant claimant and the Extraordinary Commissioner, for **July 5, 2005** at **9:45 a.m.;**

and orders that the request and this order be served upon the Extraordinary Commissioner by the final deadline of March 15, 2005

Parma, February 7, 2005

| The Clerk | The Delegate Judge | 03237 |
| --- | --- | --- |
| Maria Paola Pelagatti | Giuseppe Coscioni | [illegible] PARMA |
| [signed] | [signed] | |

|  |  |
| --- | --- |
|  | *2.58* |
|  | *3.71* |
| [stamp: Court of Parma]  Certified true copy of the original | *6.29* |
| *Parma*, FEB. 25, 2005 | |
| The Clerk C1 | *0.37* |
| *Maria Paola Pelagatti*  COMMUNICATED ON FEB. 25, 2005 | *6.66* |
| COPIES ISSUED ON [illegible] | |

ENDORSEMENT OF SERVICE

On the _____ day of the month of _____,        two thousand five, upon request from *Attorney UMBERTO SERRA*, in his capacity, the undersigned Judicial Official of the Service Office has, for all purposes of law, served the above request and resulting order on the Extraordinary Commissioner [handwritten: *ENRICO BONDI*, at his office, at the premises of *PARMALAT S.p.A., Via O. GRASSI, 26, COLLE*[illeg.]], delivering a copy by hand to [handwritten, illegible]

THE CLERK B3
COURT OF
PARMA
[illegible] Armando
[signed]

[illegible stamp]



**TRANSPERFECT**

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BERLIN
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBAI
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PHOENIX
PORTLAND
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
SYDNEY
TOKYO
TORONTO
VANCOUVER
WASHINGTON, DC

City of New York, State of New York, County of New York

I, Marina Yoffe , hereby certify that the following is, to the best of my knowledge

and belief, a true and accurate translation of the document: "Extraordinary

Administration Procedure for Parmalat S.P.A" from Italian into English.



—————————————————————
Signature

Sworn to before me this
June 2, 2008



—————————————————————
Signature, Notary Public

**Pamela Boyle**
**Notary** Public  State of New York
No. 01BO6181278
Qualified in NEW YORK County
Commission Expires  Jan 28, 2017

—————————————————————
Stamp, Notary Public

Avvocato UMBERTO SERRA
Viale Mentana, 41 - 43100 PARMA
Tel    0521 774246

*OPP. N.  233*

# TRIBUNALE DI PARMA

## SEZIONE FALLIMENTARE

### PROCEDURA DI AMMINISTRAZIONE STRAORDINARIA DI PARMALAT S.P.A.

#### GIUDICE DELEGATO: DOTT. GIUSEPPE COSCIONI

#### COMMISSARIO STRAORDINARIO: ENRICO BONDI

**ABN AMRO Bank N.V.**, con sede in Amsterdam, Via Gustav Mahlerlaan e sede per gli Stati Uniti d'America in New York, n 55 East 52nd Street, N.Y. 10055, in persona del suo legale rappresentante, il Senior Vice President Mr. Parker H. Douglas, rappresentata e difesa in forza di procura speciale autenticata ed apostillata a ministero Notaio Laurette K. Kanavos, dello Stato di New York (e prodotta come doc. **1** della domanda di insinuazione al passivo depositata presso la cancelleria fallimentare del Tribunale di Parma in data 4 giugno 2004) dagli Avv.ti Cesare Vecchio e Giuseppe Curtò, con studio in Milano, nonché dall'Avv. Umberto Serra, con studio in Parma, via Mentana n. 41, presso il quale ultimo la Banca ha eletto domicilio ai fini del presente procedimento,

## RICORSO PER OPPOSIZIONE ALLO STATO PASSIVO

\*     \*     \*

### FATTO

**1.** Nel marzo 2003 la ABN AMRO Bank N.V. Filiale di New York (nel prosieguo, *ABN* o la *Banca*) metteva a disposizione della società Wishaw Trading S.A. (nel prosieguo, *Wishaw*) un finanziamento per l'ammontare complessivo di USD 10.000.000,00, diretto a consentire alla beneficiaria l'acquisto dalla Archer Daniels Midland Company di una fornitura di prodotti agricoli.

