# EXHIBIT 3

No. 201/08

1955/05

1716

392

2

Exempt from stamp duty in accordance with Italian Law 488/99

[Italian Republic logo]

**PARMA LAW COURT**

----------------

THE ITALIAN REPUBLIC

**IN THE NAME OF THE ITALIAN PEOPLE**

Parma Court of Law, consisting of the following Judges:

| | |
|---|---|
| Dr. Stellario BRUNO | Chairman Judge |
| Dr. Giuseppe COSCIONI | Reporting Judge |
| Dr. Giampaolo FABBRIZZI | Judge |

has passed the following

JUDGEMENT

In the case of objection to the liabilities' list promoted by:

ABN AMRO BANK N.V., represented by the pro tempore legal representative, represented and defended within these proceedings by Attorney Umberto Serra, Attorney Cesare Vecchio and Attorney Giuseppe Curtò, with domicile selected for these purposes at the offices of Attorney Umberto Serra in Parma,

PLAINTIFF

against

PARMALAT S.p.a. under EXTRAORDINARY ADMINISTRATION, represented by the Extraordinary Commissioner, represented and defended within these proceedings by Attorney Raffaella

[signature]

Sarti, Attorney Umberto Tracanella, Attorney Eduardo Spano and Attorney Giuseppe Maggioni, as per the power of representation in the margins of the statement of response, with domicile selected for these purposes at the offices of Attorney Raffaella Sarti in Parma,

DEFENDANT

The case being registered at no. 1955/05 of the General Register, the assigning of a sentence/decision having been set for the hearing on October 24, 2007, after the Attorneys of the parties have presented the following pleadings:

The Attorneys of the Plaintiff concluded as follows:

"Abn Amro Bank NV, represented and defended as specified above, asks for the acceptance of the following conclusions: In terms of the merit of the case: - admit Abn Amro Bank NV among the creditors of Parmalat S.p.a. under Extraordinary Administration proceeding in an unsecured manner for a total of 8,071,025.00 euro.

As a preliminary evidentiary measure:

order an official technical consultancy aimed at confirming the following: i) the delivery dates (from the ABN Italy, the ABN New York and the ABN Brazil IT system), the route through one or more network service providers and the dates in which they passed through these network service providers

[Law Court stamp in upper left margin]

2

[signature]

for all the email messages produced within the case as Attachments 6 and 9 attached to the appeal for the objection to the liabilities' list; and

(ii)     the functioning of the IT system used by ABN from which the documents produced as Attachments 7 and 8 attached to the appeal for the objection to the liabilities' list were extracted and, to be more specific, the impossibility of modifying or, in any case, the high level of objectivity, of the data inserted in this IT system.

In order to allow the Official Technical Consultant (CTU) appointed to carry out the analysis required, ABN hereby asks that the Court, among other things:

(a)     authorize the Official Technical Consultant (CTU) to access the IT systems of ABN Italy, ABN New York, ABN Brazil and Parmalat SpA and to acquire copies, including IT copies, of the emails produced within the case as Attachments 6 and 9 attached to the appeal for the objection to the liabilities' list;

(b)     authorize the Official Technical Consultant (CTU) to access the IT systems of the network service provider(s) through which the emails produced within the case as Attachments 6 and 9 attached to the appeal for the objection to the liabilities' list passed and at which copies are (necessarily) kept and to acquire these copies, including IT copies;

(c)     order the Official Technical Consultant to analyze the headers generated automatically by the various different IT systems for sending, receiving and transferring the emails produced within the case as Attachments 6 and 9 attached to the appeal for the objection to the liabilities' list; and

(d)     order the Official Technical Consultant to access and analyze the functioning and the operating and technical characteristics of the ABN New York IT system;

**to order, in accordance with art. 210 of the Italian Code of Civil Procedure**

(a)     the Parmalat SpA under Extraordinary Administration (EA) Proceedings to exhibit **details about the guarantees issued by Parmalat SpA in place** on the date of the insolvency of Parmalat SpA and every other document used by the Extraordinary Commissioner to establish and indicate, within the Restructuring Program, the overall value of the guarantees issued by Parmalat

[Law Court stamp in upper left margin]

[signature]                                                      3

SpA as 9,679 million euro and, to be more specific, **details or every other document which made it possible to establish the value of the "Promissory notes" guarantees as 826.7 million euro;** and also

(b)     the Proceeding, the Prosecutor's Office of the Italian Republic at Milan Law Court and the Chairman of the Board of Judges before whom criminal proceedings RG (General Register) 12473/04 are pending to exhibit **the working files and papers of the audit company Grant Thornton on the basis of which the consolidated accounting prospectus of Parmalat Finanziaria S.p.A. as of June 30, 2003 was certified,** files and papers which are in the case folder for the criminal proceedings RG (General Register) 12473/04;

