# EXHIBIT 11

**[Document subject to the approval of the Italian Ministry of Production]**

**CHAPTER III - INDEBTEDNESS**

**3.1    Introduction**

This section outlines the valuation criteria applied to the indebtedness of the Companies included in the Composition with Creditors (as defined in Chapter VI), as indicated in Chapter I and in accordance with the terms of Chapter VI, and provides certain information and general data relating to this indebtedness.

The valuation of this indebtedness was made, for the different instruments, in accordance with the following criteria:

1)    Proceedings: Indicates the Extraordinary Administration Proceedings governed by Italian Legislative Decree no. 47 of December 23, 2003, converted into Italian Law No. 39 of February 18, 2004, as amended by Italian Legislative Decree No. 119 of May 3, 2004;

2)    Indebtedness Computation Date: for each company under Extraordinary Administration, the reference date is the date when the company was declared eligible for Extraordinary Administration (e.g. for Parmalat S.p.A. it is 00:00 AM on December 24, 2003, with interest accruing on matured debt up to and including December 23, 2003). For the sake of clarity, please note that, with respect to guaranteed financial debt instruments, this date is different for the issuer and the guarantor in the cases in which the issuer and the guarantor were admitted to the Proceedings on different dates;

**[Document subject to the approval of the Italian Ministry of Production]**

**3.7      Guarantees**

The guarantee exposure of Companies included in the Composition with Creditors totals 10,878 million euros, broken down as follows: Parmalat S.p.A. for 9,679 million euros, Parmalat Finanziaria S.p.A. for 1,105 million euros, Eurolat S.p.A. for 93 million euros and Lactis S.p.A. for 173,000 euros. This exposure is for guarantees provided in the interest of Companies included in the Composition with Creditors and others not included therein.

The guarantees taken into account to determine the exposure of Parmalat S.p.A. and Parmalat Finanziaria S.p.A. generate legal obligations for the guarantor (corporate guarantees, autonomous guarantees), which can be divided into two basic types: senior guarantees and subordinated guarantees.

A "senior" guarantee is a guarantee normally enforceable upon first request, which, if enforced, gives rise to an unsecured claim ranking *pari passu* with other unsecured claims vis-à-vis the guarantor. On the other hand, when a subordinate guarantee is enforced, payment by the guarantor is subordinated to the guarantor satisfying first all senior claims, whether incurred before or after the issuance of the subordinated guarantee in question, and the claim arising from the subordinated guarantee has the same ranking as all other subordinated debt.

As for the treatment of subordinated guarantees under the Proposal of Composition with Creditors, by virtue of their subordinated nature, payment of claims based upon such guarantees can occur only to the extent that the unsecured creditors are reimbursed in full. Since the Proposal of Composition with Creditors explained in Chapter VI does not provide for such reimbursement in full, claims that arise from subordinated guarantees cannot concur with the claims of other unsecured creditors of the guarantor company and, therefore, are excluded from the Proposal of Composition with Creditors.

In addition, the treatment of the claim of the secured party varies depending on whether the primary debtor is a company subject to insolvency proceedings or a company not insolvent. In the first case, the claim is admitted among the liabilities without reservation (whether the guarantee is a first-request guarantee or a guarantee with the benefit of prior enforcement against the primary debtor); in the second case, the claim is admitted with reservation, and the reservation will be lifted (i) when proof of nonperformance by the primary debtor is provided (for first-request guarantees) or (ii) proof of the unsuccessful enforcement is provided (for guarantees with the benefit of prior enforcement against the primary debtor).

In addition, note that Parmalat S.p.A. granted a mortgage on its Collecchio facilities (which include a factory building, a building that houses the offices of the Chairman and other executives and the building containing general offices and the Company's archives) for an amount of 33,569,698 euros. The mortgage secures a loan provided by IRFIS Mediocredito della Sicilia S.p.A. on September 22, 1997 in the

**[Document subject to the approval of the Italian Ministry of Production]**

original aggregate amount of 40 billion lire (currently amounting to 10,329,137.98 euros). The loan is repayable in semiannual installments, with the last installment due on June 30, 2007.

The different types of guarantees that secure the various types of indebtedness discussed in the preceding sections of this chapter are summarized below.

