UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | In a Proceeding Under |
| | : | Section 304 of the |
| PARMALAT FINANZIARIA S.p.A. *et al.*, | : | Bankruptcy Code |
| | : | |
| Debtors in a Foreign Proceeding. | : | Case No. 04 -14268 (RDD) |
| | : | (Jointly Administered) |

-------------------------------------------------------------------x

| | | |
|---|---|---|
| ABN AMRO BANK N.V., | : | |
| | : | |
| Appellant | : | District Court |
| | : | Case No. 07-cv-07413 (PKC) |
| - against - | : | |
| | : | |
| PARMALAT FINANZIARIA S.p.A., <u>et al</u>., | : | |
| | : | |
| Appellees. | : | |
| | : | |

-------------------------------------------------------------------x

---

## REPLY MEMORANDUM OF APPELLEES
## PARMALAT FINANZIARIA S.p.A., <u>et al</u>.

---

Marcia L. Goldstein
Howard B. Comet
Brian J. Link
WEIL, GOTSHAL & MANGES, LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Appellees*
Parmalat Finanziaria S.p.A., <u>et al</u>.

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ....................................................................................................... 1

    A.  APPLICABLE COMITY PRINCIPLES ........................................................ 1

    B.  ABN'S CONTENTIONS ................................................................................ 4

II.  THE PARMA COURT'S CHOICE OF LAW RULING ........................................... 5

III.  THE PARMA COURT'S DATA CERTA RULING ............................................... 10

IV.  PUBLIC POLICY CONSIDERATIONS ................................................................. 15

CONCLUSION ............................................................................................................... 17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Ackermann v. Levine*, 788 F.2d 830 (2d Cir. 1986)..........................................................3

*AG Ltd. v. Liquid Realty Partners, LLC*, 448 F. Supp.2d 583 (S.D.N.Y. 2006) ...........11

*In re Bd. of Dirs. of Hopewell Int'l Ins., Ltd.*, 281 B.R. 200 (Bankr. S.D.N.Y. 2002) ..............................................................................................................................4

*Canadian Imperial Bank of Commerce v. Saxony Carpet Co.*, 899 F. Supp. 1248 (S.D.N.Y. 1995) ..........................................................................................................4

*Carlson v. Tandy Computer Corp.*, 803 F.2d 391 (8th Cir. 1986) ..................................7

*Carruthers v. Flaum*, 450 F. Supp.2d 288 (S.D.N.Y. 2006)..........................................13

*Clarkson Co., Ltd. v. Shaheen*, 544 F.2d 624 (2d Cir. 1976) ......................................2, 4

*Cornfeld v. Investors Overseas Servs., Ltd.*, 471 F. Supp. 1255 (S.D.N.Y.), *aff'd*, 614 F.2d 1286 (2d Cir. 1979)....................................................................................2

*In re Eagle Enterprises, Inc.*, 223 B.R. 290 (Bankr. E.D.Pa. 1998), *aff'd*, 237 B.R. 269 (E.D.Pa. 1999) ......................................................................................7

*Ecoban Finance Ltd. v. Grupo Acerbo del Norte, S.A. de C.V.*, 108 F. Supp.2d 349 (S.D.N.Y. 2000), *aff'd*, 2 Fed.Appx. 80 (2d Cir. 2001)........................................2, 16, 17

*Elgin Sweeper Co. v. Melson, Inc.*, 884 F. Supp. 641 (N.D.N.Y. 1995) .........................3

*Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240 (2d Cir. 1999) ................2, 3

*Gentile v. Jobette Music Co.*, 1996 WL 148427 (S.D.N.Y. April 2, 1996), *aff'd*, 122 F.3d 1056 (2d Cir. 1997)....................................................................................15

*Horn & Hardart Co. v. Pillsbury Co.*, 888 F.2d 8 (2d Cir. 1989) ....................11, 12, 13

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418 (2d Cir. 2005)............................................................................................................2

*Kenner Prods. Co. v. Societe Fonciere et Financiere Agache-Willot*, 532 F. Supp. 1255 (S.D.N.Y. 1982)..............................................................................................2

*Klonis v. National  Bank of Greece, S.A.*, 487 F. Supp.2d 351 (S.D.N.Y. 2006)............2

*Leonard v. Pepsico, Inc.*, 88 F. Supp.2d 116 (S.D.N.Y. 1999), *aff'd for reasons stated*, 210 F.3d 88 (2d Cir. 1999) ..........................................................................14

*Mark Andrew of Palm Beaches, Ltd. v. GMAC Commercial Mortgage Corp.*, 265 F. Supp.2d 366 (S.D.N.Y. 2003), *aff'd*, 96 Fed.Appx. 750 (2d Cir. 2004) ............................11

*New Line Int'l Releasing, Inc. v. Ivex Films, S.A.*, 140 B.R. 342 (S.D.N.Y. 1992) ........................2

*Pariente v. Scott Meredith Literary Agency, Inc.*, 771 F. Supp. 609 (S.D.N.Y. 1991) ............................................................................................................14

*Royal and Sun Alliance Insurance Co. of Canada v. Century International Arms, Inc.*, 466 F.3d 88 (2d Cir. 2006) .......................................................................................1

