# EXHIBIT A

TITLE OF THE ARTICLE:
LA NORMATIVA COMUNITARIA RELATIVA ALLE PROCEDURE DI INSOLVENZA TRANSFRONTALIERE E IL DIRITTO PROCESSUALE INTERNO: DIALOGHI TRA I FORMANTI

COMMUNITY LAW ON CROSS-BORDER INSOLVENCY PROCEEDINGS AND INTERNAL PROCEDURAL LAW: DIALOGUES BETWEEN LEGISLATORS

EXCERPT:

"*10. Applicable Law.* Pursuant to article 4 of the Regulation (whose content is reiterated by article 28 in reference to secondary proceedings), the law applicable to insolvency proceedings ("principal", "secondary" and "territorial") is that of the Member State within such proceedings are opened (*lex fori concursus*).

This provision sets out in detail the aspects which fall within the scope of the *lex fori concursus*, which relate, among other things, to: the conditions for the opening of proceedings (e.g. insolvency); debtors subject to such proceedings (e.g. commercial firms); the respective powers of the liquidator and the debtors; the assets which form part of the estate; the effects on current contracts[47], proceedings brought by individual creditors, rules dealing with the lodging, verification and admission of claims; distribution of proceeds; conditions for closure of the proceedings; rules relating to the voidability of legal acts detrimental to creditors.

---

[47] To this end, the *lex fori concursus* must be deemed to prevail over contract law, in line with the 1980 Rome Convention

# MERRILL BRINK
## INTERNATIONAL

17 DOMINION STREET, LONDON EC2M 2EF
PHONE: +44 (0)20 7562 3300

Monday, 16 June 2008

To whom it may concern,

I, **CHRISTINA STÜTTGEN**, a qualified and experienced translator, hereby certify that to the best of my knowledge this is a true and accurate translation of the original **ITALIAN** document, **DIRITTO FALLIMENTARE DE SANTIS89**, attached at Annex A provided to me by Merrill Corporation.

If there is any further information I can provide you with, please do not hesitate to contact me.

CHRISTINA STÜTTGEN
[PRINT Name of translator]

Declared at ANTHONY GOLD SOLICITORS

this 16TH day of June 2008

Before me,

ANTHONY GOLD
NEW LONDON BRIDGE HOUSE
25 LONDON BRIDGE STREET
LONDON SE1 9TW
DX 39915 LONDON BRIDGE SOUTH
TEL: 0207 940 4000 FAX: 0207 378 8025

Shelley Turrell
SOLICITOR
Anthony Gold Solicitors

Solicitor or Commissioner for Oaths

L01:\713340\01\F@F001!.DOC\66971.0003

0 9 SET. 2004

PERIODICO
F.to C
430

# IL DIRITTO FALLIMENTARE
## E DELLE SOCIETA' COMMERCIALI



RIVISTA BIMESTRALE DI DOTTRINA E GIURISPRUDENZA
GIÀ DIRETTA DA ITALO DE PICCOLI (1924-1940), RENZO PROVINCIALI (1941-1981),
ANGELO BONSIGNORI (1982-2000) E GIUSEPPE RAGUSA MAGGIORE (1982-2003)

**DIREZIONE**
GIROLAMO BONGIORNO, CONCETTO COSTA,
MASSIMO DI LAURO, ELENA FRASCAROLI SANTI, LINO GUGLIELMUCCI,
BRUNO INZITARI, GIUSEPPE TERRANOVA, GUSTAVO VISENTINI

## VOLUME (LXXIX) 2004



CEDAM - CASA EDITRICE DOTT. ANTONIO MILANI - PADOVA - 2004

# LA NORMATIVA COMUNITARIA RELATIVA ALLE PROCEDURE DI INSOLVENZA TRANSFRONTALIERE E IL DIRITTO PROCESSUALE INTERNO: DIALOGHI TRA I FORMANTI (*)

