UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

In re

PARMALAT FINANZIARIA S.p.A., et al.,

    Debtors in a Foreign Proceeding.
-------------------------------------------------------x
ABN AMRO BANK N.V.,

                Appellant,

- against -

PARMALAT FINANZIARIA S.p.A., et al.,

                Appellee.

-------------------------------------------------------x

Bankruptcy Court
Case No. 04-14268 (RDD)

In a Proceeding Under Section
304 of the Bankruptcy Code


District Court
**Case No. 07-cv-07413 (PKC)**

---

## SUPPLEMENTAL BRIEF OF APPELLANT ABN AMRO BANK N.V.

---

Lawrence L. Ginsburg (LG 6370)
Christopher J. Caruso (CC 8005)
Scott E. Silberfein (SS 1947)
MOSES & SINGER LLP
405 Lexington Avenue
New York, New York 10174
(212) 554-7800

*Attorneys for Appellant*
ABN AMRO BANK N.V.

697174v3  009988.0102

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT.................................................................................................................2

I.   IN BANKRUPTCY PROCEEDINGS, COURTS OF THE UNITED STATES
     AND NEW YORK APPLY CHOICE OF LAW PROVISIONS EVEN WHEN A
     CONTRARY RESULT WOULD BE REACHED UNDER NEW YORK LAW.............2

     A.   Similarly, Courts Of The United States And New York Apply The Laws
          Of Other States In Determining The Validity Of A Contract Even When A
          Contrary Result Would Be Reached Under New York Law................................5

     B.   Parmalat's Cases Are Inapposite ........................................................................8

     C.   Parmalat Does Not Dispute New York's Strong Policy In Enforcing
          Choice Of Law Provisions...............................................................................11

II.  PARMALAT DOES NOT REFUTE THAT THE UNJUST AND ARBITRARY
     APPLICATION OF DATA CERTA BY THE PARMA COURT IS
     REPUGNANT TO UNITED STATES PRINCIPLES OF JUSTICE............................12

CONCLUSION ............................................................................................................14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allen v. Schuchardt*, 1 Am. Law Reg. N.S. 13, 1 F.Cas. 512 (S.D.N.Y. 1861),
    *aff'd*, 68 U.S. 359 ................................................................6

*Argo Fund Ltd. v. Board of Directors of Telecom Argentina* (In re Bd. of Dirs. of
    Telecom Argentina), 2008 U.S.App. LEXIS 11397 (2d Cir. May 29, 2008).............10

*Assuranceforeningen Skuld Den Danske Afdeling v. Allfirst Bank*, 96 Fed. Appx.
    753 (2d Cir. 2004).........................................................................2

*Breeden v. Sphere Drake Insurance PLC* (In re Bennett Funding Group, Inc.),
    1999 Bankr. LEXIS 1857 (Bankr. N.D.N.Y. Aug. 6, 1999)....................................2-3

*Cavendish Traders, Ltd. v. Nice Skate Shoes, Ltd.*, 117 F.Supp.2d 394 (S.D.N.Y.
    2000) ...........................................................................................5

*In re El International*, 123 B.R. 64 (Bankr. D. Idaho 1991) ........................................8-9

*In re Enron*, 300 B.R. 201 (Bankr. S.D.N.Y. 2003) .........................................................3

*Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240 (2d Cir. 1999) .....................10

*Finnish Fur Sales Co., Ltd. v. Juliette Shulof Furs, Inc.*, 770 F.Supp. 139
    (S.D.N.Y. 1991) ...........................................................................................7

*Fuel & Marine Marketing LLC v. Allfirst Bank* (In re Millenium Seacarriers,
    Inc.), 2004 U.S.Dist. LEXIS 11399 (S.D.N.Y. June 22, 2004) .................................2

*Global Commerce Corp. v. Clark-Babbit*, 239 F.2d 716 (2d Cir. 1956) ............................6

*Hilton v. Guyot*, 159 U.S. 113 (1895) .......................................................................10

*International Minerals & Resources, S.A. v. Pappas*, 96 F.3d 586 (2d Cir. 1996) ..........11