**2.** Il finanziamento veniva utilizzato dalla Wishaw attraverso l'emissione in data 27 marzo 2003 di una *promissory note*, garantita per avallo da Parmalat S.p.A., per un ammontare pari a USD 9.999.999,91, oltre interessi e accessori di legge, con scadenza in data 19

MI203416 / 6 000000-0000                                                                                  1

marzo 2004, a beneficio della fornitrice Archer Daniels Midland Company, la quale girava la *promissory note* alla Banca ricevendone il relativo pagamento (doc. **2** della domanda di insinuazione al passivo).

**3.** Successivamente, alla scadenza della *promissory note* Wishaw non provvedeva a versare alla Banca l'importo dovuto.

**4.** In forza della garanzia rilasciata per avallo della *promissory note* Parmalat Sp.A. è debitrice, in solido con Wishaw, verso ABN dell'importo di USD 9.999.999,91, pari all'importo di € 8.071.025.

**5.** Con decreto in data 24 dicembre 2003 il Ministero delle Attività Produttive ha disposto l'ammissione di *Parmalat* alla procedura di amministrazione straordinaria e, successivamente, con sentenza in data 27 dicembre 2003 il Tribunale di Parma ha dichiarato lo stato di insolvenza della *Parmalat*.

**6.** Con atto depositato presso la cancelleria fallimentare del Tribunale di Parma in data 4 giugno 2004 ABN chiedeva l'ammissione del proprio credito dell'importo di € 8.071.025 al passivo della procedura di Amministrazione Straordinaria di Parmalat S.p.A.

**7.** In data 29 luglio 2004 il Commissario Straordinario della procedura di Amministrazione Straordinaria di Parmalat S.p.A. ha depositato presso il Tribunale di Parma la propria relazione contenente le indicazioni in merito ai crediti da ammettere allo stato passivo della Procedura, esprimendo parere negativo in merito all'ammissione del credito di ABN, atteso che il titolo posto a fondamento della domanda di insinuazione della banca sarebbe inopponibile alla procedura ex artt. 45 l.f. e 2704 c.c., ossia per la mancanza nei documenti forniti di data certa opponibile alla Procedura.

**8.** Con provvedimento in data 3 agosto 2004 il Giudice Delegato ha fissato al 18 settembre 2004 il termine per proporre eventuali osservazioni in relazione all'elenco provvisorio dei

2

crediti e per produrre nuovi documenti ad integrazione di quanto depositato con la domanda di insinuazione al passivo.

**9.** Entro il suddetto termine ABN ha provveduto al deposito delle proprie osservazioni integrate da nuovi documenti, alle quali hanno fatto seguito le repliche del Commissario in data 3 novembre 2004 e le controrepliche di ABN in data 8 novembre 2004.

**10.** Esaurito tale breve contraddittorio scritto, con provvedimento in data 16 dicembre 2004 pubblicato nella Gazzetta Ufficiale della Repubblica Italiana in data 28 dicembre 2004 il Giudice Delegato ha disposto l'esclusione del credito di ABN dall'elenco dei creditori affermando che: "......*tutti i documenti prodotti dall'istante sono privi di data certa e, in particolare, il creditore non ha fornito la prova che le garanzie richiamate a fondamento dell'istanza siano state rilasciate in data anteriore alla apertura della procedura concorsuale, né che vi siano fatti che stabiliscono in modo certo l'anteriorità della formazione delle stesse (in particolare, sia sulla promissory note che sulla garanzia vi è soltanto l'indicazione della data nella quale sarebbero state emesse, senza però alcuna certificazione al riguardo: le lettere e le e-mail in atti non hanno valore di data certa non essendovi alcuna certificazione che attesti che siano state scritte nelle date sulle stesse indicate).*

Tale provvedimento risulta errato con riguardo ai diritti di credito vantati dall'opponente nei confronti della società in Amministrazione Straordinaria e, pertanto dovrà essere riformato

**per i seguenti motivi in**

**DIRITTO**

**A. APPLICABILITÀ DELL'ART. 14 C. 2 DELLA CONVENZIONE DI ROMA AL TITOLO POSTO A FONDAMENTO DELLA DOMANDA DI INSINUAZIONE AL PASSIVO.**

3

Il Commissario Straordinario di Parmalat S.p.A. ha rigettato la domanda di insinuazione al passivo proposta da ABN in quanto la scrittura privata incorporante la garanzia posta a fondamento della stessa non avrebbe data certa opponibile alla Procedura di Amministrazione Straordinaria ai sensi del combinato disposto degli artt. 45 l.f. e 2704 c.c. E' fondamentale notare che le disposizioni di cui agli artt. 2704 c.c. e 45 l.f. non costituiscono limiti probatori applicabili alla garanzia rilasciata da Parmalat S.p.A. e posta a fondamento della domanda di insinuazione al passivo di ABN.