**to admit the following testimonial proof sections:**

1. It being true that, on March 14, 2003, Ms. Giorgia Bocchi, an employee of the company Parmalat S.p.A., sent, from her own email account within the Parmalat IT system (giorgia.bocchi@parmalat.net), an email message (exhibited) to Ms. Tamara Cavallucci, at the address tamara.cavallucci@it.abnamro.com, confirming the acceptance by Parmalat S.p.A. of the format for the promissory note issued by Wishaw Trading S.A. to the benefit of the supplier Archer Daniels Midland Company and the relative guarantee backed by Parmalat S.p.A., as drafted by ABN.

2. It being true that, on March 17, 2003, Ms. Tamara Cavallucci of Abn, Milan branch, sent, from her own email account within the ABN IT system, tamara.cavallucci@it.abnamro.com, an email message (exhibited) to Ms. Margaret Sirovatka, Margaret.Sirovatka@us.abnamro.com, containing an English translation of the email message specified in section 1 above.

3. It being true that, on March 10, 2003, Ms. Angela Noique of ABN, New York branch, sent, from her own email account within the ABN IT system,

[Law Court stamp in upper left margin]

4

[signature]

(angela.noique@abnamro.com), to Ms. Tamara Cavallucci and Ms. Loredana Quintadamo, at the email addresses tamara.cavallucci@it.abnamro.com and loredana.quintadamo@it.abnamro.com, with CC copies sent to Mr. Terrence Ward, Ms. Margaret Sirovatka and Mr. John Curch, at the addresses Terrence.Ward@us.abnamro.com, Margaret.Sirovatka@us.abnamro.com and John.Curch@us.abnamro.com, an email message (exhibited) which states that Ms. Margaret Sirovatka had obtained confirmation from Archer Daniels Midland Company with regard to the possibility of asking Parmalat to include, within the formulation of the guarantee backed by Parmalat S.p.A., of a part concerning the "Country Event Risk" and the "New Money Credit Event".

With regard to testimonial proof section 1, we call the following to testify: Ms. **Giorgia Bocchi,** with domicile at Parmalat S.p.A. under Extraordinary Administration, Via Oreste Grassi, Collecchio (Parma). With regard to testimonial proof section 2, we call the following to testify: Ms. **Tamara Cavallucci,** with domicile at the Milan branch of ABN, Via Ludovisi, 16, Milan. With regard to testimonial proof section 3, we call the following to testify: Ms. **Angela Noique,** with domicile at the New York branch of ABN, Credit Portfolio Management department.

With the losing party covering the expenses, fees and duties.

[Law Court stamp in upper left margin]

(initials)

5

The Attorneys of the Defendant concluded as follows:

"That this Court, having rejected every contrary claim and/or action, in terms of the merit of the case, rejects the objection of the other party (Plaintiff) proposed for all the reasons specified in the defense deeds and, due to this, confirms the exclusion from liabilities of Parmalat S.p.a. under EA of the amount requested by ABN Amro Bank N.V, with the losing party covering the case expenses, fees and duties."

### HOW THE PROCEEDINGS HAVE PROGRESSED

With an appeal in accordance with art. 99 of Italian Royal Decree (RD) 267/42, Abn Amro Bank made an objection to the exclusion of its credits from the liabilities of Parmalat S.p.A. under EA, following a ruling by Parma Law Court dated 12/16/2004, asking for the admission of the credit claimed.

As the basis of its request, the objecting party claimed that it provided Wishaw Trading S.A. with financing for a total of USD 10,000,000.00, financing which was used by Wishaw by means of the issuing, on March 27, 2003, of a promissory note guaranteed as backing by Parmalat S.p.a.

The Judge Appointed had excluded the request to be admitted among the credits by Abn Amro Bank, finding that the documents produced by the objecting party were

[Law Court stamp in upper left margin]

6

[signature]

without a certain date; this conclusion was incorrect as the applicable law was the law of the State of New York, with the resulting inapplicability of art. 2704 of the Italian Civil Code and art. 45 of the Italian Bankruptcy Law (LF); in the light of the documents which were produced, the requirement of the certainty of the date existed, in any case.

The party against whom the objection was made, Parmalat S.p.A. under EA, appeared, contesting the claims of the other party and asking for the rejection of the objection made by the other party and the confirmation of the exclusion decree objected to.

After the filing of the briefs in accordance with arts. 180, 183 and 184, the objecting party insisted for the admission of the oral proof claimed in the introductory deed and in the evidentiary brief; with a ruling dated 12/07/2006, quashing the reservation, the Proceeding Judge rejected the appeal for the admission of proof made by the objecting party and set a hearing on 10/24/2007 for the establishing of the pleadings.