**Table 3.26: Guarantees Provided by Companies included in the Composition with Creditors**

| (in millions of euros) | Loan and derivatives | Bonds | Private placements | Promissory notes | Others | Total |
|---|---|---|---|---|---|---|
| Parmalat SpA | 1,430.7 | 6,211.1 | 1,129.3 | 862.7 | 45.2 | **9,679.0** |
| Parmalat Finanziaria SpA | 191.0 | **723.3** | - | - | 190.7 | **1,105.0** |
| Eurolat SpA | - | - | - | - | 93.4 | **93.4** |
| Lactis SpA | - | - | - | - | 0.2 | **0.2** |
| **Total** | **1,621.7** | **6,934.4** | **1,129.3** | **862.7** | **329.6** | **10.877.7** |

**3.8    Preferential Debt and Pre-deduction Debt of Companies included in the Composition with Creditors**

The Table below shows the indebtedness owed by Companies included in the Composition to Creditors that enjoys pre-deduction or preferential status (see Chapter VI). These figures are the product of current estimates by the management of the debtor companies.



ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BERLIN
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBAI
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PHOENIX
PORTLAND
RESEARCH TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
SYDNEY
TOKYO
TORONTO
VANCOUVER
WASHINGTON, DC

City of New York, State of New York, County of New York

I, Liesse-Marie Slemon, hereby certify that the following is, to the best of my knowledge and belief, a true and accurate translation of the document: "doc 11 Programma di Ristrutturazione di Parmalat_EN" from Italian into English.

_____
Signature

Sworn to before me this
May 27, 2008

_____
Signature, Notary Public

Katharine L Perekslis
Notary Public, State of New York
No. 01PE6181423
Qualified in QUEENS County
Commission Expires Jan 28, 201_

_____
Stamp, Notary Public

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016   T 212.689.5555   F 212.689.1059   WWW.TRANSPERFECT.COM

**[Documento soggetto ad approvazione del Ministro delle Attività Produttive]**

**CAPITOLO III - INDEBITAMENTO**

**3.1   Premessa**

Nella presente sezione vengono illustrati i criteri di valutazione dell'indebitamento che fa capo alle Società oggetto di concordato (come definite al Capitolo VI), secondo quanto indicato al Capitolo I e ai sensi del successivo Capitolo VI, ed alcune informazioni e dati complessivi relativi a tale indebitamento.

La valutazione del suddetto indebitamento è stata effettuata rispetto ai diversi strumenti secondo i criteri di seguito indicati:

1) Procedura: indica la procedura di amministrazione straordinaria disciplinata dal D.L. 23 dicembre 2003 n.47, convertito con Legge del 18 febbraio 2004 n. 39, come successivamente modificata con D.L. 3 maggio 2004 n. 119;

2) Data di rilevazione del debito: per ciascuna società in amministrazione straordinaria, la data di riferimento è la data del decreto di ammissione alla Procedura (ad es., per Parmalat S.p.A., le ore 0.00 del 24 dicembre 2003 con interessi sui debiti scaduti calcolati fino al 23 dicembre 2003 incluso). A fini di chiarezza, si precisa che, rispetto ad uno strumento finanziario di debito assistito da garanzia, tale data risulta diversa per l'emittente dello strumento finanziario e per il garante, nei casi in cui l'emittente ed il garante sono stati ammessi alla procedura in date diverse;

3) Tassi di cambio: i valori delle valute diverse dall'Euro, vengono convertiti in EURO secondo i tassi di cambio (fonte UIC – Ufficio Italiano Cambi) rilevati il giorno della data di ammissione alla Procedura. I riferimenti relativi ai tassi di cambio utilizzati sono contenuti nell'Allegato 3.1;

4) Debiti bancari: vengono considerati per il valore del capitale (valore nominale), includendo gli interessi moratori e gli oneri accessori dovuti fino alla data di rilevazione del debito, ad eccezione di quelli assistiti da ipoteca, pegno o privilegio, rispetto ai quali la prelazione trova applicazione anche per gli interessi;

5) Emissioni obbligazionarie, anche convertibili ma diverse da *zero coupon*: vengono valutate al valore nominale maggiorato degli interessi maturati (e non pagati) dall'ultima cedola fino alla data di rilevazione del debito. Inoltre è stata considerata la componente "*Premium*" là dove prevista dai rispettivi contratti;

**[Documento soggetto ad approvazione del Ministro delle Attività Produttive]**

**3.7   Garanzie**

Le Società oggetto di concordato hanno una esposizione per garanzie per complessivi 10.878 mln di Euro, di cui Parmalat S.p.A. per 9.679 mln di Euro, Parmalat Finanziaria S.p.A. per 1.105 mln di Euro, Eurolat S.p.A. per 93 mln di Euro e Lactis S.p.A. per 173.000 Euro. Tale esposizione attiene a garanzie rilasciate nell'interesse di Società oggetto di concordato e non.