*Sarl Louis Feraud Int'l v. Viewfinder, Inc.*, 489 F.3d 474 (2d Cir. 2007) ................................3, 16

*Society of Lloyd's v. Ashenden*, 233 F.3d 473 (7th Cir. 2000) ........................................................4

*Trebor Sportswear Co., Inc. v. Ltd. Stores, Inc.*, 865 F.2d 506 (2d Cir. 1989) ......................13, 14

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709 (2d Cir. 1987) ................................2

*Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138 (2d Cir. 2002) ..............................................9

*Zaitsev v. Salomon Brothers, Inc.*, 60 F.3d 1001 (2d Cir. 1995) ..................................................11

## STATE CASES

*Sung Hwan Co., Ltd. v. Rite Aid Corp.*, 7 N.Y.3d 78, 817 N.Y.S.2d 600 (2006)................3, 14, 16

## FOREIGN LAW

EC Regulation 1346/2000 .................................................................................................. *passim*

Italian Civil Code Article 2704 ......................................................................................... *passim*

*Text of Rome Convention*, 19 I.L.M. 1492, 1980 WL 115585 (1980) ...........................................8

## MISCELLANEOUS

M. Balz, "The European Convention on Insolvency Proceedings," 70 *Am. Bankr. L.J.* 485 (1996) .............................................................................................................5-6

P. Borchers & J. Zekoll, eds., *International Conflict of Laws for the Third Millenium* (2002) ..................................................................................................................8

F. De Santis, *La Normativa Comunitaria Relativa Alle Procedure Di Insolvenza Transfrontaliere E Il Dirito Processuale Interno: Dialoghi Tra I Formanti [Community Law on Cross-Border Insolvency Proceedings and Internal Procedural Law: Dialogues Between Legislators]*, in G. Bongiorno, et al., eds., *Il Diritto Fallimentare* 91 (2004) ................................................................8

*International Contract Manual* § 61.87 (2008) ...........................................................9

L. Westpfahl & J. Wilkens, *The European Regulation on Insolvency Proceedings: Introduction and Legal Perspectives*, in 2004 *Annual Survey of Bankruptcy Law* ...............................................................................................9

Appellees Parmalat Finanziaria S.p.A., et al., respectfully submit this reply memorandum to respond to the Declaration of Giuseppe Curto, executed on June 2, 2008 (the "Curto Declaration"), and filed by Appellant ABN Amro Bank N.V. ("ABN").

## I. Introduction

As discussed in Appellees' Supplemental Memorandum ("Supp. Mem."), ABN has argued on this appeal that the Parma Court erred in its application of Italian law to ABN's bankruptcy claim.  (Supp. Mem. at 12 & n.10).  ABN contends that the Parma Court erred (1) by applying Italian insolvency law rather than the New York choice of law clause in the guarantee on which ABN relies, and (2) by finding ABN's evidence insufficient to satisfy the requirements of Article 2704 of the Italian Civil Code.

The Curto Declaration makes the same two arguments about alleged errors by the Parma Court.  Although Mr. Curto's contentions are discussed below, it is important to place his arguments in context.  As previously discussed, U.S. courts do not act as appellate tribunals to correct errors supposedly made by a foreign bankruptcy court in applying the laws of its own country.  (Parmalat Brief at 26-29; Supp. Mem. at 12-13).  For this reason, even if Mr. Curto's arguments were not incorrect in numerous respects, they could not support ABN's request for an order denying comity to the Parma Court and allowing a collateral attack and relitigation of ABN's bankruptcy claim.

### A. Applicable Comity Principles

The settled rule under federal law is that foreign bankruptcy proceedings generally bar U.S. lawsuits against the foreign debtor.  *Royal and Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 92-93 (2d Cir. 2006).  "Foreign bankruptcy proceed-

ings present exceptional circumstances and are afforded special deference due to the

foreign nation's unique interest in the orderly and equitable distribution of debtor-assets."

*Klonis v. Nat'l Bank of Greece, S.A.*, 487 F. Supp.2d 351, 356 (S.D.N.Y. 2006) (Castel, J.).

Thus, "deference to the foreign court is appropriate so long as the foreign proceedings are

procedurally fair and . . . do not contravene the laws or public policy of the United States."

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 424 (2d

Cir. 2005). (See also Parmalat Brief at 15-17).

     Likewise, New York law also requires deference to foreign bankruptcy proceed-

ings. In fact, federal courts often apply New York law to bar U.S. actions against foreign

debtors.[1] Many of these decisions have involved creditor claims that were very similar to

ABN's claim; i.e., claims under promissory notes, guarantees or other contracts that were

enforceable under New York law and/or contained New York forum selection clauses.[2]

The Second Circuit has also rejected the argument (which ABN has made in this case)