SOMMARIO: 1. Premessa: posizione del problema. – 2. Sede legale e sede effettiva: dal primato della giurisdizione all'esigenza della cooperazione. – 3. *Self execution* a livello comunitario della decisione di apertura della procedura di insolvenza e problematiche applicative per il giudice italiano. – 4. Efficacia diretta dello strumento normativo comunitario e definitivo eclissarsi del criterio interno di radicamento della giurisdizione concorsuale. – 5. Per un concetto « aggiornato » del principio di universalità. – 6. Problematiche di glossario. – 6.1. « Insolvenza » e « procedura di insolvenza ». – 6.2. Giudice. – 6.3. Curatore. – 7. Competenza giurisdizionale. – 8. Ancora sui concetti di procedura « principale » e procedura « secondaria ». – 9. La procedura « territoriale ». – 10. Legge applicabile. – 11. Il riconoscimento automatico delle decisioni in materia di procedure di insolvenza. – 12. L'attivo concorsuale e le regole della distribuzione del ricavato. – 13. Fu vera gloria?

1. *Premessa: posizione del problema*. – L'esigenza di realizzare un coordinamento tra gli ordinamenti statuali in merito alla disciplina ed alla regolazione dei rapporti giuridici in caso di fallimenti (o, più in generale, di procedura concorsuali) aventi implicazioni transfrontaliere, riguarda e accomuna tutti i Paesi industrializzati.

Tale esigenza deriva dal crescente intrecciarsi di rapporti economici tra soggetti di nazionalità diverse o che si trovano ad operare in Paesi differenti; accade, infatti, di frequente che, in caso di apertura di una procedura concorsuale in un determinato Stato, soltanto una parte dei beni del debitore viene sottoposta all'esecuzione fallimentare, mentre il restante patrimonio, localizzato nel territorio degli altri Paesi, viene sottoposto ad una pro-

---

(*) Il presente scritto – che costituisce la rielaborazione di una relazione tenuta in Salerno il 21 febbraio 2003 nell'àmbito del seminario di studio su *La cooperazione giudiziaria in materia civile*, organizzato dal Consiglio superiore della magistratura – è dedicato al Prof. Angelo Bonsignori e sarà inserito nella raccolta di *Studi* in Sua memoria.

cedura parallela e confliggente, se non è addirittura sottratto a qualunque procedura concorsuale.

Fuori dell'ambito comunitario, a livello internazionale, i diversi ordinamenti giuridici implicati non hanno elaborato soluzioni fino in fondo adeguate alle soluzione del problema. Sovente le convenzioni dedicate all'argomento hanno, infatti, un ambito di applicazione limitato (solitamente si tratta di convenzioni bilaterali), mentre i pochi esempi di trattati a carattere multilaterale non sempre riescono a raggiungere il numero di ratifiche sufficienti per l'entrata in vigore (¹).

Eppure, una regolazione delle procedure concorsuali che ambisca ad affrontare – con possibilità di effettivo coordinamento – le problematiche derivanti dall'insolvenza transnazionale, dovrebbe, nell'ordine, disciplinare in maniera uniforme i seguenti profili, aventi carattere preliminare alla riuscita dell'intera operazione: individuazione del giudice competente, determinazione della legge applicabile, riconoscimento dei provvedimenti pronunciati all'estero.

È, infatti, importante rilevare – anche ai fini di una corretta impostazione del discorso che segue – come l'obiettivo verso il quale si muovono le convenzioni internazionali sia quello di evitare il concorso fra le giurisdizioni, attribuendo il potere di dichiarare il fallimento ad una sola di esse, e di

---

(¹) Tra le convenzioni, attualmente in vigore per l'Italia, si segnalano:

a) la convenzione italo-austriaca sottoscritta il 12 luglio 1977 e resa esecutiva con legge 14 dicembre 1985 n. 612, che ha come specifico oggetto la disciplina delle procedure di insolvenza. La convenzione si fonda sui principi dell'extraterritorialità e dell'unicità del fallimento, prevedendo che una procedura concorsuale aperta nel territorio di uno Stato contraente estenda automaticamente i suoi effetti nell'altro Stato contraente, precludendo l'apertura di altri procedimenti. La convenzione si applica alle sole procedure di fallimento e concordato nei confronti di imprenditori commerciali, siano essi persone fisiche o giuridiche, con esclusione del cd. piccolo imprenditore. I titoli capaci di radicare giurisdizione in materia concorsuale sono, in via principale, il centro o la sede degli affari del debitore e, in via sussidiaria, un suo stabilimento;