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) .............................................2

*Millenium Seacarriers, Inc.*, 292 B.R. 25 (S.D.N.Y. 2003), *aff'd*, 96 Fed. Appx
    753....................................................................................................3

*Nakhleh v. Chemical Construction Corp.*, 359 F.Supp. 357 (S.D.N.Y. 1973)..............5-6

*Phillips v. Audio Active, Ltd.*, 494 F.3d 378 (2d Cir. 2007) ...........................................11

*In re Regus Bus. Ctr. Corp.*, 301 B.R. 122 (Bankr. S.D.N.Y. 2003)....................................2

*Roby v. Corp. of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993).................................................2, 11

*In re Teligent, Inc.*, 324 B.R. 479 (S.D.N.Y. 2005)............................................................4

*Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156 (1946)....................9

*In re Worldcom, Inc.*, 2005 WL 3832065 (Bankr. S.D.N.Y. 2005)....................................5

*Yavuz v. 61 MM, Ltd.*, 465 F.3d 418 (10th Cir. 2006) ........................................................11

### STATE CASES

*Credit Francais International, S.A. v. Sociedad Financiera de Comercio, C.A.*,
    490 N.Y.S.2d 670 (Sup. Ct. N.Y. Co. 1985) .................................................................12

*Curtis, Mallet-Prevost, Colt & Mosle, LLP v. Garza-Morales*, 762 N.Y.S.2d 607
    (1st Dep't 2003)...............................................................................................................11

*Spink & Son, Ltd. v. General Atlantic Corp.*, 637 N.Y.S.2d 921 (Sup. Ct. N.Y.
    Co. 1996).........................................................................................................................7

### STATE STATUTES

*Gen. Oblig. Law* § 5-1401.......................................................................................................5

### FEDERAL STATUTES

11 U.S.C. § 304.........................................................................................................................10

11 U.S.C. § 365.........................................................................................................................9

### FOREIGN LAW

EC Regulation 1346/2000........................................................................................................1,9

Italian Civil Code Article 2704 .......................................................................................... *passim*

### MISCELLANEOUS

Restatement (Second) of Conflict of Laws § 187 ................................................................6

## PRELIMINARY STATEMENT

ABN AMRO Bank N.V. ("ABN") submits this supplemental brief in further support of its appeal from the Order.[1] (Docket No. 215.)[2] ABN argues, consistent with its submissions before the Parma Court, the Bankruptcy Court and this Court, and still unrefuted and uncontradicted by Parmalat in its submissions, that comity should not be granted to the Italian proceeding as it relates to ABN's claim regarding the Note and Guarantee because the fundamental public policy of the Untied States, in general, and New York, in specific, of fostering and encouraging sophisticated business entities, such as Parmalat and ABN, through arms-length negotiations to choose its contractual terms, including choice of law provisions has been and continues to be disregarded in Italy.

ABN's position is supported by New York federal and state cases enforcing choice of law provisions even if the application of New York (or domestic) law would result in a contrary outcome. While Parmalat cites cases which it argues contradicts ABN's position, its cases are easily distinguished. ABN maintains that, for purposes of this submission, even if accepting as true Parmalat's arguments regarding the application of the European Community Regulation 1346/2000 ("EC Regulation") and Article 2704 of the Italian civil code (the *data certa* statute), bankruptcy courts in the United States and, apparently, in Italy are empowered, in limited circumstances, and for the benefit of a debtor to impair certain contractual terms. Unlike in Italy, in general, and the Parma Court, in specific, such bankruptcy court power in the United States

---

[1] Unless otherwise noted, capitalized terms herein have the same meaning as in ABN's opening brief. In addition, ABN believes Parmalat's Supplemental Brief, dated June 3, 2008, went far beyond the scope of addressing the specific questions posed in this Court's May 1, 2008 Order. If this Court considers Parmalat's Supplemental Brief in deciding the instant appeal, ABN respectfully requests that this Court also considers ABN's responses in this Supplemental Brief.