La predetta garanzia, stipulata tra società di Paesi stranieri, ha infatti carattere internazionale ed è, come tale, disciplinata dalla Convenzione di Roma del 1980 sulla legge applicabile alle obbligazioni contrattuali. Al riguardo, si osserva che la garanzia di cui si tratta è soggetta all'applicazione della Convenzione di Roma, posto che ai sensi della legge dello Stato di New York (che, per espressa previsione delle parti, regola il rapporto sostanziale) le obbligazioni di garanzia accessorie a rapporti cartolari hanno piena natura contrattuale e non cartolare.

L'art. 14 comma 2 della predetta Convenzione in materia di prova recita: "*Gli atti giuridici possono essere provati con ogni mezzo di prova ammesso tanto dalla legge del foro quanto da quella tra le leggi contemplate dall'art. 9 secondo la quale l'atto è valido quanto alla forma, semprechè il mezzo di prova di cui si tratta possa essere impiegato davanti al giudice adito*".

In forza del combinato disposto dell'art. 14 c. 2 e dell'art. 9 della Convenzione, la prova del rapporto può essere fornita alternativamente secondo la *lex fori* ovvero secondo la legge dello Stato di New York (Stati Uniti) che regola il contratto in forza della determinazione convenzionale delle parti.

Come emerge dalla **Relazione Ufficiale sulla Convenzione di Roma** redatta da M. Giuliano e P. Lagarde (oltre che dagli scritti di molti altri autorevoli Autori), **l'art. 14**

comma 2 della Convenzione fissa un regime di prova ispirato al *favor probationis* e teso a salvaguardare le legittime aspettative delle parti che, in occasione della stipulazione, abbiano contato sui mezzi di prova previsti dalla legge regolatrice della forma del contratto allorchè tale legge contenga disposizioni più favorevoli rispetto alla *lex fori*. (M. Giuliano, P. Lagarde, *Relazione sulla convenzione relativa alla legge applicabile alle obbligazioni contrattuali* G.U.C.E. n. 282/1980; A. Lucchini, *La disciplina della forma e della prova nella Convenzione di Roma,* in *La Convenzione di Roma sul diritto applicabile ai contratti internazionali,* Milano, 1994; T. Ballarino, *Diritto internazionale privato*, Padova, 1999; F. Mosconi, *Corso di diritto internazionale privato e processuale*, 1991, Milano).

I redattori della Relazione Ufficiale a fini esemplificativi hanno in particolare specificato che: "*se...la legge che disciplina la forma dell'atto si limita ad esigere l'accordo verbale ed ammettere per quest'ultimo la prova testimoniale, le parti che abbiano confidato in tale legge resterebbero deluse nelle loro aspettative se fosse loro vietato di esperire la prova testimoniale unicamente perchè la lex fori esiga per tutti gli atti giuridici la prova scritta*." (M. Giuliano, P. Lagarde, *Relazione sulla convenzione relativa alla legge applicabile alle obbligazioni contrattuali*-cit.).

Nel caso di specie la legge dello Stato di New York (Stati Uniti) che, come esposto precedentemente, si applica alla garanzia rilasciata da Parmalat S.p.A. in virtù degli artt. 9 e 14 della Convenzione di Roma, non pone alcun limite all'efficacia probatoria della scrittura privata pur priva di data certa nei confronti dei terzi. Né l'impiego della scrittura privata trova alcun limite nell'ordinamento processuale italiano ove tale mezzo di prova risulta generalmente ammesso.

Alla luce di quanto sopra, pertanto, la data del credito di ABN nei confronti di Parmalat S.p.A. risulta pienamente provata, laddove gli artt. 2704 c.c. e 45 l.f. non avrebbero dovuto

né potuto essere applicati al caso di specie, in quanto stabiliti da un ordinamento giuridico diverso rispetto a quello che le parti hanno concordemente indicato nel titolo come regolante il rapporto sostanziale..