The parties made their pleadings and, at the hearing on October 24, 2007, the case was assigned to decision.

## REASONS FOR THE DECISION

The request of the objecting party has no grounds and, therefore, must be rejected.

Indeed, with regard to the applicable laws and standards, European Regulation 1346 of

[Law Court stamp in upper left margin]

7

[signature]

June 30, 2000 orders the application, to insolvency proceedings, of the law of the Member State in whose territory the proceeding itself was opened. Again on the basis of the Regulations, this Law ("*lex concursus*" - conditions for the opening, conduct and closure of insolvency proceedings) establishes - among other things – "the claims which are to be lodged against the debtor's estate and the treatment of claims arising after the opening of the insolvency proceedings, the rules governing the lodging, verification and admission of claims."

These certainly include the rules which relate to the merit of the non-objecting against the Administration proceeding and, therefore, the inadmissibility of these within the Liabilities of the same deeds and documents without a certain date; to be more specific, because they are dictated to protect the mass of creditors as a whole, articles 44 and 45 of the Italian Bankruptcy Law (LF) and art. 2704 of the Italian Civil Code must be considered to make up the *lex concursus* and are, therefore, applicable to this case here.

With regard, then, to the position of the Extraordinary Commissioner, there may be no doubt about the fact that he, like the Bankruptcy Receiver, must be considered as a third party with respect to the creditors who request admission among the liabilities and with respect to the bankrupt party, for all the deeds and the negotiations carried out by the company *in bonis* (when solvent); for this very reason, those who expect to claim a credit

[Law Court stamp in upper left margin]

8

[signature]

against the insolvency proceeding must demonstrate the certainty of the date on which this credit arose in accordance with article 2704 of the Italian Civil Code (see, for example: Sentence of the Court of Cassation, September 22, 2004, no. 18998; Sentence of the Court of Cassation, June 4, 2003, no. 8914; Sentence of the Court of Cassation, Section I, May 28, 2003, no. 8545; Sentence of the Court of Cassation, Section I, July 20, 2000, no. 9539, in *Giust. Civ.* [Civil Law], Mass. 2000, 1580; Sentence of the Court of Cassation, February 8, 2000, no. 1370, in *Giust. Civ.* [Civil Law], Mass. 2000, 265; Sentence of the Court of Cassation, May 6, 1998, no. 4551, in *Giust. Civ.* [Civil Law], Mass. 1998, 945).

In accordance with art. 45 of the Italian Bankruptcy Law (LF) and art. 2704 of the Italian Civil Code, a non-authenticated private agreement may only be objected to with regard to the bankruptcy procedure (in this case, the Extraordinary Administration) if it has a certain date; to be more specific, art. 2704 of the Italian Civil Code, in ordering that the certainty of the date of a private agreement (not registered or authenticated) must be considered to be in place with respect to the third parties from the day on which a fact other than the events specifically envisaged therein occurs, which established the prior nature of the formation of the document in an equally certain manner, leaves it to the interpreter to decide, case by case, if equal probative weight can be assigned to a fact.

[Law Court stamp in upper left margin]

9

[signature]

Art. 2704 of the Italian Civil Code, then, provides three examples of legal deed/document: the authentication of the signing of the agreement, the registration of the agreement and the reproduction of the agreement in a public deed/document; in all three cases, what is of importance is not the original date of the primitive document but the subsequent date of the legal deed/document which gives the document a certain date.

It must be pointed out, then, that the application of art. 2704 of the Italian Civil Code has to be especially rigorous as the law in question aims to protect settlement creditors in the precise case - which is statistically frequent - in which the debtor, despite the opening of the insolvency proceedings, carries out actions relating to the disposal of its assets or takes on obligations.

With regard to the merit of this case, none of the documents produced during the proceedings report a declaration, a date and a signature of a public officer.

Another of the main arguments of the defense team for the objecting party is the email messages extracted from the ABN database which record the date relative to the operations concluded by the bank with its clients; however, what prevents us from finding that these emails comply with the requirement of the "certain date" is the content of the

[Law Court stamp in upper left margin]

10

[signature]

emails themselves, given that, in them, the reference to guarantees provided by Parmalat S.p.a. is extremely generic (which guarantee? for which operation?), so technical consultancy on the matter would also be of no significance.

Furthermore, not even the further documentation produced by the plaintiff during the objection stage provides the proof required for the admission of the claimed credit among the liabilities.

There is, in fact, no basis on which to believe that the promissory note, the guarantee, and the letters among the deeds were actually written on the dates specified on them while, with regard to the fax, the date can be modified by the user.