Quanto alla tipologia delle garanzie che sono state considerate per la determinazione dell'esposizione di Parmalat S.p.A. e Parmalat Finanziaria S.p.A., si tratta di garanzie di tipo obbligatorio (fideiussioni, garanzie autonome), tra le quali occorre distinguere quelle di tipo c.d. "*senior*" da quelle di tipo c.d. "subordinato".

Per quanto riguarda le garanzie di tipo "*senior*", si tratta di garanzie, normalmente a prima richiesta, dalle quali, in caso di escussione, sorge un credito di natura chirografaria che concorre *pari passu* con gli altri crediti chirografari verso il garante. Al contrario, in caso di escussione di una garanzia di tipo subordinato, il pagamento da parte della società garante è subordinato al previo soddisfacimento di tutti i debiti di tipo "*senior*" del garante, sia precedenti che successivi al rilascio della garanzia in questione, ed il credito derivante dalla garanzia concorre *pari passu* con tutti gli altri debiti di tipo subordinato.

Quanto al trattamento delle garanzie "subordinate" nell'ambito della Proposta di Concordato si osserva quanto segue. Poiché, in virtù del vincolo di subordinazione, il pagamento di tali crediti è garantito solo nella misura in cui si provveda all'integrale rimborso dei crediti chirografari e poiché la Proposta di Concordato presentata nel successivo Capitolo VI non prevede tale rimborso integrale, i crediti derivanti da garanzie subordinate non possono essere ammessi al concorso con gli altri creditori chirografari della società garante e rimangono esclusi dalla Proposta di Concordato.

Il trattamento del credito del soggetto garantito varia, inoltre, a seconda che il debitore principale sia o meno una società soggetta a procedura concorsuale o una società in bonis: nel primo caso, il credito è ammesso al passivo senza riserve (sia che si tratti di garanzia a prima richiesta che di garanzia con beneficio di preventiva escussione); nel secondo caso, il credito viene ammesso con riserva, e la riserva verrà sciolta, (i) ove si tratti di garanzia a prima richiesta, quando verrà fornita la prova dell'inadempimento del debitore principale; (ii) ove si tratti di garanzia con beneficio di preventiva escussione, quando sarà data la prova dell'infruttuosa escussione.

Si segnala, inoltre, che Parmalat S.p.A. ha rilasciato un'ipoteca sul complesso aziendale di Collecchio (comprendente lo stabilimento industriale, la palazzina uffici di presidenza e direzionali e la palazzina uffici ed archivi) per un controvalore pari ad Euro 33.569.698, a garanzia di un finanziamento stipulato con IRFIS Mediocredito della Sicilia S.p.A. in data 22 settembre 1997, per un

[Documento soggetto ad approvazione del Ministro delle Attività Produttive]

importo originario complessivo di ex Lire 40 mld ed attualmente pari ad Euro 10.329.137,98, che prevede un piano d'ammortamento semestrale, con la data di rimborso finale al 30 giugno 2007.

Di seguito vengono indicate sinteticamente le garanzie che assistono la varie tipologie di debito illustrate nei paragrafi che precedono.

**Tabella 3.26: Garanzie rilasciate dalle società oggetto di concordato**

| €/mln | Loan e derivati | Bond | Private placement | Promissory Notes | Altri Strumenti | Totale |
|---|---|---|---|---|---|---|
| Parmalat SpA | 1.430,7 | 6.211,1 | 1.129,3 | 862,7 | 45,2 | 9.679,0 |
| Parmalat Finanziaria SpA | 191,0 | 723,3 | - | - | 190,7 | 1.105,0 |
| Eurolat SpA | - | - | - | - | 93,4 | 93,4 |
| Lactis SpA | - | - | - | - | 0,2 | 0,2 |
| **Totale** | **1.621,7** | **6.934,4** | **1.129,3** | **862,7** | **329,6** | **10.877,7** |

**3.8    Debiti privilegiati ed in prededuzione delle Società oggetto di concordato**

Si riportano di seguito i debiti con trattamento in prededuzione e privilegiato (cfr. Capitolo VI) delle Società oggetto di concordato. Si tratta di una stima ad oggi da parte del management delle società interessate.