---

[1] *E.g., Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 715 (2d Cir. 1987) (New York courts "would extend comity to the Swedish Bankruptcy proceeding" and "deny enforcement [in the U.S. of an English judgment] as conflicting with New York's public policy of deferring to foreign bankruptcy proceedings"); *Clarkson Co., Ltd. v. Shaheen*, 544 F.2d 624, 629-30 (2d Cir. 1976) (New York courts defer to foreign bankruptcy proceedings); *Ecoban Finance Ltd. v. Grupo Acerbo del Norte, S.A. de C.V.*, 108 F. Supp.2d 349, 352 (S.D.N.Y. 2000) (under federal and New York law, "comity should be granted to a foreign bankruptcy . . . as long as fundamental standards of procedural fairness are observed, and state or federal law and public policy are not violated"), *aff'd*, 2 Fed. Appx. 80 (2d Cir. 2001); *New Line Int'l Releasing, Inc. v. Ivex Films, S.A.*, 140 B.R. 342, 344-46 (S.D.N.Y. 1992); *Kenner Prods. Co. v. Societe Fonciere et Financiere Agache-Willot*, 532 F. Supp. 478, 479 (S.D.N.Y. 1982); *Cornfeld v. Investors Overseas Servs., Ltd.*, 471 F. Supp. 1255, 1258-59 (S.D.N.Y.), *aff'd*, 614 F.2d 1286 (2d Cir. 1979).

[2] *E.g., Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 242-43 (2d Cir. 1999) (guarantee of promissory note that was payable in New York); *Ecoban*, 108 F. Supp.2d at 350 (promissory notes contained New York forum and choice of law clauses); *New Line*, 140 B.R. at 346 (contract included New York forum and choice of law clauses); *Kenner*, 532 F. Supp. at 478 (guaranty contained New York forum and choice of law clauses).

that New York's interest in its role as a commercial center can override comity consid-erations. *Finanz*, 192 F.3d at 247 (notwithstanding the strong interest "in maintaining New York's status as one of the foremost commercial centers in the world," because of "the 'particular need to extend comity to foreign bankruptcy proceedings,'" actions against foreign debtors are generally barred) (citations omitted).

New York and federal law are also consistent regarding enforcement of foreign judgments, such as the Parma Court's February 4, 2008 judgment denying ABN's bank-ruptcy claim. The same comity principles that apply to foreign bankruptcy proceedings also require that preclusive effect be given to foreign judgments. *Elgin Sweeper Co. v. Melson Inc.*, 884 F. Supp. 641, 650 (N.D.N.Y. 1995) ("principles of comity are applied to enforce foreign judgments in the U.S. and to recognize foreign court proceedings"). A foreign judgment will be enforced so long as it was obtained in a procedurally fair court system and it does not offend public policy. *E.g., Ackermann v. Levine*, 788 F.2d 830, 837 (2d Cir. 1986); *Sung Hwan Co., Ltd. v. Rite Aid Corp.*, 7 N.Y.3d 78, 82-83, 817 N.Y.S.2d 600, 603-04 (2006).

The public policy exception to comity applies only when a foreign judgment "is 'repugnant to fundamental notions of what is decent and just in the State where enforce-ment is sought.' The standard is high, and infrequently met." *Ackermann*, 788 F.2d at 841 (citation omitted). The "public policy inquiry rarely results in refusal to enforce a judgment unless it is inherently vicious, wicked or immoral, and shocking to the prevail-ing moral sense." *Sarl Louis Feraud Int'l v. Viewfinder, Inc.*, 489 F.3d 474, 479 (2d Cir. 2007) (quoting *Sung Hwan*, 7 N.Y.3d at 82). As discussed below, the Curto Declaration does not even attempt to meet this standard.

3

### B. **ABN's Contentions**

ABN is <u>not</u> arguing that Italian bankruptcy proceedings deny due process or that Italian law is repugnant to U.S. law.  ABN has disclaimed any argument that it is repugnant to U.S. law if Italian insolvency laws supersede contract rights.  (See ABN Reply Brief at 8: "ABN does not dispute that bankruptcy law may curtail rights of contractual creditors.").  ABN argues only that, for unexplained reasons, "the Parma Court needs to enforce the contractual choice of law provision" and has therefore erred by enforcing the *data certa* statute.  (Id.).

Similarly, ABN has abandoned the argument – which Judge Drain rejected in the Bankruptcy Court – that the *data certa* statute is repugnant to U.S. law.  (See Parmalat Brief at 12-13).  On appeal, ABN "is not challenging the fairness or constitutionality of the *data certa* statute," but is instead disputing only "the manner in which *data certa* has been applied by the Parma Court."  (ABN Brief at 23).

ABN has cited no decision, however, in which a U.S. court denied comity based on a determination that a foreign court misapplied its own laws or ruled incorrectly in a particular case.  The settled rule is directly contrary: "A foreign judgment may not be attacked 'upon the mere assertion of the party that the judgment was erroneous in law or in fact.'" *Clarkson*, 544 F.2d at 631 (quoting *Hilton v. Guyot*, 159 U.S. 113, 203 (1895)).[3]  There is no authority, therefore, under which the Curto Declaration supports the relief ABN has

---

[3] *Accord Society of Lloyd's v. Ashenden*, 233 F.3d 473, 477-78 (7th Cir. 2000) (U.S. courts consider whether the foreign system renders due process and not "whether the particular judgments that [a litigant is] challenging were issued in proceedings that conform to the requirements of due process"); *Canadian Imperial Bank of Commerce v. Saxony Carpet Co.*, 899 F. Supp. 1248, 1252 (S.D.N.Y. 1995) (a foreign judgment cannot be challenged on the ground that it "was erroneous in law or in fact"); *In re Bd. of Dirs. of Hopewell Int'l Ins., Ltd.*, 281 B.R. 200, 214 (Bankr. S.D.N.Y. 2002) (same; Section 304 case).

requested.  ABN's remedy instead is to pursue its planned appeal in the Italian courts.