b) la convenzione italo-francese per l'esecuzione delle sentenze in materia civile e commerciale, sottoscritta a Roma il 3 giugno 1930 e resa esecutiva con legge 7 gennaio 1932, n. 45, parzialmente sostituita dalla disciplina contenuta nella convenzione di Bruxelles del 1968 sulla competenza giurisdizionale e il riconoscimento delle sentenze. Anche tale convenzione si ispira al principio dell'universalità, nel senso che il fallimento dichiarato dal tribunale dello Stato in cui l'imprenditore ha il domicilio o la sede estende i suoi effetti nell'altro Stato contraente;

c) la convenzione italo-britannica per il reciproco riconoscimento e l'esecuzione delle sentenze in materia civile e commerciale, sottoscritta a Roma il 7 febbraio 1964 e resa esecutiva con legge 18 maggio 1973 n. 280. Essa non fornisce una disciplina diretta della materia fallimentare, ma si limita a prevedere che la competenza per il riconoscimento delle sentenze straniere pronunciate all'estero vada accertata alla stregua dei principi vigenti nello Stato nel quale il riconoscimento viene richiesto.

---

disciplinare, *quoad rationem*, gli effetti nei rispettivi e pur sempre diversi ordinamenti (²).

Il Regolamento CE n. 1346/2000 del 29 maggio 2000, relativo alle procedure di insolvenza (³) – che costituisce oggetto del presente studio – ambisce a superare *in subiecta materia*, conformemente alla sua natura di strumento normativo di diretta applicazione negli Stati membri dell'Unione europea, l'isolamento «monistico» delle giurisdizioni, per realizzare principi di uniformità.

Il commendevole tentativo di uniformizzazione perseguito dal legislatore comunitario impone, come sempre in questi casi, di affrontare (più o meno) complesse questioni di «compatibilità» con il diritto interno, non sempre risolvibili attraverso l'affermazione, *sic et simpliciter*, del primato del diritto comunitario.

Tocca, così, all'interprete interno tentare di proporre motivate soluzioni, avviando, *ex post*, il dialogo tra i formanti.

**2. Sede legale e sede effettiva: dal primato della giurisdizione all'esigenza della cooperazione.** – Il Regolamento CE n. 1346 del 2000 incide direttamente sull'art. 9 della legge fallimentare, di fatto sostituendolo con una disciplina e più ampia disciplina, valida in tutto il territorio dell'Unione.

La norma del 1942 – senza occuparsi direttamente delle insolvenze transfrontaliere – fissava (e fissa) due principi:

a) che il fallimento è dichiarato dal tribunale del luogo dove l'imprenditore ha la *sede principale* dell'impresa;

b) che l'imprenditore, il quale ha all'estero la sede principale dell'impresa, può essere (separatamente) dichiarato fallito nel territorio della Repubblica, anche se è stata pronunziata dichiarazione di fallimento all'estero. La ulteriore dichiarazione di fallimento in Italia presuppone, naturalmente, lo specifico accertamento dello stato di insolvenza.

La norma fa, inoltre, salve le Convenzioni internazionali.

*In subiecta materia*, il linguaggio normativo e la comune *vulgata* sovente adoperano in maniera (inconsapevolmente) fungibile i termini di «giurisdizione» e di «competenza»: in realtà, l'individuazione del giudice investito del potere di dichiarare l'apertura di una procedura concorsuale avente dimensione transfrontaliera integra senza dubbio una questione di «giurisdizione», anche all'interno dell'Unione Europea.

---

(²) Tale considerazione è opportunamente sviluppata da G. OLIVIERI, *Il regolamento comunitario sulla procedura di insolvenza*, in *Iudicium, it*, 14 aprile 2003, pag. 2 seg.

(³) In G.U.C.E. L 160/1 del 30 giugno 2000. Sulle motivazioni storiche, i contenuti ed il naggio applicativo del Regolamento si fa rinvio a C. PUNZI, *Le procedure d'insolvenza transfrontaliere nell'Unione europea*, in *Riv. dir. proc.*, 2003, pag. 997 seg.