[2] Citations to documents included in the record on appeal are referenced herein as "Docket No. ___."

does not apply to choice of law provisions and, in fact, choice of law provisions are not overwritten by insolvency rules. Accordingly, and contrary to Parmalat's contentions, the treatment of ABN in the Parma Court is not the "exact equivalent" or "mirror image" of how the United States treats parties in breach of contract actions containing choice of law provisions.

Given the United States' fundamental belief in the parties' rights to choose the law applicable to its contracts, even in the bankruptcy context, the Bankruptcy Court's granting of Parmalat's request for a Section 304 injunction was error. Accordingly, ABN's appeal should be granted and the Order vacated.

## ARGUMENT

## I. IN BANKRUPTCY PROCEEDINGS, COURTS OF THE UNITED STATES AND NEW YORK APPLY CHOICE OF LAW PROVISIONS EVEN WHEN A CONTRARY RESULT WOULD BE REACHED UNDER NEW YORK LAW

Bankruptcy courts in the United States and New York routinely apply foreign choice of law provisions.[3] See Assuranceforeningen Skuld Den Danske Afdeling v. Allfirst Bank, 96 Fed. Appx. 753 (2d Cir. 2004) (Norwegian law); Fuel & Marine Mktg. LLC v. Allfirst Bank (In re Millenium Seacarriers, Inc.), 2004 WL 1403349, 2004 U.S. Dist. LEXIS 11399 (S.D.N.Y. June 22, 2004) (English law); In re Regus Bus. Ctr. Corp., 301 B.R. 122 (Bankr. S.D.N.Y. 2003) (giving deference to English courts pursuant to the contractual choice of forum and choice of law provisions); Breeden v. Sphere Drake Ins. PLC (In re Bennett Funding Group, Inc.), 1999 Bankr.

---

[3] "[F]orum selection and choice of law clauses are presumptively valid where the underlying transaction is fundamentally international in character" and "[t]his presumption of validity may be overcome ... by a clear showing that the clauses are unreasonable under the circumstances." Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1362-63 (2d Cir. 1993) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972)). This exception is construed narrowly: "forum selection and choice of law clauses are 'unreasonable' (1) if their incorporation into the agreement was the result of fraud or overreaching, (2) if the complaining party will for all practical purposes be deprived of his day in court, due to the grave inconvenience or unfairness of the selected forum, (3) if the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy, or (4) if the clauses contravene a strong public policy of the forum state. Id. at 1363 (citation and internal quotation marks omitted). No such exception exists here.

LEXIS 1857 (Bankr. N.D.N.Y. Aug. 6, 1999) (enforcing the contractual choice of law provision by applying Bermudan law to the case, and explaining that American courts generally enforce choice of law provisions unless there is a "strong showing' that enforcement would be unreasonable").

In Millenium Seacarriers, Inc., 292 B.R. 25 (S.D.N.Y. 2003), aff'd, 96 Fed. Appx 753 (2d Cir. 2004), the district court affirmed the bankruptcy court's decision in determining the enforceability of a lien rights claim pursuant to an insurance contract.  Millenium Seacarriers was insured by Skuld, a Norwegian protection and indemnity insurance club.  After Millenium Seacarriers filed for bankruptcy, Skuld filed a Notice of Preferred Maritime Liens for Necessaries for unpaid insurance premiums.  Norway, however, does not recognize maritime liens for supplies for necessaries.  The bankruptcy court dismissed the case (and was affirmed by the district court) because it concluded that, *pursuant to the choice of law provision in the insurance contract*, the dispute was to be governed by the laws of Norway.  292 B.R. at 28.

Thus, even though the United States recognizes maritime liens for supplies for necessaries, the United States court enforced the parties' choice of law provision, deferred to Norwegian law, and dismissed the case.  This is precisely what the Parma Court should have done (but did not do) when faced with the choice of law provision in the Note and Guarantee; even though, arguably, the Guarantee may not have been enforceable against a third-party because of the application of the *data certa* statute, it should have enforced the parties' choice of law provision and recognized the validity and enforceability of the Guarantee.