**B) Sulla prova dell'anteriorità del negozio di garanzia rispetto alla dichiarazione di insolvenza di Parmalat S.p.A.**

Come noto, secondo un consolidato indirizzo giurisprudenziale il curatore fallimentare (nel caso di amministrazione straordinaria, il commissario straordinario) agisce in qualità di terzo rispetto sia ai creditori del fallito che allo stesso fallito (tra le tante Cass. 9 maggio 2001, n. 6465). Da tale principio discende la necessità che la scrittura privata che si vuole opporre al curatore fallimentare abbia data certa ai sensi dell'art. 2704 c.c.

Tuttavia, secondo un altrettanto consolidato orientamento giurisprudenziale **l'art. 2704 c.c. è applicabile soltanto alla prova della data della scrittura privata e non alla prova della data del negozio produttivo degli effetti che si vogliano opporre ai terzi.**

**Tale prova, infatti, può essere fornita con qualsiasi mezzo consentito dalla legge, quale anche la prova per testimoni e presunzioni, semprechè il rapporto negoziale da provare non richieda la forma scritta *ad substantiam* o *ad probationem*, il che indubbiamente non è nel caso di negozio di garanzia come quelli di cui si discute** (Cass. 9 aprile 1994, n. 3347; Cass. 27 gennaio 1993, n. 1016; Cass. 31 agosto 1984, n. 4738; App. Trieste 1° dicembre 1990, in *Il Fallimento*, 1991, 869; App. Milano, 21 ottobre 1980, in *Arch. Civ.* 1980, 1070; Trib. Napoli 9 aprile 2002, in *Il Fallimento* 2003, 1230; Trib. Torino 26 marzo 1990, in *Il Fallimento* 1990, 1068; Trib. Verona 26 novembre 1997, in *Foro padano* 1999, I, 279; Trib. Milano 30 maggio 1985, in *Il Fallimento* 1985, 1191).

Al riguardo giova citare alcune delle massime espresse dai giudici di legittimità: *"l'inopponibilità di cui all'art. 2704 c.c. non riguarda il negozio ma la data della scrittura, la prova del negozio e della sua stipulazione anteriore al fallimento può essere*

*data con tutti i mezzi consentiti, incluse la prova per testimoni e per presunzioni.*" (Cass.

20 luglio 2000, n. 9539 cit.), inoltre: "*...l'inopponibilità non riguarda il negozio, ma la*

*data della scrittura, attiene cioè soltanto alla prova che del momento della stipulazione*

*dell'atto voglia darsi mediante la (sola) scrittura, e **non esclude quindi che la prova del***

***negozio e della sua anteriorità rispetto al fallimento possa essere fornita con ogni altro***

***mezzo consentito, anche nei confronti dei terzi, dalla natura e dall'oggetto del negozio*"**

(Cass. 27 gennaio 1993, n. 1016 cit.).

Da quanto precede discende che, se pure i documenti prodotti al fine di provare il negozio

nei confronti del curatore non abbiano data certa, gli stessi possono comunque essere

valutati dal Giudice come indizi ove abbiano le caratteristiche descritte all'art. 2729,

comma 1, c.c.

Conformemente all'indirizzo giurisprudenziale testè menzionato ABN ha dato prova

dell'anteriorità del proprio credito nei confronti di Parmalat S.p.A. alla dichiarazione di

insolvenza della stessa **sia mediante documenti aventi data certa, sia fornendo elementi**

**indiziari gravi, precisi e concordanti ai sensi dell'art. 2729, comma 1, c.c.** dai quali

desumere la predetta circostanza.

In particolare, ABN ha prodotto i seguenti documenti.

**1)      Documenti aventi data certa.**

(i) Tabelle esplicative del finanziamento proposto dalla Wishaw Trading S.A. ad ABN,

nonché delle garanzie connesse alle operazioni di finanziamento proposte (doc. **5** della

memoria illustrativa in data 18 settembre 2004).