As no proof has been provided that the guarantees covered by this case were formed on a date prior to the date of the opening of the settlement procedure, the request of the plaintiff cannot be accepted.

With regard to the evidentiary requests re-proposed by the objecting party during the pleading stage, it must be pointed out that the proof by means of witnesses claimed by the objecting party cannot be admitted as the facts for unequivocally establishing the certainty of the date of a non-authenticated private agreement and, therefore,

[Law Court stamp in upper left margin]

11

[signature]

the prior nature of the formation of the document, so that it can be objected to with regard to the third parties, in accordance with art. 2704 of the Italian Civil Code, cannot be the subject of testimonial proof (see Court of Cassation, No. 3742/86; Court of Cassation 12/12/1974, no. 4235; Court of Cassation 6/9/1972, no. 1806); this principle, as has been seen, finds its logic and legal grounds in the regulations of art. 2704 of the Italian Civil Code which, by establishing that the date of a private agreement, not authenticated, can only be verified, with respect to the third parties, with registration or by means of the equivalent situations and facts, specified by clause 1, including all those facts which can establish the prior nature of the formation of the document, implicitly excludes testimonial proof (Court of Cassation, May 9, 1962, no. 931), with the consequent inadmissibility also for the case in which it deals with direct and immediate verification of these facts, instrumentally with regard to the verification of the date ("Although testimonial proof may be admitted and, therefore, by presumption, to demonstrate the date of the intervening physical impossibility of one of the signers of the document or the date of the registration or the death, when the public records have been destroyed or lost, and these means of proof can also be invoked in order to

[Law Court stamp in upper left margin]


12


[signature]

demonstrate one of the other facts or events which can be used to show, in an equally certain manner, that the document was formed before that fact or event, testimonial proof is not admitted and, therefore, by presumption, to verify the date of the private agreement not authenticated with third parties" (Court of Cassation, June 28, 1963, no. 1760).

The request for exhibition also appears to be totally without significance, given that the reconstructions made by the Extraordinary Commissioner or by audit companies not immediately subsequent to the opening of the Extraordinary Administration procedure could not, in any case, provide the proof of the certain date, this only being able to show that, on the date of the reconstruction, there was the mention of a guarantee, but it cannot prove anything with regard to when this was formed.

Expenses covered by the losing party.

FOR THESE REASONS

The Court, with a definitive ruling, rejecting all contrary or different appeals and claims, decides as follows:

A) rejects the objection;

B) orders the objecting party to pay the case expenses in favor of the defendant, at €18,400.00, that is, €200.00 for expenses, €2,200.00 for

[Law Court stamp in upper left margin]

13

[signature]

duties and €16,000.00 for fees, as well as reimbursement of general expenses, VAT and Lawyers Social Security Fund (CPA) contributions.

Parma, February 4, 2008

The Reporting Judge                    The Chairman Judge
Dr. Giuseppe COSCIONI                  Dr. Stellario BRUNO
[signature]                            [signature]

[illegible Law Court stamp]

[stamp]
PARMA LAW COURT
Filed at the Clerk's Office
**on       FEB. 7, 2008**
The Clerk's Office Assistant (initials)

                                       [stamp:
                                       **THE CLERK C1**
                                       *Annamaria Pecchini* initials]

[stamp:
Tax Agency - PARMA
Recorded on …., Series 4
No.
The Services Area Manager]

**FOR COPY COMPLIANT WITH THE ORIGINAL for appeal use**

**Parma, FEB. 20, 2008**

The Clerk's Office Assistant [initials]

            [PARMA CIVIL AND CRIMINAL LAW COURT stamp]

DUTIES PAID OF
COPY
CERTIFICATE
8.26 euros duties paid
PARMA, **FEB. 20, 2008**
SIGNATURE [initials]

14



**TRANSPERFECT**

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BERLIN
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBAI
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PHOENIX
PORTLAND
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
SYDNEY
TOKYO
TORONTO
VANCOUVER
WASHINGTON, DC

City of New York, State of New York, County of New York

I, Liesse-Marie Slemon, hereby certify that the following is, to the best of my knowledge and belief, a true and accurate translation of the document: "ITALIAN Judgement ABN Parmalat_EN" from Italian into English.

*Liesse-Marie Slemon*
Signature

Sworn to before me this
May 27, 2008

*[signature]*
Signature Notary Public

Katharine L Perekslis
Notary Public, State of New York
No. 01PE6181423
Qualified in QUEENS County
Commission Expires Jan 28, 2010

Stamp, Notary Public

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016  T 212.689.5555  F 212.689.1059  WWW.TRANSPERFECT.COM

N. 201/08 Sent.

1955/05
1746
392

Esente da bollo ex L.488/99





**TRIBUNALE DI PARMA**

---

REPUBBLICA ITALIANA

## IN NOME DEL POPOLO ITALIANO

Il Tribunale di Parma, composto dai Magistrati

Dr. Stellario BRUNO                    Presidente

Dr. Giuseppe COSCIONI              Giudice est.