(See Curto Decl. ¶ 60).

## II.  <u>The Parma Court's Choice of Law Ruling</u>

As previously discussed, the Parma Court applied a settled choice of law rule,

under which the forum's insolvency laws supersede the contract law that applies outside

of insolvency proceedings.  (Supp. Mem. at 1-11).  The Parma Court relied on the

adoption of that choice of law rule in European Community Regulation 1346/2000 (the

"EC Regulation").  (Exh. 2).[4]  The Curto Declaration acknowledges that the Parma Court

"apparently relied" on the EC Regulation.[5]  Nevertheless, Mr. Curto contends that Italian

courts – including the Parma Court in this case – do <u>not</u> apply conflicts or choice of law

principles when they enforce the *data certa* rule in insolvency cases.  (Curto Decl. ¶ 19).

The Curto Declaration is plainly wrong.  The express purpose of Articles 4-15 of

the EC Regulation is to provide "uniform rules on conflicts of law."  EC Regulation, Exh.

2, Preamble ¶ 23.  Those conflicts rules are intended, among other things, "to delineate

the issues which are properly governed by insolvency law from those that should be

treated as nonbankruptcy issues."  M. Balz, "The European Convention on Insolvency

---

[4] Exhibits 1-14 were submitted with Appellees' Supplemental Memorandum.  Exhibits A-D are annexed to the accompanying Reply Declaration of Howard B. Comet.

[5] The Curto Declaration says that the Parma Court "*apparently* relied upon" the EC Regulation, and also refers to the Parma Court's "*apparent* reliance upon" the EC Regulation. (Curto Decl. ¶¶ 18, 22; emphasis added).  Since the Parma Court explicitly relied upon (and even quoted) the EC Regulation (Parma Court Opinion at 7-8), it is unclear why Mr. Curto characterizes the court's decision in this fashion.  If Mr. Curto is suggesting that the Parma Court disguised some hidden reason for its ruling, then his suggestion is both unsupported and inappropriate.

Proceedings," 70 *Am.Bankr.L.J.* 485, 506 (1996) (Exh. 5).[6]  In relying on the EC Regu-

lation, therefore, the Parma Court invoked choice of law principles to hold that Italian

insolvency law governs the admission of ABN's bankruptcy claim and supersedes in that

respect the New York choice of law clause ABN relies upon.  (Supp. Mem. at 1-11).

The Curto Declaration also says that "the Parma Court never considered the parties'

choice of New York law" and "never reached the issue of whether New York law . . . is to

be applied to the Guarantee."  (Curto Decl. ¶¶ 29, 35).  But Mr. Curto admits that "the

Parma Court acknowledged in the Judgment that ABN presented the argument" "that New

York law ought to be applied."  (Curto Decl. ¶¶ 32-33, citing Parma Court Opinion at 7).

Mr. Curto also admits that "[t]he Parma Court held that the law applicable to the Proceed-

ing was that of Italy," and that Italian law is the "*lex concursus* [which] establishes 'the

claims which are to be lodged against the debtor's estate, the treatment of claims arising

after the opening of the insolvency proceedings, [and] the rules governing the lodging,

verification and admission of claims.'"  (Curto Decl. ¶ 28, quoting Parma Court Opinion at

8).  The language Mr. Curto has quoted from the Parma Court opinion is the text of Article

4(2)(g) & (h) of the EC Regulation.

Accordingly, the Parma Court <u>did</u> rule on "the applicable laws and standards" and

specifically relied on the EC Regulation to reject ABN's choice of law argument.  (Parma

Court Opinion at 7-9).  The Curto Declaration nevertheless says nothing about the EC

Regulation's choice of law rules.  Mr. Curto therefore fails to dispute that, under Article 4

---

[6] Dr. Manfred Balz, the author of the cited article, was the principal drafter of the EC
Regulation.  (See Exh. 9 at 6, ¶ 1).

of the EC Regulation, Italian insolvency law governs the proof and admission of ABN's bankruptcy claim.

To the contrary, Mr. Curto actually points out that, under Italian law, "the parties' choice of law would <u>not</u> be given effect in an insolvency context" (Curto Decl. ¶ 20; emphasis added), and that "where a contract is sought to be enforced against a third party (such as the Extraordinary Commissioner or a receiver in bankruptcy)," Italian law imposes "more stringent evidentiary rules, including *data certa*," that must be satisfied for admission of a bankruptcy claim. (Curto Decl. ¶ 19, citing Italian Supreme Court decisions). This, of course, is precisely Parmalat's point on this appeal.[7]

Despite these concessions, Mr. Curto says that, "As detailed below, the Parma Court's application of [the EC Regulation and the *data certa* rule] was contrary to a well-settled Italian law concerning . . . the right of parties to choose the controlling law in a contract." (Curto Decl. ¶ 22). The remainder of the declaration says nothing, however, about Italian law regarding the parties' right to choose the controlling law in a contract.