Similarly, and although the bankruptcy code may permit certain contractual provisions to be dealt with in a different manner for the efficient and orderly handling of the debtor's estate, New York bankruptcy courts enforce choice of law provisions.  For example, in In re Enron, 300

B.R. 201, 206-207 (Bankr. S.D.N.Y. 2003), a former employee of Enron filed suit to compel

retention bonus and termination payments pursuant to the terms of his Employee Agreement.

The Southern District Bankruptcy Court applied Texas state law to the case in accordance with

the Agreement's choice of law provision, and explained that choice of law provisions are

generally considered valid and enforceable in New York. In re Enron, 300 B.R. at 208 ("The

Employment Agreement states that it shall be governed by the laws of the State of Texas. As a

general rule, choice of law provisions are considered valid and enforceable in the State of New

York").

     Similarly, in In re Teligent, Inc., 324 B.R. 479, 480 (S.D.N.Y. 2005), the estate

representative of a bankrupt corporation appealed a decision from the bankruptcy court regarding

the status of a health insurance contract.  Although the bankruptcy court did not discuss the

choice of law provision in the health insurance contract, which designated Delaware state law as

the governing authority, the district court inferred that the bankruptcy court understood the case

to be governed by Delaware state law by pointing to the court's reliance on Delaware case law to

interpret the terms of the contract.  In re Teligent, Inc., 324 B.R. at 489.  Moreover, the district

court explained that contractual choice of law provisions should be enforced as long as there is a

relationship between the chosen law and the transaction. Id.  ("[B]oth New York and federal

choice of law rules require that a contractual choice of law provision, such as exists in the Policy

at issue in this case, should be honored provided that there is some relationship between the law

chosen and the transaction").  The district court accordingly applied Delaware state law to its

review of the bankruptcy court's decision.

     Finally, in In re Worldcom, Inc., 2005 WL 3832065 (Bankr. S.D.N.Y. 2005), a

telecommunications brokerage corporation filed suit against a subsidiary of Worldcom over a

dispute regarding commissions required under a sales agreement. The bankruptcy court referred to a provision in the contract whereby both parties agreed that Florida law would apply to any contractual disputes, and explained that because such choice of law provisions are enforceable in New York, the claim would be adjudicated according to the Bankruptcy Code and Florida state law. In re Worldcom, Inc., 2005 WL 3832065 at *4.

These cases show that New York bankruptcy courts enforce choice of law provisions, including those in favor of international jurisdiction, even when the result of the enforcement of such provisions lead to results different than those that would be reached had New York applied its own law. The Parma Court should have done likewise. Its failure and refusal to do so evidences the inherent injustice in granting comity in this instance.

A.    **Similarly, Courts Of The United States And New York Apply The Laws Of Other States In Determining The Validity Of A Contract Even When A Contrary Result Would Be Reached Under New York Law**

As detailed above, "[c]hoice of law clauses in contracts and loan documents are generally honored in New York." Cavendish Traders, Ltd. v. Nice Skate Shoes, Ltd., 117 F.Supp.2d 394, 399-400 (S.D.N.Y. 2000) (applying New York law to determine the validity of promissory notes and guarantees explicitly providing for the governance of New York law). Even where a contract would be invalid under New York law – for example, because of the statute of frauds – New York courts, including the Second Circuit, have applied parties' choice of foreign law to resolve the initial question of whether a valid contract exists or is enforceable.[4] See Nakhleh v.

---

[4] Another example of New York courts recognizing a party's choice of foreign law to analyze the validity of a contract or instrument that would be invalid under New York law is in the Estates, Powers and Trusts Law ("EPTL"). New York statutorily provides that a will disposing of personal property, made without the state by a domiciliary or a nondomiciliary, is "formally valid and admissible to probate in this state" if it is in writing and signed by the testator, and otherwise executed and attested in accordance with the "local law" of (1) New York; (2) the jurisdiction in which the will was executed at the time of execution; or (3) the jurisdiction in which the testator was domiciled, either at the time of execution or of death. EPTL 3-5.1(c). See also N.Y.Jur.2d "Decedent's Estates"

Chem. Constr. Corp., 359 F. Supp. 357, 360 (S.D.N.Y. 1973) (denying defendant's motion for summary judgment where New York would apply a choice of law rule giving effect to the parties' intent, but question of fact existed as to whether parties made an oral contract and, if so, whether it included an intention to apply Saudi Arabian law). This same approach should have been employed by the Parma Court. And, because it did not, the proceedings in the Parma Court are repugnant to Unites States' notions of due process and should not be afforded comity.