(ii) Relazione interna concernente il finanziamento richiesto da Wishaw Trading S.A. ad

ABN (doc. **6** della memoria illustrativa in data 18 settembre 2004);

(iii) Messaggio email inviato in data 10 marzo 2003 da Angela Noique di ABN AMRO

Filiale di New York a Tamara Cavallucci e Loredana Quintadamo di ABN AMRO Filiale

di Milano relativo alle trattative per il rilascio di garanzia da parte di Parmalat S.p.A. (doc. 7 della memoria illustrativa in data 18 settembre 2004).

(iv) messaggio e-mail inviato in data 14 marzo 2003 da Giorgia Bocchi di Parmalat S.p.A. a Tamara Cavallucci di ABN filiale di Milano al fine di confermare l'accettazione da parte di Parmalat S.p.A. del formato dei documenti *promissory note* e garanzia redatti da ABN (doc. 4 della memoria illustrativa in data 18 settembre 2004);

I documenti *sub* (i)-(iii) come già affermato nelle osservazioni del 18 settembre 2004 e nelle controrepliche dell'8 novembre 2004, sono stati interamente estratti dal data base di ABN nel quale vengono registrati i dati relativi alle operazioni concluse dalla banca con i propri clienti, nonché ogni informazione relativa al cliente ed alle operazioni volta per volta oggetto di trattative.

**Si tratta di un sistema telematico all'interno del quale ogni documento ed ogni sua modifica acquistano automaticamente una data senza alcuna interferenza da parte dell'autore del documento stesso**. In virtù della registrazione meccanica delle circostanze temporali tali documenti **non possono essere retrodatati**, ossia materialmente contraffatti con riferimento alla data. Né ovviamente possono essere modificati nel contenuto (se non con la creazione di un nuovo documento/messaggio in data successiva).

Codesto Ill.mo Giudice Delegato, tuttavia, ha ritenuto che la documentazione fornita da ABN ed estratta dal proprio data base non sia sufficiente a stabilire in modo certo l'anteriorità della formazione della garanzia alla dichiarazione di insolvenza della società.

ABN chiede pertanto che codesto Ill.mo Giudice Delegato voglia disporre una consulenza tecnica d'ufficio al fine di analizzare il funzionamento e le caratteristiche operative del sistema telematico interno di ABN.

Dalla CTU risulterà evidente il parallelismo tra il predetto sistema telematico e il sistema *telex,* che è stato considerato dalla giurisprudenza della Suprema Corte quale mezzo di

comunicazione idoneo ad attribuire data certa opponibile ai terzi ex art. 2704 c.c.: *"per rendere opponibile al fallimento del cedente l'atto di cessione del credito non è necessaria la notificazione a mezzo ufficiale giudiziario, ma è sufficiente un atto munito di data certa anteriore al fallimento, quale può essere la trsmissione a mezzo telex"* (Cass. civ., 29 settembre 1999, 10788).

Nella sentenza citata la Suprema Corte, confermando il ragionamento dei giudici di merito, ha precisato che la data di trasmissione di una comunicazione deve ritenersi certa a norma dell'art. 2704 c.c. ogni volta che la stessa venga registrata mediante uno strumento di comunicazione non suscettibile di manipolazione da parte dell'utente, con ciò riconoscendo a forme di comunicazione diverse da quelle tipiche previste dall'art. 2704 c.c. l'opponibilità ai terzi.

Con ciò la Corte di Cassazione in buona sostanza statuisce che:

(i) le forme di comunicazione idonee a fornire data certa della trasmissione opponibile ai terzi ex art. 2704 c.c. non costituiscono un *numerus clausus*;

(ii) tutti gli strumenti di comunicazione le cui modalità tecniche consentano la registrazione meccanica (non manipolabile dall'utente) delle circostanze temporali della trasmissione sono idonee a fornire data certa opponibile ai terzi ex art. 2704 c.c.

Quanto al documento sub (iv) esso consiste in un messaggio e-mail inviato dal sistema informatico di Parmalat S.p.A. al sistema informatico di ABN.

Al riguardo è fondamentale precisare che ogni messaggio e-mail compie un percorso che si articola pressoché come segue: (i) partenza da un server mittente che registra automaticamente la data e l'ora di partenza del messaggio; (ii) **passaggio attraverso uno o più network service providers che copiano il messaggio, ne conservano una copia nel loro disco fisso e registrano automaticamente a loro volta data e ora di passaggio della comunicazione**; (iii) arrivo al server destinatario che registra data ed ora di arrivo.