Dr. Giampaolo FABBRIZZI          Giudice

ha pronunciato la presente

S E N T E N Z A

Nella causa di opposizione allo stato passivo promossa da:

ABN AMRO BANK N.V.,in persona del legale rappresentante pro tempore, rappresentato e difeso nel presente giudizio dagli Avv. Umberto Serra, Cesare Vecchio e Giuseppe Curtò, elettivamente domiciliato presso lo studio del primo in Parma,

ATTRICE

contro

PARMALAT S.p.a. in AMMINISTRAZIONE STRAORDINARIA, in persona del Commissario Straordinario, rappresentato e difeso nel presente giudizio dagli Avv. Raffaella

S. German

Sarti, Umberto Tracanella, Eduardo Spano e Giuseppe
Maggioni,come da delega a margine della comparsa di
risposta, elettivamente domiciliata presso lo studio
della prima in Parma,

CONVENUTA

Iscritta la causa al n.1955/05 del Ruolo Generale,e
dispostane l'assegnazione a sentenza all'udienza del
24 ottobre 2007, dopo che i Procuratori delle parti
hanno presentato le seguenti conclusioni:

I Procuratori di parte attrice hanno così concluso;
"Abn Amro Bank NV, come sopra rappresentata e
difesa, chiede l'accoglimento delle seguenti
conclusioni: Nel merito: -ammettere Abn Amro Bank NV
allo stato passivo della procedura di Parmalat
S.p.a. in Amministrazione Straordinaria in via
chirografaria per l'importo di Euro 8.071.025,00.

In via istruttoria:

disporre una consulenza tecnica d'ufficio
finalizzata a confermare: i) le date di spedizione
(dal sistema informatico ABN Italia, di ABN New
York, ABN Brasile), il tragitto percorso attraverso
una o più *network service providers* e le date in cui
sono transitati da tali *network services providers* d

2

tutti messaggi e-mail prodotti in causa come produzioni 6 e 9 allegate al ricorso per opposizione allo stato passivo; e

(ii) il funzionamento del sistema informatico utilizzato da ABN dal quale sono stati estratti i documenti prodotti come produzioni 7 e 8 allegate al ricorso per opposizione allo stato passivo e, in particolare, la non modificabilità o comunque l'alto grado di oggettività dei dati inseriti in tale sistema informatico.

Al fine di consentire al CTU nominato di effettuare le analisi necessarie, ABN chiede fin d'ora che Ill.mo Tribunale, tra l'altro:

(a) autorizzi il CTU ad accedere ai sistemi informatici di ABN Italia, ABN New York, ABN Brasile e Parmalat SpA ed acquisire copia anche informatica degli e-mails prodotti come produzioni 6 e 9 allegate al ricorso per opposizione allo stato passivo;

(b) autorizzi il CTU ad accedere ai sistemi informatici (del o) dei *network service providers* attraverso cui gli e-mails prodotti come produzioni 6 e 9 allegate al ricorso per opposizione allo stato passivo sono transitate e presso cui è (necessariamente) conservata una copia ed acquisire tale copia anche informatica;

(c) ordini al CTU di analizzare gli *headers* generati automaticamente dai diversi sistemi informatici di invio, ricezione e passaggio degli e-mails prodotti come produzioni 6 e 9 allegati al ricorso per opposizione allo stato passivo; e

(d) ordini al CTU di accedere ed analizzare il funzionamento e le caratteristiche operative e tecniche del sistema informatico di ABN New York;

**ordinare ai sensi dell'art. 210 c.p.c.**

(a)     alla Procedura di Parmalat SpA in AS, l'esibizione **del dettaglio delle garanzie rilasciate da Parmalat SpA ed in essere** alla data di insolvenza di Parmalat SpA e di ogni altro documento utilizzato dal Commissario Straordinario per determinare ed indicare nel Programma di Ristrutturazione il valore complessivo delle garanzie rilasciate da Parmalat



3

SpA in 9.679 milioni di Euro e, in particolare, del **dettaglio o di ogni altro documento che hanno permesso di determinare il valore delle garanzie di "Promissory notes" nell'importo di 826,7 milioni di Euro**; e inoltre

(b)      alla Procedura, alla Procura della Repubblica presso il Tribunale di Milano e al Presidente del Collegio davanti al quale è pendente il processo penale R.G. 12473/04, l'esibizione **delle carte di lavoro della società di revisione Grant Thornton sulla base delle quali è stato certificato il prospetto contabile consolidato di Parmalat Finanziaria S.p.A. al 30 giugno 2003**, carte che si trovano nel fascicolo del dibattimento del giudizio penale R.G. 12473/04;