In the earlier background section of the declaration, Mr. Curto says that ABN argued to the Parma Court that "the law of the State of New York governs the Guarantee by virtue of Articles 9 and 14 of the Rome Convention." (Curto Decl. ¶ 12). But if the

---

[7] U.S. courts similarly deny effect to a contractual choice of law clause when the rights of third parties are affected. *See, e.g., In re Eagle Enterprises, Inc.*, 223 B.R. 290 (Bankr. E.D.Pa. 1998) (although the debtor's agreement with a German company had a German choice of law clause, and it was a valid equipment lease under German law, the bankruptcy trustee, as the representative of third party creditors, successfully (i) had the agreement recharacterized under U.S. law as a financing agreement, rather than a lease; (ii) opposed the German company's claim that, as the lessor, it owned the equipment; and (iii) limited the German company to an unsecured bankruptcy claim), *aff'd*, 237 B.R. 269 (E.D.Pa. 1999). *See also, Carlson v. Tandy Computer Corp.*, 803 F.2d 391 (8th Cir. 1986) (applying same choice of law rule).

Rome Convention is the "well-settled Italian law" that Mr. Curto has in mind, then he fails to explain (let alone "detail") ABN's argument that the Rome Convention rules apply to the admission of ABN's bankruptcy claim.

As previously discussed, the EC Regulation is the controlling European law, and it provides that insolvency laws supersede (within their scope) the contract law that would apply under the Rome Convention. (Supp. Mem. at 7-8).[8] Although the Parma Court explicitly relied on the EC Regulation, Mr. Curto cites no authority which holds that the law applicable to the admission of bankruptcy claims is governed by the Rome Convention rather than the EC Regulation. Mr. Curto simply ignores the EC Regulation.

Even before the EC Regulation, moreover, the rule was that insolvency laws take priority over the Rome Convention. (Supp. Mem. at 8 & n.13). The Rome Convention was signed by Italy and other countries in June 1980 (and additional European countries since then). *See Text of Rome Convention*, 19 I.L.M. 1492, 1980 WL 115585 (1980). We know of no decision, in the 28 years that have elapsed, in which a court in Italy or

---

[8] *See also*, F. De Santis, *La Normativa Comunitaria Relativa Alle Procedure Di Insolvenza Transfrontaliere E Il Dirito Processuale Interno: Dialoghi Tra I Formanti [Community Law on Cross-Border Insolvency Proceedings and Internal Procedural Law: Dialogues Between Legislators]*, in G. Bongiorno, et al., eds., *Il Diritto Fallimentare* 91, 112 & n.47 (2004) ("Pursuant to Article 4 of the [EC] Regulation . . . the law applicable to insolvency proceedings . . . is that of the Member State within [which] such proceedings are opened (*lex fori concursus*). This provision sets out in detail the aspects which fall within the scope of the *lex fori concursus*, which relate, among other things to . . . the effects on current contracts . . . . To this end, the *lex fori concursus* must be deemed to prevail over contract law, in line with the 1980 Rome Convention.") (excerpt translated in Exh. A); P. Borchers & J. Zekoll, eds., *International Conflict of Laws for the Third Millenium* 252-53 & n.136 (2002) (under the EC Regulation, "[t]he effect of the opening of insolvency proceedings on current contracts to which the debtor is a party will normally be governed by the law of the forum," and "[t]he rules contained in the Rome Convention . . . are thus displaced in the event of the opening of insolvency proceedings.") (Exh. B).

elsewhere has held that the Rome Convention rules supersede the EC Regulation and/or forum requirements for the proof and admission of bankruptcy claims.[9]

In short, ABN's argument is completely novel and completely unsupported. To a bankruptcy lawyer, it is also startling. ABN's contention that the parties' choice of law in a private contract can trump insolvency laws governing the admission of bankruptcy claims – and thereby provide an advantage over other creditors – is flatly inconsistent with fundamental bankruptcy requirements for equal treatment of creditors.[10]

Finally, regardless of whether ABN's reliance on the Rome Convention is correct, there is no basis for denying comity in this case. ABN intends to appeal the Parma Court

---

[9] ABN is a leading Netherlands bank and one of the world's major financial institutions. Thus, if ABN had any basis for thinking – when it sought a guarantee from Parmalat – that the Rome Convention rules would supersede Italian insolvency law in a Parmalat bankruptcy proceeding, Mr. Curto presumably would have cited authority to support ABN's position. In fact, as Mr. Curto's own declaration makes clear, long before ABN sought a guarantee from Parmalat, it was the rule in Italy that "the parties' choice of law would <u>not</u> be given effect in an insolvency context" to the extent it conflicts with the *data certa* statute. (Curto Decl. ¶ 20; emphasis added). Likewise, the EC Regulation was in effect in Italy and the Netherlands before the 2003 guarantee ABN relies upon. ABN cannot credibly claim, therefore, that it believed in 2003 that the choice of law clause in the guarantee would trump the *data certa* statute. The most ABN could say is that it failed to give proper consideration to the effect of a Parmalat bankruptcy. This Court should not deny comity to the Parma Court, however, in order to allow ABN to escape the consequences of its own failure.