In Global Commerce Corp. v. Clark-Babbit, 239 F.2d 716, 719-20 (2d Cir. 1956), the Second Circuit held that where a New York exporter and Mexican importer conducted negotiations by telephone, telegram, letters and personal interviews in New York respecting a contract (i) for sale by broker of copra to the Mexican importer and, (ii) a broker commission for procuring a buyer in Mexico for exporter's steel bars, under New York law, Mexican law governed as to the creation and validity of the contract, and the defense of New York's statute of frauds was unavailable. See also Allen v. Schuchardt, 1 Am. Law Reg. N.S. 13, 1 F.Cas. 512 (S.D.N.Y. 1861), aff'd, 68 U.S. 359 (1863) (an oral contract, made in one state, where the statute of frauds does not prevail, can be enforced in another state, although, if made in that manner therein, it would have been void); Restatement (Second) of Conflict of Laws § 187 cmt. g, where it was stated that a "fundamental" policy of a state which would bar enforcement of a foreign

---

§ 24 (2008). Thus, even if a will is not executed in accord with New York law, New York will probate a will if it was otherwise validly executed in a foreign jurisdiction.

Also, section 3-5.1(h) of the EPTL provides that whenever a testator not domiciled in New York at the time of death provides in her will that she elects to have the disposition of her property situated in New York governed by New York law, the intrinsic validity (including the testator's general capacity, and the effect, interpretation, revocation, or alteration of any such disposition) is determined by the local law of New York. Thus – like Gen. Oblig. Law § 5-1401 mandating that recognition of a New York choice of law provision in a contract involving $250,000 or more – non-resident testators are specifically permitted to adopt New York law as to the charter of authority for their wills, and residents of other jurisdictions are afforded a means of escaping onerous restrictions on the testamentary disposition of property imposed by the laws of their own domiciles.

statute "will rarely be found in a requirement, such as the statute of frauds, that relates to formalities."

In <u>Spink & Son, Ltd. v. Gen. Atlantic Corp.</u>, 637 N.Y.S.2d 921, 923 (Sup.Ct., N.Y. Co. 1996), the state court faced a similar issue: to determine the validity of an alleged oral contract for the purchase of art work made in England between a New York resident and an English art gallery. Plaintiff moved to dismiss the complaint as barred by the New York statute of frauds. <u>Id.</u> The court, however, held that the "action shall proceed applying the substantive law of England" (which allegedly did not require a writing for the enforcement of the subject contract), instead of dismissal under New York law, and that "English law will determine the enforceability of the oral contract sued upon." <u>Id.</u> <u>See also</u> <u>Finnish Fur Sales Co., Ltd. v. Juliette Shulof Furs</u>, Inc., 770 F. Supp. 139, 146 (S.D.N.Y. 1991) (holding that a violation of New York's statute of frauds reflected in auction conditions of sale would not cause New York court to disregard Finnish law, which was law designated in conditions of sale).

Contrary to Parmalat's contentions, the courts of the United States and New York routinely apply choice of law provisions even in those cases where the application of New York law to the fundamental question of contract validity and/or enforceability would yield a different result. It is reasonable to expect that the parties' choice of law provision in the Guarantee should have been given the same weight before the Parma Court. Said another way, the Parma Court, like the New York court, should have determined the fundamental question of contract validity and/or enforceability under the law chosen by the sophisticated parties – New York – rather than the application of Italian civil law.

To reciprocally require the Parma Court to apply the New York choice of law provision is fair, just, and warranted to ensure the parties (sophisticated commercial entities) receive the

benefit of the provisions they bargained for while at the same time respecting the efficiency of the Parma Court's handling of the Foreign Debtors' insolvency proceedings. And, since the Parma Court is apparently unwilling to do so, and because choice of law provisions are a pillar of a strong policy to respect and enforce choice of New York law, particularly when made by financial institutions, the permanent injunction should have been denied.