9

Al riguardo è fondamentale osservare che **i network service providers, così come il sistema informatico del mittente (nel caso di specie Parmalat), sono terzi rispetto al server del destinatario (nel caso di specie ABN) e, in quanto tali, la registrazione nei loro server della data di passaggio del messaggio non è in alcun modo manipolabile da chi ha accesso ai server di arrivo (ancora una volta ABN). Di conseguenza la data e l'ora di passaggio del messaggio e-mail registrate dai network service providers e nel sistema informatico del mittente devono considerarsi certe: con riferimento a tale mezzo di comunicazione, pertanto, vale _a fortiori_ l'analogia con il sistema _telex_.**

A tale riguardo ABN chiede che codesto Ill.mo Giudice Delegato voglia disporre una consulenza tecnica d'ufficio anche in relazione alle circostanze appena descritte, autorizzando il consulente tecnico ad accedere sia al computer della sig.ra Giorgia Bocchi (o in generale al sistema informatico di Parmalat S.p.A.) per verificare il percorso compiuto dal messaggio e-mail (invio dal sistema di Parmalat S.p.A., passaggio attraverso i network service providers, ricezione dal sistema di ABN) ed accertare che il messaggio è stato inviato dal server di Parmalat, in paricolare dall'indirizzo della sig.ra Giorgia Bocchi (giorgia.bocchi@parmalat.net) in data 14 marzo 2003, sia al sistema informatico del o dei network service providers attraverso cui il messaggio è passato, per accertarne le data di passaggio.

Inoltre al fine di provare le circostanze appena descritte si formula il seguente capitolo di prova testimoniale:

1. Vero che in data 14 marzo 2003 la sig.ra Giorgia Bocchi, dipendente della società parmalat S.p.A., ha inviato dal proprio account nell'ambito del sistema informatico parmalat (giorgia.bocchi@parmalat.net) un messaggio e-mail alla sig.ra Tamara Cavallucci, all'indirizzo tamara.cavallucci@it.abnamro.com, confermandole l'accettazione da parte di Parmalat S.p.A. del formato della _promissory note_ emessa da Wishaw a

beneficio della fornitrice Archer Daniels Midland Company e della relativa garanzia per

avallo rilasciata da Parmalat S.p.A. così come redatti da ABN.

Si chiama a testimoniare sulla predetta circostanza la sig.ra Giorgia Bocchi domiciliata in

Collecchio (PR), presso Parmalat S.p.A..

**2.      Documenti aventi valore di prova indiziaria.**

Quali documenti aventi valore di indizi gravi precisi e concordanti ex art. 2729, comma 1,

c.c. ABN ha prodotto:

**(i)** copia autentica della *promissory note* emessa da Wishaw Trading S.A. in data 27 marzo

2003 in favore di Archer Daniels Midland Company e garantita per avallo da Parmalat

(doc. 2 della domanda di ammissione al passivo).

**(ii)** memorandum redatto dallo studio legale Chapman and Cutler in data 25 marzo 2003

(doc. **1**) con cui i legali approvano la verifica operata da ABN AMRO Filiale di Milano in

relazione alla sottoscrizione della garanzia da parte del sig. Calisto Tanzi, nonché

confermano la validità ed efficacia dei seguenti documenti:

     **1.** *promissory note* in data 27 marzo 2003;

     **2.** garanzia di Parmalat S.p.A. in data 27 marzo 2003;

     **3.** lettera da Wishaw Trading S.A. a ABN in data 27 marzo 2003 con cui Wishaw

     Trading S.A. allega la *promissory note* emessa e si impegna al pagamento di

     quanto dovuto ad ABN in forza della stessa;

     **4.** lettera di conferma in data 20 marzo 2003 da ADM a ABN in relazione allo

     sconto della nota promissoria;

     **5.** verbale di riunione del CdA di Parmalat S.p.A. in data 16 maggio 2001 che

     attesta il conferimento dei poteri al sig. Calisto Tanzi;

**(iii)** lettera inviata in data 25 marzo 2003 da Archer Daniels Midland Company a ABN con cui venivano comunicate le coordinate bancarie per lo sconto della *promissory note* emessa da Wishaw Trading S.A (doc. **2**);