**ammettere i seguenti capitoli di prova testimoniale:**

1. Vero che in data 14 marzo 2003 la sig.ra Giorgia Bocchi, dipendente della società Parmalat S.p.A., ha inviato dal proprio *account* di posta elettronica nell'ambito del sistema informatico Parmalat (giorgia.bocchi@parmalat.net) un messaggio e-mail (che si rammostra) alla sig.ra Tamara Cavallucci, all'indirizzo tamara.cavallucci@it.abnamro.com, confermandole l'accettazione da parte di Parmalat S.p.A. del formato della *promissory note* emessa da Wishaw Trading S.A. a beneficio della fornitrice Archer Daniels Midland Company e della relativa garanzia per avallo di Parmalat S.p.A. così come redatti da ABN.

2. Vero che in data 17 marzo 2003 la sig.ra Tamara Cavallucci di Abn filiale di Milano ha inviato dal proprio *account* di posta elettronica nell'ambito del sistema informatico di ABN tamara.cavallucci@it.abnamro.com un messaggio e-mail (che si rammostra) alla sig.ra Margaret Sirovatka Margaret.Sirovatka@us.abnamro.com contenente la traduzione in inglese del messaggio e-mail di cui al capitolo 1.

3. Vero che in data 10 marzo 2003 la sig.ra Angela Noique, di ABN filiale di New York, ha inviato dal proprio *account* di posta elettronica nell'ambito del sistema informatico di

ABN (angela.noique@abnamro.com) alle signore Tamara Cavallucci e Loredana Quintadamo agli indirizzi di posta elettronica tamara.cavallucci@it.abnamro.com e loredana.quintadamo@it.abnamro.com e per conoscenza ai signori Terrence Ward, Margaret Sirovatka, John Curch agli indirizzi Terrence.Ward@us.abnamro.com, Margaret.Sirovatka@us.abnamro.com, John.Curch@us.abnamro.com, un messaggio e-mail (che si rammostra) ove veniva comunicato che la signora Margaret Sirovatka aveva ottenuto la conferma da parte di Archer Daniels Midland Company circa la possibilità di richiedere a Parmalat l'inclusione nella formulazione della garanzia per avallo di Parmalat S.p.A. di una parte concernente il "Country Risk Event" e il "New Money Credit Event".

Si chiama a testimoniare sul capitolo 1 la sig.ra **Giorgia Bocchi** domiciliata presso Parmalat S.p.A. in Amministrazione Straordinaria via Oreste Grassi Collecchio (PR), sul capitolo 2 la sig.ra **Tamara Cavallucci** domiciliata presso la filiale di Milano di ABN, via Ludovisi 16 Milano e sul capitolo 3 la sig.ra **Angela Noique** domiciliata presso ABN filiale di New York dipartimento Credit Portfolio Management.

Con vittoria di spese, diritti ed onorari.

I Procuratori di parte convenuta hanno così concluso:

"Voglia l'Ill.mo Tribunale adito, ogni contraria azione eccezione e/o deduzione reietta, nel merito respingere l'opposizione ex adverso proposta per i motivi tutti di cui ai propri atti difensivi e, per l'effetto, confermare l'esclusione dalla stato passio della Parmalat S.p.a. in A.S. dell'importo richiesto da ABN Amro Bank N.V. Con vittoria di spese, diritti ed onorari di giudizio."

## SVOLGIMENTO DEL PROCESSO

Con ricorso *ex* art. 98 R.D. 267/42 Abn Amro Bank proponeva opposizione avverso l'esclusione del proprio credito dallo stato passivo di Parmalat S.p.A. in A.S., a seguito di provvedimento del Tribunale di Parma del 16/12/2004, chiedendo l'ammissione del credito vantato.

A base della propria richiesta l'opponente deduceva di aver messo a disposizione della Wishaw Trading S.A. un finanziamento per l'ammontare complessivo di USD 10.000.000,00, finanziamento che veniva utilizzato da Wishaw attraverso l'emissione in data 27 marzo 2003 di una *promissory note* garantita per avallo da Parmalat S.p.a.

Il giudice delegato aveva escluso la domanda di ammissione al passivo di Abn Amro Bank ritenendo che i documenti prodotti dalla opponente fossero privi

di data certa.; tale conclusione era errata in quanto la legge applicabile era quella dello stato di New York con conseguente inapplicabilità degli artt.2704 c.c. e 45 l.f.; alla luce dei documenti che si producevano sussisteva comunque il requisito della certezza della data.