[10] A uniform insolvency law is "the essential prerequisite to complying with a most basic rule of every bankruptcy proceeding: The equal treatment of all (unsecured) creditors, which is also referred to as the principle of *par condicio creditorum*." L. Westpfahl & J. Wilkens, *The European Regulation on Insolvency Proceedings: Introduction and Legal Perspectives*, in 2004 *Annual Survey of Bankruptcy Law* at 2 (Exh. C). The principle of equal treatment of creditors is central to the bankruptcy laws of both the U.S. and Italy. *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 147 (2d Cir. 2002) (enforcing "the Bankruptcy Code's strong policy favoring equal treatment of creditors"); 3 *International Contract Manual* § 61.87 (2008) (an Italian bankruptcy proceeding is "aimed at satisfying the rights of the creditors according to the principle of 'par condicio creditorum' (i.e., equality among the creditors)") (Exh. D).

decision.  (Curto Decl. ¶ 60).  If ABN prevails on appeal, its bankruptcy claim will be admitted and it will have no need to pursue a U.S. action.  And if ABN loses, that will mean that, under the applicable choice of law rule, Italian law governing the proof and admission of bankruptcy claims supersedes the New York law clause.  Not only is that choice of law rule consistent with U.S. law (Supp. Mem. at 4-12), but also ABN has disclaimed any challenge to that rule.  (See p. 4, <u>supra</u>).  Either way, there is no reason to allow ABN to pursue a collateral attack on the Italian judgment in the U.S. courts.

## III.  <u>The Parma Court's Data Certa Ruling</u>

As discussed above (p. 4), ABN has disclaimed any challenge to the fairness of the *data certa* statute and is instead disputing only the Parma Court's application of the statute.  The Curto Declaration likewise challenges the Parma Court's supposed errors in applying the *data certa* law.  (Curto Decl. ¶¶ 36-59).  In this instance (unlike ABN's reliance on the Rome Convention), Mr. Curto cites Italian case law to support his arguments.  (Curto Decl. ¶ 44, n.45).  The point of his arguments, however, remains unclear. If ABN is correct about Italian law, it should prevail in its appeal in Italy.  And if ABN is wrong, the Italian appellate courts will hold that the Parma Court correctly applied the statute.  Neither result could support ABN's collateral attack in the U.S. on the Parma Court's judgment.

The Curto Declaration's incorrect criticism of the Parma Court Opinion should nevertheless be addressed.  Mr. Curto argues, for example, that the Parma Court "ignored ABN's attempts to avail itself of the opportunity to request that the Parma Court consider evidence under the 'other circumstances' exception to Article 2704."  (Curto Decl. ¶ 30).

This argument, like ABN's previous argument that the Parma Court refused to consider its evidence (ABN Brief at 23-24), mischaracterizes the Parma Court's ruling.

The Parma Court considered every item of ABN's evidence or proposed evidence and held that, even if all the evidence were accepted, it would still be legally insufficient to satisfy the requirements of Article 2704. The Parma Court's decision was therefore comparable to U.S. summary judgment decisions applying the Statute of Frauds. U.S. courts regularly dismiss contract claims, after considering documentary evidence and proposed testimony, if the plaintiff's evidence is insufficient to satisfy the requirements of the Statute of Frauds. Summary judgment is often granted even if there is evidence that the parties had an oral agreement, since oral contracts are legally insufficient under the Statute of Frauds.[11]

Under Article 2704, when a contract is the basis for a bankruptcy claim, it must be established that the contract was entered into on a date certain prior to the bankruptcy proceeding. (Parmalat Brief at 6-8). The statute provides three principal methods of proving the date, all of which involve authentication of the date by a public official, including a notary public certification, registering the contract with a government office, and reproduction of the contract in public records. (Id.; Parma Court Opinion at 10). In

---

[11] *Zaitsev v. Salomon Bros., Inc.*, 60 F.3d 1001, 1003-04 (2d Cir. 1995) (summary judgment granted despite documentary evidence of the parties' relationship and a third party affidavit confirming the parties' oral agreement); *Horn & Hardart Co. v. Pillsbury Co.*, 888 F.2d 8, 10-11 (2d Cir. 1989) (summary judgment despite documents referencing the parties' "verbal agreement"); *AG Ltd. v. Liquid Realty Partners, LLC*, 448 F. Supp.2d 583, 587-88 (S.D.N.Y. 2006) (summary judgment despite emails and memos that demonstrated the parties' relationship); *Mark Andrew of Palm Beaches, Ltd. v. GMAC Comm. Mortgage Corp.*, 265 F. Supp.2d 366, 378-82 (S.D.N.Y. 2003) (summary judgment despite extensive documentary evidence, because the documents did not include the specific promise the plaintiffs sued to enforce), *aff'd*, 96 Fed.Appx. 750 (2d Cir. 2004).

addition, the statutory requirement can be satisfied by proof of "the date on which other circumstances occur which establish with equal certainty that the writing was drawn up previously." (R. 25, Ex. F, quoting statute).

Here, the Parma Court pointed out that none of the documents offered by ABN contained a signed and dated declaration by a public official. (Parma Court Opinion at 10). The Parma Court also explained that the application of Article 2704 "has to be especially rigorous" since it "aims to protect [bankruptcy] creditors in the precise case – which is statistically frequent – in which the debtor, despite the opening of the insolvency proceedings, [improperly] carries out actions relating to the disposal of its assets or takes on obligations." (Parma Court Opinion at 10).