### B.     Parmalat's Cases Are Inapposite

In its Supplemental Memorandum, Parmalat contends that because U.S. bankruptcy laws may impair contract obligations that are enforceable outside of bankruptcy the Parma Court was empowered to ignore the parties' choice of law provision. Parmalat declares that Section 304 relief cannot, therefore, be denied because U.S. laws are the "exact equivalent" or "mirror image" of the application of the European Regulation and *data certa* to the parties' choice of law provision. As evidenced above, however, the courts of the United States and New York routinely apply choice of law provisions even in those cases where the application of New York law to the fundamental question of contract validity and/or enforceability would yield a different result. In any event, the cases cited by Parmalat in support of its position are easily distinguished from the case at bar on the facts and law and otherwise are irrelevant to the critical issue at hand as the cases and the legal propositions they are cited for do not concern the application of a choice of law provision to the determination of fundamental question of contract validity and/or enforceability.

For example, Parmalat relies almost exclusively on the decision in In re El Int'l, 123 B.R. 64 (Bankr. D. Idaho 1991), in support of its theory that bankruptcy courts in the United States do not follow choice of law provisions. Parmalat's analysis is faulty and its reliance misplaced for a number of reasons. First, the contract at issue in the In re El Int'l case was an executory contract wherein the debtor agreed to supply its software system to a counterparty's electrical plant. The

U.S. Bankruptcy Code, and specifically section 365 thereof, provides for the acceptance and rejection of executory contracts and in certain instances limits the amount of damages. Accordingly, the issues present in the <u>In re El Int'l</u> case, namely the damages due as a result of the debtor's rejection of the executory contract, is governed by federal statute. Thus, there is no "mirror image" or "exact equivalent" to the instant case as Parmalat argues.

Additionally, because the issue in the <u>In re El Int'l</u> case concerned the calculation of damages as a result of the debtor's rejection of an executory contract, the court did not have to deal with the issue of whether the contract was, from the outset, valid or enforceable. Here, the Note and Guarantee are not subject to Italian bankruptcy law and scheme. Accordingly, Italy and the Parma Court should apply the choice of law provisions as would the courts of the United States and New York. Italy's application of *data certa*, therefore, cannot be held to be the equivalent because *data certa* is a civil statute and not part of Italian bankruptcy law.

Similarly, Parmalat's reliance on the language of the Supreme Court's decision in <u>Vanston Bondholders Protective Committee v. Green</u>, 329 U.S. 156 (1946), misses the mark. Parmalat cites <u>Vanston</u> in support of its contention that the EC Regulation supersedes non-bankruptcy laws and, therefore, Italy is free to apply *data certa* to the Guarantee. Under this analysis, assuming it is correct, no contract will ever be determined by the choice of law provision chosen by the parties as Italy is always free to apply its own, non-bankruptcy laws to contracts. This conclusion is highly suspect. The <u>Vanston</u> Court held that bankruptcy courts enforce the bankruptcy laws and determine what claims shall be allowed. ABN agrees with this legal proposition. It does not agree, however, that the Parma Court, in applying *data certa*, is applying Italian bankruptcy law. *Data certa* is concededly an Italian civil law.

Finally, Parmalat's citation to the recent Second Circuit decision in <u>Argo Fund Ltd. v. Bd. of Dirs. of Telecom Argentina (In re Bd. of Dirs. of Telecom Argentina)</u>, 2008 U.S. App. LEXIS 11397 (2d Cir. 2008), is irrelevant to the instant case. The only common issue is that the Second Circuit was asked to review a decision on Section 304 grounds. The case did not, however, concern choice of law provisions, a guarantee, the validity of a contract or the conduct of the Argentinean courts. As such, the case is of no probative value herein.[5]