**(iv)** dichiarazione in data 25 marzo 2003 da parte di Archer Daniels Midland Company con cui si certifica l'originalità della documentazione necessaria all'emissione della *promissory note* da parte di Wishaw Trading S.A. (doc. **3**). I documenti oggetto della dichiarazione sono, in particolare, la fattura relativa alla fornitura dei prodotti agricoli da parte di Archer Daniels Midland Company e le ricevute di carico degli stessi prodotti;

Gli elementi evidenziati hanno valore di presunzioni gravi, precise e concordanti, e come tali, valgono a formare idonea prova dell'anteriorità della data di formazione della garanzia rilasciata da Parmalat S.p.A. rispetto all'apertura della procedura di Amministrazione Straordinaria della stessa società.

In ogni caso le circostanze sopra elencate verranno confermate dai testi che ABN si riserva di indicare nella memoria istruttoria da depositarsi entro prefiggendo termine di cui ABN chiede sin d'ora la fissazione.

*    *    *

Tutto ciò premesso ABN, come sopra rappresentata e difesa, propone

**OPPOSIZIONE**

avverso il provvedimento in data 28 dicembre 2004 con cui Codesto Ill.mo Giudice Delegato del Tribunale di Parma ha disposto l'esclusione di ABN dall'elenco dei creditori dello stato passivo di Parmalat S.p.A. in A.S. e

**CHIEDE**

Nel merito:

- che codesto Ill.mo Giudice Delegato previa fissazione con decreto dell'udienza di comparizione del creditore istante e del Commissario Straordinario, voglia ammettere in

12

via chirografaria allo stato passivo della procedura di Amministrazione Straordinaria di Parmalat S.p.A. il credito di ABN di € **8.071.025** per i titoli di cui in narrativa modificando conseguentemente lo stato passivo di Parmalat S.p.A. in Amministrazione Straordinaria di cui al provvedimento in data 28 dicembre 2004.

In via istruttoria:

- che codesto Ill.mo Giudice Delegato voglia disporre una Consulenza Tecnica d'ufficio al fine di verificare le circostanze indicate in narrativa;

- che codesto Ill.mo Giudice Delegato voglia ammettere il capitolo 1 di prova testimoniale dedotto in narrativa con il teste ivi indicato.

Con riserva di ulteriormente dedurre e produrre, nonché di articolare ulteriori mezzi di prova.

Si produce copia dei documenti allegati alla domanda di ammissione al passivo in data 4 guigno 2004 e dei documenti allegati agli atti successivi secondo la stessa numerazione indicata nei predetti atti.

Milano-Parma, 27 gennaio 2004

Avv. Cesare Vecchio

Avv. Umberto Serra

Avv. Giuseppe Curtò





# TRIBUNALE DI PARMA

Il giudice delegato dott. Giuseppe Coscioni, visto l'art.98 del R.D. 16.3.1942 n.267,

fissa

per la comparizione dinanzi a sé del creditore ricorrente e del Commissario Straordinario l'udienza del **5 luglio 2005** ore **9.45**

Dispone che il ricorso ed il presente decreto siano notificati al Commissario Straordinario entro il termine perentorio del 15 marzo 2005

Parma, 7 febbraio 2005

Il Cancelliere

Maria Paola Pelagatti

Il Giudice Delegato

Giuseppe Coscioni

03237

Per copia conforme all' originale
Parma, 2 5 FEB. 2005    19
IL CANCELLIERE C1
Maria Paola Pelagatti

COMUNICATA IN DATA    2 5 FEB. 2005

COPIE RILASCIATE IL

## RELAZIONE DI NOTIFICA

L'anno duemilacinque il giorno _____ del mese di

_____ a richiesta di AVV. UMBERTO SERRA

nella sua qualità, il sottoscritto Ufficiale Giudiziario addetto all'Ufficio Notifiche ha,

per ogni effetto di legge, notificato il suesteso ricorso ed il pedissequo decreto del

Giudice al Commissario Straordinario DOTT. ENRICO BONDI

nella sua sede, PRESSO PARMALAT SPA, VIA O. GRASSI. 26, COLLE

consegnandone copia a mani di