Si costituiva l'opposta Parmalat S.p.A. in A.S., contestando gli assunti avversari e chiedendo il rigetto dell'opposizione *ex adverso* intrapresa e la conferma del decreto di esclusione opposto.

Dopo il deposito delle memorie ex artt.180, 183 e 184, l'opponente insisteva per l'ammissione delle prove orali dedotte in atto introduttivo e nella memoria istruttoria; con provvedimento 7/12/2006, a scioglimento della riserva, il giudice istruttore rigettava l'istanza di ammissione di prove avanzata dall'opponente e fissava per la precisazione delle conclusioni l'udienza del 24/10/2007.

Le parti precisavano le proprie conclusioni e, all'udienza del 24 ottobre 2007, la causa veniva assegnata a sentenza

### MOTIVI DELLA DECISIONE

La domanda dell'opponente è infondata e, pertanto, deve essere respinta.

Per quanto infatti riguarda la normativa applicabile, il Regolamento Europeo 1346 del 30

7



giugno 2000 dispone l'applicazione alla procedura concorsuale della legge dello Stato membro nel cui territorio è aperta la procedura stessa. Sempre in base al Regolamento, tale legge ("*lex concursus*") determina - tra le altre cose - quali siano "i crediti da insinuare nel passivo del debitore e la sorte di quelli successivi all'apertura della procedura di insolvenza, le disposizioni relative all'insinuazione, alla verifica e all'ammissione dei crediti".

Tra queste certamente vi sono le norme che dispongono in merito alla inopponibilità alla procedura, e quindi la inammissibilità allo Stato Passivo della stessa, degli atti privi di data certa; in particolare, proprio perché i medesimi sono dettati a tutela della massa dei creditori, gli articoli 44 e 45 L.F. e l'art. 2704 c.c. devono considerarsi componenti la *lex concursus* e sono quindi applicabili al caso di specie.

Relativamente poi alla posizione del Commissario Straodinario, nessun dubbio vi può essere sul fatto che lo stesso, come il Curatore Fallimentare, debba essere considerato soggetto terzo rispetto ai creditori che richiedono l'insinuazione al passivo e rispetto al fallito, per tutti gli atti e i negozi compiuti dalla società *in bonis;* proprio per questo motivo chi pretende di far valere un credito nei

confronti della procedura è tenuto a dimostrare la certezza della data in cui tale credito sia sorto ai sensi dell'articolo 2704 c.c. (cfr. ad esempio: Sentenza Corte di Cassazione 22 settembre 2004 n.18998; Sentenza Corte di Cassazione 4 giugno 2003 n. 8914; Sentenza Corte di Cassazione , sez I, 28 maggio 2003 n. 8545; Sentenza Corte di Cassazione, sez I, 20 luglio 2000, n. 9539, in Giust. Civ., Mass. 2000, 1580; Sentenza Corte di Cassazione 8 febbraio 2000, n. 1370 in Giust. Civ., Mass. 2000, 265; Sentenza Corte di Cassazione 6 maggio 1998, n. 4551 in Giust. Civ., Mass. 1998, 945).

Ai sensi degli artt.45 L.F. e 2704 c.c. la scrittura privata non autenticata può essere opposta al fallimento (in questo caso all'amministrazione straordinaria) solo se munita di data certa; in particolare l'art.2704 c.c., nel disporre che la certezza della data di una scrittura privata (non sottoposta a registrazione né ad autentica), deve ritenersi raggiunta rispetto ai terzi dal giorno in cui si verifica un fatto, diverso dagli eventi ivi specificamente previsti, che stabilisca in modo egualmente certo l'anteriorità della formazione del documento, lascia all'interprete di decidere caso per caso se ad un fatto possa attribuirsi eguale forza probante.

9



L'art. 2704 c.c. fornisce dunque tre esempi di atto giuridico: l'autenticazione della sottoscrizione della scrittura, la registrazione della scrittura, la riproduzione della scrittura in atto pubblico; in tutti e tre i casi quella che rileva non è la data originale del documento primitivo, ma quella, successiva, dell'atto giuridico idoneo a conferire al documento la certezza di datazione.

Si deve poi rilevare come l'applicazione dell'art.2704 c.c. debba essere particolarmente rigorosa essendo la norma di cui si tratta volta a tutelare i creditori concorsuali proprio nel caso - statisticamente frequente - in cui il debitore, nonostante l'intervenuta procedura concorsuale, compia atti dispositivi del proprio patrimonio o assuma obbligazioni.

Relativamente al merito della presente causa, nessuno dei documenti prodotti in giudizio riporta una dichiarazione, una data ed una firma apposti da un pubblico ufficiale.