The Parma Court's concern about "statistically frequent" misconduct by debtors has great significance here, given the fraud perpetrated by Parmalat's former Chairman, Calisto Tanzi, who used Wishaw Trading as a vehicle for his misconduct. (Parmalat Brief at 5). ABN's bankruptcy claim is based on documents that purport to be a Wishaw promissory note authenticated by Tanzi and a Parmalat guarantee of the same Wishaw note, also allegedly signed by Tanzi. (Curto Decl., Exh. 8).

With respect to specific items of evidence, ABN offered two emails that refer to a *proposed* guarantee – not a signed document. (Curto Decl., Exhs. 6-7). The Parma Court also found that these March 10 and March 14, 2003 emails are so general ("extremely generic") that there is no confirmation they refer to the guarantee Tanzi allegedly signed on March 27, 2003. (Parma Court Opinion at 10-11). ABN's proposed technical proof that the emails were sent on March 10 and 14 could not help, therefore, to establish a date certain of the guarantee document. (Id.). *Compare, Horn & Hardart*, 888 F.2d at 11

12

("Speculation and hypothesis are anathema to the policy behind the Statute of Frauds. If the proffered writings permit doubt as to the existence or nature of the contractual relationship, the inquiry is terminated and the agreement deemed unenforceable.").

The Parma Court similarly found ABN's internal memoranda (Curto Decl., Exhs. 4 & 5), which are also dated *before* the guarantee, insufficient to prove that the guarantee was actually signed on the date that appears on the document. (Parma Court Opinion at 11). The Parma Court also held that the defects in the emails and other documents could not be corrected by oral testimony, since the statute bars such evidence. (Parma Court Opinion at 11-13). U.S. courts similarly hold that oral testimony (i.e., parol evidence) cannot correct defects in documentary evidence offered to satisfy the Statute of Frauds.[12]

Although the Parma Court cited several decisions by the Italian Supreme Court, the Court of Cassation, in support of its ruling regarding ABN's proposed oral testimony, the Curto Declaration contends that the Parma Court's ruling "essentially vitiates the 'other circumstances' exception to Article 2704" and "is contrary to the express holdings of the Italian Supreme Court." (Curto Decl. ¶¶ 37, 45 & n.5). ABN's remedy for this alleged error is an appeal to the Italian Court of Appeal and, if necessary, a further appeal to the Italian Supreme Court.

ABN's remedy is not to ask a U.S. court to decide whether the Parma Court erred and to deny comity because the Parma Court allegedly misapplied Italian law. Settled

---

[12] *Horn & Hardart*, 888 F.2d at 10-11 (Statute of Frauds could not be satisfied by offer of parol evidence to connect insufficient documents); *Trebor Sportswear Co., Inc. v. Ltd. Stores, Inc.*, 865 F.2d 506, 511 (2d Cir. 1989) (a parol recitation of the contract "was not admissible, as the Statute of Frauds requires a writing") (quoting *Lighting Horizons, Inc. v. E.A. Kahn & Co.*, 120 A.D.2d 648, 649, 502 N.Y.S.2d 398, 399 (2d Dept. 1986)); *Carruthers v. Flaum*, 450 F. Supp.2d 288, 310 (S.D.N.Y. 2006) ("parol evidence is not admissible to clarify an incomplete written instrument under the Statute of Frauds").

comity principles dictate that a U.S. court will not conduct a "microscopic review" of evidentiary issues in a foreign proceeding and "will not sit as an appellate court in review of the judgment of a foreign court, where the procedures giving rise to that judgment did not violate due process." *Pariente v. Scott Meredith Literary Agency, Inc.*, 771 F. Supp. 609, 617 (S.D.N.Y. 1991). *Accord Sung Hwan*, 7 N.Y.3d at 83 (a "foreign judgment should be enforced in New York under well-settled comity principles without microscopic analysis of the underlying proceeding").

Finally, the Parma Court also discussed ABN's request for discovery of documents prepared by Parmalat and its accountants after the insolvency proceedings began. These documents allegedly refer to guarantees previously issued by Parmalat. (Parma Court Opinion at 3-4). The Parma Court held that these "reconstructions," which were not made "immediately subsequent" to Parmalat's insolvency filing, "could not, in any case, provide the proof of the certain date." (Parma Court Opinion at 13). The documents could only "show that, on the date of the reconstruction, there was the mention of a guarantee, but it cannot prove anything with regard to when this was formed." (Id.).

Accordingly, there was no point to the requested discovery, since the documents would be insufficient in any event to satisfy the requirements of Article 2704. (Id.). U.S. courts likewise deny discovery requests when the requested discovery materials would be insufficient in any event to satisfy the Statute of Frauds.[13]

---

[13] *Trebor Sportswear*, 865 F.2d at 512 (discovery was properly denied because the plaintiffs "proffered no persuasive basis for the district court to conclude that further discovery would yield proof of a written agreement that would satisfy the statute of frauds, which was, after all, the nub of the appellee's motion for summary judgment"); *Leonard v. Pepsico, Inc.*, 88 F. Supp.2d 116, 131-32 & n.14 (S.D.N.Y. 1999) (discovery was denied because it could not "affect the conclusion that the alleged offer failed to

In short, the Curto Declaration is incorrect when it argues that the Parma Court failed to let ABN offer evidence and failed to consider the evidence that ABN offered. While ABN disputes the Parma Court's assessment of the sufficiency of its evidence, that is an issue for the Italian courts.