In sum, Parmalat fails to cite to any cases in which a United States court failed to enforce a contractual choice of law provision when it does not conflict with the Bankruptcy Code. Accordingly, comity should not granted. Comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." <u>Hilton v. Guyot</u>, 159 U.S. 113 (1895). Although comity is generally appropriate where the foreign "proceedings do not violate the laws or public policy of the United States and if the foreign court abides by fundamental standards of procedural fairness," <u>Finanz AG Zurich v. Banco Economico S.A.</u>, 192 F.3d 240, 246 (2d Cir. 1999) (internal quotation marks and citation omitted), it is not appropriate where, as here, Italian

---

[5] The <u>Argo Fund</u> decision serves as a reminder that in evaluating Parmalat's section 304 petition, the court must "be guided by what will best assure an economical and expeditious administration of [the debtor's] estate," consistent with six factors enumerated in the statute. 11 U.S.C. § 304(c). Those factors are: (1) just treatment of all claimholders; (2) protection for U.S. claimholders against prejudice and inconvenience in claims processing; (3) prevention of preferential or fraudulent dispositions of property; (4) distribution of proceeds substantially in the order prescribed by U.S. bankruptcy law; (5) comity; and (6) if appropriate, an opportunity for a "fresh start" if the foreign proceeding concerns an individual. <u>Id.</u> Examples of when a court has held that the foreign proceeding does not satisfy the first factor, just treatment of all creditors, "include when the proceeding fails to provide creditors access to information and an opportunity to be heard in a meaningful manner, which are [f]undamental requisites of due process, <u>In re Hourani</u>, 180 B.R. 58, 61 (Bankr. S.D.N.Y. 1995), or when the proceeding would not recognize a creditor as a claimholder, see <u>In re Papeleras Reunidas</u>, S.A., 92 B.R. 584, 590 (Bankr. E.D.N.Y. 1988) ("By reason of its not having been given notice of the Spanish proceeding, Adams was not recognized as a creditor, thus depriving it of the opportunity to participate in the proceeding, prejudicial to its rights") (internal quotations omitted). <u>Argo Fund</u>, 2008 U.S. App. LEXIS 11397 at *20.

courts in dealing with insolvency proceedings will never enforce parties' choice of law provisions.[6]

### C. Parmalat Does Not Dispute New York's Strong Policy In Enforcing Choice Of Law Provisions

As outlined in its previous submissions, choice of law clauses are highly favored and should be respected. See Phillips v. Audio Active, Ltd., 494 F.3d 378, 384 (2d Cir. 2007) (stating that "federal courts give substantial weight to choice of law provisions."); Roby v. Corporation of Lloyd's, 996 F.2d 1353, 1363 (2d Cir. 1993); International Minerals & Resources, S.A. v. Pappas, 96 F.3d 586, 592 (2d Cir. 1996). Accordingly, if the Parma Court will not give effect to the New York choice of law provision, deference to the Italian insolvency proceeding is error. The strength of this policy is reinforced by the recent authorities that have held that "under federal law the courts should ordinarily honor an international commercial agreement's forum-selection provision as construed under the law specified in the agreement's choice-of-law provision." Yavuz v. 61 MM, Ltd., 465 F.3d 418 (10th Cir. 2006) (emphasis in original).

This is especially so because New York has a strong public policy to enforce New York choice of law provisions in bank guarantees. Parties, like ABN, place their reliance in New York's enforcement of a choice of law and forum provisions to control their commercial risks, and New York has a "compelling interest" as the banking center of the world in enforcing their choices. Curtis, Mallet-Prevost, Colt & Mosle, LLP v. Garza-Morales, 762 N.Y.S.2d 607 (1st Dep't 2003) (the Court refused comity, directed defendant to arbitrate in New York and enjoined the Mexican litigation because the parties had placed their reliance on a New York choice of forum

---

[6] Comity is also not appropriate here because the Parma Court has not abided by fundamental standards of procedural fairness in considering ABN's claim.

and method of dispute resolution clause to control their commercial risks); <u>Credit Francais Int'l,</u> <u>S.A. v. Sociedad Financiera de Comercio, C.A.,</u> 490 N.Y.S.2d 670, 676, 678 (Sup. Ct. N.Y. Co. 1985) (Concluding both that "New York, as the center of international trade and finance, has expressly recognized, as a service to the business community, that its courts will be hospitable to the resolution of all substantial contractual disputes in which the parties have agreed beforehand that our neutrality and expertise should govern their relationships. Just as the dollar has become the international standard for monetary transactions, so may parties agree that New York law is the standard for international disputes" and that "The center of world banking, trade, finance and other activities should, and indeed, with the enactment of General Obligations Law § 5-1402, *must* extend itself to treat with such controversies").