Un altro dei principali argomenti sostenuti dalla difesa di parte opponente consiste nei messaggi e-mail estratti dal data base di ABN nei quali vengono registrari i dati relativi alle operazioni concluse dalla banca con i propri clienti; ciò che impedisce però di ritenere che i messaggi in esame soddisfino il requisito della "data certa" è il contenuto degli

10





stessi, posto che negli stessi il riferimento a garanzie prestate da Parmalat S.p.a. è estremamente generico (quale garanzia? per quale operazione?), per cui anche una consulenza tecnica sul punto non avrebbe alcuna rilevanza.

Peraltro, neppure l'ulteriore documentazione prodotta dalla ricorrente in fase di opposizione fornisce la prova necessaria per l'ammissione al passivo del preteso credito.

Non vi è infatti alcun elemento per ritenere che la promissory note, la garanzia e le lettere in atti siano stati effettivamente scritti nelle date risultanti sugli stessi, mentre per quanto riguarda il fax, la data può essere modificata dall'utilizzatore.

Non essendo stata fornita la prova che le garanzie per le quali è causa siano state formate in data anteriore rispetto a quella di apertura della procedura concorsuale, la domanda attrice non può trovare accoglimento

Quanto alle richieste istruttorie riproposte dall'opponente in sede di precisazione delle conclusioni, si deve precisare come non possa essere ammessa la prova per testi dedotta dalla opponente in quanto i fatti idonei a stabilire inequivocabilmente la certezza della data di una scrittura privata non autenticata e, quindi,



l'anteriorità della formazione del documento, ai fini della sua opponibilità ai terzi, ai sensi dell'art. 2704 c.c. non possono formare oggetto di prova testimoniale ( vedi Cass. N.3742/86; Cass. 12.12.1974 n. 4235; Cass. 9.6.1972 n. 1806); tale principio, come è stato rilevato, trova logico e giuridico fondamento nella disposizione del citato art. 2704, la quale, stabilendo che la data di una scrittura privata, non autenticata, può essere accertata, rispetto ai terzi, solo con la registrazione oppure a mezzo delle situazioni e dei fatti equipollenti, previsti dal comma 1 , in esse compresi tutti quei fatti idonei a stabilire l'anteriorità della formazione del documento, comporta implicitamente la esclusione della prova testimoniale (Cass. 9 maggio 1962 n. 931), con la conseguente inammissibilità anche per l'ipotesi in cui essa abbia per oggetto diretto ed immediato l'accertamento di tali fatti, in funzione strumentale rispetto all'accertamento della data ("Seppure si può ammettere una prova testimoniale e, quindi, per presunzioni, per dimostrare la data della sopravvenuta impossibilità fisica di uno dei sottoscrittori del documento o la data della registrazione o della morte, quando i pubblici registri siano andati distrutti o smarriti, e tali mezzi di prova possono essere altresì invocati per

12



dimostrare uno degli altri fatti o accadimenti dai quali si possa desumere, in modo ugualmente certo, che il documento è stato formato prima del fatto o dell'accadimento stesso, non è ammessa la prova per testimoni e, quindi, per presunzioni, per accertare la data della scrittura privata non autenticata di fronte ai terzi" (Cass. 28 giugno 1963 n. 1760).

Del tutto irrilevante appare anche la richiesta di esibizione, posto che le ricostruzioni effettuate dal Commissario Straordinario o da società di revisione in epoca non immediatamente successiva alla apertura della amministrazione straordinaria non sarebbe comunque idonea a fornire la prova del requisito della data certa, potendo unicamente dimostrare che alla data della ricostruzione vi era la menzione di una garanzia, ma nulla potendo dire su quando la stessa fosse stata formata.

Le spese seguono la soccombenza.

P.Q.M.

Il Tribunale, definitivamente pronunciando, disattesa o respinta ogni contraria o diversa istanza, eccezione e deduzione, così decide:

A) respinge l'opposizione;

B) condanna l'opponente al pagamento delle spese di lite in favore della convenuta, liquidate in € 18.400,00, di cui € 200,00 per spese, € 2.200,00 per

13

diritti, € 16.000,00 per onorari, oltre rimborso
spese generali, IVA e C.P.A..

Parma, 4 febbraio 2008

Il Giud.est.

Il Presidente





IL CANCELLIERE C1
Annamaria Pecchini

Agenzia delle entrate - PARMA

Registrato ..................... serie 4

N. ..........................................

Il Dirigente Area Servizi

PER COPIA CONFORME ALL'ORIGINALE

Parma    2 ... FEB. 2008

Il Collaboratore
di Cancelleria



per uso appello

ESATTI DIRITTI DI
O COPIA
O CERTIFICATO
CON IMPRONTE DA
BOLLO C.
PARMA 2 0 FEB. 2008
FIRMA

14