## IV.  Public Policy Considerations

As discussed above, because ABN has not argued that the Italian judicial system fails to provide procedural due process and has disclaimed any contention that the *data certa* statute is unfair, there is no basis for denying comity to the Parma Court.  ABN has nevertheless argued in its briefs and in the Curto Declaration that the application of the *data certa* statute in this specific case is somehow unfair.  Since ABN has identified no basis for that argument other than alleged errors by the Parma Court in applying Italian law, ABN's "unfair-as-applied" argument must fail.

There is, in fact, nothing unfair about the application of the *data certa* rule in this case.  ABN has proclaimed that it is a sophisticated business entity.  (See, e.g., Curto Decl. ¶ 17).  ABN knew it was dealing with an Italian company when it sought a guarantee from Parmalat S.p.A. and therefore had to consider the enforceability of Parmalat's obligations under Italian law.[14]  The *data certa* rule has long been part of Italian law and can easily be

_____

comply with the Statute of Frauds"), *aff'd for reasons stated*, 210 F.3d 88 (2d Cir. 1999); *Gentile v. Jobette Music Co.*, 1996 WL 148427, at *5 (S.D.N.Y. April 2, 1996) ("Plaintiff has not demonstrated that the discovery sought would overcome his failure to satisfy the requirements of the Michigan statute of frauds."), *aff'd*, 122 F.3d 1056 (2d Cir. 1997).

[14] The guarantee document that ABN relies upon states that Parmalat S.p.A. is a corporation "existing under the laws of Italy, with principal offices located at Via Oreste Grassi, 26, 43.044 Collechio, Parma, Italia."  (Curto Decl., Exh. 8).  ABN's internal credit memo states that "the ultimate credit exposure is that of Parmalat" and that "[c]ross border risk exists," among other reasons, because ABN would be relying on an "Italian guarantor."

satisfied (as other non-Italian companies have recognized) by having a guarantee or other document notarized at the time of execution.  (See Parmalat Brief at 7-8 & n.5).  As Mr. Curto's own declaration points out, it is well-settled under Italian law that the *data certa* rule applies to claims in Italian insolvency proceedings.  And ABN has identified no authority that the New York choice of law clause in the guarantee can trump the *data certa* rule in an Italian insolvency proceeding.  (See pp. 7-9, supra).

There is no basis, therefore, on which ABN can argue that it reasonably believed the *data certa* law would not apply if Parmalat became bankrupt or that the application of that law to its claim is unfair.  The ruling in *Ecoban* is directly on point:

> In dealing with Mexican corporations, Ecoban can and must be charged with knowledge of the *Suspension de Pagos*, a law that has been on the books since 1943. . . . Ecoban's unhappiness with the results produced by that law is not a legitimate ground for denying the laws and courts of Mexico the comity to which American legal precedent and basic principles of international cooperation entitle them.

*Ecoban*, 108 F. Supp.2d at 355.  Likewise, ABN can and must be charged with knowledge of the *data certa* law, and its unhappiness with the results produced by that law is not a legitimate ground for denying comity to the laws and courts of Italy.

Certainly, there is nothing to suggest that the application of the *data certa* rule to ABN's bankruptcy claim is "inherently vicious, wicked or immoral, and shocking to the prevailing moral sense" – which is the test for denying comity on public policy grounds. *Sarl Louis*, 489 F.3d at 479.  "To hold otherwise would undermine the fundamental principles of comity by interfering with the acts of a foreign jurisdiction's legislature or judicial body." *Sung Hwan*, 7 N.Y.3d at 85.

---

(Curto Decl., Exh. 5).  Another ABN internal memo similarly states that the "Country of Ult. Exp." (i.e., Ultimate Exposure) is "Italy."  (Curto Decl., Exh. 4).

As in *Ecoban*, "we are left with the simple case of an American [here, Dutch] creditor of a [foreign] corporation asking this Court to give it a preference over other creditors by releasing it from obligations imposed by [foreign] bankruptcy law."  108 F. Supp.2d at 354.  And, as in that case, "Principles of international comity and a strong public policy favoring the administration of all claims against a debtor in a single forum preclude this Court from doing so."[15]  *Id.*

## CONCLUSION

The order of the Bankruptcy Court should be affirmed.

Dated: New York, New York
       June 30, 2008                         _____/s/ Howard B. Comet_____
                                             Marcia L. Goldstein
                                             Howard B. Comet
                                             Brian J. Link

                                             WEIL, GOTSHAL & MANGES LLP
                                             767 Fifth Avenue
                                             New York, New York 10153
                                             (212) 310-8000

                                             Attorneys for Appellees

---

[15] As *Ecoban* also points out, "The public policy and procedural fairness exceptions to the exercise of comity, under both New York and federal law, are intended as shields to protect American citizens and corporations from fundamentally unfair treatment abroad." 108 F. Supp.2d at 354.  Here, ABN is a Dutch bank, not an American corporation.  But even when claims by U.S. citizens or companies are at issue, the comity exceptions "are not swords to be wielded by American creditors to frustrate and evade foreign bankruptcy laws."  *Id.*