New York, therefore, has a great interest in applying the choice of law provisions chosen by sophisticated business parties to agreements such as the Note and Guarantee. Indeed, these same sophisticated business parties would expect New York law to apply if the case was to be resolved in any other forum in the United States (bankruptcy court or otherwise) as well as in any foreign court. But, since the statutory scheme in the European Union and Italy does not permit or the Parma Court simply refused to give voice to the parties' choice of law provision, ABN (and Parmalat) lost the benefit of their bargain and have been treated in such a way as to offend United States' notions of due process.

Accordingly, the Bankruptcy Court erred and abused its discretion in granting the permanent injunction.

## II.   PARMALAT DOES NOT REFUTE THAT THE UNJUST AND ARBITRARY APPLICATION OF DATA CERTA BY THE PARMA COURT IS REPUGNANT TO UNITED STATES PRINCIPLES OF JUSTICE

As outlined in the Declaration of Giuseppe Curtó, dated June 2, 2008, ABN availed itself of the opportunity to request that the Parma Court consider evidence under the "other

circumstances" exception of Article 2704 of Italian Civil Code, the *data certa* statute. The Parma Court rejected each attempt and refused to reconsider its decisions. Ultimately, the Parma Court issued the Judgment, which essentially vitiates the "other circumstances" exception to Article 2704.

ABN attempted to submit numerous documents which, if admitted into evidence, would have established a date certain for the execution (prior to the commencement of Parmalat's insolvency proceedings), including without limitation, loan table, memoranda, e-mail correspondence from Parmalat itself, and e-mail correspondence of ABN.

ABN also requested that the Parma Court appoint an expert to confirm that the dates of e-mails and other documentation extracted from ABN's database were not alterable by the parties and therefore could be used to establish that the Guarantee was dated prior to the Extraordinary Administration. ABN also applied to the Parma Court to be allowed to submit witnesses on the e-mails exchanged between ABN and Parmalat during the negotiations of the Guarantee and oral evidence of Banca Intesa, S.p.A. – a bank located in Parma whose officer, L. Panizzi, actually witnessed the signature of Parmalat's chairman on the Guarantee.

ABN also was never provided Parmalat's accounting records held by the Extraordinary Commissioner which had documentary evidence of the aggregate amount of all the guarantees granted by Parmalat as of the date of declaration of insolvency.

Parmalat has no response to these injustices or why comity should be granted in the face of such arbitrary and prejudicial actions. It is repugnant to United States ideas of justice for a duly signed Guarantee, entered into with the understanding that it was valid under New York law, to be, in essence, declared null and void by the Parma Court based on the arbitrary and capricious application of the *data certa* statute by the Parma Court in refusing to consider ample

evidence submitted by ABN and other banks.  It is also repugnant to United States law for

ABN's claim to be disallowed because the Parma Court refused to hear from witnesses regarding

the execution of the Guarantee – a procedure incorporated into the *data certa* statute.

Because the Parma Court's application of *data certa* to ABN's claim has been unjust,

prejudicial and repugnant to United States' notions of due process, the Foreign Debtors' motion

for a permanent injunction should have been denied.

## CONCLUSION

For the foregoing reasons, ABN's appeal should be granted and the Order vacated.

Dated: New York, New York
      June 30, 2008

              MOSES & SINGER LLP
              *Attorneys for Appellant*

              Lawrence L. Ginsburg (LG 6370)
              Christopher J. Caruso (CC 8005)
              Scott E. Silberfein (SS 1947)
              405 Lexington Avenue
              New York, New York 10174
              (212) 554-7800